UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MICHAEL L. FERGUSON, MYRL C. JEFFCOAT : 
and DEBORAH SMITH, on behalf of the DST :
SYSTEMS, INC. 401(K) PROFIT SHARING :
PLAN, :
         :
        Plaintiffs, :      Case No. 17-CV-06685-ALC
         :
        v. :      **ORAL ARGUMENT REQUESTED**
         :
RUANE CUNNIFF & GOLDFARB INC., :
DST SYSTEMS, INC., THE ADVISORY :
COMMITTEE OF THE DST SYSTEMS, INC. :
401(K) PROFIT SHARING PLAN and THE :
COMPENSATION COMMITTEE OF THE :
BOARD OF DIRECTORS OF DST SYSTEMS, :
INC., :
         :
        Defendants. :
         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### MEMORANDUM OF LAW IN SUPPORT OF THE DST DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' 401(k)-RELATED ALLEGATIONS

Scott D. Musoff
Alexander C. Drylewski
James R. Carroll
Michael S. Hines
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
– and –
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800

Counsel for Defendants
DST Systems, Inc., The Advisory Committee of the
DST Systems, Inc. 401(k) Profit Sharing Plan, and The
Compensation Committee of the Board of Directors of
DST Systems, Inc.

Dated: December 14, 2018

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ......................................................................................................4

ARGUMENT ..........................................................................................................5

I.   PLAINTIFFS FAIL TO ALLEGE FACTS PLAUSIBLY
     SUPPORTING A CLAIM FOR BREACH OF THE DUTY OF LOYALTY ..................6

II.  PLAINTIFFS FAIL TO ALLEGE FACTS PLAUSIBLY
     SUPPORTING A CLAIM FOR BREACH OF THE DUTY OF PRUDENCE.................7

     A.   Mere Allegations Of "Excessive" Fees Do Not
          Support An Imprudence Claim As A Matter Of Law ..............................................8

          1.   The Complaint's Assertions Of "Excessive" Investment Fees
               Do Not Support A Reasonable Inference Of A Flawed Process ................8

          2.   Plaintiffs' Allegations About
               Recordkeeping And Administrative Fees Do Not
               Support A Reasonable Inference Of A Flawed Process ..........................13

     B.   General, Non-Specific Allegations Of Underperformance
          Do Not Support An Imprudence Claim As A Matter Of Law ..............................15

     C.   Allegations That The Plan Did Not Contain Alternative
          Investments Do Not Support An Imprudence Claim As A Matter Of Law..........17

     D.   Conclusory Allegations That Fiduciaries Did Not Monitor The DST
          Stock Fund Do Not Support An Imprudence Claim As A Matter Of Law...........19

     E.   Conclusory Allegations That The Advisory Committee
          Was Unqualified Or Failed To Adopt Procedures To Manage
          The Plan Do Not Support A Claim Of Imprudence As A Matter Of Law ...........20

     CONCLUSION.....................................................................................................21

## TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................5, 13, 20

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................5

*Davis v. Washington University in St. Louis,*
    No. 17-cv-1641-RLW, 2018 WL 4684244 (E.D. Mo. Sept. 28, 2018) ..............................9

*Dorman v. Charles Schwab Corp.,*
    No. 17-cv-00285, slip op. (N.D. Cal. Sept. 20, 2018) ......................................16

*Fifth Third Bancorp v. Dudenhoeffer,*
    134 S. Ct. 2459 (2014) ...........................................................................................6

*George v. Kraft Foods Global, Inc.,*
    641 F.3d 786 (7th Cir. 2011) ...............................................................................19

*Guo v. IBM 401(k) Plus Plan,*
    95 F. Supp. 3d 512 (S.D.N.Y. 2015)....................................................................4

*Hecker v. Deere & Co.,*
    556 F.3d 575 (7th Cir. 2009) .................................................................11, 18, 19

*Loomis v. Exelon Corp.,*
    658 F.3d 667 (7th Cir. 2009) .................................................................9, 11, 17

*Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v.*
    *Morgan Stanley Investment Management Inc.,*
    712 F.3d 705 (2d Cir. 2013).............................................................. *passim*

*Renfro v. Unisys Corp.,*
    671 F.3d 314 (3d Cir. 2012).....................................................................9, 11

*Rosen v. Prudential Retirement Insurance & Annuity Co.,*
    No. 3:15-cv-1839 (VAB), 2016 WL 7494320,
    *aff'd*, 718 Fed. App'x 3 (2d Cir. 2017)...................................................10, 13

*Sacerdote v. New York University,*
    No. 16-cv-6284 (KBF), 2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017) ................... *passim*

*Sweda v. University of Pennsylvania,*
    No. 16-4329, 2017 WL 4179752 (E.D. Penn. Sept. 21, 2017)...............................9, 10, 15

*Taylor v. United Technologies Corp.*,
No. 06-cv-1494(WWE), 2009 WL 535779 (D. Conn. Mar. 3, 2009) ..............................20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ...................................................................................................4

*Tibble v. Edison International*,
729 F.3d 1110 (9th Cir. 2013) ................................................................................9, 11

*White v. Chevron Corp.*,
No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .................... *passim*

*White v. Chevron Corp.*,
No. 16-cv-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*, -- F. App'x --,
No. 17-16208, 2018 WL 5919670 (9th Cir. Nov. 13, 2018) ............................................10

*Young v. General Motors Investment Management Corp.*,
325 F. App'x 31 (2d Cir. 2009) ..................................................................................14

## RULES & STATUTES                                                    PAGE(S)

15 U.S.C. § 80a-1 ......................................................................................................17

15 U.S.C. § 80a-8 ......................................................................................................17

15 U.S.C. § 80a-16 ....................................................................................................17

15 U.S.C. § 80a-24 ....................................................................................................17

15 U.S.C. § 80a-29 ....................................................................................................17

29 U.S.C. § 1104 .....................................................................................................6, 7

## OTHER AUTHORITIES                                                    PAGE(S)

U.S. Department of Labor, *A Look at 401(k) Plan Fees* (Aug. 2013),
available at https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-
activities/resource-center/publications/a-look-at-401k-plan-fees.pdf. ..............................10

## PRELIMINARY STATEMENT

Defendant DST Systems, Inc. ("DST") is a global provider of technology-based information processing and servicing solutions.[1]  DST offers its employees the opportunity to participate in the DST Systems, Inc. 401(k) Profit Sharing Plan (the "Plan") -- a 401(k) retirement plan designed to assist DST employees in meeting their retirement goals.  The Plan offers participants a diverse lineup of investment options that includes a range of investment strategies, risk profiles, and investment fees.

During the period relevant to this lawsuit (approximately 2012 through 2016), the Plan was comprised of two components:  (1) the 401(k) portion, which was managed by the Advisory Committee and (2) the Profit Sharing Account (the "PSA"), which was managed by Ruane.  Plaintiffs -- three former DST employees who are participants in the Plan -- allege that Defendants' conduct with respect to the Plan violated the Employee Retirement Income Security Act of 1974 ("ERISA").  With respect to the DST Defendants, Plaintiffs allege, among other things, that they breached their ERISA fiduciary duties because they "selected and retained high-cost and poor-performing investments" in the 401(k) portion of the Plan.[2]  (Compl. ¶ 6.)  In that regard, Plaintiffs allege that the DST Defendants breached their ERISA fiduciary duties of loyalty and prudence with respect to the 401(k) portion of the Plan by, among other things, (1)

---

[1]      Defendants DST, the Advisory Committee of the DST Systems, Inc. 401(k) Profit Sharing Plan (the "Advisory Committee"), and the Compensation Committee of the Board of Directors of DST (the "Compensation Committee") are collectively referred to as the "DST Defendants."  Defendant Ruane Cunniff & Goldfarb Inc. is referred to as "Ruane," and together with the DST Defendants, "Defendants."

[2]      Plaintiffs also allege that the DST Defendants and Ruane breached ERISA fiduciary duties in connection with investments in the PSA portion of the Plan.  (*See, e.g.*, Second Amended Complaint ¶¶ 24-55 (the "Complaint," cited as "Compl.").)  This motion to dismiss addresses only those allegations concerning the 401(k) portion of the Plan.  (*See, e.g.*, Compl. ¶¶ 56-87.)

including higher-cost share classes of certain investment options even though lower-cost share classes of those same funds were available to the Plan (*id.* ¶ 59); (2) failing to remove underperforming investment options (*id.* ¶ 66); (3) failing to offer non-mutual fund investment options (*id.* ¶ 81); (4) failing to monitor adequately the DST Stock Fund -- one of the investment choices in the 401(k) portion of the Plan (*id.* ¶¶ 74-77); and (5) not engaging an investment adviser to manage the 401(k) portion of the Plan (*id.* ¶ 57).  All of Plaintiffs' claims with respect to the 401(k) portion of the Plan fail as a matter of law for a variety of independent reasons.[3]

   *First*, Plaintiffs' claim for breach of the duty of loyalty should be dismissed because there are no allegations that the DST Defendants engaged in any *purposeful* conduct for the benefit of themselves or a third-party.  Rather, the Complaint's allegations are solely directed at a breach of the duty of prudence.

   *Second*, Plaintiffs' claim for breach of the duty of prudence fares no better.  To state a claim for a breach of the duty of prudence under ERISA, a plaintiff's complaint must include allegations of a "fiduciary's conduct in arriving at an investment decision," and must include factual allegations that a fiduciary did not "employ[] the appropriate methods to investigate and determine the merits of a particular investment."  *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) (internal quotation marks omitted) ("*Morgan Stanley*").  Where -- as here -- there are no factual allegations about the process employed in making fiduciary decisions, a plaintiff may survive a motion to dismiss a prudence claim only "if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed."  *Id.* at 718 (internal quotation marks and citation omitted).  Here, Plaintiffs' allegations

---

[3]  Attached hereto as Appendix A is a table listing the investment options available to participants within the 401(k) portion of the Plan from 2012 through 2016.

are conclusory and based on impermissible hindsight, and accordingly, are insufficient as a matter of law to infer a flawed process.

For example, Plaintiffs' allegations that the Plan included high-cost share classes of investment options when lower-cost share classes of those same investment options were available to the Plan do not, as a matter of law, support an inference of a flawed fiduciary process where, as here, the Plan was comprised of a reasonable range of investment options. Indeed, Judge Forrest recently rejected identical allegations on a motion to dismiss. *See, e.g.*, *Sacerdote v. New York Univ.*, No. 16-cv-6284 (KBF), 2017 WL 3701482, at *11 (S.D.N.Y. Aug. 25, 2017). Likewise, Plaintiffs' hindsight allegations of investment underperformance are insufficient to support a claim of an imprudent process because, as the Second Circuit made clear in *Morgan Stanley*, the test of prudence is "conduct in arriving at an investment decision, not on its results." *Morgan Stanley*, 712 F.3d at 716. For the same reason, Plaintiffs' conclusory allegations that the DST Defendants acted imprudently by (i) including mutual funds as investment options, rather than collective trusts or separately managed accounts, and (ii) selecting a money market fund rather than a stable value fund as an investment option are equally unavailing. Finally, although Plaintiffs baldly assert that the DST Defendants were unqualified to manage the Plan and failed to engage an investment adviser to manage the 401(k) portion of the Plan, there are no allegations at all concerning the qualifications of the Plan's fiduciaries, and nothing in ERISA requires a plan fiduciary to engage an investment adviser to manage a plan's assets.

In short, the Court should reject Plaintiffs' attempt to cobble together a fiduciary breach claim with hindsight-based allegations of the Plan's investment options, and conclusory allegations of imprudence devoid of factual support. All of Plaintiffs' allegations and claims

concerning the 401(k) portion of the Plan fail to state a claim as a matter of law and should be dismissed.

## BACKGROUND[4]

DST is a Delaware corporation with its principal place of business in Kansas City, Missouri. (Compl. ¶ 14.) DST is the Plan's sponsor. (*Id.*) The Advisory Committee of the Plan is the Plan's named fiduciary (*id.* ¶ 15), and is responsible for controlling and managing the operations and administration of the Plan (2013 Summary Plan Description For The DST Systems, Inc. 401(k) Profit Sharing Plan at 2 (Hines Decl. Ex. 1) ("2013 SPD").) The Compensation Committee appoints the members of the Advisory Committee. (Compl. ¶ 16.)

The Plan is a defined-contribution retirement plan, funded through employee-directed contributions, DST matching contributions, and DST's voluntary profit sharing contributions. (Compl. ¶ 12.) Prior to certain amendments effective January 1, 2017, the Plan was comprised of two components: (1) the PSA and (2) the 401(k) portion. (*Id.* ¶ 22.) Investments in the 401(k) portion of the Plan were entirely participant-directed; that is, each participant allocated the employee and employer matching contributions into any investment option available under the Plan as determined by the Advisory Committee.[5] (2013 SPD at 10 (Hines Decl. Ex. 1).) As reflected in Appendix A, prior to January 2017 the 401(k) portion of

---

[4]     On a motion to dismiss, the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 522 (S.D.N.Y. 2015) (taking judicial notice of various ERISA plan-related documents relied on in bringing the action). Copies of documents that the Court may consider on this motion, including relevant documents concerning the Plan, public filings, and required fee disclosures that were provided to participants of the Plan are included in the accompanying Declaration of Michael S. Hines (cited as "Hines Decl. Ex. __"), submitted herewith.

[5]     DST profit sharing contributions were not participant-directed; those contributions were invested by the Plan's Trustee as directed by Ruane. (Compl. ¶ 22; *see also* 2013 SPD at 11 (Hines Decl. Ex. 1).)

the Plan was comprised of a broad array of investment options, including actively managed mutual funds and passively managed index funds.[6]  The Plan's investment options reflected a variety of investment strategies and risk-return profiles; consequently, the management fees charged by those options varied as well.  (*See generally*, Participant Fee Disclosure Notices (Hines Decl. Exs. 2-5).)  In addition to mutual funds, until approximately October 2014 the 401(k) portion of the Plan allowed participants to invest in DST common stock through the DST Stock Fund.  (Compl. ¶¶ 22, 62.)  The DST Stock Fund was comprised of 98% to 99% of DST stock and 1% to 2% of cash for liquidity purposes.  (*See* 2013 SPD at 10 (Hines Decl. Ex. 1).)

## ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "a plausible entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).  Although the Court must take the allegations in a plaintiff's pleadings as true and make all reasonable inferences in favor of the plaintiff, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  *Id.* at 555 (internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual

---

[6]     The Plan was amended and restated effective January 1, 2017.  Among other things, the PSA portion of the Plan was eliminated and all investments became participant-directed.  As a result, the Plan's investment options also changed.  The Complaint does not include any allegations regarding the revised Plan lineup; accordingly, those changes are not addressed here. (*See* Compl. ¶ 4, n.1.)

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks and citation omitted).

The Second Circuit has cautioned that courts should take "particular care" in applying those standards in the context of ERISA claims. *Morgan Stanley*, 712 F.3d at 718. That is so because "a suit claiming breach of fiduciary duty is ominous," thus "elevat[ing] the possibility that a plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 719 (internal quotation marks omitted). Consistent with the Second Circuit's view, the Supreme Court has observed that a motion to dismiss is an "important mechanism for weeding out meritless [ERISA] claims." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014).

Here, both Counts I and II purport to assert claims for the breach of ERISA's duties of loyalty and prudence, although the differences between Counts I and II with respect to the fiduciary duty claims, if any, are not clear from the Complaint's allegations. (*See* Compl. ¶¶ 98, 107.) In any event, as discussed below, the Complaint's allegations do not state a claim for either a breach of the duty of loyalty or a breach of the duty of prudence.

## I.  PLAINTIFFS FAIL TO ALLEGE FACTS PLAUSIBLY SUPPORTING A CLAIM FOR BREACH OF THE DUTY OF LOYALTY

ERISA's duty of loyalty arises under ERISA § 404(a)(1)(A), and charges fiduciaries with acting "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries[] and . . . defraying reasonable expenses." 29 U.S.C. § 1104(a)(1)(A). To state a claim for breach of the duty of loyalty, it is not enough to conclusorily allege that a defendant failed to act for the exclusive purpose of providing benefits to participants. Rather, "a plaintiff must allege plausible facts supporting an inference that the defendant acted *for the*

*purpose* of providing benefits to itself or someone else." *Sacerdote*, 2017 WL 3701482, at *5-6 (dismissing duty of loyalty claim on a Rule 12(b)(6) motion because the complaint contained "no factual allegations [to] support purposeful action by [the defendant] to benefit another (let alone itself")).  *See also White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808, at *5 (N.D. Cal. Aug. 29, 2016) (dismissing duty of loyalty claim on a Rule 12(b)(6) motion because "the complaint pleads no facts sufficient to raise a plausible inference that defendants took any of the actions alleged for the purpose of benefitting themselves or a third-party").

Similarly here, Plaintiffs' claims concerning the 401(k) portion of the Plan are devoid of factual allegations supporting *purposeful* action by the DST Defendants to benefit themselves or a third-party.  (*See* Compl. ¶¶ 56-77.)  Instead, Plaintiffs' loyalty claims are impermissibly intertwined with their prudence claims, and because there are no separate allegations purporting to support a claim for breach of the duty of loyalty, those claims should be dismissed as a matter of law.  *See Sacerdote*, 2017 WL 3701482, at *5-6.

## II.  PLAINTIFFS FAIL TO ALLEGE FACTS PLAUSIBLY SUPPORTING A CLAIM FOR BREACH OF THE DUTY OF PRUDENCE

ERISA's duty of prudence arises under ERISA § 404(a)(1)(B), and requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B).  A claim of imprudence requires an analysis of a "fiduciary's conduct in arriving at an investment decision, not on its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Morgan Stanley*, 712 F.3d at 716.  In other words, a fiduciary's prudence is judged by process, not outcome.  Where -- as here -- there are no allegations of fact about the process employed in making fiduciary decisions, a plaintiff may survive a motion to dismiss only "if the court, based

on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed." *Id.* at 718 (internal quotation marks omitted).

With respect to the 401(k) portion of the Plan, Plaintiffs attempt to infer a flawed process by generally alleging that the DST Defendants (a) charged participants "excessive" investment management and individual participant fees (Compl. ¶¶ 56, 59, 60, 61, 62, 64); (b) failed to remove Plan investment options that performed poorly (*id.* ¶¶ 65-66); (c) did not consider alternative investment vehicles, such as a stable value fund or separate accounts (*e.g.*, *id.* ¶¶ 64, 81); (d) did not monitor the DST Stock Fund adequately (*id.* ¶¶ 74-77); and (e) did not engage an investment adviser or otherwise possess the requisite qualifications to manage the Plan (*e.g.*, *id.* ¶¶ 57-58).  For the multiple independent reasons discussed below, the Complaint fails to set forth circumstantial factual allegations about the 401(k) portion of the Plan that could lead to a reasonable inference of a flawed process.  *See Morgan Stanley*, 712 F.3d at 718. Consequently, Plaintiffs' claims for breach of the duty of prudence should be dismissed as a matter of law.

> ### A.    Mere Allegations Of "Excessive" Fees Do Not <br> Support An Imprudence Claim As A Matter Of Law

The Complaint alleges that (1) certain of the Plan's investments had "excessive" fees (Compl. ¶¶ 56, 59, 60, 61, 64) and (2) participants paid "excessive" individual fees and total Plan costs (*id.* ¶¶ 62).  None of those allegations support an inference that the DST Defendants engaged in a flawed process with respect to the 401(k) portion of the Plan.

> #### 1.    The Complaint's Assertions Of "Excessive" Investment Fees <br> Do Not Support A Reasonable Inference Of A Flawed Process

Plaintiffs allege that the DST Defendants breached ERISA's duty of prudence by including in the Plan "inappropriate and imprudent share classes . . . even though there were alternative, available share classes for which the Plan was eligible and which would have

resulted in significantly lower costs to the Plan for the same exact investments." (Compl. ¶ 59.) In that regard, the Complaint identifies twelve (of the twenty nine) investment options as having such lower-cost share classes, but utilizing a more expensive share class in the Plan lineup. (*Id.*) Plaintiffs' share-class allegations do not support a claim.

*First*, in *Sacerdote* Judge Forrest held identical allegations of the availability of lower-cost share classes insufficient to support a breach of fiduciary duty under ERISA. 2017 WL 3701482, at *11. There, plaintiffs alleged that New York University breached ERISA fiduciary duties by offering in its retirement plan expensive and otherwise imprudent investment options, including higher-cost share classes instead of available lower-cost share classes of the same funds. *Id.* In dismissing those allegations, Judge Forrest observed that the Third, Seventh, and Ninth Circuits have rejected similar allegations in circumstances where the mix and range of all of the available investment options were reasonable. *Id.* (citing *Tibble v. Edison Int'l*, 729 F.3d 1110 (9th Cir. 2013); *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2012); *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2009).) Judge Forrest further observed that allegations of lower-cost share classes did "not constitute evidence of imprudence" because "prudent fiduciaries may very well choose to offer retail share class shares over institutional class shares . . . because retail class shares necessarily offer higher liquidity." *Id.* Based on that precedent, Judge Forrest rejected plaintiffs' share-class allegations because the investment management fees associated with all of the plan's investment options were reasonable. *Id. See also Davis v. Wash. Univ. in St. Louis*, No. 4:17-cv-1641-RLW, 2018 WL 4684244, at *2 (E.D. Mo. Sept. 28, 2018) (dismissing ERISA breach of fiduciary claims based on allegations that the plan "offered [] retail share classes for which identical, cheaper shares were available"); *Sweda v. Univ. of Penn.*, No. 16-4329, 2017 WL 4179752, at *9 (E.D. Penn. Sept. 21, 2017) (dismissing

identical allegations as insufficient where half of the plan's investment options also included

lower-cost institutional offerings); *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2017 WL

2352137, at *14 (N.D. Cal. May 31, 2017) ("merely alleging that a [p]lan offers [certain share

classes] is insufficient to state a claim for breach of the duty of prudence, as fiduciaries have

latitude to value investment features other than price, and indeed are required to do so"), *aff'd*, --

F. App'x --, No. 17-16208, 2018 WL 5919670, at *1 (9th Cir. Nov. 13, 2018); *White*, 2016 WL

4502808, at *11 (dismissing claims and holding that share-class allegations were "based on the

[incorrect] assumption that the mere inclusion of a fund with an expense ratio that is higher than

that of the lowest share class violates the duty of prudence").

As in *Sacerdote, Sweda*, and *White*, the mix and range of the Plan's investment

options were reasonable.  For example, the Plan was comprised of investment options with a

range of expense ratios from 4 basis points to 129 basis points, and included both actively-

managed and passively-managed investment funds.[7]  (*See, e.g.*, March 1, 2014 Participant Fee

Disclosure Notice (Hines Decl. Ex. 3).)  *See also Rosen v. Prudential Ret. Ins. & Annuity Co.*,

No. 3:15-cv-1839 (VAB), 2016 WL 7494320, at *15 (observing that the plan's investment

options had expense ratios ranging from 4 bps to 102 bps and holding that the "inclusion of . . .

lower-cost alternatives undermines [p]laintiffs' assertions that [defendants] breached their

fiduciary duties by charging excessive fees"), *aff'd*, 718 Fed. App'x 3 (2d Cir. 2017).

---

[7]     Actively managed funds are operated by "an investment adviser who continually
researches, monitors, and actively trades the holdings of the fund to seek a higher return than the
market and [these funds] generally have higher fees."  U.S. Dep't of Labor, *A Look at 401(k)
Plan Fees* at 7 (Aug. 2013), *available at* https://www.dol.gov/sites/default/files/ebsa/about-
ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf.  Passively
managed funds, by contrast, "seek to obtain the investment results of an established market
index . . . by duplicating the holdings included in the index" and generally have lower
management fees because they "require little research or trading activity."  *Id.*

Moreover, the fees of the Plan's investment options were well within a range that other courts have consistently held to be reasonable as a matter of law.  For example, in *Hecker v. Deere & Co.*, the Seventh Circuit affirmed dismissal of claims that defendants breached fiduciary duties by selecting investment options with excessive fees.  556 F.3d 575, 586 (7th Cir. 2009).  The court observed that -- like the Plan here -- there was a wide a range of expense ratios from 7 basis points to just over 100 basis points and that "all of these funds were also offered to investors in the general public, and so the expense ratios necessarily were set against the backdrop of market competition."  *Id.*; *see also Tibble*, 729 F.3d at 1135 (rejecting excessive fee arguments where expense ratios varied from 3 basis points to more than 200 basis points); *Renfro*, 671 F.3d at 327-28 (rejecting excessive fee claims where expense ratios ranged from 10 basis points to 121 basis points); *Loomis*, 658 F.3d at 669-70 (rejecting excessive fee claims where expense ratios ranged from 3 basis points to 96 basis points).

*Second*, Plaintiffs' share class allegations are even weaker than those found to be inadequate in *Sacerdote*.  Contrary to Plaintiffs' allegation, the Plan was *not* "eligible" for each of the lower-cost share classes identified in the Complaint "as of April 9, 2015."  (Compl. ¶ 59.) For example, there was no "Y" share class of the American Century Value Fund, the American Century Growth Fund, the American Century Select Fund, and the American Century Ultra Fund prior to 2017, and in any event, the "Y" share class of the American Century funds is not available to 401(k) retirement plans.  (*See* Prospectus, American Century Investments – Value Fund, at 4, 5 (April 10, 2017) ("Employer-sponsored retirement plans *are not eligible* to invest in the . . . Y Class" (emphasis added)) (Hines Decl. Ex. 6); Prospectus, American Century Investments – Growth Fund, at 4, 5 (April 10, 2017) (same) (Hines Decl. Ex. 7); Prospectus, American Century Investments – Select Fund, at 4, 5 (April 10, 2017) (same) (Hines Decl. Ex.

8); Prospectus, American Century Investments – Ultra Fund, at 4, 5 (April 10, 2017) (same) (Hines Decl. Ex. 9).)  Similarly, the Plan was not eligible to invest in the "F" share class of the Lord Abbett Affiliated Fund (Compl. ¶ 59), because that share class was limited to "fee-based advisory programs and certain registered investment advisers."  (*See* Prospectus, Lord Abbett Affiliated Fund, at 20 (March 1, 2015) (Hines Decl. Ex. 10).)  The Plan is neither an advisory program nor an investment adviser.  Moreover, unlike in *Sacerdote*, the Plan's investments are already in low-cost share classes applicable to retirement plans, and *not* higher-cost "retail" share classes offered to individual investors.  For example, the Complaint alleges that the Plan offered the "Investor" class of the American Century funds (Compl. ¶ 59), but those funds also offer higher-cost A, T, C and R share classes.[8]  (*See generally*, American Century Investments Prospectuses, at 2 (Hines Decl. Exs. 6-9).)

      *Third*, although the Complaint alleges that the BMO Prime Money Market Fund had "an extremely high expense ratio of 46 bps" and offered a lower-cost share class (Compl. ¶ 64), that fund is not a designated investment alternative (*i.e.*, an investment option into which participants can place their money), and therefore was not available for investment by Plan participants.  Each of the Plan's Participant Fee Disclosure Notices contains a Fee Disclosure Comparative Chart, which "details information required to be provided . . . on an annual basis for **each of the [P]lan's designated investment alternatives**."  (*See generally* Participant Fee Disclosure Notices (emphasis added) (Hines Decl. Exs. 2-5).)  The BMO Prime Money Market Fund is not listed in any of the Fee Disclosure Comparative Charts as an option into which

---

[8]    Plaintiffs also mistakenly allege that the Plan "did not rely upon so-called 'revenue sharing' or other indirect compensation to fund Plan expenses," and therefore higher-cost share classes should not have been used.  (Compl. ¶ 60.)  As disclosed to participants, however, the Plan paid recordkeeping fees "from revenue sharing payments that the Plan receive[d] from the Plan's investment options."  (March 25, 2016 Participant Fee Disclosure Notice at 2 (Hines Decl. Ex. 5).)

participants can make contributions (it was merely a cash account to hold the Plan's cash and accounted for as an administrative expense, which are not charged to plan participants (*see supra*, at 14-15)).  Accordingly, that fund's expense ratio is irrelevant.[9]

### 2. Plaintiffs' Allegations About Recordkeeping And Administrative Fees Do Not Support A Reasonable Inference Of A Flawed Process

In addition to alleged excessive investment management fees, the Complaint also appears to allege that the Plan paid an unreasonable amount of administrative fees.  (*See* Compl. ¶ 62.)  In that regard, Plaintiffs allege that:  (1) participants paid "significant and excessive individual participant fees that range from 29-35 basis points, which result in a total cost to participants of approximately 150 bps" (*id.*), and (2) the Plan's fiduciaries failed to solicit bids from alternative service providers (*id.* ¶ 82).  Each of those allegations fails to state a claim.

*First*, the Complaint nowhere alleges what individual fees, other than any fees paid to Ruane (which are not the subject of this motion), Plaintiffs seek to challenge.  For example, as disclosed in the Plan's annual Fee Disclosure Notice, participants *were not charged* recordkeeping fees and other administrative expenses.  (*See* March 25, 2016 Participant Fee Disclosure Notice at 2 (Hines Decl. Ex. 5).)  Accordingly, Plaintiffs' allegations of 29-35 basis points and 150 basis points of participant fees are wrong, vague, and do not give rise to a reasonable inference of misconduct.  *See Iqbal*, 556 U.S. at 678.

---

[9]     Similarly inadequate to state a claim is the Complaint's suggestion that the inclusion of actively managed mutual funds -- which generally have higher costs than passively managed mutual funds (*see supra* note 7, at 10) -- constitutes a breach of fiduciary duty.  (Compl. ¶ 80.) That identical claim was considered, and rejected, in *Rosen*.  *See Rosen*, 2016 WL 7494320, at *14 (holding that "general allegations regarding the higher costs associated with actively-managed mutual funds" did not "demonstrate that those investments were imprudent, or that a prudent fiduciary would have decided any differently under the circumstances, and thus they fail to state an ERISA claim as a matter of law").

Moreover, those allegations fail for the additional reason that Plaintiffs do not provide any benchmark against which to compare any alleged administrative fees. *See, e.g.*, *White*, 2016 WL 4502808, at *13-14 (dismissing on a Rule 12(b)(6) motion allegations of excessive administrative fees where plaintiffs failed to allege any benchmark measure of fees). Plaintiffs also fail to allege any facts, as they must, from which the Court could infer that the same services were available for less on the market. *See Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (affirming Rule 12(b)(6) dismissal and holding that plaintiffs had not plausibly alleged that the fiduciaries agreed to pay excessive fees where they "fail[ed] to allege that the fees were excessive relative to the services rendered" (internal quotation marks omitted)).

*Second*, Plaintiffs' allegation that the Plan's fiduciaries did not seek competitive bids for Plan services (Compl. ¶ 82) is mere speculation and therefore fails to satisfy the Second Circuit's mandate that a plaintiff alleging ERISA breaches of fiduciary duty must plead facts that "give rise to a *reasonable* inference that the defendant committed the alleged misconduct," which requires allegations that are "suggestive of, rather than merely consistent with, a finding of misconduct." *Morgan Stanley* 712 F.3d at 718-19 (internal quotation marks and citation omitted). Moreover, nothing in ERISA requires plan fiduciaries to obtain competitive bids from plan service providers. Indeed, the court in *White* rejected that identical allegation, holding that such an allegation "has no legal foundation" particularly where -- as here -- plaintiffs failed to allege any facts "showing that the [p]lan fiduciaries failed to consider putting the fee structure out for competitive bidding, or failed to negotiate a reasonable fee structure with [the plan's recordkeeper]." *White*, 2016 WL 4502808, at *14-15.

**B.      General, Non-Specific Allegations Of Underperformance Do Not Support An Imprudence Claim As A Matter Of Law**

Plaintiffs allege that eight of the Plan's investment options "consistently underperformed" their one-, three-, and ten-year benchmarks between 2009 and 2016 (Compl. ¶ 66), and that "certain," but unidentified, investment options "were poorly rated" (*id.* ¶ 65). It is well established under ERISA, however, that the test for imprudence is one of "conduct in arriving at an investment decision, not on its results." *Morgan Stanley*, 712 F.3d at 716 (internal quotation marks and citation omitted). Merely alleging that an investment had poor performance is therefore not sufficient to state a claim for breach of fiduciary duty -- a plaintiff "cannot rely, after the fact, on the magnitude of the decrease in the [relevant investment's] price." *Id.* at 718. Instead, Plaintiffs must "allege[] facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident." *Id.* (internal quotation marks and citation omitted). *See also Sweda*, 2017 WL 4179752, at *10 (dismissing ERISA claim where plaintiff alleged that "60% of the Plan's investment options 'underperformed their respective benchmarks over the previous 5-year period'" because "[a] statistical sampling of funds would expect (all things being equal) half of the funds to be above benchmarks and half to be below benchmarks"). Similarly here, Plaintiffs' allegations fail to state a claim for multiple reasons.

*First*, for the eight investment options that Plaintiffs claim "consistently" underperformed their benchmarks (Compl. ¶ 66), the Complaint fails to identify either the benchmarks it claims were underperformed or the magnitude of such underperformance. That alone is sufficient for dismissing those allegations, because the omission of that basic information does not permit any assessment of whether a reasonable fiduciary in like

circumstances would have considered the investments "improvident."  *See Morgan Stanley*, 712

F.3d at 718.

Moreover, Plaintiffs' unsupported and conclusory allegations that those

investment options "consistently underperformed" their one-, three-, and ten-year benchmarks

from 2009 to 2016 is demonstrably wrong.  For example, as of December 31, 2013:

<ol type="i">
<li>the TIAA-CREF Mid Cap Value Fund had outperformed both its benchmarks on a 5-year and 10-year basis, and outperformed one of its two benchmarks on a one-year basis (*See* March 1, 2014 Participant Fee Disclosure Notice at 4 (Hines Decl. Ex. 3));</li>
<li>the Fidelity Advisor Growth Opportunities Fund had outperformed both of its benchmarks on a one-year and five-year basis, and had outperformed one of its benchmarks on a ten-year-basis (*id.*);</li>
<li>the American Century Ultra Fund had outperformed both of its one-year and one of its five-year benchmarks (*id.*); and</li>
<li>the American Century Growth Fund had outperformed both of its ten-year benchmarks, outperformed one of its five-year benchmarks, and modestly underperformed its one-year benchmarks (while still returning 29.37%) (*id.* at 3).</li>
</ol>

Indeed, each of the eight investment options had periods of outperformance and modest

underperformance between 2009 and 2016 (*see generally*, Participant Fee Disclosure Notices

(Hines Decl. Exs. 2-5)) -- as would be expected, and precisely why hindsight performance

cannot support a claim for breach of fiduciary duty.  *See, e.g., Dorman v. Charles Schwab Corp.*,

No. 17-cv-00285-CW, slip. op. at 6 (N.D. Cal. Sept. 20, 2018) (attached hereto at Appendix B)

(dismissing ERISA claim under Rule 12(b)(6), and holding that "offering and retaining funds

that have underperformed modestly . . . is not enough to show malfeasance").

*Second*, equally inadequate is Plaintiffs' allegation that "certain" investment

options were "poorly rated and performed in a . . . poor manner." (Compl. ¶ 65.)  Absent from

the Complaint are any allegations of which investment options were "poorly rated," what

constitutes "poorly rated," who rated them "poorly," or for what period of time those unidentified investment options were "poorly rated."  *See, e.g.*, *White*, 2016 WL 4502808, at *17 (rejecting allegation that investment fund underperformed and was poorly rated by Morningstar, and holding that "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to conduct an adequate investigation -- either when the investment was selected or as its underperformance emerged") (citing *Morgan Stanley*, 712 F.3d at 718-19).

### C. Allegations That The Plan Did Not Contain Alternative Investments Do Not Support An Imprudence Claim As A Matter Of Law

Equally unavailing are Plaintiffs' allegations that the DST Defendants acted imprudently by including (i) mutual funds as investment options, rather than collective trusts or separately managed accounts, or (ii) a money market fund rather than a stable value fund as an investment option.  (Compl. ¶¶ 64, 81.)

*First*, many courts have rejected the argument that retirement plans should include mutual fund alternatives, concluding that retirement plans may reasonably opt for the expanded package of services offered by mutual funds over institutional accounts, even if mutual funds have higher fees.  *See, e.g.*, *Loomis*, 658 F.3d at 671 (affirming dismissal and rejecting claim that fiduciaries should have offered institutional investments rather than retail mutual funds).  Unlike collective trusts or separately managed accounts, mutual funds are subject to extensive SEC regulation under the Investment Company Act, 15 U.S.C. §§ 80a-1, *et. seq.*  Among other things, mutual funds are governed by boards that include independent directors, *see* 15 U.S.C. § 80a-16; are registered with the SEC; and provide detailed shareholder communications such as prospectuses and annual reports, *see* 15 U.S.C. §§ 80a-8, 24, 29.  Collective trusts and separate accounts, by contrast, are not subject to SEC regulations and disclosure rules.  There is simply no

requirement that plan fiduciaries must forego the distinct regulatory and transparency benefits of mutual funds for institutional investment vehicles. *See Hecker*, 556 F.3d at 586 ("We see nothing in [ERISA] that requires plan fiduciaries to include any particular mix of investment vehicles in their plan."); *see also White*, 2016 WL 4502808, at *12 (rejecting allegation that a failure to offer collective trusts or separate accounts supported an ERISA breach of fiduciary duty claim and holding that "[i]t is inappropriate to compare distinct investment vehicles solely by cost . . . mutual funds have unique regulatory and transparency features, which make any attempt to compare them to investment vehicles such as collective trusts and separate accounts an apples-to-oranges comparison" (internal quotation marks omitted)).

*Second*, Plaintiffs' allegation that the Plan should have included a stable value fund rather than a money market fund fares no better. (Compl. ¶ 64.) In applying the standards set forth in *Morgan Stanley*, the court in *White* rejected that identical allegation as insufficient to state a claim:

> The court finds that the complaint does not allege sufficient facts to show a breach of the duty of prudence in connection with defendants' selection of the money market fund as the 'capital preservation option.' Offering a money market fund as one of an array of mainstream investment options along the risk/reward spectrum more than satisfied the [p]lan fiduciaries' duty of prudence. . . . Without some facts that raise an inference of imprudence in the selection of the money market fund -- apart from the fact that stable value funds may provide a somewhat higher return than money market funds -- plaintiffs have failed to state a claim.

*White*, 2016 WL 4502808, at *7-8. As in *White*, the Complaint here also fails to allege any facts from which the court "'may reasonably infer . . . that the process was flawed.'" *Id.* at *8 (quoting *Morgan Stanley*, 712 F.3d at 718).

**D.    Conclusory Allegations That Fiduciaries Did Not Monitor The DST
Stock Fund Do Not Support An Imprudence Claim As A Matter Of Law**

Plaintiffs assert that the Plan's fiduciaries failed to monitor the DST Stock Fund

adequately because "it appears" that the fund "underperformed DST's stock performance more

than it should have, presumably due to cash drag on the Company Stock Fund."[10]  (Compl. ¶ 76.)

In other words, bucking the trend alleging that company stock funds are too risky for 401(k)

plans (*see Hecker*, 556 F.3d at 590-91), Plaintiffs claim that the DST Stock Fund was *too*

*conservative* because it contained both stock and cash.

Like many of Plaintiffs' other allegations, Plaintiffs' allegations concerning the

DST Stock Fund fail to support a reasonable inference of a flawed process.  The Complaint fails

to include any allegations about how much the DST Stock Fund underperformed DST stock, or

what Plaintiffs mean by the allegation that the fund underperformed DST stock by "more than it

should have." (Compl. ¶ 76.)  Indeed, Plaintiffs' lone allegation about the DST Stock Fund's

cash buffer -- that it caused the Stock Fund to underperform DST stock (Compl. ¶ 76) -- is

insufficient to state a claim for breach of fiduciary duty because a plaintiff "cannot rely, after the

fact, on the magnitude of the decrease in the [relevant investment's] price."  *Morgan Stanley*,

712 F.3d at 718.  Moreover, so-called "cash buffers" in company stock funds are a common

practice in order to provide liquidity in those funds.  *See, e.g.*, *George v. Kraft Foods Global,*

*Inc.*, 641 F.3d 786, 793 (7th Cir. 2011) (observing that cash buffers "allow[] participants to

quickly sell their interests in the funds" without having to wait for the sale of stock, and "allow[]

the [p]lan to save transaction costs by 'netting' participant transactions[,]" avoiding brokerage

commissions being charged to the plan each time a request to buy or sell stock is made).  In light

---

[10]      As noted, the DST Stock Fund consisted of "98% to 99% of DST stock and 1% or 2% of
cash for liquidity purposes."  (2013 SPD at 10 (Hines Decl. 1).)

of those benefits, courts have rejected claims alleging breach of fiduciary duties based on cash buffers contained in company stock funds. *See, e.g.*, *Taylor v. United Tech. Corp.*, No. 3:06cv1494(WWE), 2009 WL 535779, at *9-10 (D. Conn. Mar. 3, 2009) (holding that "retaining cash to provide transactional liquidity satisfies the prudent person standard").[11]

### E. Conclusory Allegations That The Advisory Committee Was Unqualified Or Failed To Adopt Procedures To Manage The Plan Do Not Support A Claim Of Imprudence As A Matter Of Law

In a final attempt to cobble together a fiduciary breach claim, Plaintiffs allege that the Advisory Committee (1) was unqualified to manage the Plan (Compl. ¶ 58); (2) failed to engage an investment manager to manage the 401(k) portion of the Plan (*id.* ¶¶ 57, 67); and (3) operated without any formal guidelines (*id.* ¶ 67). Those too fail to state a claim.

*First*, Plaintiffs' allegations that the Advisory Committee "lacked the requisite knowledge and expertise to make informed judgments to perform [its] duties" (*id.* ¶ 58) and that the Committee was "utterly unfamiliar with the scope of [its] fiduciary duties to the Plan under ERISA with respect to the 401(k) investments in the Plan" (*id.*) are conclusions, not factual allegations, and therefore fail to under the pleading standards articulated in *Iqbal*. *See Morgan Stanley*, 712 F.3d at 717 (holding that to survive a motion to dismiss, a complaint must contain more than "labels and conclusions or a formulaic recitation of the elements of a cause of action") (quoting *Iqbal*, 556 U.S. at 678). Indeed, missing from the Complaint are any allegations about who served on the Advisory Committee, when they served, or their qualifications. Those omissions are dispositive.

---

[11]     Plaintiffs also allege that the Advisory Committee failed to disclose to participants the Plan's default investment option -- *i.e.*, the fund where contributions are invested in the event that a participant fails to elect particular investments. (Compl. ¶ 78.) Plaintiffs are wrong. Each of the Plan's annual Fee Disclosure Notices inform participants that the Plan's default investment option is the Vanguard Balanced Index Fund. (*See, e.g.*, December 31, 2012 Participant Fee Disclosure Notice at 2 (Hines Decl. Ex. 2).)

*Second*, equally inadequate are the allegations that the Advisory Committee "failed to engage an investment advisor for the 401(k) portion of the Plan from 2010 through 2015" and failed to "obtain[] the advice of an investment consultant to assist" it.  (Compl. ¶¶ 57, 67.)  As an initial matter, nothing in ERISA requires that a 401(k) retirement plan investment committee engage an investment adviser.  Moreover, the Complaint itself acknowledges that the Advisory Committee was assisted in making decisions concerning the Plan's investment options by the Plan's recordkeeper, BMO Harris Bank.  (*Id.* ¶ 67.)  Although Plaintiffs assert that BMO's reports were "canned" (*id.*), that too is a conclusion unsupported by allegations of fact, and accordingly inadequate to support a claim.

*Third*, similarly conclusory and insufficient to state a claim is the allegation that the Advisory Committee "operated without any formal guidelines or system" and did adopt a charter to govern its conduct.  (*Id.* ¶¶ 58, 67.)  Nothing in ERISA requires a committee to adopt a charter, and missing from the Complaint is any acknowledgment of the Plan's investment policy statement.[12]

## CONCLUSION

For all of the foregoing reasons, the DST Defendants' motion to dismiss should be granted in its entirety and all allegations and claims concerning the 401(k) portion of the Plan should be dismissed with prejudice.

---

[12]    In addition to a claim for breach of fiduciary duty, Count I also asserts a claim for violations of ERISA's prohibited transactions.  (*See* Compl. ¶¶ 99-101.)  Although unclear from the Complaint's allegations, Plaintiffs previously informed the Court that their prohibited transaction claims are limited to the PSA, and do not concern the 401(k) portion of the Plan. (*See* December 21, 2017, Letter from Laurie Rubinow at 3 (ECF No. 32).)

Dated:  December 14, 2018
         Boston, Massachusetts

Respectfully submitted,

/s/ James R. Carroll
Scott D. Musoff
Alexander C. Drylewski
James R. Carroll (*pro hac vice*)
Michael S. Hines (*pro hac vice*)
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
– and –
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
scott.musoff@skadden.com
alexander.drylewski@skadden.com
james.carroll@skadden.com
michael.hines@skadden.com

Counsel for Defendants
DST Systems, Inc., The Advisory Committee of the
DST Systems, Inc. 401(k) Profit Sharing Plan, and
The Compensation Committee of the Board of
Directors of DST Systems, Inc.