UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| MICHAEL L. FERGUSON, MYRL C. JEFFCOAT and DEBORAH SMITH, on behalf of the DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN,<br><br>      Plaintiffs,<br><br>    v.<br><br>RUANE CUNNIFF & GOLDFARB INC., DST SYSTEMS, INC., THE ADVISORY COMMITTEE OF THE DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN and THE COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF DST SYSTEMS, INC.,<br><br>      Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:   Case No. 17-CV-06685-ALC<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THE DST DEFENDANTS'
<u>MOTION TO DISMISS PLAINTIFFS' 401(k)-RELATED ALLEGATIONS</u>**

            Scott D. Musoff
            Alexander C. Drylewski
            James R. Carroll
            Michael S. Hines
            SKADDEN, ARPS, SLATE
             MEAGHER & FLOM LLP
            Four Times Square
            New York, New York 10036
            (212) 735-3000
            – and –
            500 Boylston Street
            Boston, Massachusetts 02116
            (617) 573-4800

            Counsel for Defendants
            DST Systems, Inc., The Advisory Committee of the
            DST Systems, Inc. 401(k) Profit Sharing Plan, and The
            Compensation Committee of the Board of Directors of
Dated: January 10, 2019      DST Systems, Inc.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................1

REPLY POINTS......................................................................................................................2

I.  THE OPPOSITION MISAPPLIES THE
    PLEADING STANDARDS THAT GOVERN THIS MOTION ........................................2

II. THE OPPOSITION DOES NOT OVERCOME PLAINTIFFS'
    FAILURE TO ALLEGE WELL-PLEADED FACTS PLAUSIBLY
    SUPPORTING A CLAIM FOR BREACH OF THE DUTY OF PRUDENCE ..................4

    A.  Plaintiffs' Share Class Arguments Lack Merit, Are Contrary To
        *Morgan Stanley*, And Were Twice Rejected By Judge Forrest In *Sacerdote* ..........4

    B.  Plaintiffs' Arguments Confirm That
        Their Vague And Erroneous Allegations Of
        Underperformance Do Not Plausibly Allege A Flawed Process ............................7

    C.  Plaintiffs' Arguments Do Not Overcome The Insufficiency Of
        Their Allegations Concerning Administrative And Recordkeeping Fees ...............8

    D.  Plaintiffs' Other Miscellaneous Arguments About
        A Lack Of Process Are Foreclosed By *Morgan Stanley* .........................................9

CONCLUSION.......................................................................................................................10

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*,
    No. 12-cv-4828 (KPF), 2018 WL 1273343 (S.D.N.Y. Mar. 5, 2018) ............................ 3, 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................ 1

*Cunningham v. Cornell University*,
    No. 16-cv-4358769 (PKC), 2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) ...................... 5

*Fifth Third Bancorp v. Dudenhoeffer*,
    134 S. Ct. 2459 (2014) ....................................................................................................... 1

*Laboy v. Board of Trustees of Building Service 32*,
    513 F. App'x 78 (2d Cir. 2013) ........................................................................................ 7

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) ............................................................................................ 5

*Pension Benenfit Guaranty Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan*
    *v. Morgan Stanley Investment Management Inc.*,
    712 F.3d 705 (2d Cir. 2013) ..................................................................................... *passim*

*Sacerdote v. New York University*,
    No. 16-cv-6284 (KBF), 2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017) ........................ 4, 6

*Sacerdote v. New York University*,
    No. 16-cv-6284 (KBF), 2017 WL 4736740 (S.D.N.Y. Oct. 19, 2017) ............................ 4

*Terraza v. Safeway, Inc.*,
    241 F. Supp. 3d 1057 (N.D. Cal. 2017) ........................................................................... 5

*Tibble v. Edison International*,
    729 F.3d 1110 (9th Cir. 2013), *vacated*, 135 S. Ct. 1823 (2015) ..................................... 5

*Vellali v. Yale University*,
    308 F. Supp. 3d 673 (D. Conn. 2018) .............................................................................. 5

*White v. Chevron Corp.*,
    No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ........................... 5, 7

*White v. Chevron Corp.*,
    No. 16-cv-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*, -- F. App'x --,
    No. 17-16208, 2018 WL 5919670 (9th Cir. Nov. 13, 2018) ............................................ 5

**PRELIMINARY STATEMENT**[1]

The Supreme Court in *Fifth Third Bancorp v. Dudenhoeffer* acknowledged that Rule 12(b)(6) is an "important mechanism for weeding out meritless claims" in the ERISA context. 134 S. Ct. 2459, 2471 (2014). Plaintiffs' 401(k)-related allegations are the sort of meritless claims that should be dismissed now, prior to the enormous expense of discovery.

The Opposition's arguments are based on a false premise: that conclusory factual assertions coupled with the DST Defendants' failure to provide "definitive evidence" contradicting those conclusory assertions warrants denial of the motion. (*E.g.*, Opp. at 16, 22-23.) But it is not Defendants' burden to provide evidence or proof that contradicts Plaintiffs' allegations. Rather, it is Plaintiffs' burden to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Plaintiffs' "naked assertion[s] devoid of further factual enhancement" -- such as that the DST Defendants did not have "a documented process" (Compl. ¶ 80) or "failed to adequately investigate" (*id.* ¶ 81) -- are insufficient to state an ERISA claim. *See Pension Benefits Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) ("*Morgan Stanley*").

Plaintiffs' other arguments fare no better. Plaintiffs' share class allegations are insufficient to support a fiduciary breach claim because, contrary to the Second Circuit's requirement in *Morgan Stanley*, Plaintiffs fail to allege that the inclusion of certain share classes rendered the Plan's mix of investment options imprudent. Indeed, Judge Forrest twice rejected

---

[1] Capitalized terms herein have the same meaning as in the Memorandum Of Law In Support Of The DST Defendants' Motion To Dismiss Plaintiffs' 401(k)-Related Allegations (ECF No. 87) ("Moving Brief," cited as "Mov. Br. at __"). Plaintiffs' Memorandum Of Law In Opposition To The DST Defendants' Motion To Dismiss (ECF No. 90) is referred to as the "Opposition" (cited as "Opp. at __").

identical allegations on a motion to dismiss for that same reason.  Plaintiffs' allegations about administrative fees fail because Plaintiffs have failed to sufficiently allege that Plan participants (including Plaintiffs) ever paid for the administrative fees associated with the Plan.  Plaintiffs' allegations of fund underperformance are equally without merit, as those allegations are impermissibly vague, based solely on hindsight, and, as Plaintiffs begrudgingly acknowledge, demonstrably wrong as confirmed by performance documents integral to and incorporated in the Complaint.  In short, Plaintiffs have not plausibly alleged that the DST Defendants employed a flawed process in managing the 401(k) portion of the Plan.

## REPLY POINTS

### I. THE OPPOSITION MISAPPLIES THE PLEADING STANDARDS THAT GOVERN THIS MOTION

In *Morgan Stanley*, the Second Circuit considered "the degree of factual detail needed in a complaint in order to present *nonconclusory* and *plausible* allegations" of a breach of the fiduciary duty of prudence under ERISA.  712 F.3d at 709 (emphasis added).  To state such a claim, a complaint must include allegations of a "fiduciary's conduct in arriving at an investment decision," and must include factual allegations that a fiduciary did not "employ[] the appropriate methods to investigate and determine the merits of a particular investment."  *Id.* at 716.  Where -- as here -- there are no *specific* factual allegations about the process employed in making fiduciary decisions, a plaintiff may survive a motion to dismiss only "if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed."  *Id.* at 718 (quotation marks omitted).

The analysis of such circumstantial allegations is a two-pronged approach: *first*, a complaint is insufficient -- like the Complaint here -- "if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* at 717 (quotation marks omitted).  *Second*, a complaint's well-

pleaded factual allegations must have "facial plausibility;" in other words, "those allegations must give rise to a *reasonable* inference that the defendant committed the alleged misconduct, thus permit[ting] the court to infer more than the *mere possibility* of misconduct." *Id* at 717-19 (quotation marks and internal citation omitted).  "[C]ourts may draw a reasonable inference of liability when the facts alleged are suggestive of, rather than merely consistent with, a finding of misconduct." *Id.* at 719.

Plaintiffs also misstate the standard with respect to documents which are integral to the Complaint or of which the Court may take judicial notice.  Contrary to Plaintiffs' arguments (*e.g.* Opp. at 6-7), the Court need not accept as true the Complaint's allegations "that are contradicted either by . . . documents upon which [the Complaint] rel[ies], or by facts of which the court may take judicial notice."  *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, No. 12-cv-4828 (KPF), 2018 WL 1273343, at *4 (S.D.N.Y. Mar. 5, 2018) (quotation marks omitted).

As set forth below, when the Complaint's allegations are analyzed pursuant to the principles set forth in *Morgan Stanley* and in light of the documents that are fairly considered on this motion, considered individually or collectively, they do not state a plausible ERISA claim that the DST Defendants' process in managing the 401(k) portion of the Plan was flawed, and therefore should be dismissed.

## II. THE OPPOSITION DOES NOT OVERCOME PLAINTIFFS' FAILURE TO ALLEGE WELL-PLEADED FACTS PLAUSIBLY SUPPORTING A CLAIM FOR BREACH OF THE DUTY OF PRUDENCE[2]

### A. Plaintiffs' Share Class Arguments Lack Merit, Are Contrary To *Morgan Stanley*, And Were Twice Rejected By Judge Forrest In *Sacerdote*

*First*, contrary to Plaintiffs' arguments, the DST Defendants never argued for a so-called "presumption of prudence" based on the Plan's mix and range of investment options. (Opp. at 9-14.) Rather, as Judge Forrest held, share class allegations are insufficient as a matter of law to a state a claim for breach of fiduciary duty absent well-pleaded allegations that the range of options in the Plan "were imprudent *because* of the inclusion" of higher-cost share classes. *Sacerdote v. New York Univ.*, No. 16-cv-6284 (KBF), 2017 WL 4736740, at *3 (S.D.N.Y. Oct. 19, 2017) ("*Sacerdote II*"); *see also Sacerdote v. New York Univ.*, No. 16-cv-6284 (KBF), 2017 WL 3701482, at *11 (S.D.N.Y. Aug. 25, 2017) ("*Sacerdote I*"). In *Sacerdote II*, Judge Forrest denied plaintiffs' motion to reconsider her dismissal of their share class allegations, holding that the Second Circuit in *Morgan Stanley* required that the "'prudence of *each* investment is not assessed in isolation but, rather, *as the investment relates to the portfolio as a whole*.'" *Sacerdote II*, 2017 WL 4736740, at *1 (quoting *Morgan Stanley*, 712 F.3d at 717). Thus, "[w]here plaintiffs allege that a defendant breached its fiduciary duty by including [higher-cost] class shares but do not sufficiently allege an alteration of the total mix, the allegation does not survive a motion to dismiss." *Id.* at *2.

Similarly here, the Plan was comprised of investment options with a range of expense ratios from 4 basis points to 129 basis points, and included both actively managed and

---

[2] The Opposition abandons any claim that the DST Defendants breached ERISA's duty of loyalty with respect to the 401(k) portion of the Plan, warranting dismissal of those portions of Counts I and II. (*See* Opp. at 8 n.2.).

4

passively managed investment products.³  (Mov. Br. at 10-11.)  Plaintiffs do not allege -- and could not do so -- that including higher-cost share classes of certain investment options rendered the Plan's total portfolio imprudent.  Indeed, even in their Opposition Plaintiffs focus only on individual investment options, and ignore the Second Circuit's requirement that the mix of investment options must be considered when determining prudence.⁴  (Opp. at 12-14.)

       *Second*, contrary to Plaintiffs' arguments, the DST Defendants never argued that certain share classes were included in the Plan for liquidity reasons.  (Opp. at 10-11.)  Rather, they argued that Plaintiffs' share class allegations are insufficient to plead a flawed process because there are many reasons to select a particular share class.  (Mov. Br. at 9-10); *see also White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017) ("merely alleging that a [p]lan offers [certain share classes] is insufficient to state a claim for breach of the duty of prudence, as fiduciaries have latitude to value investment features other than price, and indeed are required to do so"), *aff'd*, -- F. App'x --, No. 17-16208, 2018 WL 5919670, at *1 (9th Cir. Nov. 13, 2018).  One such reason, as Plaintiffs themselves plead, is for

---

³     Plaintiffs state that "the DST Defendants tellingly fail to note or acknowledge" that the Plan "offered only 27-29 investment options." (Opp. at 12.)  But Appendix A attached to the Moving Brief sets forth in a numbered table each of the Plan's investment options from 2012 through 2016.  Regardless, Plaintiffs' argument that 27-29 Plan options is "much narrower" than in other cases is both wrong and irrelevant.  For example, Plaintiffs admit that the plans involved in *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016), *Tibble v. Edison Int'l*, 729 F.3d 1110 (9th Cir. 2013), *vacated*, 135 S. Ct. 1823 (2015), and *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011) each had a similar number of investment options with similar expense ratios.  (Opp. at 12-13.)  In any event, Plaintiffs do not challenge the overall mix of options here, as required by the Second Circuit.  *See Morgan Stanley*, 712 F.3d at 717.

⁴     Plaintiffs' authorities are inapposite because they do not address the mix of investment options as required by *Morgan Stanley*.  *See Vellali v. Yale Univ.*, 308 F. Supp. 3d 673, 686 (D. Conn. 2018) (failing to evaluate the total mix of investment options when considering share class allegations); *Cunningham v. Cornell Univ.*, No. 16-cv-6525 (PKC), 2017 WL 4358769, at *7-8 (S.D.N.Y. Sept. 29, 2017) (same); *Terraza v. Safeway, Inc.*, 241 F. Supp. 3d 1057, 1079 (N.D. Cal. 2017) (same).

revenue sharing payments (Compl. ¶ 60), which the Plan here received.[5]  In any event, Plaintiffs are wrong that the DST Defendants are required to "provide [] evidence" or "offer a[n] . . . explanation" for the use of certain share classes.  (Opp. at 11, 16.)  Rather, it is Plaintiffs' burden to allege nonconclusory facts leading to a plausible inference that "the defendant committed the alleged misconduct, thus permit[ting] the court to infer more than the *mere possibility* of misconduct."  *Morgan Stanley*, 712 F.3d at 719 (quotation marks and citation omitted).  Plaintiffs' share class allegations fall far short.  *See Sacerdote I*, 2017 WL 3701482, at *11.

*Third*, equally without merit is Plaintiffs' assertion that the DST Defendants somehow "admitt[ed]" imprudence with respect to the BMO Prime Market Money Fund.  (Opp. at 16-17.)  Not only does the share class allegation concerning the BMO Prime Market Money Fund fail for the same reasons as discussed above, but also, as argued in the Moving Brief and ignored in the Opposition, it fails because that fund was not a designated investment option, and neither participants nor the Plan paid the costs associated with that fund.  (Mov. Br. at 12-13.)  Plaintiffs also do not plead that the Plan even met the minimum eligibility requirements for the Premier Share Class of the BMO Prime Market Money Fund.[6]  (*See* Compl. ¶ 64.)

In short, Plaintiffs' share class allegations do not -- as a matter of law -- plausibly allege a flawed process.

---

[5]  Plaintiffs argue that the Plan's disclosures about revenue sharing do not provide "definitive evidence . . . that the Plan used revenue-sharing and that the DST Defendants based their selection of more expensive share classes on the amount of revenue-sharing provided." (Opp. at 16 n.7.)  But it is not the DST Defendants' burden to provide "definitive evidence." (*See supra* at 2-3.)  Moreover, *all* of the Plan's disclosures are consistent that the Plan receives revenue-sharing payments from the Plan's investment options.  (*See* Opp. at 16 n.7.)

[6]  Also missing the mark are Plaintiffs' arguments purporting to rebut the Plan's non-eligibility of certain of the share classes that the Complaint erroneously alleges were available to the Plan.  (Opp. at 14-16.)  Plaintiffs' arguments miss the point; the investment options Plaintiffs complain about are already low-cost share classes (not retail share classes) applicable to 401(k) plans.  (Mov. Br. at 12.)

B.     **Plaintiffs' Arguments Confirm That Their Vague And Erroneous Allegations Of Underperformance Do Not Plausibly Allege A Flawed Process**

*First*, contrary to Plaintiffs' arguments, the Complaint's allegations of underperformance are limited to one conclusory assertion: that eight of the Plan's investment options "consistently underperformed" their unidentified one-, three-, and ten-year benchmarks between 2009 and 2016. (Compl. ¶ 66.) Although Plaintiffs tacitly concede the erroneousness of that allegation (Opp. at 21), they accuse the DST Defendants of "conveniently rely[ing] on only a snapshot as of December 31, 2013, which conveniently omits the pertinent evidence and only offers a self-serving view of performance that hardly can be deemed persuasive at the motion to dismiss stage." (*Id.*) That argument is exactly why vague and nonspecific allegations of underperformance are insufficient to plead a flawed process: performance is a point-in-time measure and is impermissibly based on hindsight. *E.g.*, *Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP Fund*, 513 F. App'x 78, 80 (2d Cir. 2013) (affirming dismissal of ERISA breach of fiduciary duty claims based on alleged high investment management fees and one-, three-, and five-year returns, and holding that "[i]t is well-established that allegations of poor results alone do not constitute allegations sufficient to state a claim for such a breach"). "Indeed, a fiduciary may -- and often does -- retain investments through a period of underperformance as part of a long-range investment strategy." *White*, 2016 WL 4502808, at *17. At bottom, Plaintiffs' performance allegations are "not sufficient to create a reasonable inference that plan administrators failed to conduct an adequate investigation -- either when the investment was selected or as its underperformance emerged -- as ERISA requires plaintiff to plead some other objective indicia of imprudence." *Id.* (citing *Morgan Stanley*, 712 F.3d at 718-19.)

*Second*, although the Complaint fails to plead, among other things, the actual performance of the Plan's investments as compared to the actual benchmarks of the funds,

7

Plaintiffs assert that it is inappropriate for the Court to rely on the performance data submitted by the DST Defendants because it constitutes "extrinsic material[] . . . improper at this procedural stage." (Opp. at 20-21.)  That, of course, is nonsense.  Plaintiffs made a vague allegation of fund performance, and therefore, the fund performance data on which Plaintiffs necessarily relied is integral to the Complaint, and can be considered on this motion.  *See A.V.E.L.A.,* 2018 WL 1273343, at *8 n.4 ("On a motion to dismiss . . . the Court may also properly consider documents that are incorporated by reference or that are integral to the complaint. . . . [w]here, as here, documents properly considered on a motion to dismiss contradict the pleadings, the Court need not accept those pleadings as true").  That performance data demonstrates that the eight challenged funds did not "consistently underperform" benchmarks, but rather had periods of both outperformance and underperformance, just as would be expected in a portfolio of investments. (*See* Mov. Br. at 15-16.)

### C. Plaintiffs' Arguments Do Not Overcome The Insufficiency Of Their Allegations Concerning Administrative And Recordkeeping Fees

As set forth in the Moving Brief, the Plan's disclosures make plain that participants are not, and have not been, charged recordkeeping and other administrative expenses in connection with the 401(k) portion of the Plan.  (Mov. Br. at 13.)  Nor, contrary to Plaintiffs' arguments, are the Plan's prior disclosures in any way inconsistent -- all of the Plan's disclosures are clear that those fees may be paid by other sources (Plan forfeitures, DST, and revenue sharing), and those others sources have paid all of those fees in each year during the relevant period.[7]  (*See* Opp. at 18; *see also* Hines Decl. Exs. 2-5 (ECF No. 88).)  Therefore Plaintiffs have

---

[7] Plaintiffs claim that their account statements detail the fees that are charged to them. (Opp. at 18 n.9.)  Tellingly, those account statements are not alleged in the Complaint, not attached to the Complaint, and not submitted with the Opposition.  Indeed, Plaintiffs do not even argue that they ever paid administrative expenses associated with the 401(k) portion of the Plan.

8

insufficiently pleaded that they or any other participants have paid any administrative or recordkeeping fees. Moreover, contrary to Plaintiffs' argument, Plaintiffs have not alleged a benchmark to compare the 29-35 basis points alleged in the Complaint (Opp. at 17-19); Plaintiffs allege only that "[b]ased upon its market power, the Plan should have been required to pay less than 50% of the total TPC that the DST Defendants consistently permitted the Plan to be assessed." (Compl. ¶ 62.) That conclusory assertion is not a benchmark, and is also based on the confusing allegation that the "total cost" of the Plan is 150 basis points (*id.*), which is nowhere explained in the Complaint or the Opposition.

Plaintiffs' arguments about "competitive bidding" are equally meritless. (Opp. at 19-20.) The DST Defendants never stated that Plaintiffs' allegation was a "legal conclusion." (*Id.* at 19.) Rather, that allegation is an impermissible "naked assertion devoid of further factual enhancement." *Morgan Stanley*, 712 F.3d at 717 (quotation marks omitted). Nevertheless, even if true, nothing in ERISA requires fiduciaries to obtain competitive bids from service providers, particularly where, as here, participants are not charged for those services. (*See* Mov. Br. at 14.)

### D. Plaintiffs' Other Miscellaneous Arguments About A Lack Of Process Are Foreclosed By *Morgan Stanley*

*First*, the Complaint's allegations about the offering of actively managed index funds, and the lack of alternative investment products in the Plan lineup (such as collective trusts, separately managed accounts, or a stable value fund) do not plausibly allege a flawed process. (Opp. at 17 n.8, 21-23.) According to Plaintiffs, even though every court to consider similar allegations has rejected them as inadequate (*see, e.g.*, Mov. Br. at 13 n.9, 17-18), Plaintiffs' allegations should be accepted because they add the conclusory assertion that the Plan's fiduciaries did not have a "documented process" or "failed to adequately investigate" those alternatives. (Opp. at 17 n.8, 21-23.) But adding the "naked assertion" of a lack of process

9

is precisely the sort of conclusory allegation "devoid of further factual enhancement" that *Morgan Stanley* rejects. *Morgan Stanley*, 712 F.3d at 717 (quotation marks omitted). Indeed, Plaintiffs themselves recognize that "these allegations individually might be deemed insufficient to state an imprudence claim." (Opp. at 23.) Whether viewed in isolation or as a whole, none of Plaintiffs' allegations plausibly allege that the DST Defendants employed a flawed process in managing the 401(k) portion of the Plan.

*Second*, for substantially similar reasons, Plaintiffs' arguments about the DST Stock Fund and the Advisory Committee do not support a claim. (Opp. at 23-25.) Plaintiffs do not even attempt to respond to the DST Defendants' arguments about the inadequacy of the Complaint's allegations concerning the DST Stock Fund. (*See* Mov. Br. at 19-20.) Instead, Plaintiffs state, without explanation, that their allegations lead to "the reasonable inference . . . that Defendants failed to properly manage" that fund. (Opp. at 24.) That sort of conclusory argument effectively concedes the inadequacy of those allegations. Plaintiffs' arguments about the Advisory Committee are equally without merit. (Opp. at 24-25.) As argued in the Moving Brief and ignored in the Opposition, nothing in ERISA requires fiduciaries to hire an investment adviser or adopt a governing charter -- even if true, those allegations are irrelevant to Plaintiffs' prudence claim. (Mov. Br. at 20-21.) And Plaintiffs' assertion that the identity and credentials of the Advisory Committee members are "'peculiarly within the possession and control' of the DST Defendants" (Opp. at 24 n.13) is demonstrably wrong, as Plaintiffs themselves previously sued the individual members of the Advisory Committee in this action. (*See* ECF No. 1.)

## CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in the Moving Brief, the DST Defendants' motion to dismiss should be granted in its entirety and all allegations and claims concerning the 401(k) portion of the Plan should be dismissed with prejudice.

Dated: January 10, 2019
       Boston, Massachusetts

Respectfully submitted,

/s/ Michael S. Hines
Scott D. Musoff
Alexander C. Drylewski
James R. Carroll (*pro hac vice*)
Michael S. Hines (*pro hac vice*)
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
– and –
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
scott.musoff@skadden.com
alexander.drylewski@skadden.com
james.carroll@skadden.com
michael.hines@skadden.com

Counsel for Defendants
DST Systems, Inc., The Advisory Committee of the DST Systems, Inc. 401(k) Profit Sharing Plan, and The Compensation Committee of the Board of Directors of DST Systems, Inc.