

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL L. FERGUSON, et al.,

    Plaintiffs,

  -against-

RUANE CUNNIFF & GOLDFARB INC., et al.,

    Defendants.

17-CV-6685 (ALC) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

    For the reasons that follow, defendant Ruane Cunniff & Goldfarb, Inc. (RCG) must promptly produce: (1) a complete copy of the June 5, 2020 settlement agreement between RCG and the Settling Plaintiffs defined therein (the RCG Settlement Agreement), including exhibits; and (2) each related Release and Covenant not to Sue (Release) executed by a Settling Plaintiff. RCG may designate the RCG Settlement Agreement and the Releases as "Confidential" pursuant to the parties' stipulated Confidentiality Agreement and Protective Order (Protective Order).

## Background

    Plaintiffs Michael L. Ferguson, Myrl C. Jeffcoat, and Deborah Smith are participants in the DST Systems, Inc. (DST) 401(k) Profit Sharing Plan (the Plan). In their Second Amended Complaint (SAC) (Dkt. No. 82), they assert claims under 29 U.S.C. § 1332, individually and on behalf of the Plan, against RCG, DST, the Advisory Committee of the Plan (the Advisory Committee), and the Compensation Committee of DST Board of Directors (together with DST and the Advisory Committee, the DST Defendants) for breach of fiduciary duty and other violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, *et seq*. SAC ¶ 1. RCG served as the investment manager for the Plan's profit sharing account (PSA). SAC ¶¶ 13, 22, 25. Plaintiffs' claims center around RCG's management of the PSA, including its

decision to invest substantial Plan assets in the stock of Valeant Pharmaceuticals, Inc. (Valeant), which allegedly cost the Plan over $100 million. *Id*. ¶¶ 4-5 n.1, 41-53.

The case at bar (*Ferguson*) is one of many legal actions arising out of the Plan's investment in Valeant and related issues. Only those relevant to the pending application are discussed here. In 2017, RCG and the DST Defendants successfully moved to stay or dismiss two putative class actions – one in this district and one in Missouri – on the ground that the named plaintiffs were bound by an arbitration agreement contained in DST's employee handbook. *See Cooper v. Ruane Cunniff & Goldfarb Inc.*, 2017 WL 3524682 (S.D.N.Y. Aug. 15, 2017) (granting RCG's motion to compel arbitration); *DuCharme v. DST Sys., Inc.*, 2017 WL 7795123, at *1 (W.D. Mo. June 23, 2017) (granting DST's motion to dismiss). Thereafter, hundreds of Plan participants filed individual arbitration claims before the American Arbitration Association (AAA), alleging, *inter alia*, that RCG and the DST Defendants mismanaged Plan assets in breach of their fiduciary duties. *See* Memorandum of Law in Support of the DST Defendants' Motion for a Preliminary Injunction and Temporary Restraining Order dated July 10, 2020 (DST Def. Prelim. Inj. Mem.) (Dkt. No. 161), at 4. The first AAA hearing was scheduled to commence on July 13, 2020. *See* Declaration of Jessica Carey dated July 10, 2020 (Carey Decl.) (Dkt. No. 162), ¶ 7; Def. Prelim. Inj. Mem. at 4. The arbitration claimants are all represented by the same attorneys who represented the plaintiff in *DuCharme* (the Klamann Group).

The DST arbitration agreement does not bind all Plan participants. Some retired before the arbitration agreement came into existence, while others opted out of the arbitration agreement, which DST permitted. In addition to *Ferguson*, there are currently two other cases pending in this district that were filed by Plan participants – individually and on behalf of the Plan itself – against RCG and the DST Defendants: *Canfield v. SS&C Technologies Holdings, Inc*., No. 18-CV-08913

(ALC); and *Mendon v. SS&C Technologies, Inc.*, No. 18-CV-10252 (ALC). The *Canfield* and *Mendon* plaintiffs are also represented by the Klamann Group.[1] Plaintiffs in *Ferguson* are represented by different counsel.

Last year, the Secretary of Labor filed a similar suit, alleging that RCG, the DST Defendants, and certain individual RCG and DST officers and directors mismanaged Plan assets in violation of their fiduciary duties. *See Scalia v. Ruane, Cunniff & Goldfarb, Inc.*, No. 19-CV-09302 (ALC) (S.D.N.Y.). Thereafter, ECG sued Percy Payne and all of the other AAA arbitration claimants, seeking a declaratory judgment "that multiple representatives of the participants and the Plan cannot at the *same* time seek recovery in multiple forums for the *same* harm to the *same* Plan assets caused by the *same* alleged breaches of fiduciary duty," and an injunction staying all of the arbitrations "until this Court can determine whether *Ferguson* or *Scalia* represents all 10,000 Plan participants or only the approximately 500 who opted out of the Arbitration Agreement." Am. Compl., *Ruane Cunniff & Goldfarb, Inc. v. Payne*, No. 19-CV-11297 (ALC), ECF No. 10 (S.D.N.Y. Dec. 18, 2019), ¶ 67 (emphasis in the original). RCG's motion for a preliminary injunction in *Payne*, and defendants' motion to dismiss that action pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), remain pending before Judge Carter.

On April 10, 2020, the *Ferguson* plaintiffs moved for leave to file a Third Amended Complaint (TAC), which would assert class claims on behalf of approximately 10,000 similarly

---

[1] All of the DST-related cases currently pending this district are assigned to the Hon, Andrew L. Carter, United States District Judge. On July 10, 2020, Judge Carter granted defendants' motion in *Canfield* and *Mendon* to disqualify the Klamann Group for conflict of interest because the same attorneys concurrently represent three former members of the DST Advisory Committee (Kenneth Hager, Joan Horan, and Thomas McDonnell) as arbitration claimants before the AAA. *See Canfield v. SS&C Techs. Holdings, Inc.*, 2020 WL 3960929 (S.D.N.Y. July 10, 2020). The portion of defendants' motion seeking to disqualify the Klamann Group in the pending AAA arbitrations, as well as in *Canfield* and *Mendon*, remains pending before Judge Carter, as does the motion of the *Canfield* and *Mendon* plaintiffs for reconsideration of his initial disqualification decision.

situated participants in and beneficiaries of the Plan. (Dkt. Nos. 124, 125-1.) Simultaneously, plaintiffs moved to certify a mandatory, non opt-out class. (Dkt. No. 126.) That class, if certified, would include the arbitration claimants, as well as all other Plan participants bound by the DST arbitration agreement. RCG opposed the motions to amend and certify (Dkt. Nos. 138-41). The DST Defendants did not. The motions remain pending before Judge Carter.

On July 6, 2020 – one week before the first scheduled arbitration hearing – RCG advised Judge Carter that it had settled the claims brought against it by the *Canfield* plaintiffs, the *Mendon* plaintiffs, and all 471 Plan participants who had, by that date, submitted arbitration claims to the AAA. *See* Letter dated July 6, 2020, *Payne*, ECF No. 66 (S.D.N.Y. July 6, 2020). That same day, the *Canfield* and *Mendon* plaintiffs dismissed their claims against RCG, *see id.*, and on July 10, 2020, RCG moved to dismiss all of its claims in *Payne* with prejudice. *See* Not. of Mot. for Dismissal with Prejudice, *Payne*, ECF No. 67 (S.D.N.Y. July 10, 2020).

The DST Defendants are not parties to the RCG settlement. Thus, they face the prospect of continuing to defend against hundreds of individual arbitration claims, as well as plaintiffs' claims in *Canfield*, *Mendon*, and this action. However, on July 10, 2020 – three days before the first scheduled arbitration hearing – the DST Defendants asserted that they had, in effect, settled all of those claims by entering into a settlement in principle with the "putative class representatives" in this action. Carey Decl. ¶ 5. The DST Defendants' settlement is "contingent on certification of the Class" described in the proposed TAC and "would resolve all claims against the DST Defendants," *id.*, including those asserted by the *Canfield* plaintiffs, the *Mendon* plaintiffs, and the arbitration claimants. *See* DST Def. Prelim. Inj. Mem. at 6 (if approved, the settlement would "bind all Class members on a non-opt-out basis").

That same day, the DST Defendants moved by order to show cause for a temporary restraining order (TRO) and preliminary injunction to prevent the arbitrations from going forward pending the determination of the class certification motion in this action. (Dkt. Nos. 160-62.) Judge Carter denied the request for a TRO and set a briefing schedule on the motion for a preliminary injunction. (Dkt. No. 164.) Thereafter, opposition papers were filed by RCG (Dkt. Nos. 167-68); by the arbitration claimants, who argued (through the Klamannn Group) that the DST Defendants had no right either to enjoin the ongoing arbitrations or to bind them to a settlement negotiated only with the *Ferguson* plaintiffs (Dkt. Nos. 171-72, 175); and by the plaintiffs in *Canfield* and *Mendon* (Dkt. No. 173). Plaintiffs herein, unsurprisingly, supported the settlement and the preliminary injunction motion. (Dkt. No. 174.) After a hearing on July 15, 2020, Judge Carter denied the motion for a preliminary injunction. He then scheduled oral argument on the class certification motion for August 13, 2020. (Dkt. No. 180.)

## The Motion to Compel

On July 10, 2020 – the same day that the DST Defendants announced their settlement in principle – plaintiffs and RCG filed a joint letter (Joint Ltr.) (Dkt. No. 163) requesting this Court's "assistance in resolving one extant discovery dispute," namely, whether plaintiffs are entitled to see the RCG Settlement Agreement and related documents. Plaintiffs formally requested those materials on June 29, 2020. (Dkt. No. 163-2.) On July 9, 2020, "RCG informed Plaintiffs that it would be withholding the requested materials," Joint Ltr. at 2, because disclosing them "would be in breach of the [RCG] Settlement Agreement," which contains a confidentiality clause. *Id.* at 4.

Plaintiffs contend that the settlement materials "are plainly discoverable" and that RCG has no valid reason to withhold them, regardless of whether the settling arbitration claimants consent to the disclosure. *Id.* at 2. In the joint letter, plaintiffs also noted that there was a parallel dispute

5

concerning the discoverability of the RCG Settlement Agreement pending "in the arbitration proceedings," where the non-settling respondents (that is, the DST Defendants) sought to compel production of the settlement materials. *Id*. at 3.

Treating the joint letter as a motion to compel by plaintiffs, I directed RCG to submit a complete copy of the RCG Settlement Agreement for *in camera* review (Dkt. No. 166 at 5), which it did on July 14, 2020. The agreement is dated June 5, 2020. It required the *Canfield* plaintiffs, the *Mendon* plaintiffs, and the arbitration claimants (referred to collectively as the Settling Plaintiffs) to execute individual Releases within thirty days of that date, at which point the settlement would become effective, RCG's lump sum settlement payment would be released from escrow and allocated among the Settling Plaintiffs ("on the basis of the relative value of each Settling Plaintiff's claim against the total value of all the Settling Plaintiffs' claims"), and the Settling Plaintiffs would take steps to dismiss their litigation and/or arbitration claims against RCG. RCG also submitted an exemplar copy of the Release, which, it represented, had been signed by a total of 486 Settling Plaintiffs, and a written order from the panel in one of the arbitrations (*Leinke v. DST Systems, Inc., et al*.), dated July 12, 2020, tentatively ruling that the motion of the non-settling respondents in that proceeding to compel "Evidence of Claimants' Settlement with Ruane, Cuniff [sic]" would be granted, because "double recovery is not allowed in ERISA claims."

In addition to the provisions noted above, the RCG Settlement Agreement contains a confidentiality clause prohibiting the parties thereto from disclosing its existence or terms to any third parties except as necessary to enforce the agreement, comply with applicable laws or orders, "defend, prosecute, or pursue settlement" in related cases (including this action), and for certain other limited purposes. The agreement also contains a non-disparagement clause, with a carve-out for "truthful disclosures in response to lawful process as required by applicable law, regulation, or

6

order or directive of a court, governmental agency, or regulatory organization." Additionally, the parties agreed that the Settling Plaintiffs could pursue their remaining claims (against the DST Defendants) in court or before the AAA, "even if, in the pursuit of those claims, statements are made that could be construed to reflect poorly upon" RCG.

## **Analysis**

We begin with the familiar standard of Fed. R. Civ. P. 26(b): "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Although Fed. R. Evid. 408(a) bars the admission of settlement communications and agreements into evidence for certain purposes, such as "to prove or disprove the validity or amount of a disputed claim," *id.*, nothing in Rule 408 renders such materials privileged against discovery. *See*, *e.g.*, Bank Brussels Lambert v. Chase Manhattan Bank, N.A., 1996 WL 71507, at *3 (S.D.N.Y. Feb. 20, 1996) (Rule 408 "accomplishes [its] purpose" of encouraging settlement "not by making the settlement information unavailable, but by limiting abusive use of positions taken during the process").

Because settlement agreements are not privileged, "no heightened showing of relevance need be made" to justify their disclosure. *Morgan Art Found. Ltd. v. McKenzie*, 2020 WL 3578251, at *5 (S.D.N.Y. July 1, 2020) (quoting *ABF Capital Mgmt. v. Askin Capital*, 2000 WL 191698, at *1 (S.D.N.Y. Feb. 10, 2000)); *see also Bank Brussels Lambert*, 1996 WL 71507, at *3 (Rule 408 "does not require any special restriction on Rule 26 because the discovery rules do not affect admissibility."). Nor may the parties to a settlement agreement shield it from discovery "merely because it contains a confidentiality provision, or was filed under seal." *ABF Capital Mgmt.*, 2000 WL 191698, at *2; *see also Morgan Art Found.*, 2020 WL 3578251, at *5-6 (collecting cases and compelling disclosure of settlement agreement between two parties in multi-party litigation).

7

Although the named plaintiffs herein are not parties to the RCG Settlement Agreement or accompanying Releases, those documents are relevant to the class claims contained in the proposed TAC – and thus to the pending motions to amend and for class certification – because, by their terms, they resolve and release the claims of hundreds of putative class members against defendant RCG. If a class is certified, the amount of the RCG settlement payment allocated to each Settling Plaintiff will also become relevant, in connection with the calculation of their potential recovery (whether by judgment or by settlement) against the DST Defendants. Moreover, in the event that any of the parties to the RCG Settlement Agreement were to testify in this action, the existence and terms of the RCG Settlement Agreement could bear on the credibility of their testimony. *See ABF Capital Mgmt.*, 2000 WL 191698, at *2 (courts "routinely" permit discovery of settlement agreements where relevant to the potential bias, prejudice, or motive of a witness); *Santrayll v. Burrell*, 1998 WL 24375, at *2 (S.D.N.Y. Jan. 22, 1998) (compelling production of settlement agreement because it "may lead to the discovery of evidence that would establish [a witness's] bias, interest, or prejudice").[2]

Additionally, the decision of the *Leinke* arbitration panel – that the settlement terms should be disclosed to the DST Defendants – further weighs in favor of production. The *Ferguson* plaintiffs should not be the only parties to these interconnected litigations without knowledge of the terms of the settlement between RCG and the Settling Plaintiffs.

The production of the settlement materials in discovery, however, does not necessarily render them admissible at trial (or otherwise) in this case. Nor need such production wholly vitiate

---

[2] The prospect of a Settling Plaintiff testifying as a witness in this action is not entirely far-fetched. As noted above, three of the Settling Plaintiffs were members of the DST Advisory Committee between 2010 and 2013, and one of them (Hager) signed investment management agreements between the Plan and RCG.

the settling parties' bargained-for confidentiality assurances. Consequently, RCG may invoke the confidentiality provisions of the Protective Order (Dkt. No. 119). Whether and under what conditions the settlement materials may be filed on the public docket is a question for another day. *See* Prot. Order ¶¶ 8-10 (governing applications to file confidential material under seal).

## Conclusion

RCG shall promptly produce to plaintiffs the complete RCG Settlement Agreement, including exhibits, and all Releases executed to date by Settling Plaintiffs. RCG may designate these documents "Confidential" pursuant to the Protective Order.

Dated: New York, New York
August 10, 2020                **SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**