**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL L. FERGUSON, MYRL C. JEFFCOAT and DEBORAH SMITH, individually and as representatives of a class of similarly situated participants and beneficiaries, and on behalf of the DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN,<br><br>                              Plaintiffs,<br><br>v.<br><br>RUANE, CUNNIFF & GOLDFARB INC., DST SYSTEMS, INC., THE ADVISORY COMMITTEE OF THE DST SYSTEMS, INC. 401(k) PROFIT SHARING PLAN and THE COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF DST SYSTEMS, INC.,<br><br>                              Defendants. | Civil Action No.<br>1:17-cv-06685 |

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This CLASS ACTION SETTLEMENT AGREEMENT and RELEASE ("Settlement Agreement") is entered into by Named Plaintiffs, on behalf of themselves and on behalf of the Settlement Class and the Plan, on the one hand, and Defendant, on the other.  Capitalized terms and phrases have the meanings provided in Section 1 below or as specified elsewhere in this Settlement Agreement.

### 1.    DEFINITIONS

As used in this Settlement Agreement and the Exhibits thereto, unless otherwise defined, the following terms have the meaning specified below:

1.1    "Action" means *Ferguson, et al. v. Ruane, Cunniff & Goldfarb, Inc., et al.*, Case No. 17-cv-6685, an action pending in the United States District Court for the Southern District of New York.

1.2    "Active Accounts" shall mean Class Members' accounts in the Plan, which have a positive balance as of the date of the Preliminary Approval Order.

1.3    "Administration Costs" shall mean: (a) the costs and expenses associated with the production, dissemination, and publication of the Notice; (b) all reasonable costs incurred by the Settlement Administrator in administering and effectuating this Settlement, including the costs of obtaining the Class Members' contact and account information and

distributing the Settlement Amount, which costs are necessitated by performance and implementation of this Agreement and any court orders relating thereto; and (c) all reasonable fees charged by the Settlement Administrator.

1.4     "Advisory Committee" means the Advisory Committee of the DST Systems, Inc. 401(k) Profit Sharing Plan, and any former, current or future members thereof.

1.5     "Alternate Payee" shall mean a person, other than a Participant or Beneficiary, who is entitled to a benefit under the Plan as a result of a valid QDRO, as determined by the Plan Administrator on or before the date of the Preliminary Approval Order, where the QDRO relates to a Participant's or Former Participant's balance in the Plan during the Class Period.

1.6     "Arbitration Agreement" means the DST Arbitration Program Agreement, DST Output Arbitration Program and Agreement with Associate Opt Out Right, the DST Systems, Inc. Associate Handbook's Arbitration Policy, and any other arbitration agreement to which DST and its current or former employees are parties.

1.7     "Arbitration Claimant" means a claimant in one of the Arbitrations.

1.8     "Arbitration" or "Arbitrations" means an arbitration or arbitrations (either demanded, pending, settled, or completed prior to the Effective Date of Settlement) initiated against the DST Defendants and/or RCG pursuant to the Arbitration Agreement, in which, among other things, an Arbitration Claimant alleges that the DST Defendants and/or RCG breached their fiduciary duties under ERISA with respect to the Plan.

1.9     "Attorneys' Fees and Expenses" means the amount awarded by the Court as compensation for the services provided by Class Counsel and the expenses incurred by Class Counsel in connection with the Action, which shall be recovered from the Total Settlement Payment.

1.10    "Authorized Former Participant" shall mean a Former Participant who has submitted a Former Participant Claim Form by the Claims Deadline set by the Court in the Preliminary Approval Order, and whose Former Participant Claim Form is accepted by the Settlement Administrator and determined by the Settlement Administrator to be completed and satisfactory.

1.11    "Beneficiary" shall mean a person who is entitled to receive a benefit under the Plan, as determined by the Plan Administrator on or before the date of the Preliminary Approval Order, that is derivative of a deceased Participant's or Former Participant's interest in the Plan, other than an Alternate Payee.  A Beneficiary includes, but is not limited to, a spouse, surviving spouse, domestic partner, child or other individual or trust designated by the Participant or Former Participant, or determined under the terms of the Plan to be entitled to a benefit.

1.12    "CAFA" means the Class Action Fairness Act of 2005.

1.13   "*Canfield* Action" means *Canfield, et al. v. SS&C Tech. Holdings, Inc. et al.*, Case No. 18-cv-8913 (S.D.N.Y.), and any and all cases consolidated therewith.

1.14   "*Canfield* Plaintiffs" means Robert Canfield, Bonnie Kartz, Latrecia Onunkwor, Diana Weaver, and David Ostermeyer.

1.15   "*Canfield/Mendon* Plaintiffs" means Robert Canfield, Bonnie Kartz, Latrecia Onunkwor, Diana Weaver, David Ostermeyer, Mark Mendon, and Jill Pehlman.

1.16   "Case Contribution Award(s)" means any monetary amount(s) approved by the Court to be paid from the Qualified Settlement Fund in recognition of the Named Plaintiffs' assistance in the prosecution of this Action and payable pursuant to 13.3.  Defendant does not oppose a Case Contribution Award but will leave this matter and the amount thereof, if any, to the sound discretion of the Court.

1.17   "Claim" means any and all manner of claims, actions, causes of actions, potential actions, suits, arbitration demands, controversies, costs, damages, losses, obligations, liabilities, judgments, and demands whatsoever, known or unknown, suspected or unsuspected, accrued or unaccrued, whether class, individual, or otherwise, arising under the laws, regulations, or common law of the United States of America, any state or political subdivision thereof, or any foreign country or jurisdiction, in law, in contract, or in equity, and regardless of legal theory.

1.18   "Class Counsel" means Shepherd, Finkelman, Miller & Shah LLP and Olivier, Schreiber & Chao LLP.

1.19   "Class Members" means all individuals in the Settlement Class, including the Named Plaintiffs.

1.20   "Class Notice" means the notice of (i) pendency of class action, certification of Class for Settlement purposes, and Settlement; (ii) motion for an Injunction with respect to the Resolved Claims; (iii) Fairness Hearing; and (iv) motion for a Case Contribution Award and Attorneys' Fees and Expenses, substantially in the form attached hereto as Exhibit A.

1.21   "Class Period" means the period from March 14, 2010 through July 31, 2016.

1.22   "Compensation Committee" means the Compensation Committee of the Board of Directors of DST Systems, Inc., and any former, current or future members thereof.

1.23   "Complaint" means the Second Amended Class Action Complaint filed in this Action on November 5, 2018.

1.24   "*Cooper* Action" means *Cooper v. Ruane Cunniff & Goldfarb Inc.*, S.D.N.Y. Case No. 16-cv-1900, No. 17-2805 (2d Cir.), and any and all cases consolidated therewith.

1.25   "Court" means the United States District Court for the Southern District of New York.

1.26   "Defendant" means Ruane, Cunniff & Goldfarb Inc.

3

1.27   "Defendant Releasees" means Defendant and any and all of its related parties or entities, including, without limitation, any and all of its past or present parents, subsidiaries, affiliates, predecessors, successors, or Successors-In- Interest, as well as any and all of its current or former officers, directors, employees, associates, agents, or other persons acting on its behalf, underwriters, insurers, reinsurers, attorneys, advisors, financial advisors, publicists, independent certified public accountants, auditors, accountants, assigns, creditors, administrators, heirs, estates, or legal representatives.  Defendant Releasees does not include the DST Defendants or Robert Goldfarb.

1.28   "Defense Counsel" means Schulte Roth & Zabel LLP.

1.29   "DST" means DST Systems, Inc. and SS&C Technologies Holdings, Inc. and any and all of their related entities, including, without limitation, any and all of their past or present parents, subsidiaries, affiliates, predecessors, successors, or Successors-In-Interest, as well as any and all of their current or former officers, directors, employees, associates, agents, or other persons acting on their behalf, underwriters, insurers, reinsurers, attorneys, advisors, financial advisors, publicists, independent certified public accountants, auditors, accountants, assigns, creditors, administrators, heirs, estates, or legal representatives.

1.30   "*DST* Action" means *DST Systems, Inc., et al. v. Ruane, Cunniff & Goldfarb Inc., et al.*, Case No. 1:20-cv-09472 (S.D.N.Y.), and any and all cases consolidated therewith.

1.31   "DST Defendants" means: (i) DST; (ii) the Advisory Committee; and (iii) the Compensation Committee.

1.32   "Effective Date of Settlement" means the date on which all of the conditions to Settlement set forth in Section 3 of this Settlement Agreement have been fully satisfied or waived and the Settlement shall have become Final.

1.33   "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated thereunder.

1.34   "Escrow Account" shall mean an account at an established Financial Institution agreed upon by the Parties that is established for the deposit of the Settlement Amount and amounts relating to it, such as interest earned on investment of the Settlement Amount.

1.35   "Escrow Agent" shall mean the entity approved by the Parties to act as escrow agent for any portion of the Settlement Amount deposited in or accruing in the Escrow Account pursuant to this Agreement.

1.36   "Fairness Hearing" means the hearing at or after which the Court will be asked to make a final decision, pursuant to Federal Rule of Civil Procedure 23, as to whether this Settlement Agreement is fair, reasonable, and adequate to settle Plaintiffs' Released Claims against Defendant and Defendant Releasees and whether the Court should approve the proposed Settlement and issue the Injunction.

1.37   "*Ferguson II*" means *Ferguson, et al. v. Robert D. Goldfarb*, Case No. 20-cv-7092 (S.D.N.Y.), and any and all cases consolidated therewith.

1.38   "Final" when referring to the Final Approval Order or any other judgment or court order means: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing of any appeal under the Federal Rules of Civil Procedure, *i.e.,* thirty (30) days after entry of the judgment or order; or (ii) if there is an appeal from the judgment or order, the latter of (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on *certiorari* or otherwise, or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of *certiorari* or other form of review, or the denial of a writ of *certiorari* or other form of review, and, if *certiorari* or other form of review is granted, the date of final affirmance following review pursuant to that grant.

1.39   "Final Approval Order and Judgment" or "Final Approval Order" means the order of dismissal with prejudice entered by the Court as contemplated by Sections 3.2 and 3.3 of this Settlement Agreement and entry of Injunction, which order shall be substantially in the form set out as Exhibit B.

1.40   "Financial Institution" means an FDIC insured bank at which Class Counsel will establish the Qualified Settlement Fund.

1.41   "First Settlement Payment" means that One Hundred Thousand Dollar ($100,000.00) portion of the Total Settlement Payment to be paid by Defendant to the Qualified Settlement Fund in the manner set forth in Section 10.1.

1.42   "Former Participant" shall mean any Class Member who maintained a positive balance in the Plan at any time during the Class Period, but who does not have an Active Account.

1.43   "Former Participant Claim Form" shall mean the form to be provided to Former Participants and returned to the Settlement Administrator by Former Participants and Beneficiaries, which is attached as Exhibit E.

1.44   "Goldfarb" means Robert D. Goldfarb.

1.45   "Independent Fiduciary" means a fiduciary selected and approved by Class Counsel and RCG and retained pursuant to Section 3.5 and that has no "relationship to" or "interest in" (as those terms are used in the Class Exemption referred to in Section 3.5) any of the Parties.

1.46   "Independent Fiduciary Fees and Costs" shall mean the reasonable fees and expenses of the Independent Fiduciary.

1.47   "Individual Actions" means the *Canfield* Action, the *Mendon* Action, and the Arbitrations.

1.48   "Injunction" means the injunction as set forth in Section 3.2.6.

1.49    "June 2020 Settlement Agreement" means that agreement entered into by the Arbitration Claimants and *Canfield/Mendon* Plaintiffs, on the one hand, and RCG, on the other, effective June 5, 2020, whereby, among other things, RCG agreed to pay the Arbitration Claimants and *Canfield/Mendon* Plaintiffs an amount of $12,000,000 in exchange for the Arbitration Claimants and *Canfield/Mendon* Plaintiffs (i) executing individual releases releasing Defendant and Goldfarb from any and all claims arising from management of the Plan, and (ii) disclaiming and renouncing any recovery from Defendant and Goldfarb other than the amount paid pursuant to the June 2020 Settlement Agreement.  The Settling Parties expressly acknowledge that nothing in this Settlement Agreement has any effect on the June 2020 Settlement Agreement, which remains in effect.

1.50    "*Mendon* Action" means *Mendon, et al. v. SS&C Tech. Holdings, Inc., et al.*, Case No. 18-cv-10252 (S.D.N.Y.), and any and all cases consolidated therewith.

1.51    "*Mendon* Plaintiffs" means Mark Mendon and Jill Pehlman.

1.52    "Named Plaintiffs" or "*Ferguson* Plaintiffs" means Michael L. Ferguson, Myrl C. Jeffcoat and Deborah Smith, *i.e.*, the named plaintiffs in this Action and *Ferguson II*.

1.53    "Net Settlement Fund" means the Qualified Settlement Fund less any: (i) Settlement Administration Expenses; (ii) Case Contribution Award(s); and (iii) Attorneys' Fees and Expenses.

1.54    "Participant" shall mean any person who is or was a participant in the Plan at any time during the Class Period, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period, and any person who is entitled to a benefit under the Plan as a result of a Qualified Domestic Relations Order.

1.55    "Person" means an individual, partnership, corporation, employee benefit plan, or any other form of organization.

1.56    "Plaintiffs" means Named Plaintiffs, the Plan, and each and every Settlement Class member and their Successors-In-Interest.

1.57    "Plaintiffs' Released Claims" means any and all actual or potential Claims, whether brought in an individual, representative or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, against Defendant Releasees through the date the Court enters the Final Approval Order and Judgment arising out of or in any way related to: (i) the conduct alleged in the Complaint and any subsequent pleading or legal memorandum filed in the Action; (ii) the conduct alleged in a complaint or demand filed in any Related Proceeding and any subsequent pleading or legal memorandum filed in any Related Proceeding; (iii) the Plan (including, without limitation, the selection, retention and monitoring PSP investments, the performance, fees, and any other characteristic of the PSP); and (iv) the approval of the Independent Fiduciary of the Settlement.  As to any and all Plaintiffs' Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date of Settlement, Named Plaintiffs, the Plan, and each and every Settlement Class member, shall expressly waive and shall be deemed to

have waived, and by operation of the Final Approval Order and the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or of any other country, or any principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

***A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.***

1.58   "Plaintiff Releasors" means Plaintiffs, and any and all of their related parties, including, without limitation, any and all members of their immediate families, agents or other persons acting on their behalf, attorneys, advisors, financial advisors, accountants, assigns, creditors, heirs, estates and legal representatives.

1.59   "Plan" means the DST Systems, Inc. 401(k) Profit Sharing Plan.

1.60   "Plan Actions" means the Action, the *Cooper* Action, *Ferguson II*, and the *Scalia* Action.

1.61   "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund, proposed by Class Counsel and approved by the Court that is set forth in the Class Notice.

1.62   "Preliminary Approval Order" means the order to be entered by the Court: (i) preliminarily approving the proposed Settlement; (ii) preliminarily certifying the Settlement Class solely for Settlement purposes; (iii) preliminarily approving the Injunction; (iv) appointing the Settlement Administrator; (v) preliminarily determining that the proposed forms of Class Notice and Summary Notice: (a) fairly and adequately describe the terms and effect of the Settlement Agreement; (b) give notice to the Settlement Class of the time and place of the hearing of the motion for final approval of the Settlement; and (c) describe how recipients of the Class Notice may object to approval of the Settlement; (vi) finding that the proposed manner of communicating the Class Notice and Summary Notice to members of the Settlement Class is the best notice practicable under the circumstances; (vii) finding that the proposed provision of the Class Notice and Summary Notice to potential Settlement Class members otherwise meets all of the requirements of Federal Rule of Civil Procedure 23 and any other applicable law; (viii) preliminarily enjoining (a) Plaintiff Releasors, and anyone purporting to represent them or to pursue Claims on their behalf, (b) any Participant who has been excluded from the Settlement Class, (c) the DST Defendants, (d) Goldfarb, or (e) the Secretary, from bringing or prosecuting in any forum any claims included among Plaintiffs' Released Claims against Defendant Releasees.  Unless otherwise ordered by the Court, the Preliminary Approval Order also shall provide that, to be considered timely, any objection to the Settlement must be received by the Court and the Settling Parties no later than thirty (30) calendar days before the Fairness Hearing, Class Counsel and/or Defense Counsel shall file a response to any objections no later than fourteen (14) calendar days before the Fairness Hearing, and objectors will not be permitted a reply in support of their

objection.  The Preliminary Approval Order shall be substantially in the form set out in Exhibit C.

1.63   "PSP" means the profit sharing portion of the Plan, which was terminated in 2016.

1.64   "QDRO" shall mean, for the purposes of this Agreement, a valid Qualified Domestic Relations Order as defined in 29 U.S.C. § 1056(d)(3)(K), as determined by the Settlement Administrator and entered on or before the date of the Preliminary Approval Order.

1.65   "Qualified Settlement Fund" is defined in Section 10.

1.66    "Related Proceedings" means: (i) the *Cooper* Action; (ii) *Ferguson II*; (iii) the *Canfield* Action; (iv) the *Mendon* Action; (v) the *Scalia* Action; (vi) the *DST* Action and (vii) the Arbitrations.

1.67   "Resolved Claims" means: (i) any Claims against Defendant Releasees for indemnity, contribution or under any other theory arising out of the subject matter of this Action or any Related Proceeding; and (ii) any Claims arising out of or related to Plaintiffs' Released Claims.

1.68   "*Scalia* Action" means *Scalia v. Ruane, Cunniff & Goldfarb Inc., et al.*, Case No. 19-cv-9302 (S.D.N.Y.), and any and all cases consolidated therewith.

1.69   "Second Settlement Payment" means that Twenty One Million Four Hundred Thousand Dollar ($21,400,000.00) portion of the Total Settlement Payment to be paid by Defendant to the Qualified Settlement Fund in the manner set forth in Section 10.1.

1.70   "Secretary" means the Secretary of the U.S. Department of Labor, and any and all of his or her related parties or entities, including, without limitation, any and all of his or her predecessors, successors, or Successors-In-Interest, as well as any and all of his or her current or former officers, directors, employees, associates, agents, or other persons acting on his or her behalf, attorneys, advisors, publicists, assigns, creditors, administrators, heirs, estates, or legal representatives.

1.71   "Settlement" means the compromise and settlement embodied in this Settlement Agreement.

1.72   "Settlement Administration Expenses" means the reasonable and actually incurred fees, costs and expenses associated with retaining the Settlement Administrator, providing Class Notice, publishing Summary Notice, implementation of the Plan of Allocation and any other costs otherwise actually and reasonably incurred by the Settlement Administrator in administering the Settlement.

1.73   "Settlement Administrator" means a third party retained by Class Counsel, subject to approval by Defendant and of the Court, to distribute the Class Notice and Summary Notice, and to implement the Plan of Allocation as described in Section 12.4.

1.74   "Settlement Agreement" means this Class Action Settlement Agreement and Release between Plaintiffs and Defendant.

1.75   "Settlement Class" means all Participants in the Plan during the Class Period, *except:* (i) all individuals who during the Class Period were members of the Advisory Committee; (ii) all individuals who during the Class Period were members of the Compensation Committee; (iii) any other individuals who served as fiduciaries of the Plan during the Class Period; and (iv) the beneficiaries, immediate family members, estates, and executors of (i)-(iii).

1.76   "Settlement Agreement Execution Date" means the date the final signature of the Settling Parties is affixed to this Settlement Agreement.

1.77   "Settlement Fund" means the First Settlement Payment and the Second Settlement Payment, plus any additional funds recovered for the benefit of the Settlement Class.

1.78   "Settling Parties" means Defendant and Plaintiffs.

1.79   "Successor-In-Interest" means a Person's estate, legal representatives, heirs, successors or assigns, and any other Person who can make a legal claim by or through such Person.

1.80   "Summary Notice" means the form of notice substantially in the form attached hereto as Exhibit D, which shall be published in USA Today and PR Newswire.

1.81   "Taxes" means: (i) all federal, state, local, and/or foreign taxes of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) arising with respect to the Qualified Settlement Fund as a separate taxpayer (including any taxes for any period during which the Qualified Settlement Fund does not qualify as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, if any); and (ii) the reasonable expenses and costs incurred by the Settlement Administrator in connection with determining the amount of, reporting, and paying, any taxes owed by the Qualified Settlement Fund (including, without limitation, reasonable expenses of tax attorneys and accountants).

1.82   "Total Settlement Payment" means Twenty One Million Five Hundred Thousand Dollars ($21,500,000.00), *i.e.*, the sum of the First Settlement Payment and Second Settlement Payment.

## 2.   RECITALS

2.1   On September 1, 2017, the Named Plaintiffs, on behalf of themselves and on behalf of the Plan, filed the Action;

2.2   Class Counsel has conducted an extensive investigation into the facts, circumstances and legal issues associated with the allegations made in the Action.  This investigation has included, *inter alia*:  engaging in discovery and full litigation, including appeals in other proceedings, and extensive consultation and work with experts to analyze and present the claims at issue.

2.3     In the Action, Plaintiffs allege that Defendant was a fiduciary of the Plan and that it breached its fiduciary duties owed to Plan participants and beneficiaries, including Named Plaintiffs, by among other things investing an inappropriate amount of the PSA's assets in the stock of Valeant Pharmaceuticals ("VRX") and failing to timely reduce and/or eliminate the PSA's investments in VRX.

2.4     The Settlement Class includes the Arbitration Claimants, as well as the *Canfield*/*Mendon* Plaintiffs, each of whom entered into the June 2020 Settlement Agreement, pursuant to which, *inter alia*, the *Canfield*/*Mendon* Plaintiffs and each Arbitration Claimant agreed to provide the DST Defendants with a judgment credit.

2.5     Named Plaintiffs and Class Counsel consider it desirable and in the Plan's and Class Members' best interests that the claims in the Action be settled upon the terms set forth below. Named Plaintiffs and Class Counsel have concluded that such terms are fair, reasonable, and adequate and that this settlement will result in valuable benefits to the Plan and the Settlement Class.

2.6     Defendant continues to deny all allegations of wrongdoing and denies all liability for the allegations and claims made in the Action. Defendant maintains that it is without fault or liability, and is settling the Action solely to avoid litigation costs (both monetary and nonmonetary).

2.7     Therefore, the Settling Parties, in consideration of the promises, covenants, and agreements herein described, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

## 3.     <u>CONDITIONS TO EFFECTIVENESS OF THE SETTLEMENT</u>

3.1     Effectiveness of Settlement. The Settlement provided for in this Settlement Agreement shall not become binding unless and until each and every one of the following conditions in Sections 3.2 through 3.7 shall have been satisfied or expressly waived pursuant to Section 15.5.

3.2     Court Approval. The Settlement contemplated under this Settlement Agreement shall have been approved by the Court, as provided for in this Section 3.2. The Settling Parties agree jointly to recommend to the Court that it approve the terms of this Settlement Agreement and the Settlement contemplated hereunder, except that the Settling Parties expressly agree that Defendant will not join in, and will take no position with respect to, Plaintiffs' motion for certification of the Settlement Class whether as part of the Preliminary Approval Order or the Final Approval Order and Judgment or Final Approval Order. Nothing in this Settlement Agreement shall limit or constrain any position that may be taken by RCG with respect to any proposed settlement between Plaintiffs and any other defendant in the Action or *Ferguson II*. Except as otherwise provided herein, the Settling Parties agree to undertake their reasonable best efforts, including all steps and efforts contemplated by this Settlement Agreement, and any other steps or efforts which may become necessary by order of this Court (unless such order

modifies the terms of this Settlement Agreement) or otherwise to obtain Court approval of the Settlement, including:

3.2.1   Motion for Preliminary Approval of Settlement and of Class Notice and Summary Notice.  The Court shall have approved the motion that the Plaintiffs filed by issuing the Preliminary Approval Order.

3.2.2   Settlement Class Certification.  The Court shall have certified the Action as a non-opt-out class action (preliminarily and finally) for settlement purposes pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure, with Named Plaintiffs as the Settlement Class representatives, and appointing Class Counsel as counsel for the Settlement Class.  If the Settlement does not become Final, then no Settlement Class will be deemed to have been certified by or as a result of this Settlement Agreement, and the Action will for all purposes revert to its status as of December 23, 2020.

3.2.3   Issuance of Notice.  The Settling Parties shall request that Class Notice be disseminated to the Settlement Class within seventy-five (75) calendar days following entry of the Preliminary Approval Order.  The Settlement Administrator shall cause the Summary Notice to be published one time in *USA Today* and PR Newswire within seventy-five (75) days following entry of the Preliminary Approval Order.  On the date and in the manner set by the Court in its Preliminary Approval Order, Class Counsel shall have caused notice of the Preliminary Approval Order and Injunction to be delivered by the Settlement Administrator to: (i) the Settlement Class; (ii) Goldfarb; (iii) the DST Defendants; and (iv) the Secretary.  The Settling Parties shall confer in good faith with regard to the form of the Class Notice in an effort to utilize cost effective forms of Class Notice.

3.2.4   Motion for Final Approval of Class Action Settlement.  On the date set by the Court in its Preliminary Approval Order, or at such other time established by the Court, Plaintiffs shall have filed the Final Approval Motion for a Final Approval Order.

3.2.5   Fairness Hearing.  The Settling Parties shall request that the Fairness Hearing be set at least one-hundred and thirty (130) calendar days following the mailing of the Class Notice and publication of the Summary Notice.  On the date set by the Court in its Preliminary Approval Order, the Settling Parties shall participate in the Fairness Hearing during or after which the Court will determine by Final Order whether:  (i) the proposed Settlement on the terms and conditions provided for in this Settlement Agreement is fair, reasonable and adequate and should be approved by the Court; (ii) Final Judgment should be entered; (iii) the Class should be certified as a non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23; (iv) the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice and the Summary Notice to members of the Settlement Class; (v) the requirements of CAFA have

been satisfied; (vi) the Injunction should be entered; (vii) the Plan of Allocation consistent with Section 12.4 shall be approved; (viii) to approve Case Contribution Award(s) from the Qualified Settlement Fund and, if so, the amount(s); (ix) to award from the Qualified Settlement Fund attorneys' fees and further expenses to Class Counsel and, if so, the amounts; and (x) to approve payment from the Qualified Settlement Fund for Settlement Administration Expenses.  The Settling Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Approval Order, and will not do anything inconsistent with obtaining such a Final Approval Order.

3.2.6    The Final Approval Order shall be entered, approving of and entering the Injunction, and specifically shall provide:

3.2.6.1 All Persons, and any Person purporting to act on their behalf or asserting a Claim under or through them, are barred, enjoined, and restrained from commencing, prosecuting, asserting, or continuing to prosecute or assert any Resolved Claims whatsoever against the Defendant Releasees in any forum, action or proceeding of any kind.  All such Resolved Claims shall be extinguished, discharged, satisfied, and unenforceable, subject to whatever conditions the Court shall deem to be appropriate to protect the rights of the Persons impacted by this Order.

3.2.6.2 In the case of the DST Defendants and Goldfarb, such conditions shall include a judgment credit as to all Class Members, with the appropriate judgment credit  to be determined by the Court in connection with Final Approval of the Settlement.  Named Plaintiffs shall submit their position regarding the appropriate amount of such judgment credit(s) under applicable law at least ninety (90) days prior to the Fairness Hearing; RCG, as well as the DST Defendants and Goldfarb, shall submit any response at least seventy-five (75) days prior to the Fairness Hearing; and Named Plaintiffs shall submit any reply at least sixty (60) days prior to the Fairness Hearing.

3.2.6.3 Plaintiff Releasors are barred, enjoined, and restrained from commencing, prosecuting or asserting any Claims against any other Person or entity (including other Plaintiff Releasors), where the Claim is, relates to or arises out of the Plaintiffs' Released Claims, including any Claim in which any Plaintiff Releasor seeks to recover from any Person or entity (including other Plaintiff Releasors): (i) any amounts that any Defendant Releasee has or might become liable to pay to the Settlement Class or any Settlement Class member; and/or (ii) any costs, expense, or attorneys' fees from defending any Claim by any Settlement Class member.  All such Claims shall be extinguished, discharged, satisfied and unenforceable.

3.3     Finality of Final Approval Order.  The Final Approval Order shall have become Final.

3.4     Compliance with CAFA.  The Court shall have determined that Defendant complied with CAFA and its notice obligations by providing appropriate federal and state officials with information about the Settlement.

3.5     Approval by Independent Fiduciary.

    3.5.1   Approval of the provisions of the Settlement Agreement by an Independent Fiduciary is a condition to the Settlement. The Independent Fiduciary shall have approved and authorized in a written report the Settlement in accordance with Prohibited Transaction Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632 (the "Class Exemption") and proposed amendment to Prohibited Transaction Exemption 2003-39, issued November 21, 2007, by the United States Department of Labor, 72 Fed. Reg. 65,597.  If the Independent Fiduciary disapproves or otherwise does not authorize the Settlement, then the Settlement Agreement shall terminate and become null and void and the provisions of Section 14.2 shall apply; provided, however, that the Settlement Agreement shall not terminate and become null and void and the provisions of Section 14.2 shall not apply if the Parties, through their counsel, agree in writing prior to the Fairness Hearing to modify the Settlement to satisfy objections by the Independent Fiduciary to the Settlement.

    3.5.2   The Independent Fiduciary Fees and Costs shall be paid out of the Qualified Settlement Fund.  The Independent Fiduciary shall acknowledge in writing that it is a fiduciary with respect to the Settlement of this Action on behalf of the Plan. Defendant and Class Counsel will comply with reasonable requests for non-privileged information made by the Independent Fiduciary that are for the purpose of reviewing and evaluating the Settlement Agreement.

3.6     Dismissal of Action.  The Action shall have been dismissed with prejudice as against Defendant on the Effective Date of Settlement.

3.7     No Termination.  The Settlement shall not have terminated pursuant to Section 14 before Sections 3.2 through 3.6 have been met.

3.8     Materiality of Settlement Conditions.  The Settling Parties expressly acknowledge that the Settlement is specifically conditioned upon the occurrence of each and every one of the foregoing conditions precedent prior to the Effective Date of Settlement, and that a failure of any condition set forth in Sections 3.2 through 3.7 at any time prior to the Effective Date of Settlement shall make this Settlement Agreement, and any obligation to pay the Total Settlement Payment, or any portion thereof, null, void, and of no force and effect unless the Settling Parties agree in writing that despite the non-occurrence of one the above conditions the remainder of the Settlement Agreement shall go forth.

## 4.    <u>RELEASES AND COVENANTS NOT TO SUE</u>

4.1     Release of the Defendant Releasees.  Subject to Sections 4.3 and 14, upon the Effective Date of Settlement, Plaintiffs, on behalf of themselves and Plaintiff Releasors, absolutely

and unconditionally release and forever discharge Defendant Releasees from any and all Plaintiffs' Released Claims that Plaintiffs or Plaintiff Releasors directly, indirectly, derivatively, or in any other capacity ever had, now have or hereafter may have.

4.2 Covenant Not to Sue by Plaintiffs.  Subject to Sections 4.3 and 14, upon the Effective Date of Settlement, Named Plaintiffs, on behalf of Plaintiff Releasors, covenant and agree:  (a) not to file against any Defendant Releasee any of the Plaintiffs' Released Claims, or re-file any Claim brought in this Action or *Ferguson II*; and (b) that the foregoing covenant and agreement shall be a complete defense to any such Claims against any Defendant Releasee.  The Named Plaintiffs, on behalf of Plaintiff Releasors, further agree that, in any action judicially determined to have been brought against any Defendant Releasee in violation of this covenant not to sue, attorneys' fees, expenses, and other costs of such litigation will be recoverable as damages by any Defendant Releasee subject to such an action.

4.3 Claims Not Released.  This Settlement Agreement does not in any way bar, limit, waive, or release any right by Plaintiffs to assert and/or recover any moneys resulting from (a) any individual claim to vested benefits that are otherwise due under the terms of the Plan, or (b) any claims asserted by Plaintiffs against the DST Defendants or Robert Goldfarb.

## 5.   <u>SETTLEMENT ADMINISTRATOR</u>

As will be provided in the Preliminary Approval Order, the Settlement Administrator shall be appointed to implement the Settlement and Plan of Allocation contemplated by this Settlement Agreement.  All Settlement Administration Expenses, including the Settlement Administrator's fees and expenses, will be paid from the Qualified Settlement Fund.

## 6.   <u>NONDISPARAGEMENT</u>

The Settling Parties agree that they shall not make or publish intentionally any statement (in oral, written, electronic, or any other form) which would libel or slander any of Plaintiff Releasors or Defendant Releasees.  Notwithstanding the foregoing and subject to the restrictions imposed by Section 7, there shall be no restriction on the Settling Parties and their Counsel's right to publish information or statements about the Settlement in furtherance of the Settlement and disclosing the existence of the Settlement on Class Counsel's website or resume or in other court filings.

## 7.   <u>STATEMENTS TO THE PUBLIC</u>

The Settling Parties and their Counsel shall not voluntarily seek to publish information or statements about the Settlement, except in judicial proceedings or posting the existence of the Settlement on Class Counsel's website or resume.  If questioned about the Settlement, other than in judicial proceedings, the Settling Parties and their Counsel agree to decline to answer, or to reply by stating that all claims have been resolved by agreement.  The Settling Parties and their Counsel, except in furtherance of the Settlement, shall make no statements that express or imply that Defendant had any liability or culpability for matters in the Action or the Related Proceedings.  Nothing in this provision shall interfere with, restrict or impair in any respect Class Counsel's right and ability to communicate with Class Members regarding this Action, the Related Proceedings and the Settlement.

## 8.    REPRESENTATIONS AND WARRANTIES

8.1    No Assignment.  Named Plaintiffs represent and warrant that they have not assigned or otherwise transferred any interest in any Plaintiffs' Released Claims against Defendant, and further covenant that they will not assign or otherwise transfer any interest in any Plaintiffs' Released Claims.  Likewise, Defendant represents and warrants that it has not assigned or otherwise transferred any right or interest related to the Action, and that it will not assign or otherwise transfer any interest in any right or interest related to the Action.

8.2    No Surviving Claims.  Named Plaintiffs represent and warrant that they shall have no surviving Claim or cause of action against any Defendant Releasees with respect to or relating to the Plaintiffs' Released Claims.

8.3    Voluntariness.

8.3.1    The Settling Parties each represent and warrant that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel; in executing this Settlement Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; they are not relying upon and have not been influenced to any extent whatsoever in executing this Settlement Agreement by any representations, statements, or omissions pertaining to any of the foregoing matters by any other Settling Party or its representatives; they knowingly waive any claim that this Settlement Agreement was induced by any misrepresentation or nondisclosure; and each Settling Party assumes the risk of mistake as to facts or law.

8.3.2    The Settling Parties each represent and warrant that they have carefully read the contents of this Settlement Agreement; they have made such investigation of the facts pertaining to the Settlement, this Settlement Agreement, and all of the matters pertaining thereto as they deem necessary; and this Settlement Agreement is signed freely by each Person executing this Settlement Agreement on behalf of each of the Settling Parties.

8.4    Signatories' Authority.  Each individual executing this Settlement Agreement on behalf of any other Person does hereby personally represent and warrant to the other Settling Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal which such individual represents or purports to represent.

## 9.    NO ADMISSION OF LIABILITY

The Settling Parties understand and agree that this Settlement Agreement embodies a compromise and settlement of disputed claims, and that nothing in this Settlement Agreement, including the furnishing of consideration for this Settlement Agreement, shall be deemed to constitute any finding of fiduciary status under ERISA or wrongdoing by Defendant, or give rise

to any inference of fiduciary status under ERISA or wrongdoing or admission of wrongdoing or liability in this or any other proceeding.  This Settlement Agreement and the Total Settlement Payment made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal or factual.  Moreover, Defendant specifically denies any and all such liability or wrongdoing.  Neither the fact nor the terms of this Settlement Agreement shall be offered or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce this Settlement Agreement or arising out of or relating to the Final Approval Order.  Similarly, nothing in this Settlement Agreement shall be deemed an admission or concession by the Plaintiffs that Defendant was not a fiduciary under ERISA, that Defendant did not violate ERISA or that the claims asserted in the Action are otherwise meritorious.  Moreover, nothing in this Settlement Agreement shall be construed or treated as an admission by Defendant that the Plan of Allocation reflects the damages, if any, suffered by the Class, or as to the manner in which any judgment credit should properly be calculated or applied by the Court.  In any event, nothing herein shall be construed as an admission by the Named Plaintiffs that any of their Claims are without merit.

## 10.   **SETTLEMENT CONSIDERATION – THE QUALIFIED SETTLEMENT FUND**

10.1   Funding the Qualified Settlement Fund.  No later than five (5) business days after the entry of the Preliminary Approval Order, Class Counsel shall:  (a) establish at a Financial Institution through the Settlement Administrator, an account (the "Escrow Account") for the purpose of holding the Total Settlement Payment; and (b) provide notice to Defendant of the information needed to deposit the First Settlement Payment and Second Settlement Payment into the Escrow Account.  Defendant shall transmit to the Financial Institution a check in the amount of the First Settlement Payment within fifteen (15) business days from the later of:  (a) entry of the Preliminary Approval Order by the Court; or (b) receipt from Class Counsel of the information needed to issue the Total Settlement Payment (identity and address of the payee, W-9 form and taxpayer identification number).  Such amount shall, in the first instance, be used to pay the Independent Fiduciary Fees and Costs and Settlement Administration expenses actually and reasonably incurred. Defendant shall transmit to the Financial Institution a check in the amount of the Second Settlement Payment for deposit into the Escrow Account within thirty (30) calendar days after the later of the Effective Date of Settlement or the date any order with respect to Attorneys' Fees and Expenses and Case Contribution Award(s) is Final.  In the event that the Final Approval Order and Judgment is reversed, including through some other proceeding, then the Total Settlement Payment, including any interest, less any administrative costs already incurred, shall be returned to Defendant.

10.2   The Escrow Account shall be governed by an escrow agreement entered into between Class Counsel and the Settlement Administrator.  The monies in the Escrow Account shall be considered a Qualified Settlement Fund, described below.  The Qualified Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds therein are distributed pursuant to this Settlement Agreement and/or further order(s) of the Court.

10.3   The Qualified Settlement Fund shall include and retain interest and income earned thereon, for the benefit of the Settlement Class, and shall be invested only in United

States Treasury securities and/or securities of United States agencies backed by the full faith and credit of the United States Treasury with a maturity period not to exceed ninety (90) days, repurchase agreements collateralized by such securities, and mutual funds or money market accounts, provided that such funds or accounts invest exclusively in the foregoing securities.

10.4    The Settling Parties agree that the Qualified Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code and Treasury regulations promulgated thereunder and that the Settlement Administrator shall structure and manage it as such.  The Settlement Administrator shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate for the Qualified Settlement Fund.  The Settlement Administrator also shall be solely responsible for causing payment to be made from the Qualified Settlement Fund of any Taxes owed with respect to the Qualified Settlement Fund.  Defendant Releasees shall not have any liability or responsibility for any such Taxes.  Upon written request, Defendant will provide to the Settlement Administrator the statement described in Treasury Regulation § 1.468B-3(e).  The Settlement Administrator, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph.

10.5    The Settling Parties agree that the Qualified Settlement Fund shall be used to pay any and all:  (a) Taxes; (b) Settlement Administration Expenses; (c) Case Contribution Award(s) awarded by the Court; (d) Independent Fiduciary Fees and Costs; and (e) Attorneys' Fees and Expenses awarded by the Court.  Defendant shall have no responsibility for the administration of the Qualified Settlement Fund or for payment of any costs and/or expenses referenced in items (a) through (e) of this Section 10.  The balance remaining in the Qualified Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Settlement Class members pursuant to the Plan of Allocation.

10.6    Any tax returns prepared for the Qualified Settlement Fund (as well as the election set forth therein) shall reflect that all Taxes on the income earned by the Qualified Settlement Fund shall be paid out of the Qualified Settlement Fund as provided herein.  Defendant Releasees, Plaintiff Releasors, and Class Counsel shall not have any responsibility or liability for the acts or omissions of the Settlement Administrator or its agents with respect to the payment of Taxes, as described herein.

10.7    Sole Monetary Contribution.  The Total Settlement Payment shall be the full and sole monetary contribution and consideration made by or on behalf of Defendant Releasees in connection with the Action, *Ferguson II* and the Settlement.  The Total Settlement Payment specifically satisfies any and all claims for costs and attorneys' fees by Class Counsel, Case Contribution Award(s) to Named Plaintiffs, Settlement Administration Expenses, Independent Fiduciary Fees and Costs, and Taxes, in addition to any amounts to be distributed to Settlement Class members pursuant to this Settlement Agreement.  Except as set forth in Section 12, or as otherwise specified in this Settlement Agreement, the Settling Parties shall bear their own costs and expenses (including attorneys' fees) in

17

connection with effectuating the Settlement and securing all necessary Court orders and approvals with respect to same.

## 11.   DISPUTE RESOLUTION

If Plaintiffs and Defendant disagree as to whether each and every condition set forth in Section 3 has been satisfied or waived, they shall promptly confer in good faith and, if unable to resolve their differences within five (5) business days thereafter, shall present their disputes for mediation to a mediator to be agreed upon by Named Plaintiffs and Defendant.  No portion of the Total Settlement Payment shall be paid (unless already paid) in the event of such a dispute until it is resolved.

## 12.   SETTLEMENT ADMINISTRATOR; PAYMENT OF CLASS NOTICE AND SETTLEMENT ADMINISTRATION EXPENSES; PLAN OF ALLOCATION

12.1   The Settlement Administrator shall discharge its duties under Class Counsel's supervision and subject to the jurisdiction of the Court.  Except as otherwise expressly provided herein, Defendant Releasees shall have no responsibility whatsoever for the administration of the Settlement, and shall have no liability whatsoever to any Person, including, but not limited to, the Settlement Class members or Class Counsel, in connection with any such administration.  Class Counsel shall cause the Settlement Administrator to mail the Class Notice to Settlement Class members.

12.2   Following the deposit of the First Settlement Payment into the Escrow Account, Class Counsel may pay from the Qualified Settlement Fund, without further approval from Defendant or further order of the Court, all Settlement Administration Expenses actually and reasonably incurred.  In the event that the Settlement is terminated pursuant to the terms of this Settlement Agreement, all Settlement Administration Expenses actually paid or incurred will not be returned or repaid to Defendant.

12.3   Except as provided in Sections 12.2 and 13, no distribution of any part, or all, of the Qualified Settlement Fund shall be made until the Financial Institution has received:  (a) a notice signed by Class Counsel directing that the Qualified Settlement Fund be disbursed; or (b) a Court Order, directing that the Qualified Settlement Fund be disbursed.

12.4   Plan of Allocation.  The distribution of the Net Settlement Fund to the Settlement Class members shall be made in accordance with the Plan of Allocation to be proposed by Class Counsel and approved by the Court.

12.5   Prior to submission to the Court along with the Motion for Preliminary Approval of Settlement and of the Class Notice and Summary Notice, Plaintiffs shall provide a copy of the Plan of Allocation to Defendant for review and comment.  Defendant shall have no responsibility or liability for calculating the amounts payable to the Settlement Class members.  Nor shall Defendant have any responsibility or liability for distributing the Net Settlement Fund to the Settlement Class members.

12.6    Any and all expenses of the implementation of the Settlement and of the Plan of Allocation shall be paid from the Qualified Settlement Fund.

12.7    Notwithstanding anything in this Settlement Agreement to the contrary, the Plan of Allocation is a matter separate and apart from the Settlement between the Settling Parties, and no decision by the Court concerning the Plan of Allocation shall affect the validity of the Settlement or finality of the proposed Settlement in any manner.

12.8    The Settlement Administrator shall be responsible for implementing the Plan of Allocation and distributing the Net Settlement Fund to Settlement Class members pursuant to the approved Plan of Allocation and any related order of the Court.  The Settlement Administrator shall be exclusively responsible and liable for calculating the amounts payable to the Settlement Class members, except to the extent any liability or Claims related to the calculation of amounts payable arise from inaccurate or incomplete data provided to the Settlement Administrator.  The Settlement Administrator shall send a spreadsheet showing its calculations to Class Counsel and Defense Counsel at least five (5) business days before any distribution is made for comment and review.

12.9    Neither Defendant nor Class Counsel shall have any responsibility or liability for calculating the amounts payable to the members of the Settlement Class.  Nor shall Defendant or Class Counsel have any responsibility or liability for distributing the Net Settlement Fund to the Settlement Class members.

12.10   In the event that Defendant or Class Counsel determines that it is necessary to modify the Plan of Allocation, Class Counsel and Defendant shall jointly discuss such modification and determine whether the modification is reasonable and appropriate under the circumstances.  The Settling Parties will jointly petition the Court for approval of any such material modification.

12.11   All inquiries by the Settlement Class members concerning the amount distributed to a particular Settlement Class member shall be handled in the first instance by Class Counsel.  Class Counsel and Defendant shall work cooperatively to resolve any such inquiries.

### 13.    ATTORNEYS' FEES AND EXPENSES; CASE CONTRIBUTION AWARDS

13.1    Application for Fees, Expenses, and Case Contribution Award(s).  Class Counsel shall petition the Court no later than forty-five (45) days prior to the Fairness Hearing for an award of attorneys' fees and approval of Case Contribution Award(s), and for reimbursement of expenses, to be paid from the Qualified Settlement Fund.  The Case Contribution Award(s) and attorneys' fees, if any amounts are awarded by the Court, shall be paid solely from the Qualified Settlement Fund.  Defendant Releasees expressly agree not to contest or take any position with respect to any application for attorneys' fees and expenses incurred by Class Counsel with respect to this Settlement, and acknowledge that these matters are left to the sound discretion of the Court.  Defendant Releasees also expressly agree to take no position with respect to the Case Contribution Award(s).  The Settling Parties expressly agree that the Court's disposition of Case

Contribution Award(s) and attorneys' fees and expenses will not be a reason to terminate the Settlement.

13.2    Disbursement of Fees and Expenses.  Attorneys' Fees and Expenses as awarded by the Court shall be payable to Class Counsel from the Qualified Settlement Fund following the deposit of the Second Settlement Payment into the Escrow Account, regardless of the existence of any objection to or appeal of the Settlement and/or the award of Attorneys' Fees and Expenses.

13.3    Disbursement of Case Contribution Award(s).  The Case Contribution Award(s) shall be payable from the Qualified Settlement Fund following the deposit of the Second Settlement Payment into the Escrow Account and shall be in addition to any portion of the Net Settlement Fund the Named Plaintiffs would otherwise be entitled to receive as Settlement Class members.

## 14.    TERMINATION OF THE SETTLEMENT AGREEMENT

14.1    Termination by Defendant.  Defendant may terminate this Settlement Agreement if, before the issuance of the Preliminary Approval Order, and provided that Class Counsel and Defendant are given a reasonable amount of time to negotiate a means to nevertheless proceed with this Settlement: (i) a Settlement Class member brings a Plaintiffs' Released Claim against any Defendant Releasee, or notifies any Defendant Releasee that it intends to file such a Plaintiffs' Released Claim; (ii) a Participant who has been excluded from the Settlement Class brings a Plaintiffs' Released Claim against any Defendant Releasee, or notifies any Defendant Releasee that it intends to file such a Plaintiffs' Released Claim; (iii) the DST Defendants bring (a) any Claims against Defendant Releasees for indemnity, contribution or under any other theory arising out of the subject matter of this Action or any Related Proceeding, or (b) any Claims arising out of or related to Plaintiffs' Released Claims, or notifies any Defendant Releasee that it intends to file such a claim; (iv) Goldfarb brings (a) any Claims against Defendant Releasees for indemnity, contribution or under any other theory arising out of the subject matter of this Action or any Related Proceeding, or (b) any Claims arising out of or related to Plaintiffs' Released Claims, or notifies any Defendant Releasee that he intends to file such a claim; or (v) the Court does not enter the Preliminary Approval Order within ninety (90) days of the Settlement Agreement Execution Date.  In the event Defendant intends to exercise its right to terminate the Settlement Agreement pursuant to this Section 14.1, Defendant shall provide written notice to Class Counsel disclosing its intention to terminate and such termination will become effective ten (10) days after such notice is provided if the Settling Parties fail to agree in the interim to nevertheless proceed with this Settlement.

14.2    Automatic Termination.  This Settlement Agreement shall automatically terminate, and thereupon become null and void, in the following circumstances:

14.2.1  If the Court declines to approve the Settlement, and if such order declining approval has become Final, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the date that any such order

becomes Final, provided, however, that if the Court declines to approve the Settlement for any reason, the Settling Parties shall negotiate in good faith to cure any deficiency identified by the Court, and further provided that if necessary to cure any such deficiency, Class Counsel shall re-submit within a reasonable time the Preliminary or Final Approval Motion with an additional or substitute member of the Settlement Class as a named Class representative.

14.2.2 If the Court issues an order in the Action modifying the Settlement Agreement, and if within thirty-one (31) days after the date of any such ruling the Settling Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Court or by the Settling Parties, then, provided that no appeal is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the order referenced in this Section.

14.2.3 In the event that the Court declines to grant final approval of the Settlement Agreement, and the Settlement Agreement is not modified by agreement of the Settling Parties, Defendant agrees that this Settlement Agreement is not terminated so long as Plaintiffs timely appeal/petition the appeals court for review.  Defendant agrees not to oppose any appeal by Plaintiffs of the Court's or any appellate court's decision(s), any petition for writ of *certiorari* to the Supreme Court of the United States, or any substantive filings made by Plaintiffs within the Supreme Court docket where *certiorari* is accepted, to have the Settlement finally approved.  If the United States Court of Appeals for the Second Circuit reverses the Court's order approving the Settlement, and if within ninety-one (91) days after the date of any such ruling the Settling Parties have not agreed in writing to proceed with all or part of the Settlement as modified by the Second Circuit or by the Settling Parties, then, provided that no appeal or petition for writ of certiorari to the Supreme Court is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the ninety-first day after issuance of the Second Circuit order referenced in this Section.

14.2.4 If the Supreme Court of the United States reverses or remands a Second Circuit order approving the Settlement, and if within thirty-one (31) days after the date of any such ruling the Settling Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Supreme Court or by the Settling Parties, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the U.S. Supreme Court order referenced in this Section.

14.3   Consequences of Termination of the Settlement Agreement.  If the Settlement Agreement is terminated and rendered null and void for any reason, the following shall occur.

14.3.1 Within three (3) days after the date of termination of the Settlement Agreement, Class Counsel shall notify the Settlement Administrator in writing to return to the

Defendant any unspent monies received from the Qualified Settlement Fund, and direct the Settlement Administrator to effect such return as soon as possible.

14.3.2   The Action shall for all purposes with respect to the Settling Parties revert to its status as of December 23, 2020.

14.3.3   All Releases given or executed pursuant to the Settlement Agreement shall be null and void; none of the terms of the Settlement Agreement shall be effective or enforceable, except those provisions providing for reimbursement of costs as set forth in Section 14.3.1; neither the fact nor the terms of the Settlement Agreement shall be offered or received in evidence in this Action or in any other action or proceeding for any purpose, except in an action or proceeding arising under this Settlement Agreement.

## 15.   <u>MISCELLANEOUS PROVISIONS</u>

15.1   Jurisdiction.  The Court shall retain jurisdiction over all Settling Parties to resolve any dispute that may arise regarding this Settlement Agreement or the orders and notices referenced in Section 3, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement.  The Final Approval Order shall expressly retain jurisdiction as set forth in this Section.

15.2   Governing Law.  This Settlement Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case New York State Law will apply without regard to conflict of law principles.

15.3   Severability.  The provisions of this Settlement Agreement are not severable.

15.4   Amendment.  Before entry of a Final Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Settling Parties.  Following entry of a Final Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Settling Parties, and approved by the Court.

15.5   Waiver.  The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party.  The waiver by any party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

15.6   Construction.  None of the Settling Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

15.7    Principles of Interpretation.  The following principles of interpretation apply to this Settlement Agreement:

15.7.1   Headings.  The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

15.7.2   Singular and Plural.  Definitions apply to the singular and plural forms of each term defined.

15.7.3   Gender.  Definitions apply to the masculine, feminine, and neuter genders of each term defined.

15.7.4   References to a Person.  References to a Person are also to the Person's permitted successors and assigns.

15.7.5   Terms of Inclusion.  Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

15.8    Further Assurances.  Each of the Settling Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

15.9    Survival.  All representations, warranties, and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

15.10   Notices.  Any notice, demand, or other communication under this Settlement Agreement (other than notices to Settlement Class members) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipient as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier:

IF TO NAMED PLAINTIFFS:          James E. Miller
                                 Laurie Rubinow
                                 Shepherd, Finkelman, Miller & Shah, LLP
                                 65 Main Street
                                 Chester, CT 06412
                                 Telephone: (860) 526-1100
                                 Facsimile:  (866) 300-7367
                                 jmiller@sfmslaw.com
                                 lrubinow@sfmslaw.com

IF TO DEFENDANT:          Robert J. Ward
                          Schulte Roth & Zabel LLP
                           919 Third Avenue
                          New York, NY 10022
                          Telephone: (212) 756-2000
                          Facsimile:  (212) 593-5955
                          robert.ward@srz.com


Any Party may change the address at which it is to receive notice by written notice delivered to the other Settling Parties in the manner described above.

15.11   Entire Agreement.  This Settlement Agreement contains the entire agreement among the Settling Parties relating to this Settlement.  No representations, agreements, understandings, or inducements (whether written, unwritten, verbal, or otherwise) shall affect the construction or enforcement of this Settlement Agreement (including all claims released herein), it being agreed that the rights of the Settling Parties hereto against any opposing party hereto shall be governed exclusively by this Settlement Agreement.

15.12   Counterparts.  This Settlement Agreement may be executed by exchange of faxed or scanned executed signature pages, and any signature transmitted by facsimile or by email attachment for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement.  This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

15.13   Binding Effect.  This Settlement Agreement binds and inures to the benefit of the parties hereto, their assigns, heirs, administrators, executors, and Successors-in-Interest.

IN WITNESS HERETO, the Settling Parties have executed this Settlement Agreement on the dates set forth below.

                          /s/ James E. Miller
                          James E. Miller
                          Laurie Rubinow
                          Shepherd, Finkelman, Miller & Shah, LLP
                          65 Main Street
                          Chester, CT 06412
                          Telephone: (860) 526-1100
                          Facsimile:  (866) 300-7367
                          Email: jmiller@sfmslaw.com
                                 lrubinow@sfmslaw.com

                          Attorneys for Named Plaintiffs

                          Dated: January 8, 2021

/s/ Robert J. Ward

Robert J. Ward
Frank W. Olander
Schulte Roth & Zabel LLP
 919 Third Avenue
New York, NY 10022
Telephone: (212) 756-2000
Facsimile:  (212) 593-5955
Email: robert.ward@srz.com
         frank.olander@srz.com

Attorneys for RCG

Dated: January 8, 2021