**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MICHAEL L. FERGUSON, | : | CIVIL ACTION NO. |
| MYRL C. JEFFCOAT and DEBORAH SMITH, | : | 1:17-cv-06685-ALC-BCM |
| Individually and as Representatives of a Class of | : | |
| Similarly Situated Plan Participants and | : | |
| Beneficiaries, and on behalf of the | : | |
| DST SYSTEMS, INC. 401(K) PROFIT | : | |
| SHARING PLAN, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| RUANE CUNNIFF & GOLDFARB INC.; | : | |
| DST SYSTEMS, INC.; THE ADVISORY | : | |
| COMMITTEE OF THE DST SYSTEMS, INC. | : | |
| 401(K) PROFIT SHARING PLAN and THE | : | |
| COMPENSATION COMMITTEE OF THE | : | |
| BOARD OF DIRECTORS OF DST SYSTEMS, | : | |
| INC., | : | |
| | : | |
| Defendant. | : | April 5, 2021 |
| _____ | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**RENEWED MOTION FOR CLASS CERTIFICATION**

## **TABLE OF CONTENTS**

Table of Authorities ....................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................. 2

I.      The Plan and the Parties.......................................................................................... 3

II.     Plaintiffs' Claims ................................................................................................... 4

        A.      The PSA and the Valeant Investment ...................................................... 4

        B.      The Relationship between RCG and DST ................................................ 5

        C.      Failure to Monitor ................................................................................... 6

III.    The Proposed Class Definition ............................................................................. 7

ARGUMENT ................................................................................................................... 8

I.      Standard of Review................................................................................................. 8

II.     Plaintiffs Meet the Requirements of Rule 23(a) ................................................... 8

        A.      Numerosity............................................................................................... 9

        B.      Commonality............................................................................................ 9

        C.      Typicality ............................................................................................... 12

        D.      Adequacy ............................................................................................... 14

                1.      Plaintiffs have no Conflicts with Other Class Members and will
                        Vigorously Prosecute this Action on Behalf of the Class........................ 14

                2.      Plaintiffs' Counsel have no Conflicts with the Class, are Qualified and
                        Experienced, and will Vigorously Prosecute this Action for the Class .... 15

III.    Plaintiffs and the Proposed Class Meet the Requirements of Rule 23(b)(1) ................... 16

IV.     *Cooper* Confirms the Propriety of Class Certification ................................... 20

        CONCLUSION....................................................................................................... 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................. 8, 9, 16, 17

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013) ......................................................................... 8

*Babcock v. Computer Associates Intern., Inc.*,
   212 F.R.D. 126 (E.D.N.Y. 2003) ...................................................... 11

*Baffa v. Donaldson*,
   222 F.3d 52 (2d Cir. 2000) .............................................................. 15

*Caridad v. Metro-N. Commuter R.R.*,
   191 F.3d 283 (2d Cir. 1999) ............................................................ 12

*Caufield v. Colgate-Palmolive*,
   2017 WL 3206339 (S.D.N.Y. July 27, 2017) ..................................... 17

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) .............................................................. 9

*Coan v. Kaufman*,
   457 F.3d 250 (2d Cir. 2006) ..................................................... 2, 8, 21

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ............................................................... 9

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
   990 F.3d 173 (2d Cir. 2021) ..................................................... passim

*Cunningham v. Cornell Univ.*,
   2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) ................................. passim

*Donovan v. Bierwirth*,
   680 F.2d 263 (2d Cir. 1982) .............................................................. 1

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) ......................................................................... 9

*In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
   281 F.R.D. 134 (S.D.N.Y. 2012) ....................................................... 9

*In re Beacon Assocs. Litig.*,
   282 F.R.D. 315 (S.D.N.Y. 2012) ...................................................... 1, 16

*In re Citigroup Pension Plan ERISA Litig.*,
   241 F.R.D. 172 (S.D.N.Y. 2006) .................................................... 17, 18

*In re Crysen/Montenay Energy Co.*,
   226 F.3d 160 (2d Cir. 2000)................................................................... 4

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. Jul. 27, 2007) ....................................... 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ............................................................. 12, 14

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .............................................. 1, 10, 16

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
   2017 WL 1273963 (S.D.N.Y. May 31, 2017)...................................... 10

*In re MF Global Holdings*,
   310 F.R.D. 230 (S.D.N.Y. 2015) ......................................................... 8

*In re Omnicom Group, Inc. Securities Litig.*,
   2007 WL 1280640 (S.D.N.Y. Apr. 30, 2007) ...................................... 10

*In re Oxford Health Plan, Inc.*,
   191 F.R.D. 369 (S.D.N.Y. 2000) ......................................................... 12

*In re Petrobras Securities*,
   862 F.3d 250 (2d Cir. 2017).................................................................. 8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   *163* F.R.D. 200 (S.D.N.Y. 1995) ........................................................ 10

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d. Cir. 2009)........................................................ 1, 10, 16

*In re US FoodService Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013).................................................................. 9

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)................................................................ 14

*Krueger v. Ameriprise Fin., Inc.*,
   304 F.R.D. 559 (D. Minn. 2014)......................................................... 13

iii

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
   323 F.R.D. 145 (S.D.N.Y. Nov. 27, 2017) ................................................ 11, 12, 18, 19

*Mass Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985) ................................................................................... 7, 14

*McIntire v. China MediaExpress Holdings, Inc.*,
   38 F. Supp. 3d 415 (S.D.N.Y. 2014) ............................................................ 10

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
   2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) .......................................... 11, 14, 18, 19

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) .................................................................................... 18, 19

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) .......................................................................... 8

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) .......................................................................... 12

*Sacerdote v. New York Univ.*,
   2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) ........................................... passim

*Surowitz v. Hilton Hotels Corp.*,
   383 U.S. 363 (1966) .................................................................................... 15

*Urakhchin v. Allianz Asset Management of America, L.P.*,
   2017 WL 2655678 (C.D. Cal. June 15, 2017) ............................................. 19

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................... passim

**Statutes**

29 U.S.C. § 1001 ................................................................................................ 1

29 U.S.C. § 1002 ............................................................................................ 3, 4

29 U.S.C. § 1002(2)(A) and § 1002(34) ............................................................. 3

29 U.S.C. § 1002(38) ........................................................................................ 3

29 U.S.C. § 1102 ............................................................................................ 3, 4

29 U.S.C. § 1104 ............................................................................................... 4

29 U.S.C. § 1104(a)(1) ..................................................................................... 10

29 U.S.C. § 1106 ................................................................................................................ 4

29 U.S.C. §§ 1109 ................................................................................................... 1, 2, 14

29 U.S.C. §§ 1109(a) ................................................................................................. 7, 14

29 U.S.C. §§ 1132(a)(2) ................................................................................... 1, 2, 7, 14

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... passim

Fed. R. Civ. P. 23(a) ........................................................................... 8, 9, 16, 17, 20, 22

Fed. R. Civ. P. 23(a)(1) ................................................................................................... 9

Fed. R. Civ. P. 23(a)(2) ................................................................................................... 9

Fed. R. Civ. P. 23(a)(3) ................................................................................................. 12

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 14, 16

Fed. R. Civ. P. 23(b) ................................................................................................. 8, 16

Fed. R. Civ. P. 23(b)(1) ................................................................. 1, 16, 17, 19, 20, 22

Fed. R. Civ. P. 23(b)(1)(A) ..................................................................................... 17, 19

Fed. R. Civ. P. 23(b)(1)(B) ............................................................................... 18, 19, 22

Fed. R. Civ. P. 23(g) ....................................................................................... 15, 16, 22

## PRELIMINARY STATEMENT

Plaintiffs, Michael L. Ferguson, Myrl C. Jeffcoat and Deborah Smith ("Plaintiffs"),

respectfully submit this Memorandum of Law ("Memorandum") in support of their Renewed

Motion for Class Certification ("Motion").[1]

In this representative action on behalf of the DST Systems, Inc. 401(k) Profit Sharing

Plan (the "Plan"), Plaintiffs allege, *inter alia*, that Defendants[2] breached fiduciary duties owed to

the Plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et*

*seq.*, a standard that is "the highest duty known to the law."  *Donovan v. Bierwirth*, 680 F.2d

263, 272 n.8 (2d Cir. 1982).  To redress breaches of fiduciary duty, ERISA authorizes a plan

participant to bring an action in a representative capacity on behalf of a plan to enforce ERISA's

fiduciary duties and remedial provisions.  *See* 29 U.S.C. §§ 1132(a)(2), 1109(a).  "[T]he

distinctive 'representative capacity' aspect of ERISA participant and beneficiary suits makes

litigation of this kind 'a paradigmatic example of a [Rule 23](b)(1) class."  *In re Beacon Assocs.*

*Litig.*, 282 F.R.D. 315, 342 (S.D.N.Y. 2012) (alteration in original) (quoting *In re Global*

*Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004); *see also In re Schering*

---

[1]Plaintiffs filed their original Motion for Class Certification on April 10, 2020 (ECF Nos. 126, 127), which Ruane, Cunniff & Goldfarb Inc. ("RCG"), the arbitration claimants, and the plaintiffs in the *Canfield* and *Mendon* actions opposed (ECF Nos. 140, 183).  The Court held oral argument on Plaintiffs' original Motion for Class Certification on August 13, 2020.  Since then, Plaintiffs have reached settlement agreements with Defendants, RCG, DST Systems, Inc., the Advisory Committee of the DST Systems, Inc. 401(k) Profit Sharing Plan ("Advisory Committee"), and the Compensation Committee of the Board of Directors of DST Systems, Inc. ("Compensation Committee," with DST and the Advisory Committee, "DST Defendants," and together with RCG, "Defendants"), and Robert D. Goldfarb, the defendant in the related action captioned *Ferguson et al. v. Robert D. Goldfarb*, Case No. 1:20-cv-7092 (S.D.N.Y.).  In addition, the Second Circuit issued an opinion in *Cooper v. Ruane Cunniff & Goldfarb*, No. 17-2805 (2d Cir. Mar. 4, 2021).  The Court ordered Plaintiffs to renew their motions for class certification and leave to file their Third Amended Complaint ("TAC"), addressing the effect that the *Cooper* opinion has on the motions (ECF No. 296).

[2]Unless otherwise indicated, defined terms shall have the same as in the proposed TAC.

*Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d. Cir. 2009) (collecting cases).  Indeed, Plaintiffs' claims arise from Defendants' plan-level conduct and Plaintiffs seek remedies due to the Plan on behalf of all participants.[3]

The Second Circuit's recent opinion in *Cooper v. Ruane Cunniff & Goldfarb Inc.* ("*Cooper*") confirms that this case squarely fits the paradigm and is ideally suited for class certification.  Specifically, the Second Circuit in *Cooper* held that the claims at issue in this action are not arbitrable, eliminating any doubt that that the prerequisites of Federal Rule of Civil Procedure 23 are satisfied.  *See* 990 F.3d 173, 183-84 (2d Cir. 2021).  Moreover, the Second Circuit made clear that individual arbitration is altogether inconsistent with the representative nature of claims brought under ERISA §§ 409 and 502(a)(2) [29 U.S.C. §§ 1109 and 1132(a)(2)], as well as the Second Circuit's adequacy-of-representation requirement under *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), and ERISA's protective purposes.  *See Cooper*, 990 F.3d at 184-85.  Indeed, *Cooper* confirms that class certification is a preferred means of protecting the interests of plan participants under these circumstances.  *See id.*

In sum, because class certification will enable this Action to proceed efficiently and transparently toward resolution, and because each of the prerequisites of Rule 23 are satisfied, particularly in light of the Second Circuit's clear findings about the incompatibility of arbitration with ERISA's remedial scheme and as applied here, the Court should certify the proposed Class.

## **BACKGROUND**

The facts of this case are recited in detail in the proposed TAC.  Accordingly, this Memorandum will only restate the facts relevant to Plaintiffs' Motion.

---

[3]As detailed below, the proposed Class excludes any plan participant or beneficiary who has ever been a member of the Advisory Committee or Compensation Committee, or otherwise served as a fiduciary of the Plan during the Class Period (defined below).

I.      **The Plan and the Parties**

The Plan is an individual account employee pension benefit plan under 29 U.S.C. §

1002(2)(A) and § 1002(34).  TAC ¶¶ 8-11.  At all pertinent times, the Plan consisted of two

components: a participant-directed 401(k) portion, and a Profit Sharing Account ("PSA"), in

which the assets were invested by the Trustee of the Plan, as advised by an investment advisory

firm (*i.e.* RCG) selected and monitored by the Advisory Committee of the DST Systems, Inc.

401(k) Profit Sharing Plan ("Advisory Committee").  *Id.*, at ¶ 22.  The PSA assets were not

participant-directed.  *Id.*  The PSA was terminated in 2016 when the Plan terminated the services

of RCG, at which time all of the investments in the Plan became participant directed.  *Id.*

The Plan is among the largest retirement savings plans in the United States.  *See id.*, at ¶

12.  As of year-end 2014, the Plan had more than $1.4 billion in total assets and over 9,400

participants with account balances.  *Id.*, at ¶ 12.  As of year-end 2016, the Plan had slightly over

$1 billion in total assets (a decline in value of over $300 million from the prior year) and more

than 10,000 participants with account balances.  *Id.*  The Plan currently has approximately $1.15

billion in total assets.  *Id*.

Plaintiffs are each participants in the Plan.  *Id*, at ¶¶ 8-11.  RCG is an investment firm that

served as investment adviser and fiduciary to the Plan pursuant to 29 U.S.C. § 1002 (and, more

specifically, Section 3(38) of ERISA, 29 U.S.C. § 1002(38)), until approximately August, 2016,

when its services to the Plan were terminated.  TAC ¶ 13.  DST is the Plan sponsor and Plan

administrator, a designated fiduciary of the Plan, and a fiduciary under ERISA pursuant to 29

U.S.C. §§ 1002, 1102.  TAC ¶ 14.  The Advisory Committee is a named fiduciary under the Plan

and under ERISA pursuant to 29 U.S.C. §§ 1002, 1102.  The Compensation Committee has the

sole authority to appoint and remove members of the Advisory Committee, amend or terminate,

in whole or part, the Plan or the trust holding the Plan assets, and is a named fiduciary under the Plan and under ERISA pursuant to 29 U.S.C. §§ 1002, 1102.

## II.    Plaintiffs' Claims

In light of the Court's September 18, 2019 Opinion & Order (ECF No. 96), which granted Defendants' partial motion to dismiss Plaintiffs' 401(k)-related allegations,[4] Plaintiffs' remaining claims allege, *inter alia*, that Defendants engaged in severe breaches of fiduciary duties, in violation of ERISA § 404 [29 U.S.C. § 1104], and prohibited transactions, in violation of ERISA § 406 [29 U.S.C. § 1106], with respect to investments in the PSA portion of the Plan. *See* 29 U.S.C. §§ 1104, 1106; TAC ¶¶ 66-81.  The following summary of Plaintiffs' claims is based upon those pled in the TAC.

### A.    The PSA and the Valeant Investment

In or about April 2010, RCG began purchasing shares of Valeant ("VRX") on behalf of the PSA.  TAC ¶ 42.  By year-end 2010, RCG had purchased a total of approximately 1,572,207 shares of Valeant on behalf of the PSA.  *Id.*  By March 31, 2011, the value of Valeant stock in the PSA had grown to 15% of the total value of the PSA and constituted the single largest investment held in the PSA.  *Id.*  By this time, if not earlier, all Defendants should have been carefully monitoring the investments in Valeant based upon these high and inappropriately risky concentration levels, though none occurred until 2015, when Valeant stock accounted for an enormous percentage of the PSA's assets.  *Id.*  According to the Plan's 2014 year-end financial statements, the PSA held approximately 30% of its assets in Valeant.  *Id.*  At times, VRX

---

[4]Plaintiffs do not waive their right to appeal that partial dismissal by excluding those claims from their proposed TAC.  *See In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000) ("We see no reason to require repleading of a claim or defense that explicitly has been denied").

accounted for nearly 50% of the value of the PSA.  *Id.*  In early 2016, VRX cratered, wiping away more than $300 million of the PSA's value from its 52-week high.  *Id.*, at ¶ 45.

Issues with Valeant were widely reported as early as 2012 and the appropriately critical press continued into 2015.  *Id.*, at ¶ 46.  These reports questioned Valeant's business model and accounting practices and suggested that short sellers were targeting VRX in light of its financial reporting practices and significant uncertainty regarding the viability of its business model.  *Id.*  Well-regarded investors challenged the prudence of investing in Valeant, and RCG was on specific notice that Valeant could not be trusted to report honestly regarding its business practices.  *Id.*  However, RCG failed to sell significant shares of VRX and mitigate the potential and then realized losses suffered by the PSA, as it sought to protect its large VRX positions through its flagship fund, the Sequoia Fund, Inc. ("Sequoia Fund"),[5] and other accounts.  *See id.*, at ¶¶ 46-49.

Plaintiffs allege that RCG, an investment adviser to the Plan and ERISA fiduciary, through its overconcentration of PSA assets in Valeant, breached its fiduciary duty to the Plan. *Id.*, at ¶ 44.

## B.     The Relationship between RCG and DST

As stated above, RCG was the sole investment adviser for the PSA.  TAC ¶¶ 22, 31. Separately, albeit relatedly, RCG has managed the Sequoia Fund for decades.  TAC ¶¶ 32.  DST has a significant financial services business itself (accounting for almost 50% of DST's revenues) and serves as the registrar and shareholder servicing agent for the Sequoia Fund.  TAC

---

[5]RCG's flagship fund, the Sequoia Fund, contained more than $25 billion in assets until RCG engaged in a misguided and reckless investment strategy focused on pursuing investments in Valeant.  TAC ¶ 13.  While the Sequoia Fund was designed for high-net-worth individuals and other sophisticated investors, certain PSA participants were told, at times, that the PSA (designed solely for retirees) was operated by RCG effectively as a clone of the Sequoia Fund.  *Id.*, at ¶ 29.

¶ 30, 35.  In this capacity, DST provides investor recordkeeping, performance communications, and other information to shareholders of the Sequoia Fund and has other administrative responsibilities to the Sequoia Fund.  *Id.*

Given the longstanding financial relationship between DST and the Sequoia Fund, the selection and retention of RCG to manage the PSA raises significant self-dealing concerns under ERISA.  TAC ¶ 36.  The Sequoia Fund paid compensation to DST and the Plan paid compensation (which Plaintiffs relatedly alleged was excessive) to the Sequoia Fund's manager, RCG, to support the Sequoia Fund's investment strategies.  *Id.*  At all pertinent times, both DST and RCG were Plan fiduciaries under ERISA and, as such, each was prohibited from using the Plan's assets in its own interests.  As a result of their conduct in connection with transactions involving the Plan and Plan assets, Plaintiffs allege that both DST and RCG have and continue to engage in prohibited transactions under ERISA.  TAC ¶¶ 71-73.

The relationship between DST, RCG and the Plan ended on July 31, 2016, upon which date RCG's position as the investment manager of the PSA was terminated.  TAC ¶ 50.  Prior to its termination on July 31, 2016, all of the PSA's investments in VRX had been liquidated – as had been the losses suffered by the Plan as a result of the investments in VRX.  *Id.*

### C.   Failure to Monitor

At all pertinent times, DST and the Advisory Committee were legally responsible for monitoring the investments undertaken by RCG in the PSA, and the Compensation Committee was legally responsible for monitoring the activities of the Advisory Committee with respect to the PSA.  *Id.*, at ¶ 55.  The Advisory Committee began belatedly monitoring RCG's investments in Valeant in 2015, at a time when the Valeant investments began to approach 50% of the value of the PSA, but failed to require RCG to take any effective actions to reduce the enormous concentration of the PSA's assets in VRX.  *Id.*, at ¶ 48.  Although the Advisory Committee took

belated and limited actions to suggest that Ruane reduce the holdings in Valeant in 2015, RCG

effectively ignored these requests and only sold less than 1% of the PSA's holdings in VRX in

September, 2015, at a time when it could have sold significant shares of VRX and largely

mitigated the losses suffered by the PSA. *Id.*

      With respect to the excessive fees that Defendants caused the Plan to pay to RCG, if the

Compensation Committee had monitored the Advisory Committee to ensure that it was receiving

competent and unbiased advice, it would have immediately discovered that the fees being paid to

RCH were grossly excessive under all of the circumstances. *See id.*, at ¶ 38.

      Plaintiffs allege that the Advisory Committee and Compensation Committee violated

their respective fiduciary duties under ERISA to monitor other fiduciaries of the Plan in the

performance of their duties. *Id.*, at ¶ 79.

## III.    The Proposed Class Definition

      ERISA authorizes any plan participant to bring an action on behalf of a plan to enforce

ERISA's fiduciary duties and remedial provisions and to recover all losses to a plan caused by a

breach of fiduciary duty. *See* 29 U.S.C. §§ 1132(a)(2), 1109(a).  Plaintiffs bring this action "in a

representative capacity on behalf of the [P]lan as a whole" to recover losses to the Plan caused

by Defendants' breaches, and to obtain equitable relief. *Mass Mut. Life Ins. Co. v. Russell*, 473

U.S. 134, 142 n.9 (1985).  Plaintiffs seek certification of the following proposed class ("Class"):

> All participants and beneficiaries of the DST Systems, Inc. 401(k) Profit Sharing
> Plan from March 14, 2010 through July 31, 2016 (the "Class Period"), excluding
> the Defendants and all other individuals who are or have ever been a member of
> the Advisory Committee of the DST Systems, Inc. 401(k) Profit Sharing Plan or
> the Compensation Committee of the Board of Directors of DST Systems, Inc. or
> otherwise served as fiduciaries of the DST Plan during the Class Period.

TAC ¶ 63.  The Class Period covers all potential claims that could be asserted against

Defendants on behalf of the Class, since RCG ceased serving as investment manager for the PSA

on July 31, 2016 (and all PSA investments in VRX had been liquidated as of that date).[6]

## ARGUMENT

### I.      Standard of Review

Class certification under Rule 23 has two primary components; a proposed class must meet the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b).  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015); Fed. R. Civ. P. 23.[7]  The requirements of Rule 23 should be interpreted liberally, with doubts resolved in favor of granting class certification.  *See In re MF Global Holdings*, 310 F.R.D. 230 (S.D.N.Y. 2015).

While the court must conduct a "rigorous analysis" to determine whether the elements of Rule 23 have been satisfied, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011), "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage."  *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).  "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied."  *Id.*

### II.     Plaintiffs Meet the Requirements of Rule 23(a)

The requirements of Rule 23(a) are commonly referred to as numerosity, commonality,

---

[6]As the Second Circuit recognized in *Coan*, "although plan participants need not always comply with Rule 23 to act as a representative of other plan participants or beneficiaries, those who do will likely be proceeding in a 'representative capacity' properly for purposes of section 502(a)(2)."  457 F.3d at 261.  Plaintiffs have, at every juncture, acted to protect the interests of the Plan and participants and beneficiaries, and they are prepared to continue to act in a representative capacity if the Court declines to certify the Class for any reason.

[7]Courts have additionally found implicit in Rule 23 a "modest threshold requirement" of ascertainability, which concerns whether the "proposed class is defined using objective criteria that establish membership within definite boundaries."  *In re Petrobras Securities*, 862 F.3d 250, 269 (2d Cir. 2017).  Here, the class is defined using objective criteria – namely, status as a participant or beneficiary of the Plan during the proposed class period (excluding fiduciaries).

typicality, and adequacy of representation.  *See Amchem*, 521 U.S. at 613; *In re US FoodService Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013).  The proposed Class satisfies the requirements of Rule 23(a).

### A.    Numerosity

The numerosity requirement of Rule 23 dictates that the putative class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). Impracticability does not equate to impossibility, but merely means that the difficulty of joining all class members makes the use of the class action device appropriate.  *See Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007).  "Numerosity may be presumed when a class consists of forty or more [members]."  *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 138 (S.D.N.Y. 2012) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).  Here, the Plan had more than 9,000 participants throughout the proposed class period.  *See* Declaration of Laurie Rubinow ("Rubinow Decl."), ¶ 3. Accordingly, the proposed Class easily meets Rule 23(a)'s numerosity requirement.

### B.    Commonality

The commonality prerequisite requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).[8]  Commonality involves "the capacity of a classwide proceeding to generate common *answers* apt to drive resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted).  This occurs when

---

[8]"The commonality and typicality requirements of Rule 23(a) tend to merge."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting also that these requirements often merge with adequacy of representation).  While this Memorandum discusses the requirements separately, the discussions of each element are related and arguments supporting one requirement frequently support the others.

there is at least one common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Courts in this Circuit have routinely characterized the commonality requirement as a "low hurdle." *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 424 (S.D.N.Y. 2014); *In re Omnicom Group, Inc. Securities Litig.*, No. 02 Civ. 4483 (RCC), 2007 WL 1280640 (S.D.N.Y. Apr. 30, 2007) (citing *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995).

"In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Cunningham v. Cornell Univ.*, No. 16-cv-6525, 2019 WL 275827, at *5 (S.D.N.Y. Jan. 22, 2019) (citing *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004)); *see also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009) (finding that "commonality is quite likely to be satisfied" in ERISA fiduciary breach action because such actions are undertaken on behalf of a plan regarding duties owed at the plan level).

Plaintiffs here "are bringing suit on behalf of participants in the Plan[], the centralized administration of which is common to all class members." *Cunningham*, 2019 WL 275827, at *5 (emphasis in original); *see also In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-CV-2548 (VSB), 2017 WL 1273963, at *7 (S.D.N.Y. May 31, 2017) ("Typically, 'the question of defendants' liability for ERISA violations is common to all class members because a breach of fiduciary duty affects all participants and beneficiaries.'"). "Because the fiduciary duties are owed to the [Plan] . . . common questions of law and fact are central to the case." *Cunningham*, 2019 WL 275827, at *5; *see* 29 U.S.C. § 1104(a)(1) ("a fiduciary shall discharge his duties with respect to *a plan*") (emphasis added).

The core questions in this action are common to all plan participants include, *inter alia*:

(i) whether Defendants breached their fiduciary duties by virtue of their failure to diversify the assets of the PSA; (ii) whether Defendants caused the Plan to pay excessive fees to RCG, in breach of their fiduciary duties; (iii) whether Defendants engaged in prohibited transactions; (iv) whether the Plan suffered losses from the foregoing breaches and violations; (v) how to calculate the Plan's losses; and (vi) what equitable relief is appropriate in light of these breaches. Accordingly, "[w]hile 'a single common question will do,' the common questions here are numerous." *Sacerdote v. New York Univ.*, No. 16-cv-6284 (KBF), 2018 WL 840364, at *3 (S.D.N.Y. Feb. 13, 2018) (citing *Wal-Mart*, 564 U.S. at 359).

The evidence required to answer these contentions is Plan-level and, consequently, common to all of the Plan's participants. If the evidence shows that Defendants breached their fiduciary duties and/or engaged in prohibited transactions, "it would not only generate answers applicable to all class members, but would also address the heart of the claims at issue in this litigation." *Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-9329, 323 F.R.D. 145, 160 (S.D.N.Y. Nov. 27, 2017). Thus, "the discovery at issue in this case [which is already underway] will 'generate common <u>answers</u> apt to drive the resolution of the litigation.'" *Sacerdote*, 2018 WL 840364, at *3 (quoting *Wal-Mart*, 564 U.S. at 359).

These answers do not depend on the particular circumstances of any individual participant because, in ERISA fiduciary breach actions, "liability is determined based on Defendants' not Plaintiffs' decisions." *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 9936 (LGS), 2017 WL 3868803, at *5 (S.D.N.Y. Sept. 5, 2017). The questions of law and fact in this Action are, by their nature, common to each class member. *See id.* at 14; *Babcock v. Computer Associates Intern., Inc.*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003) (finding "whether the defendants failed to diversify the assets of the Plan" to be a common question). Indeed, there

should be little dispute as to the commonality of questions of law and fact, as the central allegations concern the PSA, which, as discussed above, was managed at the sole discretion of Defendants.  As such, because Defendants' duties and conduct ran to the *Plan* – not any individual participant – the commonality prerequisite is satisfied.  *See Sacerdote*, 2018 WL 840364, at *3.

### C.    Typicality

The typicality prerequisite mandates that the claims of the representative plaintiffs be typical of the claims of the class.  See Fed. R. Civ. P. 23(a)(3).  "Typicality does not require that the situations of the named representatives and the class members be identical."  *In re Oxford Health Plan, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000) (citation omitted); *see also Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *13 (S.D.N.Y. Jul. 27, 2007) (acknowledging that Courts in this District "have emphasized that the typicality requirement is not demanding.").[9] Typicality is satisfied where plaintiffs demonstrate that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).  "[W]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux*, 987 F.2d at 936-37.

---

[9]Questions of efficiency and economy are also inherent in analyses of these requirements.  This Court has described typicality, like commonality, as a "guidepost for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence."  *Leber*, 323 F.R.D. at 162.

Because an ERISA § 502(a)(2) claim is inherently a representative claim, any participant's claim is necessarily typical of the claims of the class, since every participant is asserting *the Plan's* claim.[10]  Courts routinely find a participant's fiduciary breach claim to be typical of the claims of all participants in a plan.  *See Cunningham*, 2019 WL 275827 at *7 (typicality requirement met where plaintiffs "sufficiently alleged that the defendants' failure to manage the Plans affected all proposed members of the class."); *Sacerdote*, 2018 WL 840364, at *3 (noting that analysis of the typicality factor is similar to the commonality analysis and finding because "[e]ach named plaintiff is asserting a claim on behalf of the Plans . . . [t]he adjudication of the breach of fiduciary duty claims will not turn on any individual class member's circumstance."); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 573 (D. Minn. 2014) (typicality met for fiduciary breach claims because named plaintiffs and class members sought "redress of similar grievances under the same legal and remedial theories.").[11]  The circumstances of this case, in which plaintiffs allege fiduciary breaches and other violations of ERISA arising out of Defendants management of the PSA, are no exception.[12]

---

[10]In *Cooper*, the Second Circuit distinguished the representative nature of claims brought under ERISA § 502(a)(2) from other ERISA claims typically brought in an individual capacity.  *See* 990 F.3d at 179 n.6.

[11]Because the commonality and typicality requirements "tend to merge," *Wal-Mart*, 564 U.S. at 349 n.5, Plaintiffs' claims are typical for many of the same reasons that commonality is satisfied. In short, because Defendants' actions were directed to and affected the Plan as a whole, without distinction among individual participants, the claims of all members of the proposed Class arise out of the same conduct.  Likewise, Plaintiffs and all class members are bringing the same claims under the same legal and remedial theory.

[12]The Court has previously received briefing suggesting that the typicality prerequisite is defeated where a purported arbitration agreement may apply.  *See* ECF No. 140.  While those arguments are unsupportable, as they ignore the representative nature of claims under ERISA § 502(a)(2) (*see* ECF No. 142, pp. 5-7), the Second Circuit's decision in *Cooper*, discussed in greater detail below, forecloses any such argument here.

D.    **Adequacy**

The representative plaintiff must also show that it will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy prerequisite is met where: (1) the proposed class representative's interests are to vigorously pursue the claims of the class and are not antagonistic to the interests of other class members; and (2) proposed class counsel are qualified, experienced, and able to conduct the litigation. *See Flag Telecom*, 574 F.3d at 35. The conflict inquiry is a searching one, as "the conflict that will prevent a plaintiff from meeting the Rule 23(a)(4) prerequisite must be fundamental, and speculative conflict should be disregarded at the class certification stage." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (citations omitted).

1.    Plaintiffs have no Conflicts with Other Class Members and will
Vigorously Prosecute this Action on Behalf of the Class

Plaintiffs' interests are tightly aligned with all other members of the proposed Class because of the very nature of the claims that Plaintiffs bring; Plaintiffs, acting in a representative capacity, seek to enforce the duties that Defendants owed to the Plan and recover damages and equitable relief due to the Plan. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2); *Russell*, 473 U.S. at 142 n.9.  "There is no reason to doubt that the name[d] plaintiffs will 'fairly and adequately protect the interests of the class,' as they have identical legal and effectively identical financial interests in this action as to the proposed class members." *Sacerdote*, 2018 WL 840364, at *4 (internal citation omitted) (quoting Fed. R. Civ. P. 23(a)(4)).  Because Plaintiffs are pursuing claims on behalf of the Plan, there are no conflicts between Plaintiffs' individual interests and the interests of the class.  Indeed, Plaintiffs and class members all share the same objectives, the same factual and legal positions, and the same interest in establishing Defendants' liability. *See Moreno*, 2017 WL 3868803, at *7.  Further, Plaintiffs' Motion will facilitate a preliminary approval

14

process with respect to the proposed settlements that is transparent and affords all Class members

notice and an opportunity to be heard on the fairness of the settlements.

Additionally, Plaintiffs have and will continue to vigorously prosecute this Action on

behalf of all members of the proposed Class.  A class representative needs only a basic

understanding of the claims and a willingness to participate in the case.  *Surowitz v. Hilton*

*Hotels Corp.*, 383 U.S. 363, 373 (1966); *see also Baffa v. Donaldson*, 222 F.3d 52, 61 (2d Cir.

2000).  Here, each named Plaintiffs understands the nature of their claims and duties as class

representatives.  *See* Rubinow Decl., ¶ 2.  To date, Plaintiffs have met and exceeded that duty by,

*inter alia*, reviewing court documents and monitoring the progress of the litigation, including

through regular conference calls together with their attorneys.  *See id.*  Accordingly, each named

Plaintiff should be appointed as a class representative.

2.      Plaintiffs' Counsel have no Conflicts with the Class, are Qualified and
        Experienced, and will Vigorously Prosecute this Action for the Class

Related to the adequacy inquiry, Rule 26(g) provides factors for the Court to consider in

appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims
> in the action; (ii) counsel's experience in handling class actions, other
> complex litigation, and the types of claims asserted in the action; (iii)
> counsel's knowledge of the applicable law; and (iv) the resources that
> counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).

Plaintiffs have engaged qualified and capable counsel, who have and will continue to

vigorously prosecute this action on behalf of the proposed Class.  Plaintiffs are represented by

Miller Shah LLP ("Miller Shah")[13] and Olivier Schreiber & Chao ("OSC") (collectively,

---

[13]The firm affiliation of Plaintiffs' attorneys previously affiliated with Shepherd, Finkelman,
Miller & Shah, LLP changed to Miller Shah LLP, effective March 15, 2021.

"Proposed Class Counsel"), firms with significant experience litigating complex class actions, including ERISA actions, and which have the ability and resources to prosecute this Action vigorously.  *See* Rubinow Decl., ¶ 4; Declaration of Monique Olivier ("Olivier Decl."), ¶ 3.  To date, Miller Shah and OSC have leveraged their experience and resources to vigorously pursue and protect the interests of the Class, including by, *inter alia*, comprehensively investigating the claims forming the basis of this Action, filing detailed and comprehensive pleadings, briefing several motions, coordinating with the Department of Labor, and engaging all parties in substantial discovery efforts.[14]  Miller Shah and OSC will continue to leverage their deep experience and resources to pursue the best outcome for the proposed Class.  Accordingly, Miller Shah and OSC satisfy the adequacy inquiry under Rule 23(a)(4) and Rule 23(g), and should be appointed as class counsel.

## III.    Plaintiffs and the Proposed Class Meet the Requirements of Rule 23(b)(1)

In addition to satisfying the requirements of Rule 23(a), Plaintiffs need only satisfy one subsection of Rule 23(b).  *See Amchem*, 521 U.S. at 613-14.  Courts routinely grant certification under Rule 23(b)(1) to ERISA fiduciary breach cases, because "the distinctive 'representative capacity' aspect of ERISA participant and beneficiary suits makes litigation of this kind 'a paradigmatic example of a [Rule 23](b)(1) class."  *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 342 (S.D.N.Y. 2012) (alteration in original) (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004); *see also Cunningham*, 2019 WL 275827 at *7 ("It is common for ERISA cases to be certified under Rule 23(b)(1)); *In re Schering Plough Corp.*

---

[14]In addition to serving as counsel to Plaintiffs in this Action, Miller Shah and OSC have vigorously acted to protect the interests of the proposed Class through their service as counsel in the related case, *Cooper v. Ruane Cunniff & Goldfarb Inc.*, No. 16-cv-1900 (WHP) (S.D.N.Y.), and appeal, *Cooper*, No. 17-2805 (2d Cir.).

*ERISA Litig.*, 589 F.3d 585, 604 (3d. Cir. 2009) (collecting cases).

"Most ERISA class action cases are certified under Rule 23(b)(1)." *Sacerdote*, 2018 WL 840364 at *6 (quoting *Caufield v. Colgate-Palmolive*, No. 16-4170, 2017 WL 3206339, at *6 (S.D.N.Y. July 27, 2017).  Rule 23(b)(1) provides:

> A class action may be maintained if Rule 23(a) is satisfied and if . . . prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1).

Taking the two subsections of Rule 23(b)(1) in turn, first, Rule 23(b)(1)(A) applies to "cases where the party is obligated by law to treat the members of the class alike[.]" *Amchem*, 521 U.S. at 614 (internal quotations and citation omitted); *see also* Fed. R. Civ. P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(A) ("One person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct.").  "The language of subdivision (b)(1)(A), addressing the risk of 'inconsistent adjudications,' speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike."  *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) (footnote and internal quotations omitted).

Where, as here, the proposed class is numerous, have all suffered the same statutory violations, and, accordingly, are entitled to similar forms of relief, class certification is appropriate. *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. at 180. Plaintiffs allege that Defendants breached fiduciary duties in their management of the Plan; "if this is the case, that duty was breached as to <u>all</u> [P]laintiffs." *Sacerdote*, 2018 WL 840364 at \*6 (emphasis in original). Indeed, as demonstrated by the mixed results of the arbitrations to date, allowing hundreds or thousands of individual class members to pursue this Action on behalf of the Plan may result in varying adjudications over whether Defendants breached their duties and committed other violations of ERISA as alleged, whether Defendants are liable for these actions, and how to measure damages to the Plan and other relief. *Id.*

"Rule 23(b)(1)(B) covers class action suits in which 'individual adjudications as a practical matter[] would be dispositive of the interests of the other members not parties to the individual actions." *Cunningham*, 2019 WL 275827 at \*7 (quoting *Wal-Mart*, 564 U.S. at 361 n.11). "[A]n action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders of beneficiaries, and which requires an accounting or like measures to restore the subject of the trust" is a typical Rule 23(b)(1)(B) action. Fed. R. Civ. P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(B); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (quoting Advisory Committee Note); *see also Leber*, 323 F.R.D. at 165 ("[ERISA] creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan, and it even structures relief in terms of the plan and its accounts, rather than directly for the individual participants."); *Moreno*, 2017 WL 3868803 at \*8 (same). Here, "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects,

the interests of absent class members . . . [as] the suit involves the 'presence of property which call[s] for . . . management." *Ortiz*, 527 U.S. at 834 (internal quotation and alteration omitted). Defendants' conduct here – overconcentrating the PSA's investment in VRX, causing the Plan to pay excessive fees to RCG, and engaging in prohibited transactions, among others – was directed at the Plan as a whole, rather than individual participants; accordingly, "any judgment on Defendants' liability would necessarily affect the determination of any claim for [] relief for this same conduct brought by other Plan participants in any concurrent or future actions." *Moreno*, 2017 WL 3868803 at *8 (quoting *Urakhchin v. Allianz Asset Management of America, L.P.*, No. 15-cv-1614-JLS-JCG, 2017 WL 2655678, at *8 (C.D. Cal. June 15, 2017)).[15]

Certification under either Rule 23(b)(1)(A) or 23(b)(1)(B) is appropriate here. "Because [P]laintiffs' allegations are brought with respect to breaches of fiduciary duties to the Plan[] as a whole, [D]efendants' duties rise and fall with all plaintiffs." *See Cunningham*, 2019 WL 275827 at *8; *see also Leber*, 323 F.R.D. at 165 (same). As the management of the Plan has an effect on all participants, and for each of the foregoing reasons, the proposed Class should be certified

---

[15]That concern is far from hypothetical where, as here, a number of putative Class members have initiated arbitrations (the validity of which is in serious doubt after the Second Circuit's decision in *Cooper*) and other lawsuits regarding certain of the claims at issue, and are represented by counsel who also represent former fiduciaries to the Plan (who are expressly excluded from the proposed Class here), and the positions taken by counsel for those arbitration claimants and other litigants apparently have been shaped to ensure that the claims asserted and damages sought by these Class members do not implicate the conduct of these former fiduciaries, who have been identified as defendants in this case and/or in a related proceeding initiated by the United States Department of Labor ("DOL"). *See Walsh v. Ruane, Cunniff & Goldfarb, Inc. et al*, No. 1:19-cv-9302-ALC (S.D.N.Y.)*; see also Canfield v.* SS&C *Technologies Holding, Inc. et al.*, No. 1:18-cv-08913-ALC (S.D.N.Y.), ECF Nos. 32-44; and *Mendon v.* SS&C *Technologies Holding, Inc. et al.*, Civil Action No. 1:18-cv-10252-ALC (S.D.N.Y.). Here, although Plaintiffs believe that they would have strong arguments against any preclusive effect of the arbitration proceedings, as to Plaintiffs and the Plan here, the possibility that Defendants could attempt to rely upon results obtained in such arbitrations when the full claims available have not been asserted in those proceedings, strongly supports certification in this case under Rule 23(b)(1).

under Rules 23(a) and 23(b)(1).  *See* Cunningham, 2019 WL 275827 at *8.

## IV.   *Cooper* Confirms the Propriety of Class Certification

The Second Circuit's decision in *Cooper* makes clear what was always implicit: the purported arbitration agreement does not preclude class certification.  As a preliminary matter, this Action is a representative action brought by Plaintiffs who indisputably are not subject to any purported arbitration agreement.  Now, the Second Circuit has clarified that the purported arbitration agreement upon which RCG relied in seeking to compel arbitration in *Cooper* (the very agreement upon which the arbitration claimants relied in initiating their arbitrations) is inapplicable to ERISA breach of fiduciary duty claims.  Simply put, there can no longer be any doubt that each of the prerequisites of Rule 23(a) and Rule 23(b)(1) are satisfied.

Indeed, when asked about the impact of a potential reversal of *Cooper* at the August 13, 2020 oral argument on Plaintiffs' original Motion for Class Certification, counsel for RCG – which, at the time, opposed class certification – responded: "If [*Cooper*] were reversed, your Honor, we have a different ballgame because we wouldn't have arbitration agreements."  Tr. of August 13, 2020 Oral Argument, ECF No. 218, at 47:12-14.  That is because, in light of the Second Circuit's opinion, the purported arbitration agreement is now decidedly not a defense applicable to any members of the proposed Class, nor a basis to deny certification of a mandatory class.  Quite opposite, the Second Circuit's decision confirms the necessity that plaintiffs in representative actions under ERISA take affirmative steps – such as seeking to certify a class – to protect the interests of the plan and participants.

First, the Second Circuit found that the purported arbitration agreement is inapplicable to the claims at issue here.  *Cooper*, 990 F.3d at 183.  In doing so, the Second Circuit considered the principles underlying the Federal Arbitration Act and ERISA, finding that the nature of

breach of fiduciary duty claims and "ERISA's protective purposes" render Judge Pauley's order compelling arbitration erroneous.  *See Cooper*, 990 F.3d at 176, 179-83.  Importantly, the Second Circuit suggested that the remedial scheme established by ERISA § 502(a)(2) distinguishes breach of fiduciary duty claims from other ERISA and non-ERISA claims subject to the purported arbitration agreement, because "others who were never DST employees could have brought [§ 502(a)(2)] claims identical to those stated by Cooper."  *Cooper*, 990 F.3d 183-84.  While Plaintiffs concede that there is no blanket ERISA exception to arbitration, the Second Circuit clearly found that the claims at issue here are not subject to the purported arbitration agreement.

Moreover, the Second Circuit reiterated the requirement in ERISA breach of fiduciary duty actions that "plan participants must employ procedures to protect effectively the interests they purport to represent" because "such procedural safeguards are meant to ensure that any 'recovery inures to the benefit of the plan as a whole.'"  *Cooper*, 990 F.3d at 184 (citing *Coan*, 457 F.3d at 259-61).  Given this requirement, the Second Circuit found it "unclear, then, how under the terms of the Agreement, an employee can bring an ERISA fiduciary claim that satisfies *Coan*'s adequacy requirement, while concurrently complying with the Agreement."  *Cooper*, 990 F.3d at 184.  The Second Circuit's reasoning illustrates the fundamental incompatibility of individual arbitration with plan-wide claims brought under ERISA § 502(a)(2).

Since the inception of this Action, Plaintiffs have been guided by the Second Circuit's clear adequacy of representation requirement.  *Cooper* only serves to amplify the Second Circuit's expectation that procedural safeguards be employed to protect the interests of plans and participants under ERISA.  It is difficult to imagine a more effective and transparent mechanism to rationalize these proceedings than class certification.

## **CONCLUSION**

For the foregoing reasons, the Court should certify all of Plaintiffs' claims as a class

action under Rules 23(a) and 23(b)(1), and appoint Michael L. Ferguson, Myrl C. Jeffcoat and

Deborah Smith as Class Representatives.  Under Rule 23(g), the Court should also appoint Miller

Shah LLP and Olivier Schreiber & Chao, LLP as Class Counsel.

Dated: April 5, 2021                                            Respectfully submitted,

/s/ Laurie Rubinow
James E. Miller
Laurie Rubinow (Bar No. LR-6637)
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile:  (866) 300-7367
Email: jemiller@millershah.com
            lrubinow@millershah.com

Heidi A. Wendel
MILLER SHAH LLP
52 Duane Street, 7th Floor
New York, NY 10007
Telephone: (866) 540-5505
Facsimile:  (866) 300-7367
Email: hawendel@millershah.com

Nathan C. Zipperian
MILLER SHAH LLP
1625 N. Commerce Parkway, Suite 320
Fort Lauderdale, FL 33326
Telephone: (866) 540-5505
Facsimile:  (866) 300-7367
Email: nczipperian@millershah.com

Ronald S. Kravitz
Kolin C. Tang
MILLER SHAH LLP
201 Filbert Street, Suite 201
San Francisco, CA 94111
Telephone: (866) 540-5505
Facsimile:  (866) 300-7367
Email: rskravitz@millershah.com
          kctang@millershah.com

James C. Shah
Alec J. Berin
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile:  (866) 300-7367
Email: jcshah@millershah.com
          ajberin@millershah.com

Monique Olivier
OLIVIER SCHREIBER & CHAO LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 484-0980
Email: monique@osclegal.com

*Counsel for Plaintiffs, the Plan
 and the Proposed Class*