UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL L. FERGUSON, MYRL C. JEFFCOAT, and DEBORAH SMITH, on behalf of the DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RUANE CUNNIFF & GOLDFARB INC., DST SYSTEMS, INC., THE ADVISORY COMMITTEE OF THE DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN and THE COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF DST SYTEMS, INC., <br><br> Defendants. | Case No. 17-CV-06685 (ALC)(BCM) |

**THE DST DEFENDANTS' RESPONSE TO PLAINTIFFS'
<u>RENEWED MOTION FOR CLASS CERTIFICATION</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ........................................................................................................... 4

I.     This Court Should Certify the Proposed Class ................................................. 4

     A.    *Cooper* Confirms That the Proposed Class Should Be Certified........................... 5

     B.    *Cooper* Confirms That Arbitration Claimants' Arguments Opposing Class Certification Are Baseless................................................................................ 7

II.    The Proposed Class Should Be Certified Under Rule 23(b)(1)............................ 16

     A.    Class Certification Is Appropriate Under Rule 23(b)(1)(A) Because Individual Suits Would Impose Incompatible Standards on the Plan ................. 17

     B.    Class Certification Is Appropriate Under Rule 23(b)(1)(B) Because Individual Suits Would Prejudice Other Class Members ..................................... 20

CONCLUSION........................................................................................................ 22

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Allstate Ins. Co.* v. *Elzanaty*,
929 F. Supp. 2d 199 (E.D.N.Y. 2013) ...................................................................12

*In re AOL Time Warner ERISA Litig.*,
2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006)........................................................20

*Beach* v. *JPMorgan Chase Bank, Nat'l Assoc.*,
2019 WL 2428631 (S.D.N.Y. June 11, 2019) ........................................................20

*Bird* v. *Shearson Lehman/Am. Express, Inc.*,
926 F.2d 116 (2d Cir. 1991)...................................................................................13

*In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*,
2014 WL 12621614 (D.S.C. Oct. 15, 2014) ...........................................................12

*Canfield* v. *SS&C Techs. Holdings, Inc.*,
2020 WL 3960929 (S.D.N.Y. July 10, 2020) .........................................................19

*Carr* v. *Int'l Game Tech.*,
2012 WL 909437 (D. Nev. Mar. 16, 2012) ............................................................10

*Caufield* v. *Colgate-Palmolive Co.*,
2017 WL 3206339 (S.D.N.Y. July 27, 2017) .........................................................17

*In re Citigroup Pension Plan ERISA Litig.*,
241 F.R.D. 172 (S.D.N.Y. 2006) .......................................................................17, 18

*Coan* v. *Kaufman*,
457 F.3d 250 (2d Cir. 2006).....................................................................1, 5, 11, 21

*Cooper* v. *Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021).......................................................................... passim

*Cunningham* v. *Cornell Univ.*,
2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) .......................................................9, 20

*Douglin* v. *GreatBanc Tr. Co.*,
115 F. Supp. 3d 404 (S.D.N.Y. 2015).....................................................................16

*Ducharme* v. *DST Systems, Inc.*,
2017 WL 7795123 (W.D. Mo. June 23, 2017) .......................................................14

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................16, 19

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Harris* v. *Koenig,*
　　271 F.R.D. 383 (D.D.C. 2010)...................................................................19

*In re J.P. Morgan Stable Value Fund ERISA Litig.,*
　　2017 WL 1273963 (S.D.N.Y. Mar. 31, 2017) ...........................................10

*Jacobs* v. *Verizon Comm'cns Inc.,*
　　2020 WL 4601243 (S.D.N.Y. June 1, 2020) .............................................20

*In re Joint E. & S. Dists. Asbestos Litig.,*
　　120 B.R. 648 (E.D.N.Y. 1990) ..................................................................12

*L.I. Head Start Child Dev. Servs., Inc.* v. *Econ. Opportunity Comm'n of Nassau*
　　*Cnty., Inc.,*
　　710 F.3d 57 (2d Cir. 2013).............................................................8, 10, 11

*LaRue* v. *DeWolff, Boberg & Assocs., Inc.,*
　　552 U.S. 248 (2008).........................................................................3, 7, 8, 11

*Leber* v. *Citigroup 401(k) Plan Inv. Comm.,*
　　323 F.R.D. 145 (S.D.N.Y. 2017) .............................................................8, 9

*New Hampshire* v. *Maine,*
　　532 U.S. 742 (2001)...................................................................................16

*Moreno* v. *Deutsche Bank Ams. Holding Corp.,*
　　2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017)................................... passim

*Munro* v. *Univ. of S. Cal.,*
　　2019 WL 7842551 (C.D. Cal. Dec. 20, 2019) ...........................................9

*In re Polaroid ERISA Litig.,*
　　240 F.R.D. 65 (S.D.N.Y. 2006) ...............................................................16

*Sacerdote* v. *N.Y. Univ.,*
　　2018 WL 840364 (S.D.N.Y. Feb. 13, 2018)..........................................9, 17

*In re Silicone Gel Breast Implant Prods. Liab. Litig.,*
　　2010 WL 11506713 (N.D. Ala. May 19, 2010)........................................12

*Stott* v. *Cap. Fin. Servs., Inc.,*
　　277 F.R.D. 316 (N.D. Tex. 2011) .............................................................12

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Troll Co.* v. *Uneeda Doll Co.*,
    483 F.3d 150 (2d Cir. 2007)................................................................................16

*Wildman* v. *Am. Century Servs.*,
    2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) ...........................................................9

**STATUTES**

29 U.S.C § 1109................................................................................... passim

29 U.S.C. § 1132.................................................................................. passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 19 .........................................................................................6

Fed. R. Civ. P. 23 ............................................................................... passim

DST Systems, Inc., the Advisory Committee of the DST Systems, Inc. 401(k) Profit Sharing Plan and the Compensation Committee of the Board of Directors of DST Systems, Inc. (collectively, the "DST Defendants") respectfully submit this response to Plaintiffs' Renewed Motion for Class Certification (ECF No. 300) and the Memorandum of Law in Support of Plaintiffs' Renewed Motion for Class Certification (ECF No. 301).

## PRELIMINARY STATEMENT

The Second Circuit's decision in *Cooper* v. *Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021), removes all doubt that this case should be certified as a mandatory class action.  In *Cooper*, the Second Circuit recognized, in a case involving identical claims to those here, that ERISA fiduciary duty claims are "representative" in nature and may not be prosecuted on an individual basis.  *Id.* at 184.  The court further reaffirmed "that a plaintiff suing for breach of fiduciary duty under § 502(a)(2) may seek recovery only for injury done ***to the wronged plan***," *id.* at 180 (emphasis added), and that any recovery must "'inure[] to the benefit of the ***plan as a whole***,'" *id.* at 184 (emphasis added).  Citing its decision in *Coan* v. *Kaufman*, 457 F.3d 250 (2d Cir. 2006), the Second Circuit confirmed that its "case law requires" that ERISA breach of fiduciary duty claims be brought "in some representative capacity," with sufficient "procedural safeguards" to protect absent plan participants.  *Id.*  The Second Circuit specifically recognized that "class certification" is an appropriate mechanism to ensure that the procedural safeguards required for representative actions are met.  *Id.*  We submit that certifying the proposed class is the only practical way to comply with those requirements here.  Beyond its ruling that ERISA claims such as those presented here must be pursued as representative actions, *Cooper* is important here because of its finding that the claims at issue are not arbitrable under the DST arbitration agreement it considered.  *Id.* at 180–84.  A significant portion of the individuals arbitrating claims against DST are subject to that agreement and, while other arbitration claimants are subject to different

agreements with different language, that does not the change the result.  *Cooper* establishes that, as a contractual matter, many arbitration claimants have no right to arbitrate and, moreover, none of the individual arbitration claimants may prosecute their claims because ERISA requires that these fiduciary claims be litigated only a representative basis.

This Court is presiding over multiple ERISA actions involving the same defendants, seeking to recover for the same losses, and alleging the same breach of fiduciary duty claims concerning the same investment made by Ruane, Cunniff & Goldfarb on behalf of the DST Systems, Inc. 401(k) Profit Sharing Plan (the "Plan").  The Plan has approximately 10,000 current and former participants.  None of the parties to this action object to certification.  The principal objectors to class certification—which would finally and fairly consolidate these overlapping and redundant suits into a single proceeding, with appropriate judicial oversight and the procedural safeguards required under ERISA—are a small minority of Plan participants who have filed arbitration claims ("Arbitration Claimants"), based on the very same allegations at issue here. Arbitration Claimants repeatedly have acknowledged that—contrary to the requirement that ERISA fiduciary claims be prosecuted on a representative basis—they are prosecuting their claims individually, rather than on behalf of the Plan as a whole.

*Cooper* squarely recognizes that the manner in which Arbitration Claimants are proceeding—purportedly bringing what are Plan-wide claims on an individual basis—runs afoul of Second Circuit law, that courts should "decline to enforce any award" obtained by this improper process, and that this Court should take steps to ensure that this representative action brought on behalf of the entire Plan proceeds without interference and with the necessary safeguards to protect *all* Plan participants, including Arbitration Claimants.  As Plaintiffs and the DST Defendants previously have explained, even before the *Cooper* decision, courts in this Circuit routinely have

certified Rule 23(b)(1) classes for ERISA fiduciary duty claims. (*See, e.g.*, ECF No. 127 at 16–19; ECF No. 186 at 6–11.) The same result should obtain here. In fact, *Cooper* resolves against Arbitration Claimants the arguments they had previously made opposing class certification.

*First*, Arbitration Claimants' central argument is that they have the "right to sue for their individual account damages resulting from a fiduciary breach." (ECF No. 182 at 17.) In fact, the opposite is true: Arbitration Claimants *cannot* sue individually for fiduciary breaches under ERISA. As the Second Circuit explained, its "case law requires" that such claims be brought in a *representative*—not individual—capacity. *Cooper*, 990 F.3d at 184.

*Second*, Arbitration Claimants asserted that the Supreme Court's decision in *LaRue* v. *DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008), "squarely held" that plan participants in a defined-contribution plan can bring ERISA fiduciary duty claims on an individual basis. (ECF No. 182 at 1.) This argument, too, is wrong. As the DST Defendants previously explained, *LaRue* merely stands for the proposition that a plan participant who suffered individual harm may bring suit *on behalf of the plan*. *LaRue* did not overturn the longstanding rule that plan participants may seek relief only on a representative basis on behalf of the plan. *Cooper* reaffirms that Arbitration Claimants' position is fundamentally mistaken. The Second Circuit specifically relied on *LaRue* in recognizing that plaintiffs "may seek recovery only for injury done to the wronged plan." *Cooper*, 990 F.3d at 180 (citing *LaRue*, 552 U.S. at 256).

*Third*, Arbitration Claimants asserted that they have "an absolute right to arbitrate" under the Federal Arbitration Act. (ECF No. 182 at 22.) They do not. *Cooper* resolved that Arbitration Claimants do not have individual rights in their claims. It held that the DST arbitration agreement it considered does not encompass these claims, and that Arbitration Claimants' claims under that agreement are not arbitrable at all. Most significantly, it recognized that the claims brought by

3

Arbitration Claimants may be prosecuted only on behalf of the Plan and all its participants. Defying that rule here, Arbitration Claimants have disavowed any effort to prosecute their claims on a representative basis; rather, they expressly claim "to pursue *individual* damages claims" in arbitration. (ECF No. 271 at 1 (emphasis in original).) But as *Cooper* recognized, the individual prosecution of such claims violates Second Circuit law, and courts should decline to enforce any arbitration award obtained as a result of that improper process. Thus, far from an "absolute right to arbitrate," Arbitration Claimants have *no* right to arbitrate. Contrary to their assertions, class certification does not deprive Arbitration Claimants of any right.

The DST Defendants respectfully submit that Plaintiffs' motion should be granted and the proposed class certified. The DST Defendants also note that Plaintiffs have moved for preliminary approval of proposed settlements with the DST Defendants and other defendants. That motion contemplates certification of the same class sought by Plaintiffs on this motion and was fully briefed on February 11, 2021. The DST Defendants thus submit that, should the Court preliminarily and later finally approve the proposed settlements, it need not reach this motion, which seeks to certify a litigation class. In either event, *Cooper* has made clear that the class sought by Plaintiffs should be certified and that this case is subject to no different standard than the overwhelming number of other ERISA fiduciary duty actions in which classes are routinely certified under Rule 23(b)(1).

## ARGUMENT

### I.    This Court Should Certify the Proposed Class

The DST Defendants previously have filed several submissions in support of certifying the class sought by Plaintiffs. (*See* ECF Nos. 186, 277.) For the reasons set forth in those submissions, which the DST Defendants incorporate by reference, the proposed class should be certified. The Court recognized during the August 2020 oral argument on Plaintiffs' original class certification

motion that the *Cooper* appeal could impact the class certification analysis.  (*See* ECF No. 218 at 41:2–7, 63:1–5.)  Now that *Cooper* has been decided, it is abundantly clear that the class sought by Plaintiffs should be certified.

### A.    *Cooper* Confirms That the Proposed Class Should Be Certified

In *Cooper*, the Second Circuit reaffirmed that the ERISA provisions under which Plaintiffs bring their fiduciary duty claims, ERISA §§ 502(a)(2) and 409, "read together, mean that a plaintiff suing for breach of fiduciary duty under § 502(a)(2) may seek recovery only for injury done ***to the wronged plan***."  990 F.3d at 180 (emphasis added) (citing *LaRue*, 552 U.S. at 256).  In other words, any recovery under ERISA §§ 409 and 502(a)(2) must "'inure[] to the benefit of the plan as a whole,'" *id.* at 184 (quoting *Coan*, 457 F.3d at 261)—not individual Plan participants.  Accordingly, and contrary to Arbitration Claimants' previous arguments (*see* ECF No. 182 at 17), retirement plan participants may not individually prosecute claims under these provisions.  Rather, as the Second Circuit again recognized, "our case law requires" that ERISA fiduciary actions be brought "in some representative capacity" on behalf of a plan and *all* of its participants.  *Id.* at 184.

In support of these principles, the Second Circuit relied on its decision in *Coan* v. *Kaufman*, 457 F.3d 250 (2d Cir. 2006).  In *Coan*, the Second Circuit affirmed the dismissal on summary judgment of a § 502(a)(2) action "because it was not 'brought in a representative capacity on behalf of the plan,'" *id.* at 259 (quoting *Mass. Mut. Life Ins. Co.* v. *Russell*, 473 U.S. 134, 142 n.9 (1985)), which the Second Circuit held is "***required*** by section 502(a)(2)," *id.* at 262 (emphasis added).  The *Coan* plaintiff alleged a breach of fiduciary duty "that would have harmed all the participants" in the plan—an alleged failure to diversify plan assets, like Plaintiffs allege here.  *Id.* at 259.  The plaintiff purported to bring the action on behalf of the plan but did "not take any steps to become a bona fide representative of other interested parties."  *Id.*  The court held this failure was fatal to plaintiff's claims because "the representative nature of the section 502(a)(2) right of action implies

that plan participants must employ procedures to protect effectively the interests they purport to represent." *Id.* The Second Circuit recognized that certifying a class action under Rule 23 would likely suffice to satisfy *Coan*'s procedural safeguard requirement. *Id.* at 261. The only other example of an adequate procedural safeguard provided by the Second Circuit was the joinder of other participants under Rule 19. *Id.*

The Second Circuit explained that "[a]llowing Coan to bring this action without" such procedures would "create significant practical difficulties and opportunities for abuse." *Id.* For example, the plaintiff could reach a settlement disproportionately benefitting her, or, if she prevailed, the court would struggle to ensure, as ERISA requires, "that recovery 'inures to the benefit of the plan as a whole.'" *Id.* (quoting *Russell*, 473 U.S at 140). Additionally, piecemeal litigation without proper procedural safeguards could result in "redundant suits" and "multiple further lawsuits . . . , the ultimate result of which might well be an unsatisfactory resolution of the dispute as a whole." *Id.* at 260, 262.

Reaffirming its decision in *Coan*, the Second Circuit in *Cooper* recognized that, in light of the "representative nature" of § 502(a)(2), plaintiffs bringing § 502(a)(2) claims must "demonstrate their suitability to serve as representatives of the interests of other plan stakeholders" by employing "procedural safeguards" such as "class certification or joining other plan participants as parties." 990 F.3d at 184. These procedures "are meant to ensure that any 'recovery inures to the benefit of the plan as a whole.'" *Id.* (quoting *Coan*, 457 F.3d at 261). The Second Circuit explained that a contrary conclusion would "conflict with ERISA's protective purposes." *Id.* at 176, 184–85.

6

Here, the Plan had more than 9,000 participants, making joinder impracticable, and leaving class certification as the *only* mechanism recognized by the Second Circuit to appropriately safeguard the interests of all plan participants in a representative action like this one.

**B.** ***Cooper* Confirms That Arbitration Claimants' Arguments Opposing Class Certification Are Baseless**

*Cooper* clearly establishes that plan-wide, representative claims like those here are uniquely suitable for and warrant class certification. The *Cooper* decision likewise confirms that each of the principal arguments previously made by Arbitration Claimants in opposition to class certification is incorrect. In fact, apparently recognizing that *Cooper* dispenses with their prior arguments opposing class certification, Arbitration Claimants now assert new arguments about why *Cooper* does not mean what it says. Arbitration Claimants' new theories are equally baseless.

**1.      LaRue *Supports Class Certification***

Arbitration Claimants previously have argued, based on a mistaken reading of *LaRue* v. *DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008), that class certification would be "inappropriate" because participants in defined-contribution plans may sue only for losses to "their individual accounts, with any recovery to benefit only that participant's account." (ECF No. 182 at 1–2.) As the DST Defendants previously have explained (ECF No. 186 at 4–7; ECF No. 277 at 9–11), and as the Second Circuit now has confirmed, that argument is incorrect.

In *Cooper*, the Second Circuit relied on *LaRue* in recognizing that "a plaintiff suing for breach of fiduciary duty under § 502(a)(2) may seek recovery only for injury done to the wronged plan." *Cooper*, 990 F.3d at 180 (citing *LaRue*, 552 U.S. at 256). Thus, contrary to Arbitration Claimants' argument, *LaRue* supports the proposition that ERISA claims like those here may be brought only on behalf of the plan, and not for individual recovery.

In *LaRue*, the Supreme Court recognized that where a breach of fiduciary duty uniquely harms an individual plan participant's account, such injury may be construed as a loss to the plan and give rise to a § 502(a)(2) claim.  552 U.S. at 256.  In *LaRue*, plaintiff directed his employer to make certain changes to the investments in his account, which his employer failed to do, resulting in losses to his account alone.  *Id.* at 251.  *LaRue* held that a plan participant who suffers such a unique injury has standing to seek relief for that harm *on behalf of the plan*, even where that injury was not suffered by other plan participants.  *See id.* at 253, 256 (recognizing that § 502(a)(2) authorizes "actions **on behalf of a plan** to recover for violations of the obligations defined in § 409(a)") (emphasis added).  The Court further held "***that although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries***, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."  *Id.* at 256 (emphasis added); *see also id.* at 261 (Thomas, J., concurring) ("The plain text of § 409(a), which uses the term 'plan' five times, leaves no doubt that § 502(a)(2) authorizes recovery only for the plan."); *Leber* v. *Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 151 (S.D.N.Y. 2017) (quoting *LaRue*, 552 U.S. at 256) (recognizing that § 502(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries").

*LaRue* is thus in accord with Second Circuit law requiring that fiduciary actions under §§ 502(a)(2) and 409 be brought in a representative capacity on behalf of a retirement plan as a whole.  Other binding Second Circuit authority recognizes this longstanding principle.  In *L.I. Head Start Child Development Services, Inc.* v. *Economic Opportunity Commission of Nassau County, Inc.*, 710 F.3d 57 (2d Cir. 2013), the Second Circuit held that "claims pursuant to § 409(a) may not be made for individual relief, but instead are 'brought in a representative capacity on behalf of the plan.'"  *Id.* at 65 (alterations omitted) (quoting *Coan*, 457 F.3d at 257); *see also*

*Moreno* v. *Deutsche Bank Ams. Holding Corp.*, 2017 WL 3868803, at *3 (S.D.N.Y. Sept. 5, 2017) (quoting *L.I. Head Start*, 710 F.3d at 65) (explaining that claims under §§ 502(a)(2) and 409 are "derivative in nature" and "are not 'made for individual relief, but instead are brought in a representative capacity on behalf of the plan'"). As another court in this district put it: "[A] 29 U.S.C. § 1132(a)(2) suit brought on behalf of a defined contribution plan is no less derivative than one brought on behalf of a defined benefit plan." *Leber*, 323 F.R.D. at 155 (citing *LaRue*, 552 U.S. at 256).

Accordingly, since *LaRue* was decided, courts within the Second Circuit routinely have certified classes of participants in defined-contribution plans. *See, e.g.*, *Cunningham* v. *Cornell Univ.*, 2019 WL 275827, at *8 (S.D.N.Y. Jan. 22, 2019) (certifying Rule 23(b)(1) class in case involving defined-contribution plan); *Sacerdote* v. *N.Y. Univ.*, 2018 WL 840364, at *6 (S.D.N.Y. Feb. 13, 2018) (same); *Moreno*, 2017 WL 3868803, at *8–10 (same); *see also Leber*, 323 F.R.D. at 165 & n.17 (recognizing that "[m]ost courts that have certified ERISA class actions alleging breaches of fiduciary duties have done so under Rule 23(b)(1)(B)" and certifying Rule 23(b)(1) class of defined-contribution plan participants).

Courts outside the Second Circuit are in accord. In rejecting an argument similar to that advanced by Arbitration Claimants, the Central District of California stated: "Defendants contend that *LaRue* allows putative class members to protect their interests by bringing individual suits, making certification under Rule 23(b)(1)(B) inappropriate. This is a well-trod argument, and one that courts in the Ninth Circuit and throughout the country frequently reject." *Munro* v. *Univ. of S. Cal.*, 2019 WL 7842551, at * 9–10 (C.D. Cal. Dec. 20, 2019); *see also Wildman* v. *Am. Century Servs.*, 2017 WL 6045487, at *6 (W.D. Mo. Dec. 6, 2017) (rejecting arguments that *LaRue* changed the class certification analysis for ERISA cases).

The simple fact is that, as *Cooper* now has confirmed, Arbitration Claimants have no individual rights in the claims they seek to pursue in arbitration.  Thus, class certification is the only appropriate path to the final resolution of Plaintiffs' and other redundant claims concerning the Plan.[1]

### 2. *The FAA Does Not Preclude Class Certification Because Arbitration Claimants Have No Individual Rights in Their Claims*

Arbitration Claimants previously have argued that class certification is somehow precluded by the FAA, which, according to Arbitration Claimants, grants them a "right to arbitrate."  (ECF Nos. 182 at 20–22).  *Cooper* has confirmed this argument, too, is incorrect.

The Second Circuit in *Cooper* determined that the same breach of fiduciary duty claims at issue here are not arbitrable under the DST arbitration agreement that the court considered.  In particular, the court held that the Agreement's language, covering disputes "arising out of or relating to employment," did not apply to plaintiff's ERISA fiduciary duty claims concerning the Valeant investment.  990 F.3d at 179–84.  More fundamentally, as detailed above, the Second Circuit made clear that the fiduciary duty claims at issue belong *to the Plan*, not to individual plan participants.  The Second Circuit reaffirmed that §§ 502(a)(2) and 409, pursuant to which

---

[1]   In support of their erroneous argument, Arbitration Claimants previously have cited *In re J.P. Morgan Stable Value Fund ERISA Litigation*, 2017 WL 1273963 (S.D.N.Y. Mar. 31, 2017), and *Carr* v. *International Game Technology*, 2012 WL 909437 (D. Nev. Mar. 16, 2012).  (*See* ECF No. 182 at 12.)  Both cases are inapposite.

In *In re J.P. Morgan Stable Value Fund*, the court declined to certify a Rule 23(b)(1) class because the named plaintiffs brought claims that were not shared by all participants in the affected portion of the plan; the claims thus required individualized analysis to determine which participants were members of the proposed class.  2017 WL 1273963, at *13.  Here, by contrast, Plaintiffs' fiduciary duty claims are common to all Plan participants.  Additionally, in *Carr*, the District of Nevada declined to certify a class because plaintiffs failed to establish commonality or typicality.  2012 WL 909437, at *2–6.  *Carr*'s reasoning has been rejected by the Second Circuit.  *See Cooper*, 990 F.3d at 180, 184–85; *L.I. Head Start*, 710 F.3d at 65.

Plaintiffs' claims are brought, "mean that a plaintiff suing for breach of fiduciary duty under § 502(a)(2) may seek recovery only for injury done *to the wronged plan*." *Id.* at 180 (citing *LaRue*, 552 U.S. at 256); *see also L.I. Head Start*, 710 F.3d at 65; *Coan*, 457 F.3d at 257; 29 U.S.C § 1109 (providing that "a fiduciary *with respect to a plan*" that breaches its fiduciary duties "shall be personally liable to make good *to such plan* any losses *to the plan* resulting from each such breach") (emphases added).

Moreover, any potential recovery likewise does not belong to individual Plan participants. A participant in a defined-contribution plan "suing to recover benefits on behalf of the plan is not entitled to monetary relief payable directly to him; rather, any recovery must be paid to the plan." *LaRue*, 552 at 263 n* (Thomas, J., concurring); *see also Moreno*, 2017 WL 3868803, at *3 (citing *LaRue*, 552 U.S. at 263 n* (Thomas, J., concurring)) ("[A]ny monetary recovery is awarded to the Plan, not the participants."). As the Second Circuit has explained, "[i]t is of no moment that recovery inuring to the Plan may ultimately benefit the particular participants"—it nevertheless belongs to the retirement plan. *L.I. Head Start*, 710 F.3d at 66. Arbitration Claimants thus have no cognizable individual contractual rights in the fiduciary duty claims (or any corresponding recovery) at issue. Those rights belong to the Plan.

Further, as discussed above, the Second Circuit in *Cooper* confirmed that ERISA fiduciary duty claims may be brought only on a representative basis, not an individual basis. Should litigants fail to comply with these basic ERISA requirements—as Arbitration Claimants are doing—courts will "decline to enforce any award . . . secure[d] in arbitration for running afoul of *Coan*." 990 F.3d at 184. Accordingly, *Cooper* recognizes that Arbitration Claimants have no right to prosecute their claims individually, that the arbitration agreement the Second Circuit considered does not encompass their claims, and that any recovery obtained by Arbitration Claimants through the

improper individual prosecution of their claims should not be enforced.   Thus, Arbitration Claimants' assertion that they have an "absolute right to arbitrate against DST on an individual rather than a class basis" (ECF No. 182 at 22), is demonstrably incorrect.   Indeed, certification is especially appropriate here to prevent Arbitration Claimants from improperly pursuing claims on an individual basis absent the necessary procedural safeguards, in violation of ERISA and controlling Second Circuit law.

The fact that Arbitration Claimants have insisted on proceeding with individual arbitrations while Plaintiffs' class certification motion was pending does not counsel against certification.   The certification of a mandatory class routinely extinguishes pending claims in other jurisdictions, including arbitrations.   *See In re Joint E. & S. Dists. Asbestos Litig.*, 120 B.R. 648, 655 (E.D.N.Y. 1990) (ordering conditional certification of mandatory national class under Rule 23(b)(1)(B) in which "all pending state and federal cases [were] to become part of the mandatory class and cease to exist as independent cases"); *Stott* v. *Cap. Fin. Servs., Inc.*, 277 F.R.D. 316, 347 (N.D. Tex. 2011) (enjoining members of mandatory class from pursuing arbitrations); *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, 2010 WL 11506713, at *2, *9–10 (N.D. Ala. May 19, 2010) (recognizing that certified Rule 23(b)(1) class "extinguished all current and future breast implant related claims against [defendant]").   And courts in this and other circuits also stay arbitrations in favor of class proceedings.   *See Allstate Ins. Co.* v. *Elzanaty*, 929 F. Supp. 2d 199, 220 (E.D.N.Y. 2013) (staying arbitration proceedings to permit orderly adjudication of Rule 23 proceedings); *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, 2014 WL 12621614, at *11–12 (D.S.C. Oct. 15, 2014) (enjoining arbitration proceedings pending final approval of class action settlement in federal court).

### 3.      *Arbitration Claimants' New Arguments About* **Cooper** *Should Also Be Rejected*

Forced to abandon their prior arguments after *Cooper* was decided, Arbitration Claimants have advanced several new theories attempting to avoid the Second Circuit's decision.  (*See* ECF No. 295 at 1–3.)  These new arguments are meritless.

*First*, Arbitration Claimants try to cabin *Cooper*, arguing that "the appeal was about contract interpretation" and "has no impact on the arbitration claimants' right to arbitrate *against DST*."  (*Id.* at 1.)  But that is not what the opinion says.  The Second Circuit interpreted a DST arbitration agreement, considered nearly identical claims involving the same allegations and same parties, and concluded that the DST arbitration agreement did not encompass the very ERISA claims that Arbitration Claimants are pursuing.  The court also discussed at length the long-recognized principle in the Second Circuit that ERISA fiduciary duty claims are not properly asserted on an individual basis, precisely as Arbitration Claimants have done in arbitration.  Arbitration Claimants thus invite the Court to ignore the plain language of a published, controlling Second Circuit decision, as though it were a gratuitous aside rather than an explication of Second Circuit law.  Contrary to Arbitration Claimants' suggestion, the Second Circuit's reaffirmation that ERISA fiduciary duty claims are representative in nature and may not be brought to recover individual damages—which is consistent with both prior Circuit and Supreme Court precedent—is the binding law of this Circuit.

*Second*, Arbitration Claimants argue that the Second Circuit in *Cooper* could not hold that ERISA claims are not arbitrable because such a holding would have contravened the court's prior decision in *Bird* v. *Shearson Lehman/American Express, Inc.*, 926 F.2d 116 (2d Cir. 1991).  (*Id.*)  But nothing in *Bird* is inconsistent with *Cooper*.  Unlike what Arbitration Claimants do here, *Bird* involved ERISA claims brought on a representative basis by a trustee of the plan on behalf of the

plan. 926 F.2d at 122. There is no indication in *Bird* that, as here, the applicable arbitration agreement prohibited pursuing representative actions in arbitration, which *Cooper* found contravened ERISA's requirements. To the extent anything in the 30-year-old *Bird* opinion is inconsistent with *Cooper*, it of course is superseded by *Cooper*.

*Third*, Arbitration Claimants argue they have the right to arbitrate against DST because the Plan "adopted the Arbitration Agreement." (ECF No. 295 at 2.) But the Plan provision that Arbitration Claimants rely upon contemplates arbitration only "as provided under the Arbitration Policy in effect as part of the DST Systems, Inc., Associate Handbook" and "to the extent applicable to Company Employees." (ECF No. 172-13 at 4.) As *Cooper* found, when correctly interpreted, the DST arbitration agreement it considered does not permit the arbitration of these claims. *See Cooper*, 990 F.3d at 184. *Cooper* likewise recognized that the individual prosecution of these claims in arbitration, as required by the DST arbitration agreements, is not consistent with ERISA's requirements. *See id.* at 184–85. The Plan provision on which Arbitration Claimants rely thus makes no difference; it does not afford any greater rights than those afforded under the DST arbitration agreements that the Second Circuit recognized do not permit the arbitration of these claims. Moreover, it is undisputed that the named Plaintiffs are not subject to any arbitration provisions whatsoever.

*Fourth*, Arbitration Claimants assert that James DuCharme, a single Arbitration Claimant, "has a final judgment" from the Western District of Missouri "that enables him to arbitrate against DST." (ECF No. 295 at 3.) That decision does no such thing. In *Ducharme* v. *DST Systems, Inc.*, 2017 WL 7795123 (W.D. Mo. June 23, 2017), the court simply dismissed the representative claims that Mr. DuCharme purported to assert on behalf of the Plan as a class representative because he had not opted out of the arbitration agreement (which contained the same language as in *Cooper*)

14

and had thus "waived his right to act in a representative capacity on behalf of a class or collective action." *Id* at *1. The court *did not* compel arbitration or "enable[]" DuCharme to arbitrate. *See id.* Nor did the court grapple with the issue of whether § 502(a)(2) permits individual actions to recover for individual injuries distinct from plan injuries. Arbitration Claimants' resort to "Eight Circuit [*sic*] precedent" (ECF No. 295 at 3) thus is unavailing. No Eighth Circuit court of which we are aware has addressed and reached a contrary conclusion to *Cooper*, *Coan* or *L.I. Head Start*, in which the Second Circuit repeatedly has recognized that ERISA fiduciary duty claims may not be prosecuted individually. And, in any event, those Second Circuit decisions are controlling; Eighth Circuit law is not.

Insofar as Arbitration Claimants again assert that the DST Defendants somehow are estopped from supporting class certification in light of the *Ducharme* decision (*see* ECF No. 182 at 24–25), those arguments remain meritless. As an initial matter, estoppel is wholly irrelevant because the *Ferguson* plaintiffs, not the DST Defendants, moved to certify the proposed class. Arbitration Claimants do not—and cannot—assert that the movants are estopped from seeking class certification. In addition, *Ducharme* involved different facts and was brought by a plaintiff who was subject to an arbitration agreement. *Ferguson* is the first-filed representative case that can actually be maintained in court. There is no dispute that the named Plaintiffs are not subject to an arbitration agreement and have the right to prosecute claims in this forum. As required by *Coan* and *Cooper*, they are doing so on a representative basis, seeking to recover on behalf of the Plan. Thus, the parties are newly presented with the question of how hundreds of individual arbitrations and multiple individual litigations can be squared with one another, particularly now that the Second Circuit in *Cooper* has reaffirmed that individual actions to recover on the claims here cannot be maintained. Estoppel does not result when a party's arguments address different

cases with different facts.  *See Troll Co.* v. *Uneeda Doll Co.*, 483 F.3d 150, 155 (2d Cir. 2007); *see also New Hampshire* v. *Maine*, 532 U.S. 742, 750 (2001) (for estoppel to apply, "a party's later position must be 'clearly inconsistent' with its earlier position") (citations omitted).

Thus, Arbitration Claimants' newly minted efforts to avoid the consequences of *Cooper* and oppose the certification of the proposed class should be rejected.

## II.    The Proposed Class Should Be Certified Under Rule 23(b)(1)

Now that *Cooper* has rejected the notion that Arbitration Claimants have any "right" to individual arbitration, it is clear that the proposed class should be certified under Rule 23(b)(1), as courts routinely certify such claims for mandatory class treatment.

Class certification is appropriate here under both Rule 23(b)(1)(A) and Rule 23(b)(1)(B) because Plaintiffs are asserting representative claims for Plan-wide relief.  Courts in this Circuit have recognized that "[b]ecause of ERISA's distinctive representative capacity and remedial provisions," ERISA fiduciary duty claims "present[] a paradigmatic example of a [Rule 23](b)(1) class."  *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 442, 453 (S.D.N.Y. 2004) (internal quotation marks and citations omitted); *see also In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 78 (S.D.N.Y. 2006) (similar).  Moreover, "[t]he Supreme Court has observed that actions for breach of fiduciary duties are 'classic examples' of Rule 23(b)(1) cases . . . , and courts in this Circuit have indeed determined that claims for breach of fiduciary duty brought under ERISA, 29 U.S.C. § 1132(a)(2)—as plaintiffs do in this action—are well suited to Rule 23(b)(1)." *Douglin* v. *GreatBanc Tr. Co.*, 115 F. Supp. 3d 404, 412 (S.D.N.Y. 2015) (internal citation omitted).

### A.   Class Certification Is Appropriate Under Rule 23(b)(1)(A) Because Individual Suits Would Impose Incompatible Standards on the Plan

Class certification is appropriate under Rule 23(b)(1)(A) because allowing individual actions, rather than one collective action, to proceed will impose incompatible standards on the Plan.  One court in this district has explained that "[t]he language of subdivision (b)(1)(A), addressing the risk of 'inconsistent adjudications,' speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.'"  *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 & n.54 (S.D.N.Y. 2006) (quoting *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 614 (1997)).  Accordingly, courts regularly certify ERISA fiduciary duty actions under Rule 23(b)(1)(A).

For example, another court in this district decided that, where plaintiffs alleged that defendant "owed and breached a fiduciary duty in their management of the Plans . . . as to <u>all</u> plaintiffs," "[a]llowing 20,000 individual cases could result in varying adjudications over defendant's alleged breach and how to measure the damages." *Sacerdote*, 2018 WL 840364, at *6. Further, "[s]eparate adjudications could risk incompatible standards for . . . administering the Plans going forward." *Id.*; *see also Caufield* v. *Colgate-Palmolive Co.*, 2017 WL 3206339, at *6 (S.D.N.Y. July 27, 2017) (in certifying a class pursuing ERISA denial of benefits claims, holding that "[i]f two courts came to different conclusions as to how the . . . benefits must be calculated, Defendants would face a conflict between treating Plan participants alike and complying with each separate court order").

The concerns voiced by these courts are unfolding in real time as Arbitration Claimants pursue hundreds of individual arbitration claims without any court oversight.  Results to date have varied wildly.  Two hundred fifty-one hearings have been held, and 149 post-hearing awards issued.  (Decl. ¶ 3.)  DST has prevailed in full in thirty-six post-hearing awards, in which there

was a finding of no liability and the claimant was awarded no damages. (*Id.* ¶ 4.) In awards that found liability, there has been a wide range of conclusions as to the measure of damages. The majority of the arbitration claimants who have prevailed against DST have received less than the maximum damages they requested. (*Id.* ¶ 5.) Indeed, thirty-eight prevailing claimants have received less than half of the damages they sought. (*Id.*)

These inconsistent results raise serious questions under ERISA. Inconsistent results finding no breach of fiduciary duty or only partial liability raise questions as to the proper standards for monitoring the Plan going forward. Furthermore, the inconsistent results after hearings raise significant questions about the distribution of Plan assets to participants. In ERISA fiduciary duty actions, "[a]ny monetary relief will be paid to the Plan, and the Plan fiduciaries would be responsible for allocating the recovery among participants." *Moreno*, 2017 WL 3868803, at *9 (citation omitted). Plan fiduciaries must determine how to allocate such recoveries among Plan participants while complying with the separate fiduciary obligation to "treat the members of the class alike." *In re Citigroup*, 241 F.R.D. at 179 & n.54.

Moreover, regardless of whether the Court certifies the proposed mandatory class, it will need to adjudicate Plaintiffs' claims for Plan-wide relief, which Plaintiffs bring on a representative basis as required by *Coan* and *Cooper*. (*See* ECF No. 301 at 8 n.6.) The adjudication of Plaintiffs' representative claims as hundreds of individual arbitrations are inconsistently resolved in parallel without court oversight will make equitable treatment of Plan participants all the more impossible to navigate. Thus, in certifying a Rule 23(b)(1) class in an ERISA fiduciary duty action, the U.S. District Court for the District of Columbia explained that "if a court entertaining an individual account claim . . . were to reach a different conclusion from a court entertaining a plan-wide claim, the fiduciaries would be left with incompatible orders concerning the same account. . . . Such

18

competing orders lead to incompatible standards of conduct for the defendants." *See Harris* v. *Koenig*, 271 F.R.D. 383, 394 (D.D.C. 2010) (quoting *Stanford* v. *Foamex L.P.*, 263 F.R.D. 156, 173 (E.D. Pa. 2009)).

There are yet other troubling questions raised by Arbitration Claimants' opposition to class certification.  Arbitration Claimants' counsel already were disqualified by this Court in light of significant conflicts of interest.  *See Canfield* v. *SS&C Techs. Holdings, Inc.*, 2020 WL 3960929, at *2–4 (S.D.N.Y. July 10, 2020).  A significant proportion of Arbitration Claimants—thirty-six to date—have lost their arbitrations after merits hearings.  Yet Arbitration Claimants' counsel continue to oppose class certification and the proposed settlement[2] even though a significant proportion of their clients who otherwise would recover nothing in arbitration only stand to benefit. The Court should consider the significant questions raised by the position taken by Arbitration Claimants' counsel—purportedly on behalf of all of their clients, including those who would be harmed if their counsel prevailed.

In sum, the variability of the arbitration results and the fact that Plan participants will be subject to wildly disparate outcomes in the absence of certification underscore the need for the procedural safeguards required by the Second Circuit and amply demonstrate that class certification is appropriate.

---

[2]  Plaintiffs have sought preliminary approval of class action settlements that include all Defendants and the certification of the same class contemplated by this motion.  (ECF Nos. 265, 266.)  Accordingly, the Court need not reach this motion if it preliminarily, and ultimately finally, approves the proposed settlement.  Furthermore, in the settlement class context, the Court need not address any questions concerning class management affecting litigation classes. *See, e.g.*, *In re Glob. Crossing*, 225 F.R.D. at 451 (citing *Amchem Prods., Inc.*, 521 U.S. at 620) (stating that a district court "[c]onfronted with a request for settlement-only class certification, need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial" (alteration in original)).

**B.      Class Certification Is Appropriate Under Rule 23(b)(1)(B) Because Individual Suits Would Prejudice Other Class Members**

Class certification also is appropriate under Rule 23(b)(1)(B) because individual arbitrations will impair the rights of the majority of the Plan participants.

"A breach of fiduciary duty claim brought by one member of a retirement plan ***necessarily*** affects the rights of the rest of the plan members to assert that claim, as the plan member seeks recovery on behalf of the plan as an entity.  Accordingly, by the very nature of the relief sought, the prosecution of separate actions would risk prejudice to putative class members." *In re AOL Time Warner ERISA Litig.*, 2006 WL 2789862, at *4 (S.D.N.Y. Sept. 27, 2006) (emphasis added). Similarly, another court in this district has explained that "[t]he 'derivative nature of ERISA § 502(a)(2) claims makes them paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class . . . because any decision regarding whether the defendants breached their fiduciary duties would ***necessarily*** affect the interests of other participants.'" *Beach* v. *JPMorgan Chase Bank, Nat'l Assoc.*, 2019 WL 2428631, at *9 (S.D.N.Y. June 11, 2019) (emphasis added) (quoting 2 *Newberg on Class Actions* § 4:21 (5th ed. 2019)).  Further, where, as here, "Defendants' alleged conduct was uniform with respect to each participant, adjudicating Plaintiffs' claims, as a practical  matter, would dispose of the interests of the other participants or substantially impair or impede their ability to protect their interests." *Moreno*, 2017 WL 3868803, at  *8.

Courts thus regularly certify classes in ERISA fiduciary duty suits under Rule 23(b)(1)(B). *See, e.g.*, *In re AOL Time Warner*, 2006 WL 2789862, at *4 (certifying class for settlement purposes and collecting cases); *Beach*, 2019 WL 2428631, at *9; *Moreno*, 2017 WL 3868803, at *10; *Cunningham*, 2019 WL 275827, at *8 ("Because damages are owed to the Plans and not individual plaintiffs, adjudication of the named plaintiffs' suits would be dispositive of the interests of other participants in the Plans.").  Citing several such cases, the court in *Jacobs* v. *Verizon*

*Communications Inc.*, 2020 WL 4601243 (S.D.N.Y. June 1, 2020), *R. & R. adopted*, 2020 WL 5796165 (S.D.N.Y. Sept. 29, 2020), noted that ERISA fiduciary duty actions "bear[] the hallmarks of a 23(b)(1)(B) class action for the very reason that 'plaintiffs['] allegations are brought with respect to breaches of fiduciary duties to the Plans as a whole.'" *Id.* at *13 (quoting *Cunningham*, 2019 WL 275827, at *8). In *Jacobs*, defendants argued that certification under Rule 23(b)(1)(B) was inappropriate because plaintiffs were seeking damages, which would vary for each plaintiff depending on the holdings in their individual accounts, and that class members should be permitted an opt-out right under Rule 23(b)(3). *Id.* The court rejected these arguments, noting that "[t]hese arguments have been floated before in other similar cases and soundly rejected." *Id.* at *14. The court explained that "[t]he principal flaw in Defendants' argument is a misapprehension of the nature of an ERISA class action case such as this one. ***Regardless whether damages and/or injunctive relief are sought, the named Plaintiffs bring suit in a derivative capacity seeking relief on behalf of the Plan***." *Id.* (emphasis added). The court thus concluded that "this action falls comfortably within the confines of Rule 23(b)(1)(B)." *Id.*

Here, Arbitration Claimants' prosecution of individual claims "necessarily" affects absent class members' rights. This is so, even though Arbitration Claimants and Plaintiffs seek to recover damages. (*See* ECF No. 182 at 1–2, 14–18 (arguing that suits to recover damages do not implicate the concerns of Rule 23(b)(1)(B)).) That is precisely why Second Circuit precedent requires that ERISA fiduciary duty actions be brought in a representative capacity, with appropriate procedural safeguards designed to protect absent class members. *See Cooper*, 990 F.3d at 184; *Coan*, 457 F.3d at 259–62. Any contrary holding "create[s] significant practical difficulties and opportunities for abuse," against which *Coan* warned. 457 F.3d at 261.

## **CONCLUSION**

The Court should grant Plaintiffs' renewed motion for class certification.


Dated:  May 3, 2021

PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP

By: /s/ *Lewis R. Clayton*
Lewis R. Clayton (lclayton@paulweiss.com)
Jessica S. Carey (jcarey@paulweiss.com)
Jeffrey J. Recher (jrecher@paulweiss.com)

1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000