USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: August 17, 2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL L. FERGUSON ET AL, <br><br> Plaintiffs, <br><br> -against- <br><br> RUANE CUNIFF & GOLDFARB INC., <br><br> Defendants. | 17-CV-6685 (ALC) <br><br> **MEMORANDUM AND ORDER** |

Michael L. Ferguson, Myrl C. Jeffcoat and Deborah Smith collectively, ("Plaintiffs"), individually and on behalf of the DST Systems, Inc. 401(k) Profit Sharing Plan (the "Plan"), bring this action under 29 U.S.C. § 1132 against Ruane Cuniff & Goldfarb Inc. ("RCG"); DST Systems, Inc. ("DST"); The Plan's Advisory Committee; and the Compensation Committee of the Board of Directors of DST Systems, Inc.; (collectively, "Defendants"), for breach of fiduciary duties and other violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. Pending before the Court are Plaintiffs' motions for leave to file a third amended complaint, class certification, and preliminary approval of the class action settlement agreements. For the reasons that follow, Plaintiffs' motions to file a third amended complaint and for class certification are granted. Plaintiffs' motions for preliminary approval of the class action settlements are denied.

**BACKGROUND**

DST is a global provider of technology-based information processing and servicing solutions who offered its employees the opportunity to participate in the DST Systems, Inc. 401(k) Profit Sharing Plan (the "Plan") — a vehicle for retirement savings designated to produce retirement income for its participants. SAC ¶ 12. Plaintiffs are Plan Participants. *Id.* at ¶¶ 9–11.

1

The Plan is a defined-contribution retirement plan, funded through employee-directed contributions, DST matching contributions, and DST's voluntary profit-sharing contributions. SAC ¶¶ 4,12. The Plan was originally composed of two components: 1) a Profit Sharing Account ("PSA"), in which DST made contributions on behalf of employees and delegated investment management responsibilities to RCG; and 2) a 401(k) participant-directed portion of the Plan, where participants allocate the employee and employer matching contributions into any investment option available under the Plan as determined by the Advisory Committee ("401(k) portion of the plan"). *Id.* at ¶¶ 4 n.1, 22–23, 27.

DST is the Plan's sponsor, administrator, and a designated fiduciary. SAC ¶ 14. The Advisory Committee and Compensation Committee are named fiduciaries under the Plan, and DST administered the Plan through the Compensation and Advisory Committees. *Id.* at ¶¶ 14-16, 18.

With respect to the PSA portion of the Plan, Plaintiffs allege, *inter alia*, that RCG breached its fiduciary duties under ERISA by concentrating an enormous and imprudent amount of the Plan assets in the Valeant Pharmaceuticals International Inc. stock ("VRX"), which caused the Plan to suffer over $100 million in losses when VRX's share price declined in 2015. SAC ¶¶ 5, 24–50. As Plan fiduciaries, the DST Defendants had a duty to monitor RCG, and thus breached that duty by both failing to protect the Plan from RCG's imprudent investment strategy and even supporting RCG when its strategy imploded. *Id.* at ¶¶ 51-53, 55. According to Plaintiff, the DST Defendants engaged in such nonfeasance and malfeasance to preserve its longstanding financial relationship with RCG. *Id.* at ¶¶ 35-40.

*Proposed Class*

Plaintiffs seek to certify and be appointed as representatives of the Class that includes:

2

> All participants and beneficiaries of the DST Systems, Inc. 401(k) Profit Sharing Plan from March 14, 2010 through July 31, 2016 (the "Class Period"), excluding the Defendants and all other individuals who are or have ever been a member of the Advisory Committee of the DST Plan, the Compensation Committee of the Board of Directors of DST or otherwise served as fiduciaries of the DST Plan during the Class Period.

See Pls.' Class Certification Mem. of Law at 7.

Plaintiffs allege that the Class includes more than 9,000 members and joinder is impracticable; there are questions of law and fact common to the Class regarding Defendants' fiduciary duties to the Plan and the participants and beneficiaries; Plaintiffs' claims are typical of the class because they were all participants in the plan during the period and all Participants in the Plan were harmed by Defendants' misconduct; and Plaintiffs are adequate representatives of the Class because they were Participants in the Plan during the Class Period and have no conflicts with the Class. *See* Pls.' Class Certification Mem. of Law; Proposed Third Am. Compl. at ¶¶ 61–64.

Moreover, Plaintiffs allege that prosecution of separate actions by individual participants and beneficiaries would create the risk of inconsistent and varying adjudications, and adjudications by individual participants and beneficiaries would be dispositive of the interests of the participants and beneficiaries not parties to the adjudications, or would impede those participants' and beneficiaries' ability to protect their interests. Therefore, Plaintiffs allege the action should be certified as a class action pursuant to Rules 23(a) and 23(b)(1). *Id.*

## PROCEDURAL HISTORY

Plaintiffs filed their Original Complaint on September 1, 2017, an Amended Complaint on November 20, 2017, the Second Amended Complaint on November 5, 2018, and leave to file the Third Amended Complaint on April 10, 2020. (ECF Nos. 1, 9, 82, 124). Plaintiffs moved to certify the class on April 10, 2020 (ECF No. 126), and on January 12, 2021, Plaintiffs moved for

preliminary approval of the class action settlement agreements with the RCG and DST defendants. (ECF Nos. 265, 266.)

The RCG Defendants opposed both the motion to file a third amended complaint and the motion for class certification. (ECF Nos. 138, 140.) Similarly, the arbitration claimants opposed the motion for class certification and the motions for preliminary approval of the class action settlement agreements. (ECF Nos. 183, 271), and the Secretary of Labor opposed the injunctive provisions in Plaintiffs' class action settlement agreement. (ECF No. 269.)

On March 4, 2021, the Second Circuit Court of Appeals found that a similar plaintiff's breach of fiduciary duty claim brought on behalf of the plan did not relate to his employment and thus did not require arbitration under the terms of the arbitration agreement. *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 175 (2d Cir. 2021). The Court then denied Plaintiffs' motions for class certification and to file a third amended complaint without prejudice. The Court gave Plaintiffs an opportunity to refile their motions, and directed the parties to address what, if any, effect the Copper opinion has on the motion for class certification and motion for leave to file a third amended complaint. Plaintiffs then refiled their motions on April 5, 2021. (ECF Nos. 298, 300.) The arbitration Claimants opposed the motions, and the DST Defendants filed a motion in support of class certification on May 3, 2021. (ECF Nos. 304, 306.) Plaintiffs replied on May 10, 2021. (ECF No. 309.) The Court considers these motions fully briefed.

## DISCUSSION

### I. Standard of Review

Under Rule 23, members of a class may sue as representational parties "only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the

4

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Said differently, in order to qualify for class certification, plaintiffs in the proposed class must demonstrate that they satisfy four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." C*ent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007).

The third factor, typicality, "requires that the claims of the class representatives be typical of those of the class and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* at 245 (internal quotation marks omitted). Part of the typicality requirement (or a separate requirement implicit in Rule 23(a), as it is sometimes viewed, *see* 1 Newberg on Class Actions § 3:1 (5th ed., June 2019 update)) is that the proposed class representatives be members of the class they seek to represent. *See id.*; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011). In addition, there is an "implied requirement of ascertainability . . ., which demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (internal quotation marks omitted). In the Second Circuit, that "requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *Id.* at 264.

If the requirements of Rule 23(a) are met, "the district court must also find that the action can be maintained under Rule 23(b)(1), (2), or (3)." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011). Plaintiffs need establish only one basis for certification under Rule 23(b). *See Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017).

5

Here, Plaintiffs seek to certify the class under Rule 23(b)(1), "where individual adjudications 'as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.'" *Wal-Mart*, 564 U.S. at 361 n.11 (quoting Rule 23(b)(1)(B)). The Court shall address each element in turn.

## II.     The Second Circuit's Decision in Cooper

As an initial matter, the Court finds that the Second Circuit's decision in *Cooper* made clear that the claims at issue in this matter are not covered by the arbitration agreement. In *Cooper*, the Second Circuit found that Plaintiff's claim for breach of fiduciary duty on behalf of the plan did not relate to his employment and thus did not require arbitration under the terms of the arbitration agreement. *Cooper*, 990 F.3d at 173.

Here, the arbitration claimants put forth several arguments. The arbitration claimants argue that the Second Circuit did not have the opportunity to consider the plan's adoption of the arbitration agreement which states that "the arbitration policy applies to all claims arising out of or relating to the Plan", and since the agreement was adopted, *Cooper* is inapposite. Arbitration Claimants' Mem. of Law at 3–5. The Arbitration claimants further argue that they are not seeking to bring claims on behalf of the plan. Rather, the arbitration claimants argue that they are asserting individual claims in arbitration for the fiduciary breaches that damaged the value of their individual plan assets in their defined contribution plans. *Id.*

The Court finds both of these arguments unavailing. The arbitration provision that RCG and DST used to compel arbitration is the arbitration provision that was before the Second Circuit as well as the arbitration provision that is at issue in this matter. Thus, the Court is not in the position to question what was before the Second Circuit, and the Court does not find that the

6

Second Circuit applied a countertextual reading to the arbitration agreement as the Arbitration Claimants suggest.

Additionally, even if the Court were to consider the Plan's adoption of the amended Arbitration Agreement, the Court would still find that claims for fiduciary breach are not covered by the Arbitration Agreement. The Arbitration Claimants' assertion that the adopted language bars class certification runs afoul of *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), which requires parties suing on behalf of the plan to demonstrate their suitability to serve as representatives of the interests of other plan stakeholders. Thus, as the Second Circuit stressed in *Cooper*, if the Court were to take the Arbitration Claimants' version of the Arbitration Agreement, it is unclear how "an employee can bring an ERISA fiduciary claim that satisfies *Coan*'s adequacy requirement, while concurrently applying with the agreement[.]"

Moreover, while *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) authorizes recovery for fiduciary breaches that "impair the value of plan assets in a participant's individual account," these claims are still on behalf of the plan. *LaRue* did not expand § 502(a)(2) to allow individual claims that are not based on losses to plan assets. In fact, the Court explicitly warned that "§502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries . . . ." *See id*. at 256. Thus, as previously stated, the Court finds that the Second Circuit's decision in *Cooper* made clear that the claims at issue in this matter are not covered by the Arbitration Agreement.

### III.   Rule 23(A)

The Court shall next address Plaintiffs' class certification motion. Plaintiffs seek to certify and be appointed as representatives of the Class that includes:

> All participants and beneficiaries of the DST Systems, Inc. 401(k) Profit Sharing Plan from March 14, 2010 through July 31, 2016 (the "Class Period"), excluding

7

the Defendants and all other individuals who are or have ever been a member of the Advisory Committee of the DST Plan, the Compensation Committee of the Board of Directors of DST or otherwise served as fiduciaries of the DST Plan during the Class Period.

### i. Numerosity

The numerosity requirement is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although the practicality of joinder "depends on all the circumstances surrounding a case, not on mere numbers," the Second Circuit has stated that "courts are likely to conclude that the numerosity requirement is satisfied when the class comprises 40 or more members." *Novella v. Westchester Cty.*, 661 F.3d 128, 143-44 (2d Cir. 2011) (internal quotation marks omitted); *see, e.g.*, *Shahriar v. Smith & Wollensky Rest. Grp.*, Inc., 659 F.3d 234, 252 (2d Cir. 2011) (numerosity requirement is met for class of 275 people); *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 9936, 2017 WL 3868803, at *4 (S.D.N.Y. Sept. 5, 2017) (numerosity requirement met in derivative ERISA suit where the plan had 22,000 participants and 10,000 former participants).

Here, Plaintiffs allege that the class consists of over 9,000 members. Therefore, Because the class here consists of potentially thousands of members, the numerosity requirement is plainly met.

### ii. Commonality

Next, the "commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Central States II*, 504 F.3d at 245 (internal quotation marks omitted). "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *In re Glob.*

*Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004) (internal quotation marks omitted); *see also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142–43 (S.D.N.Y. 2010) ("By their very nature, ERISA actions often present common questions of law and fact, and are therefore frequently certified as class actions.").

Here, the questions of law and fact — including "(1) whether Defendants were fiduciaries of the Plan; (2) whether Defendants breached their fiduciary duties; (3) whether the Plan and its participants and beneficiaries were injured by Defendants' breaches; and (4) whether the Class is entitled to damages and, if so, the proper measure of damages" — are "common questions [that] satisfy Plaintiffs' burden under Rule 23(a)(2)." *In re Marsh*, 265 F.R.D. at 143; *see* SAC ¶ 72; *see also Moreno*, 2017 WL 3868803, at *4 ("Typically, the question of defendants' liability for ERISA violations is common to all class members."). Accordingly, the commonality requirement is met here.

### iii. Typicality

The third Rule 23(a) requirement — typicality — is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Central States II*, 504 F.3d at 245 (internal quotation marks omitted). In many contexts, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart*, 564 U.S. at 349 n.5. In ERISA breach of fiduciary duty cases, however, courts sometimes break the typicality requirement into three elements. *See, e.g., Moreno*, 2017 WL 3868803, at *7; *see also Cunningham v. Cornell Univ.*, No. 16 Civ. 6525, 2019 WL 275827, *7 (S.D.N.Y. Jan. 22, 2019) (breaking down into first two components). The first element is that the claims largely "arise from the same course of events — the[ parties'] participation in the Plan." *Moreno*, 2017 WL 3868803, at *7. Second, plaintiffs must make "similar legal arguments to prove

liability — that Defendants mismanaged the Plan in violation of ERISA." Id. The third element is, effectively, that each plaintiff invested in at least one of the subject funds. *See id*.

The Arbitration Claimants and Canfield and Mendon Claimants argue that the named Plaintiffs' claims are atypical of class as they are not bound by the arbitration agreement and thus cannot represent the absent class members, the majority of which are bound by arbitration agreements and/or currently in arbitration proceedings.

Here, Plaintiffs' claims are typical of the class. Notably, *Cooper* made clear that the claims at issue in the matter are not covered by the arbitration agreement. Thus, while a significant portion of the proposed class—approximately 95% according to the Arbitration Claimants—were subject to the arbitration agreement and/or are currently engaged in arbitration proceedings, this, alone, does not defeat Plaintiffs' typicality arguments.[1]

As the arbitration agreement is not a barrier to typicality, the Arbitration Claimants are not in a different position than the named Plaintiffs because the arbitration provision that they rely on was found not to relate to their employment and thus did not require arbitration under the terms of the agreement. Additionally, the Arbitration Claimants do not have defenses that the named Plaintiffs cannot argue on their behalf, and there is no circumstance where the arbitration provisions would be applicable to the Arbitration Claimants and not applicable to the named Plaintiffs.

The typicality requirement 'is often met in putative class actions brought for breaches of fiduciary duty under ERISA." *In re Marsh*, 265 F.R.D. at 143 (citing *Koch v. Dwyer*, 2001 WL 289972, at *3 (S.D.N.Y. Mar. 23, 2001)); *see also* LARRY W. JANDER, RICHARD J. WAKSMAN,

---

[1] The Arbitration Claimants have submitted several status letters noting the progression of the arbitration proceedings. On February 11, 2021, the Arbitration Claimants' counsel provided a status letter, indicating that to date the arbitration claimants have prevailed in 73 cases and lost 9 cases. *See* ECF No. 291.

*& all other individuals similarly situated, Plaintiffs, v. RETIREMENT PLANS COMMITTEE OF IBM, RICHARD CARROLL, MARTIN SCHROETER, & ROBERT WEBER, Defendants.*, No. 15 CV 3781, 2021 WL 3115709, at *5 (S.D.N.Y. July 22, 2021). Typicality requires a "common thread linking the proposed class members," *see In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12 CV 2548, 2017 WL 1273963, at *9 (S.D.N.Y. Mar. 31, 2017), and the common thread here is that RCG breached its fiduciary duties under ERISA by concentrating an enormous and imprudent amount of the Plan assets in the VRX, and as Plan fiduciaries, the DST Defendants had a duty to monitor RCG, and thus breached that duty by failing to protect the Plan from RCG's investment strategy. *Id.* at ¶¶ 51–53, 55. *See Robidoux v. Celani*, 987 F.2d 931, 936–937 (2d Cir. 1993)). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims;" *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 (1982). "The commonality and typicality requirements of Rule 23(a) tend to merge." Thus, for the reasons discussed in reviewing plaintiffs' commonality arguments, plaintiffs have satisfied the typicality requirement.

 iv. **Adequacy of Representation**

"Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). There is "no simple test for determining if a class will be adequately represented by a named plaintiff." *In re LILCO Sec. Litig.*, 111 F.R.D. 663, 672 (E.D.N.Y. 1986). "Each case must be approached on an individual basis." *Id.* The Court should consider "the representative's understanding and involvement in the lawsuit," "the willingness to

pursue the litigation," and "any conflict between the representative and the class." *Id.* (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562-63 (2d Cir. 1968). The analysis required for Rule 23(a)(4)'s adequacy requirement is analogous to that required for typicality: the class representative must "fairly and adequately protect the interest of the class." FED. R. CIV. P. 23(a)(4); *Gen. Tel. Co. of Sw.*, 457 U.S. at 157, n. 13.

Plaintiffs allege that there are no conflicts with other class members and that their interests with the class are aligned by the very nature of the claims that Plaintiffs bring, seeking to recover damages on behalf of the plan. The Arbitration Claimants argue that Plaintiffs do not represent the interest of the class as they have a right to arbitrate, choose their own counsel, and opt out of any class and have their own day in Court. Arbitration Claimants Mem. of Law at 16–19.

As the Court discussed *Supra*, all members of the proposed Class allege claims arising from the same conduct, that is that RCG breached its fiduciary duties under ERISA by concentrating an enormous and imprudent amount of the Plan assets in the VRX, and as Plan fiduciaries, the DST Defendants had a duty to monitor RCG, and thus breached that duty by both failing to protect the Plan from RCG's investment strategy. *Id.* at ¶¶ 51–53, 55. These claims would potentially vindicate the interests of the entire Class. While the Arbitration Claimants argue that they have a right to arbitrate, the Second Circuit as well as this Court has found that the claims at issue here are not covered by the arbitration agreement. Additionally, as the Court will discuss below, this class is properly certified under Rule 23(b)(1). Therefore, Because Rule 23(b)(1) does not provide opt-out protections, class actions brought under this rule "are often referred to as 'mandatory' class actions." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 n. 13 (1999). Thus, the Court cannot credit the Arbitration Claimants' arguments regarding the right to opt out of the class action. The Adequacy of Representation requirement is plainly met.

## IV.     Rule 23(b)(1)

As Plaintiffs have satisfied the requirements of Rule 23(a), the Court is required to assess the class under Rule 23(b)(1) for "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications." Fed. R. Civ. P. 23(b)(1)(B); *see* Pls.' Class Certification Mem. of Law at 16. The "derivative nature of ERISA § 502(a)(2) claims makes them paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class . . . because any decision regarding whether the defendants breached their fiduciary duties would necessarily affect the interests of other participants." 2 Newberg on Class Actions § 4:21 (5th ed., June 2019 update) (internal quotation marks omitted); *see also Coan*, 457 F.3d at 261("[A] breach of trust by . . . [a] fiduciary . . . similarly affecting the members of a large class of beneficiaries . . . [is] among the classic examples of Rule 23(b)(1)(B) class actions." (internal quotation marks omitted)); I*n re Glob. Crossing*, 225 F.R.D. at 453 ("Because of ERISA's distinctive representative capacity and remedial provisions, ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." (internal quotation marks omitted)).

As the requirements of Rule 23(a) are met, the class is properly certified under Rule 23(b)(1)(B). Plaintiffs purport to bring this action as a breach of fiduciary duty brought under § 1132(a)(2) on behalf of the Plan. The allegations in the Complaint intend to remedy fiduciary breaches and other misconduct on behalf of the Plan. Allowing multiple actions, each of which would seek similar or the same relief from the Defendants on behalf of the Plan, would potentially prejudice individual class members and would threaten to create "incompatible standards of conduct" for the Defendants. These are issues that Rule 23(b)(1) seeks to avoid. Because plaintiffs' allegations are brought with respect to breaches of fiduciary duties to the Plans as a whole,

defendants' duties rise and fall with all plaintiffs. In sum, because the management of the Plans has an effect on all Plan-participants, the class is properly certified under Rule 23(a) and Rule 23(b)(1)(A) or 23(b)(1)(B). *See Clark v. Duke Univ.*, No. 16 CV 1044, 2018 WL 1801946, at *9 (M.D.N.C. Apr. 13, 2018); *Sacerdote v. New York Univ.*, No. 16 CV 6284, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018).

## V.     Plaintiffs' Motion to Amend

Plaintiffs seek leave to file a third amended complaint to add class allegations. As the Court granted Plaintiffs' motion for class certification, the Court grants Plaintiffs leave to file a third amended complaint only to the extent of adding class allegations. Under Rule 15(a)(2), the Court should "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).

## VI.    Plaintiffs' Motion for Preliminary Approval of their Class Action Settlement with the RCG and DST Defendants

Plaintiffs move for preliminary approval of their Class Action Settlement with the RCG and DST Defendants. The Court will not approve the agreements. Plaintiffs' settlement agreements include an injunctive provision that states:

> In further aid of and to protect the Court's jurisdiction to review, consider, implement, and enforce the Settlement, the Court preliminarily enjoins and bars (i) Plaintiff releasors, the Secretary, and any Person purporting to represent them or pursue Claims on their behalf, and (ii) any participant who has been excluded from the Settlement Class, from bringing or prosecuting in any forum any Claim that arises from, relates to, or is connected with: (i) the conduct alleged in the Complaint.

While Plaintiffs argue that the purported bar order/injunction is a commonplace provision in class action settlements, the above provision is far more than a common bar order and cannot be approved by this Court. As the caselaw Plaintiffs cited in support of the provision explained, bar orders typically involve contribution and indemnification between settling defendants. The

Court stated the following in *In re WorldCom, Inc. ERISA Litig.*, 339 F. Supp. 2d 561 (S.D.N.Y. 2004):

> Because of the importance of settlement to our litigation system, and because an unlimited right to seek contribution would "surely diminish the incentive to settle," … courts may approve provisions in settlement agreements that bar contribution and indemnification claims between the settling defendants and non-settling defendants so long as there is a provision that gives the non-settling defendants an appropriate right of set-off from any judgment imposed against them. *In re Ivan F. Boesky Sec. Litig.,* 948 F.2d 1358, 1368–69 (2d Cir.1991). Without the ability to limit the liability of settling defendants through bar orders "it is likely that no settlements could be reached." *Id.* at 1369. Nonetheless, "[a] settlement bar should not be approved unless it is narrowly tailored and preceded by a judicial determination that the settlement has been entered into in good faith and that no one has been set apart for unfair treatment." *Masters Mates,* 957 F.2d at 1031.

Plaintiffs' injunctive provision seeks to enjoin non-parties, including the Secretary of Labor, from bringing or prosecuting their claims. While Plaintiffs attempt to characterize this as a traditional bar order, it is plainly not. Section 502(a)(2) authorizes "the Secretary [of Labor] . . . a participant, beneficiary, or fiduciary" to bring a "civil action" for breach of fiduciary duty, and Plaintiffs have failed to cite any case law in this circuit or otherwise that have approved such an overbroad provision in an ERISA Section 502(a)(2) case. Thus, approving the settlement's injunction provision would circumvent the Secretary's independent and unqualified right to sue and seek redress for ERISA violations on the basis that ERISA plans significantly affect the "national public interest." *See Herman v. South Carolina Nat'l Bank*, 140 F.3d 1413, 1423–25 (11th Cir.1998) (holding that a private litigant's settlement does not bar a Secretary's independent action to address ERISA violations; observing that it is well-established that the government is not bound by private litigation when the government's action seeks to enforce a federal statute that implicates both public and private interests); *Agway, Inc. Employees' 401(k) Thrift Inv. Plan v. Magnuson*, 409 F. Supp. 2d 136, 146 (N.D.N.Y. 2005) (stating that "endorsement of a private

15

settlement attempting to bar the Secretary's action in a particular case would effectively undermine the ERISA enforcement scheme carefully constructed by Congress.") Accordingly, the Court denies Plaintiffs' motions for premilitary approval of the class action settlements. (ECF Nos. 265, 266.)

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for leave to file a third amended complaint is granted. (ECF No. 298.) Plaintiffs' motion for class certification pursuant to Rule 23 is granted. (ECF No. 300.) Additionally, Plaintiffs' motions for preliminary approval of the class action settlements are denied. (ECF Nos. 265, 266.) Likewise, the identical motion for preliminary approval of the class settlement in 20 CV 7092 (ECF No. 8) is denied for the reasons above.

**SO ORDERED.**

**Dated:** August 17, 2021
  New York, New York

                                        **ANDREW L. CARTER, JR.**
                                        **United States District Judge**