IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MICHAEL L. FERGUSON, et al,

                        Plaintiff,

              v.

RUANE CUNNIFF & GOLDFARB INC., et al.

                   Defendants.

17 Civ. 6685 (ALC) (BCM)

**THE ARBITRATION CLAIMANTS REQUEST A HEARING ON THE MOTION FOR PRELIMINARY INJUNCTION**

**MEMORANDUM OF LAW ON BEHALF OF THE ARBITRATION CLAIMANTS
IN OPPOSITION TO THE DST DEFENDANTS'
MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. iii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................ 5

ARGUMENT ...................................................................................................................... 5

I.       The Doctrine of Judicial Estoppel Bars an Injunction Against the Arbitrations .... 7

        A.      DST's New Position is Clearly Inconsistent with its Earlier Position...... 12

        B.      DST Previously Persuaded a U.S. District Court and Hundreds of Duly Appointed Arbitrators to Accept its Earlier Position ............................... 14

        C.      Unless Judicially Estopped, DST Would Derive an Unfair Advantage and Would Impose an Unfair Detriment Upon the Arbitration Claimants...... 14

        D.      Unless Estopped, DST Will Cause this Court to Enter an Order that Contradicts an Earlier, Final Order from the Western District of Missouri ...................................................................................................................... 16

II.      DST Has Waived Any Challenge to the Legitimacy of the Arbitration Process, in which they have Voluntarily Participated for More than Three Years ................. 16

III.     The Order in *DuCharme* is the Law of the Case and the Principles of Judicial Comity Dictate that the Western District's Final Decision be Given Deference . 18

IV.     There Has Been No Intervening Change in the Governing Law .......................... 21

V.      An Injunction is Prohibited by the Federal Arbitration Act ................................. 23

VI.     The *Ferguson* Plaintiffs Have No Justification for Seeking an Injunction Since the Arbitrations *Benefit* the Class ............................................................................ 24

CONCLUSION .................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013) .......................................................... 24

*Am. Fed'n of Television & Radio Artists Health & Ret. Funds v. WCCO Television, Inc.*, 934 F.2d 987 (8th Cir. 1991) ........................................................................................................... 6

*Baldwin v. Traveling Men's Assn.*, 283 U.S. 522 (1931) ............................................................. 23

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n,* 2019 WL 2428631 (S.D.N.Y. 2019) .................... 4

*Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116 (2d Cir. 1991) ....................................... 20

*Booth v. Hume Pub., Inc.*, 902 F.2d 925 (11th Cir. 1990) ........................................................... 24

*Canfield v. SS&C Techs. Holdings, Inc.*, 2021 WL 1022698 (S.D.N.Y. 2021) ........... 1, 12, 14, 19

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) ............................................. 18

*Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir. 1990) ................................. 23

*Cunningham v. Cornell Univ.*, 2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) ................................. 4

*Data Mountain Sols., Inc. v. Giordano*, 680 F. Supp. 2d 110 (D.D.C. 2010) .................... 8, 16, 17

*DeRosa v. Nat'l Envelope Corp.,* 595 F.3d 99 (2d Cir.2010) ....................................................... 9

*Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019) .............................. 6, 20, 26

*Dorman v. Charles Schwab Corp.,* 934 F.3d 1107 (9th Cir. 2019) .............................................. 21

*Douglin v. GreatBanc Tr. Co.*, 115 F. Supp. 3d 404 (S.D.N.Y. 2015) .......................................... 4

*Environmental Barrier Co., LLC v. Slurry Systems, Inc.*, 540 F.3d 598 (7th Cir.2008) ............. 17

*Eubanks v. Billington*, 110 F.3d 87 (D.C. Cir. 1997) ................................................................... 23

*Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211 (S.D.N.Y. 2010) ................. 13

*Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981) ...................................................... 22

*G.W. Foods, Inc. Health, Welfare, & Benefits Plan v. WH Administrators, Inc.*, 2018 WL 3414323 (W.D. Mo. May 17, 2018) ....................................................................................... 22

*Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162 (3d Cir.1982) ........................................... 18

*Hicks v. Bank of Am., N.A.*, 218 F. App'x 739 (10th Cir. 2007) .................................................. 10

*Hicks v. Cadle Co.*, 355 F. App'x 186 (10th Cir. 2009) ............................................................ 11

*Hicks v. Cadle*, 436 F. App'x 874 (10th Cir. 2011) ................................................................... 11

*Hoffman v. Blaski*, 363 U.S. 335 (1960) .................................................................................. 18

*Hyundai Mipo Dockyard Co. v. AEP/Borden Indus. (In re Rationis Enters. of Pan.)*, 261 F.3d 264 (2d Cir. 2001) ................................................................................................................... 3

*In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001) ........................................... 4

*In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298 (8th Cir. 1995)24

*In re Real Est. Title & Settlement Servs. Antitrust Litig.*, 869 F.2d 760, 769 (3d Cir. 1989) ......... 2

*Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356, 363 (S.D.N.Y. 2011) ............................... 9

*Jacobs v. Verizon Commc'ns Inc.*, 2020 WL 4601243 (S.D.N.Y. 2020) ....................................... 4

*Jones Dairy Farm v. Loc. No. P-1236, United Food & Com. Workers Int'l Union, AFL-CIO*, 760 F.2d 173 (7th Cir. 1985) ............................................................................................................ 18

*Juris v. Inamed Corp.*, 685 F.3d 1294 (11th Cir. 2012) .............................................................. 3

*Kennedy v. Basil*, 2021 WL 1226768 (S.D.N.Y. 2021) .............................................. 8, 10, 14, 15

*King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192 (4th Cir. 1998) ................................... 8, 9

*Kramer v. Smith Barney*, 80 F.3d 1080 (5th Cir. 1996) ............................................................ 20

*Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145 (S.D.N.Y. 2017) ............................ 4

*Lewis v. Cir. City Stores, Inc.*, 500 F.3d 1140 (10th Cir. 2007) ................................................ 17

*McNemar v. Disney Store, Inc.*, 91 F.3d 610 (3d Cir.1996) ........................................................ 8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ......................... 6

*Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803 (S.D.N.Y. 2017) ........... 4

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ...................... 24

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ......................................................................... 9

*Opals on Ice Lingerie v. Bodylines, Inc.*, 320 F.3d 362 (2nd Cir.2003) ...................................... 17

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................................... 2

*Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Loc. No. 1*, 611 F.2d 580 (5th Cir. 1980)........................................................ 18

*Powell as trustees of United Food & Com. Workers Union & Emps. Midwest Pension Fund v. Ocwen Fin. Corp.*, 2019 WL 1227939 (S.D.N.Y. Mar. 15, 2019) ........................................... 4, 5

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)........................................ 24

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir.1993) .................. 20

*Sacerdote* v. *N.Y. Univ.*, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) ........................................... 4

*Simon v. Safelite Glass Corp.*, 128 F.3d 68 (2d Cir. 1997) .......................................................... 13

*Smith v. Bd. of Directors of Triad Mfg., Inc.*, 2021 WL 4129456 (7th Cir. 2021) ................ 19, 20

*Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187 (2d Cir. 2013) ............................................... 17

*United Indus. Workers v. Gov't of the Virgin Islands*, 987 F.2d 162 (3d Cir.1993) .................... 17

*United States v. Morales*, 898 F.2d 99 (9th Cir. 1990)................................................................... 4

*VanPamel v. TRW Vehicle Safety Sys., Inc.*, 723 F.3d 664 (6th Cir. 2013).................................. 21

*Waldron v. Raymark Indus., Inc.*, 124 F.R.D. 235 (N.D. Ga. 1989) ............................................. 3

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................... 2

*Williams v. Imhoff*, 203 F.3d 758 (10th Cir. 2000)...................................................................... 20

*Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7 (2008) ............................................................. 5

*Zambrana v. Califano*, 651 F.2d 842 (2d Cir.1981) ..................................................................... 18

## **Statutes**

29 U.S.C. § 1132(e)(2).................................................................................................................... 4

9 U.S.C. § 3.................................................................................................................................... 25

## **Other Authorities**

18 Moore's Federal Practice § 134.30, (3d ed. 2000).................................................................... 9

DST's request for an injunction strikes at the heart of the issues previously decided by the Western District of Missouri in *DuCharme v. DST Systems, Inc., et al*., No. 4:17-cv-00022-BCW, 2017 WL 7795123 (W.D.Mo.) and seeks to relitigate arguments carefully considered and clearly rejected by that Court. In *DuCharme*, the Western District, appropriately applying Eighth Circuit law, "upheld the legitimacy of the agreement's class action waiver and held that DuCharme's individual claims were arbitrable." *Canfield v. SS&C Techs. Holdings, Inc.*, No. 18-CV-10252 (ALC), 2021 WL 1022698, at *1 (S.D.N.Y. Mar. 17, 2021). The ruling that DST seeks here—that the arbitrations that ***it compelled*** should be rendered fruitless and futile, a waste of time and resources, and unworthy of comity and respect—is directly inconsistent with the final decision reached by the Western District after DST's full participation. Indeed, it was the result that DST ***successfully demanded***. DST's motion is a direct attack on the decision of the Western District in which DST appeared, litigated the key issues on which it now invites this Court to reach a contrary result, and ***won***. Not only is such an attack squarely impermissible under the equitable doctrine of judicial estoppel, but an injunction would also fundamentally undermine the Western District's ***prior, final*** rulings and its management of the arbitration proceedings. The Arbitration Claimants respectfully submit that this Court *must* decline DST's flagrant attempt to whipsaw the Courts and to avoid, through "crass manipulation", the results in arbitrations that ***it compelled, voluntarily submitted to, and fully participated in***.

## PRELIMINARY STATEMENT

The Arbitration Claimants, consisting of more than 580 Plan participants who have exercised their right to arbitrate against DST Systems, Inc. ("DST"), as determined by the U.S. District Court for District of Missouri, submit this opposition to DST's Motion for a Preliminary Injunction (Dkt. 312, 313.) For the reasons set forth below, and for those set forth in the Memorandum of Law of Behalf of the Arbitration Claimants in Opposition to the DST's Motion

1

for a Temporary Restraining Order (Dkt. 315, 317), which is incorporated as if fully set forth herein, the motion should be denied.[1]

The Court specifically requested that the parties address the doctrine of judicial estoppel. (Dkt. 318.) Accordingly, having already established that absent class members have a due process right *to opt out* of class litigation when the action is predominantly for money damages, *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012) (emphasis added), and having also established that, with the exception of a "limited fund" class action, the right to opt out is *necessary* for establishing personal jurisdiction over class members residing out-of-state, *In re Real Est. Title & Settlement Servs. Antitrust Litig.*, 869 F.2d 760, 769 (3d Cir. 1989), the Arbitration Claimants do not repeat those arguments in detail here and, instead, focus on the doctrines of judicial estoppel, waiver, and comity.

However, the Court must not avoid the significance of *Hecht* or the limits of jurisdiction simply because the Claimants do not restate those arguments here in full. Under *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), "[a]bsent class members have a **due process right** to notice and **an opportunity to opt out** of class litigation when the action is 'predominantly' for money damages." *Hecht*, 691 F.3d at 222.

> After the Supreme Court's decision in *Dukes*, the right to notice and an opportunity to opt out under Rule 23 now applies not only when a class action is predominantly for money damages, but also when a claim for money damages is more than 'incidental.'

*Id.*

---

[1] Counsel for the arbitration claimants has not entered an appearance in this case and the filing of this objection to the requested injunction is not a general appearance in this case and is only a limited and special appearance to object to the Court's jurisdiction over the Claimants and to respond to DST's motion for an injunction. The arbitration claimants do not consent to jurisdiction or waive any objections to the Court's personal or subject matter jurisdiction over them, and by this reply they specifically reassert their objections to any such jurisdiction.

Additionally, "[a] court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction." *Hyundai Mipo Dockyard Co. v. AEP/Borden Indus. (In re Rationis Enters. of Pan.)*, 261 F.3d 264, 270 (2d Cir. 2001). Indeed, "*Shutts* is a case about personal jurisdiction—i.e., the forum state's adjudicatory power over nonresident, non-consenting absent class members who did not otherwise have minimum contacts." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1330 (11th Cir. 2012). "Opt-out rights were of critical importance in *Shutts* for the reason that they allowed for an inference of consent, which was sufficient to support the class action court's jurisdiction over the class members who otherwise had no connection with Kansas." *Id.* It was for this reason that the Court in *Waldron v. Raymark Indus., Inc.*, 124 F.R.D. 235 (N.D. Ga. 1989), properly found that it lacked jurisdiction over a plaintiff class.

> this court would have no basis by which to exercise personal jurisdiction over plaintiffs who did not have sufficient minimum contacts to allow the exercise of such jurisdiction. Since lack of personal jurisdiction can be waived, in the typical class action, which allows plaintiffs to opt out, those plaintiffs who do not opt out have, in effect, waived the court's lack of personal jurisdiction over them. However, in a mandatory class action, where plaintiffs are not permitted to opt out, no such waiver is present. Any attempt to exercise jurisdiction over such non-consenting plaintiffs would undoubtedly violate those plaintiffs' constitutional due process rights.

*Id.* at 237-38.

In response to this binding precedent, DST asserts that "[w]ere Arbitration Claimants correct that the Supreme Court's decisions in *Shutts* and *Wal-Mart* provided them an 'absolute right to opt out of a class,' all the courts that have certified mandatory classes in ERISA fiduciary duty cases since the 1985 *Shutts* decision were wrong." (Dkt. 316 at p. 4.) The hyperbolic assertion is flat wrong. The post-*Hecht* cases from the Second Circuit that DST cites are inapposite. None of those cases addressed the jurisdictional issue raised here. *See, e.g., United States v. Morales*,

898 F.2d 99, 101–02 (9th Cir. 1990) (where jurisdictional issue "neither raised nor considered by" a prior decision, court "not bound by the implicit assertion of jurisdiction but rather we must consider the issue anew."). Moreover, in each, the court certified a class consisting entirely of plans administered and of individuals employed ***within the forum***.[2] Thus, the class members in each case had obvious minimum contacts with the forum, so there was no jurisdictional dilemma at all.

In pleadings elsewhere, DST cites *In re Mexico Money Transfer Litig.,* 267 F.3d 743 (7th Cir. 2001). But there, again, the Court expressly permitted members to ***opt-out***. *Id.* at 746 (stating that "about 2,800 class members opted out").

DST also reaches for ERISA's nationwide service of process provision, but it clearly does not apply. That statute speaks only of *defendants.* There is not a single case extending ERISA's nationwide service provision to *absent **plaintiffs***, which is why DST cites to none.[3]

Again, having already addressed these issues in memoranda previously submitted (Dkt. 315, 317), the Arbitration Claimants incorporate those memoranda as if fully set forth herein and, in deference to the Court's request, focus instead upon the doctrines of judicial estoppel, waiver, and comity.

---

[2] *See Sacerdote* v. *N.Y. Univ.*, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) (class consisted of members of New York University's faculty, professional research staff, and administration); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n,* No. 17-CV-563 (JMF), 2019 WL 2428631 (S.D.N.Y. June 11, 2019) (class consisted of employees of New York-based JPMorgan Chase); *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936 (LGS), 2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) (class consisted of employees of New York-based Deutsche Bank Americas Holding Corp.); *Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) (class consisted of employees of Cornell University); *Jacobs v. Verizon Commc'ns Inc.*, No. 16CIV01082PGGRWL, 2020 WL 4601243 (S.D.N.Y. June 1, 2020) (class consisted of employees of Verizon Communications, Inc.); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145 (S.D.N.Y. 2017) (class consisted of New York-based Citigroup employees); *Douglin v. GreatBanc Tr. Co.*, 115 F. Supp. 3d 404, 408 (S.D.N.Y. 2015) (class consisted of employees of New York-based People Care Holdings, Inc.).

[3] In pleadings elsewhere, DST has cited to *Powell as trustees of United Food & Com. Workers Union & Emps. Midwest Pension Fund v. Ocwen Fin. Corp.*, No. 18-CV-1951 (VSB), 2019 WL 1227939, at *7 (S.D.N.Y. Mar. 15, 2019). But there, § 1132(e)(2) was used to establish jurisdiction over the *defendant.*

## BACKGROUND

The relevant facts are set forth in the Declaration of Andrew Schermerhorn, dated May 3, 2021. (Dkt. 305.) Additional facts are set forth in the Declaration of Andrew Schermerhorn, dated September 21, 2021 ("Schermerhorn Dec."), and filed contemporaneously herewith.

## ARGUMENT

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," and "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* Moreover, "[t]o establish standing to pursue injunctive relief, a [party] must demonstrate a 'real or immediate threat' of *future* injury. *Powell*, 2019 WL 1227939, at *7 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

In this case, neither DST nor the *Ferguson* Plaintiffs can claim *any* injury. To start, the arbitrations are premised on DST's ***own demand for arbitration***. Thus, DST cannot complain about having to defend against them. As for the *Ferguson* Plaintiffs, they continue to assert that the Court will ultimately approve a settlement through which the Arbitration Claimants will be entitled to ***keep*** any amounts awarded in arbitration (and possibly receive a "top-off"). But if that is true (it is not), by continuing to permit the arbitrations to proceed, the *Ferguson* Plaintiffs *and the Class* will receive the *benefit* of the Arbitration Claimants' success, while avoiding any potential harm or loss. Indeed, as the Department of Labor points out: "Just like private litigation proceedings, individual arbitration proceedings may also occur simultaneously *without* diminishing the independent rights of action of other plan participants or the Secretary." *Ruane, Cunniff & Goldfarb, Inc., v. Payne, et al.*, 1:19-cv-11297-ALC (Dkt. No. 40) (emphasis added).

*See also Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019) ("When an individual participant agrees to arbitrate, he does not give up any substantive rights that belong to other Plan participants."); *cf. Am. Fed'n of Television & Radio Artists Health & Ret. Funds v. WCCO Television, Inc.*, 934 F.2d 987, 990 (8th Cir. 1991) (finding that trustees' independent right of action under ERISA section 502(a)(3) for unpaid contributions persisted even after union pursued same claim through arbitration under collective bargaining agreement).

And, in fact, the arbitrations have *already* benefited the putative class. For example, every dollar earned by a Claimant in arbitration is one less dollar that the *Ferguson* Plaintiffs need to include in their loss and settlement calculations (or in the allocation of the sum to be paid by the DST Respondents to settle the case). Indeed, the successes in arbitration have resulted in an *actual recovery* ***to the Plan***, since the amounts recovered have been paid to and accepted by Fidelity Investments for deposit into each Claimant's separate, individual *Plan* account. (Dkt. 258.) Thus, rather than work irreparable harm to the class, by permitting the arbitrations to continue, the Court *benefits* both the Arbitration Claimants *and the Class.*

On the other hand, if the Court grants an injunction, it will violate the "emphatic federal policy in favor of arbitral dispute resolution" codified the Federal Arbitration Act, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985), and  will plainly work irreparable harm to both the Arbitration Claimants *and the class* (and, as explained below, to the integrity of the judicial system). If enjoined, both the Claimants *and the Plan* will lose the benefits of arbitration, of the years-long effort litigating against DST, and of the tens of millions of dollars of *actual awards* that have been entered against DST.

To cut to the chase, DST and the *Ferguson* Plaintiffs request an injunction for the sole purpose of benefitting *DST* and class counsel. The two have negotiated an inadequate settlement,

based upon minimal, if any, work on the merits and that is conditioned upon the extinguishment of the arbitrations *that DST compelled* (a purported settlement that, despite all the blather about its total amount, produces net settlement amounts that are far less that the Claimants' *smallest* damage model). It should be extremely suspicious to the Court that DST, on the one hand, vigorously *enforced* arbitration in Missouri before engaging in a tactical about-face for the sole purpose of settling for an amount that is *significantly less* than the arbitrations have proved.

As the Court in *Abernathy* pointed out, "the employer-side bar and their employer clients have [*always*] forced arbitration clauses upon workers, thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join collectively to vindicate common rights." 438 F. Supp. 3d at 1067. That is exactly what happened here. Only now, DST has suddenly decided that the class action mechanism is *required*; and has enlisted the Court's help, in a classic case of forum shopping, to pull off the ultimate ruse. If the Court approves the stunt, it will signal that employees may, at one and the same time, be *forced* to arbitrate when it benefits their employer, and be *denied* arbitration when it doesn't. A corporate employer (with the help of cooperative plaintiffs' counsel (*see* Dkt. 231-1)), can unabashedly manipulate their own legal appeals, pit one court against another, and successfully cry foul at having to defend the *very arbitrations that it compelled*. The Court must not be made a pawn in the attempted whipsaw. "*Such crass manipulation of the legal process constitutes an insult to the integrity of the judicial system and fully warrants invocation of the doctrine of judicial estoppel*." *Data Mountain Sols., Inc. v. Giordano*, 680 F. Supp. 2d 110, 128 (D.D.C. 2010) (emphases added).

I.     **The Doctrine of Judicial Estoppel Bars an Injunction Against the Arbitrations**

Let us be clear, DST enforced its arbitration agreement, contending that claims for breach of fiduciary duty *must* be resolved through *individual* arbitration; it received a final Order confirming the validity and scope of the agreement; then it notified *all* Plan participants of the

right to file claims for breach of fiduciary duty in *individual* arbitrations (Dkt. 305-4, 305-5, 305-7, 305-9); then it filed a "Joint Submission for Arbitration" in each of the arbitration actions (Dkt. 305-11); then it fully participated in each arbitration (calling witnesses, producing experts, and filing a variety of motions as well as pre- and post-hearing briefs); then it appealed the awards favorable to the arbitration claimants (dragging each Claimant through an entire host of procedural hoops in a strategy that was intended to "grind the [Claimants] into the ground and hope they just go away"); and now it asks this Court invalidate the entire thing.

The doctrine of judicial estoppel prevents a party who has successfully taken a position in one proceeding from taking the opposite position in a subsequent proceeding. *See e.g.*, *Kennedy v. Basil*, No. 18-CV-02501 (ALC), 2021 WL 1226768, at *7 (S.D.N.Y. Mar. 31, 2021). It is recognized as necessary to "protect the integrity of the judicial system." *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998); *see also Bates v. Long Island R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993) ("the doctrine seeks to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings"); *McNemar v. Disney Store, Inc.,* 91 F.3d 610, 616 (3d Cir.1996) ("The doctrine ... serves a consistently clear and undisputed jurisprudential purpose: to protect the integrity of the courts"). "Acting on the assumption that there is only one truth about a given set of circumstances," courts are to apply judicial estoppel "to prevent a party from benefiting itself by maintaining mutually inconsistent positions regarding a particular situation." *King*, 159 F.3d at 196. Put another way, the doctrine is to be invoked "to prevent a party from 'playing fast and loose with the courts,' from 'blowing hot and cold as the occasion demands,' or from attempting 'to mislead the [courts] to gain unfair advantage.'" *Id.* (citations omitted).

Accordingly, the doctrine of judicial estoppel must be employed to prevent a party from "'tak[ing] a position that is inconsistent with one taken in a prior proceeding' if the first position

was 'adopted by the tribunal to which it was advanced.'" *Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356, 363 (S.D.N.Y. 2011), *aff'd*, 484 F. App'x 616 (2d Cir. 2012) (quoting *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber,* 407 F.3d 34, 45 (2d Cir.2005)) *See also* 18 Moore's Federal Practice § 134.30, p. 134–62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding").

In evaluating whether to apply the doctrine, "courts generally look for the existence of three factors: (1) that a party's new position is "clearly inconsistent" with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) that the party "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *See New Hampshire v. Maine,* 532 U.S. 742, 750–51 (2001); *see also DeRosa v. Nat'l Envelope Corp.,* 595 F.3d 99, 103 (2d Cir.2010) (noting that "[t]ypically, judicial estoppel will apply if" these factors are present).

In the recent case of *Kennedy v. Basil*, 2021 WL 1226768, for example, there arose a dispute about whether Elizabeth Kennedy, a fashion designer, was the rightful owner of two trademarks. However, before the dispute arose, Ms. Kennedy identified "Elizabeth Kennedy, LLC," as opposed to herself, as the "owner of the mark" in each of the trademark applications. *Id.* at *7. The question thus arose whether Ms. Kennedy's prior assertions barred her later reversal. While Ms. Kennedy made several arguments as to why judicial estoppel should not apply, this Court found that each of her arguments was without merit. *Id.* at *8-9.

> Here, it is undisputed that Plaintiff took a prior inconsistent position before the USPTO in signing the Trademark applications which contained the assertion that only the Company held rights to the Trademarks. Further, it is undisputed that the USPTO adopted this position, as the USPTO would not have otherwise granted the Company trademark registrations for trademarks that constituted Plaintiff's name…

> It is also undisputed that the Company would suffer an "unfair detriment" if judicial estoppel were not applied as the Company has already taken actions in reliance of ownership of the Trademarks, specifically seeking and obtaining financing based at least in part on the assets of the Company, which included the Trademarks. Forcing the Company to further litigate this issue would also unfairly prejudice the Company, especially in light of their insolvency.

*Id.* at *8.

The same is true here. DST took a prior inconsistent position before the Western District; the Western District adopted DST's position; and the Arbitration Claimants have already taken time-consuming, expensive and precedent-setting actions in reliance upon the resulting final, unappealed order from the Western District. Accordingly, just as in *Kennedy v. Basil*, the doctrine of judicial estoppel applies.

Even more analogous is a series of cases from the Tenth Circuit. In *Hicks v. Cadle*, 218 F. App'x 739 (10th Cir. 2007) ("*Hicks I*"), the Tenth Circuit held that a defendant had *waived* its objection to arbitration and was estopped from arguing that the arbitrator lacked the authority to enter an award since, in an earlier proceeding, the defendant had merely joined a motion to stay in which it asserted that the action must be arbitrated. *Id.* at 746.

> As the district court further noted, in their "Joinder in Bank of America's, N.A., Motion To Stay The Action Pending Completion of Ongoing Arbitration (Joinder)," Cadle defendants asserted that this action must be arbitrated because the arbitration clause in the note clearly encompassed all of the issues and claims Hicks asserted. Cadle therefore waived its objection to arbitration and is estopped from arguing that the arbitrator lacked personal jurisdiction to enter an award against it.

*Id. See also Hicks v. Cadle Co.,* 355 F. App'x 186, 193–94 (10th Cir. 2009) (*Hicks II*) (holding that "based on [the] defendants' request for arbitration," the defendant was judicially estopped from asserting that the arbitrator lacked jurisdiction).

The Tenth Circuit later explained:

> Mr. Cadle's view of judicial estoppel, limiting it to specific claims rather than applying it to the legal position he took in connection with those claims, is unduly

constricted, as revealed by comparison with the Supreme Court's controlling estoppel decision in *New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). That case involved a dispute between New Hampshire and Maine regarding an inland river boundary. While it was the first time they had litigated competing claims over the river, twenty-five years earlier they had litigated rival claims over lobster-fishing rights in the marine waters off the nearby coast. In the earlier litigation, New Hampshire took the legal position that a 1740 English decree, as jointly interpreted by the parties, should control boundary disputes in the area. The marine boundary was fixed accordingly. But in the litigation over the river boundary, New Hampshire sought an advantageous ruling by asserting a contrary view of the 1740 decree. The Supreme Court rejected this gambit on judicial estoppel grounds. For present purposes, it is most significant that the Court did so without hesitating over the fact that the specific rights in dispute in the two cases were different; the material point was that New Hampshire sought a litigation advantage by taking incompatible *legal positions* in the cases.

*Hicks v. Cadle*, 436 F. App'x 874, 878 (10th Cir. 2011) ("*Hicks III*") (emphasis in original).

The Court went on to explain that "the focus of the estoppel analysis is not on the particular claims at issue (coastal-versus-inland boundaries in *New Hampshire;* initial-versus-later tort claims here), **but on the litigant's tactical about-face in legal position** (as to the effect of the 1740 decree in *New Hampshire* and the effect of the arbitration provision here)." *Id.* (Emphasis added.)

In other words, judicial estoppel in *Hicks* was premised on defendant's "**own request for arbitration** based on his position regarding the effect of the arbitration clause[.]" *Hicks III*, 436 F. App'x at 879 (emphasis added). "[I]t would be a perverse understanding of the concept of consent," the Court explained, "to hold that a party has not consented to arbitration that it *voluntarily sought.* Judicial estoppel does not override consent; it *enforces past consent* by *preventing* tactical after-the-fact retraction." *Id.* (Emphases added.)

The *Hicks* cases are directly applicable here, only in this case, the doctrine of judicial estoppel applies with even *greater* force. Rather than merely participate in arbitration or join another litigant's request to stay, DST vigorously and successfully sought and obtained, **for itself**,

11

an order that "upheld the legitimacy of the agreement's class action waiver and held that [participants'] individual claims were arbitrable." *Canfield*, 2021 WL 1022698, at *1.

### A.  DST's New Position is Clearly Inconsistent with its Earlier Position

In *DuCharme*, DST moved the Western District "to compel Mr. Ducharme to arbitrate his ERISA claims with DST ***on an individual basis*** in accordance with the terms of the Arbitration Program and Agreement." (Dkt. 305-4, emphasis added.) DST asserted that individual arbitration was required "because (1) Mr. Ducharme entered into a valid agreement to arbitrate with DST and (2) his breach of fiduciary duty claims under ERISA fall within the scope of that agreement." (Dkt. 305, ¶ 9; Dkt. 305-5.) According to DST, "[i]t is well settled in the Eighth Circuit that claims alleging ERISA breach of fiduciary duties are properly arbitrable by agreement." (*Id*; citing *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc*., 847 F.2d 475 (8th Cir. 1988)).

DST also asserted that the DST Systems, Inc. 401(k) Profit Sharing Plan "incorporates the terms of DST's Arbitration Agreement into the Plan, and thereby explicitly binds the Plan to the terms of that Agreement." (Dkt. 305, ¶ 19; Dkt. 305-9.) DST insisted that "[t]he Plan…expressly provides for arbitration" and that "the Plan makes clear that the scope of the Arbitration Agreement covers claims arising out of or related to the Plan – such as the claims Mr. DuCharme seeks to assert here." (Dkt. 305, ¶ 13; Dkt. 305-7.) DST asserted that claims for breach of fiduciary duty "are explicitly covered by the language of the Plan" and that, as result, such claims "are subject to mandatory arbitration and class action waiver as provided under DST's Arbitration Policy." (Dkt. 305, ¶ 14; Dkt. 305-7.) Finally, DST asserted that "neither the Arbitration Agreement nor the Amendment [thereto] prohibits Mr. Ducharme ***or any other party to the Arbitration Agreement from arbitrating a breach of fiduciary duty claim in connection with purported losses to their individual accounts*.**" (Dkt. 305-9; emphasis added.)

DST has also taken its prior position public. After the Western District confirmed the scope and validity of its Arbitration Agreement, DST sent a letter to all Plan participants advising them that they may "initiate **an individual arbitration proceeding** under the Arbitration Program by submitting a written request to the DST Systems, Inc., Legal Department" in Kansas City, Missouri. (Dkt. 172-12, emphasis added.) And many participants did so in express reliance on DST's representations. **Even in this case**, before its tactical about-face, DST asserted that "nearly all Plan participants on whose behalf Plaintiffs' purport to seek recovery are subject to a binding arbitration agreement." (Dkt. 101 at p. 17.)[4]

DST has also asserted to the AAA, and to each of the duly appointed arbitrators, that individual claims for breach of fiduciary duty **are arbitrable**. First, every arbitration is initiated upon the submission by DST of a "Joint Submission for Arbitration," signed on behalf of both the individual claimant and DST. (Dkt. 305, ¶ 23; *see e.g.,* Dkt. 305-11.) And, at the outset of each arbitration, DST stipulates and agrees that that all claims asserted by the parties are arbitrable. (Dkt. 305, ¶ 24; *see e.g.,* Dkt. 305-12.)[5] For example, in the matter of *James DuCharme*, the parties agreed that "[a]ll claims, counterclaims, and defenses asserted by the Parties are within the jurisdiction of the Panel and arbitrable, and there are no preconditions that must be satisfied before proceeding with the Arbitration." (*Id.*)

---

[4] The *Ferguson* Plaintiffs try discrediting Counsel for the Arbitration Claimants by quoting their earlier contentions. The critical difference, however, is that Counsel for the Arbitration Claimants *lost* in *DuCharme.* Claimants' counsel have merely accepted the final order from the Western District and have acted accordance with the order.

[5] This Court recognized in *Kennedy v. Basil* that a prior inconsistent assertion need not be made to a court of law. 2021 WL 1226768, *8 (statements made to USPTO gave rise to judicial estoppel). Statements made in arbitration also give rise to judicial estoppel. *See e.g., Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211, 218 (S.D.N.Y. 2010); *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997) ("Numerous decisions have approved the application of judicial estoppel where the prior statements were made in administrative or quasi-judicial proceedings."). Thus, just as statements made to the USPTO gave rise to judicial estoppel in *Kennedy v. Basil*, the statements made in arbitration also give rise to judicial estoppel.

Each instance of DST taking an earlier, inconsistent position is sufficient for the application of judicial estoppel. Taken together, DST's persistent insistence upon individual arbitration *requires* the application of the doctrines of judicial estoppel and waiver. Indeed, it would be a perverse understanding of the concepts of judicial estoppel and waiver to hold that DST should not be required to arbitrate the ***very arbitrations that it vigorously sought***.

### B.    DST Previously Persuaded a U.S. District Court and Hundreds of Duly Appointed Arbitrators to Accept its Earlier Position

It is undisputed that DST persuaded the Western District to accept its earlier position. On June 23, 2017, the Western District "upheld the legitimacy of the agreement's class action waiver and held that Ducharme's individual claims were arbitrable." *Canfield*, at *1. As DST put it, "[the] Court held in *DuCharme* [that] the Arbitration Agreement is valid and binding." (Dkt. 172-9.) Indeed, the Western District held that "to the extent DuCharme alleges a § 502(a)(2) [claim] as an individual, the Arbitration Agreement at issue is valid and [that] Ducharme's claims for breach of fiduciary duty fall within the Arbitration Agreement's scope." (Dkt. 305-10.)[6]

Additionally, in each of the arbitrations, DST persuaded the arbitrator(s) that the claims asserted by the parties were arbitrable. DST has never objected to an arbitrator's jurisdiction or otherwise challenged the validity of the arbitration proceedings in ***any*** of the arbitrations.

### C.    Unless Judicially Estopped, DST Would Derive an Unfair Advantage and Would Impose an Unfair Detriment Upon the Arbitration Claimants

It is also undisputed that DST would derive an unfair advantage, *and* impose an unfair detriment on the Arbitration Claimants, if not estopped. To date, 585 participants (or beneficiaries) have exercised their right to arbitrate against DST as determined by the Western District. (Schermerhorn Dec., ¶ 11.) Hearings have now been completed in connection with arbitration

---

[6] Since the Western District also upheld the validity of the Agreement's class action waiver, the Court dismissed the Complaint since "Ducharme's claims [were] asserted as a class action." (Dkt. 305-10.)

claims brought by 347 individual Arbitration Claimants and post-hearing awards have been issued in 294 arbitrations. 225 Arbitration Claimants have received post-hearing decisions finding liability and awarding damages payable to their separate, individual retirement accounts. (Schermerhorn Dec., ¶ 14.) Additionally, the vast majority Arbitration Claimant have settled with Ruane, Cunniff & Goldfarb, Inc., in reliance upon DST's earlier assertions.

Thus, unless estopped, the Arbitration Claimants will lose the benefits of arbitration, of their years-long effort litigating against DST, and of the *actual awards* that have been entered against DST. *See e.g., Kennedy*, 2021 WL 1226768, at *8 (the opposing party suffers an "unfair detriment" if the opposing party "has already taken action in reliance" upon the earlier position). Forcing the Arbitration Claimants to give up their progress litigating against DST, to give up their *actual awards*, or to require that they further litigate their right to individual arbitration would unfairly, and *severely*, prejudice the Claimants.

Meanwhile, unless estopped, DST will obtain the unfair advantage of selecting *for itself* the forum within which to litigate its liability *and* the counsel against whom to litigate. It will also obtain the benefit of selecting *for itself* when and against whom it will selectively enforce its "mandatory" Arbitration Agreement. Finally, it will obtain the unfair and unconstitutional advantage of escaping liability for the amounts ***already awarded***.

As another Court put it under similar circumstances:

> The petitioners did not wish to have the … dispute resolved in arbitration; *they were forced to do so when [the defendant] insisted on his right to arbitrate all of their claims and persuaded the Court that all of those claims were arbitrable*. The parties then proceeded to spend more than a year in an arbitration process that included seven days of hearings and the presentation of more than 200 evidentiary exhibits. *If [the defendant] were now to succeed in arguing that the arbitrator had no jurisdiction over the … dispute, all of the time and resources that the petitioners spent proving their case in arbitration—while their case in federal court was on hold and ultimately dismissed—would have been wasted. At the same time, [the defendant] would gain an opportunity to escape an unfavorable judgment.* ***Such***

> *crass manipulation of the legal process constitutes an insult to the integrity of the judicial system and fully warrants invocation of the doctrine of judicial estoppel*.

*Giordano*, 680 F. Supp. 2d at 128 (emphases added).

### D. Unless Estopped, DST Will Cause this Court to Enter an Order that Contradicts an Earlier, Final Order from the Western District of Missouri

Finally, unless DST is estopped, the risk of inconsistent results, with its impact on judicial integrity, is certain to occur. DST successfully asserted that "Mr. DuCharme or any other party to the Arbitration Agreement" were free to "arbitrat[e] a breach of fiduciary duty claim in connection with purported losses to their individual accounts." (Dkt. 305, ¶ 19; Dkt. 305-10.) And the Western District agreed. (Dkt. 305, ¶ 20; Dkt. 305-10.)  Now, DST is requesting that this Court declare that Mr. DuCharme's breach of fiduciary duty claim in connection with purported losses to his individual account is *not* arbitrable. Obviously, DST is playing fast and loose with the courts, blowing hot and cold as the occasion demands, and attempting to mislead this Court to gain unfair advantage. Unless estopped, DST will have sought *and obtained* inconsistent results in two proceedings. This Court, like the Courts in *Abernathy* and *Giordano*, must not permit it. Such crass manipulation of the legal process constitutes an insult to the integrity of the judicial system and fully warrants invocation of the doctrine of judicial estoppel.

### II. DST Has Waived Any Challenge to the Legitimacy of the Arbitration Process, in which they have Voluntarily Participated for More than Three Years

Apart from the doctrine of judicial estoppel, DST has waived the right to challenge the arbitration proceedings. "To preserve an objection to an arbitrator's jurisdiction, a party must raise it clearly and explicitly during the arbitration process. *Giordano*, 680 F. Supp. 2d at 129 (internal quotation and citation omitted); *see also Opals on Ice Lingerie v. Bodylines, Inc*., 320 F.3d 362 (2d Cir.2003). The requirement that the objection be clear and explicit ensures that the objecting party's opponent has an opportunity "to respond with a petition for an order to compel arbitration

under the [FAA]" and thereby "obtain a judicial determination on arbitrability." *Environmental*

*Barrier Co., LLC v. Slurry Systems, Inc.*, 540 F.3d 598, 606 (7th Cir.2008).

Here, DST has participated in the arbitration process for more than three years without

once challenging the validity of the arbitration proceedings or the enforceability of the Arbitration

Agreement. Now, having joined with counsel for the *Ferguson* Plaintiffs to concoct a mandatory

class, DST wants out of arbitration. But as the Tenth Circuit explained:

> in reviewing Supreme Court precedent and persuasive authority from other circuits,
> it is clear that our usual rules regarding waiver and estoppel apply to prevent a party
> from complaining about the enforceability of an arbitration agreement if he already
> has fully participated in arbitration without any relevant objection. In particular, a
> rule of waiver is important to advance the goals of arbitration as an efficient method
> of dispute resolution for which parties may contract in advance. It would be
> unreasonable and unjust to allow [a party] to challenge the legitimacy of the
> arbitration process, in which he had voluntarily participated over a period of several
> months....

*Lewis v. Cir. City Stores, Inc.*, 500 F.3d 1140, 1149 (10th Cir. 2007) (internal quotation marks

omitted).[7] And "[i]t makes no difference whether it is an issue of law." *Jones Dairy Farm*, 760

F.2d at 176. "By going forward with the arbitration without questioning the arbitrator's authority

to resolve the dispute," the parties in arbitration consent to have the arbitrator decide the issues

submitted. *Id.* Thus, by agreeing to arbitration (in fact, by *compelling it*), DST has clearly waived

the right to challenge the arbitrations.

---

[7] *See also Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 191-92 (2d Cir. 2013) ("[W]here a party participates in an arbitration hearing without voicing objection to the arbitrator's authority to decide the matter, the party waives its right to challenge the arbitrator's jurisdiction.") (internal quotations and alterations omitted); *Opals on Ice Lingerie*, 320 F.3d at 368 ("if a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration"); *United Indus. Workers v. Gov't of the Virgin Islands*, 987 F.2d 162, 168 (3d Cir.1993) ("a party may waive its right to challenge an arbitrator's authority to decide a matter by voluntarily participating in an arbitration"); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Loc. No. 1*, 611 F.2d 580, 584 (5th Cir. 1980) ("On whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute."); *Jones Dairy Farm v. Loc. No. P-1236, United Food & Com. Workers Int'l Union, AFL-CIO*, 760 F.2d 173, 175 (7th Cir. 1985) ("If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it.").

**III.    The Order in *DuCharme* is the Law of the Case and the Principles of Judicial Comity Dictate that the Western District's Final Decision be Given Deference**

In the arbitration proceedings pending in Missouri, the decision in *DuCharme* remains the law of the case. "As most commonly defined, the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (internal quotation marks, citation, and brackets omitted). Importantly, the doctrine applies "as much to the decisions of a coordinate court in the same case as a court's own decisions." *Id*. at 816. In fact, the doctrine is "especially important in enforcing comity among federal courts of equal authority." *Hoffman v. Blaski*, 363 U.S. 335, 348–49 (1960) (Frankfurter, J., dissenting).

Thus, the Second Circuit has cautioned that the "principles of comity and judicial economy [should] make courts reluctant to exercise jurisdiction over claims involving the orders of coordinate courts." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir.1981) (citations omitted)*; see also Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169 (3d Cir.1982) ("Judicial comity" dictates that this court not "reexamine an issue already decided by a court of equal authority."). Indeed, it was for this reason that the Western District recently deferred *to this Court*, by dismissing an action on behalf of several arbitration **opt-outs** in favor of the first-filed *Ferguson* action, which was also brought by arbitration opt-outs. *See Ostrander* v. *DST Systems, Inc.*, 2018 WL 10799300, at *3 (W.D. Mo. Feb. 2, 2018). The same deference is owed to the Western District as it pertains to those who have filed individual claims in arbitration.

As this Court properly observed, the Western District has already "upheld the legitimacy of the agreement's class action waiver and held that [participants'] individual claims were arbitrable." *Canfield*, at *1. The Western District is a coordinate court of equal authority, and its decisions are entitled to same deference as this Court would expect. In fact, since the decision in

*DuCharme* was entered *before this case was even filed*, it demands the Court's recognition and, where possible, its adherence.

Not only that, but the decision in *DuCharme* is correct. As the Seventh Circuit recently explained, in *Massachusetts Mutual Life Insurance Co. v. Russell*, the Supreme Court held that § 1132(a) precluded individualized relief in a defined contribution plan. *Smith v. Bd. of Directors of Triad Mfg., Inc.*, ___ F.4th ___, 2021 WL 4129456, at \*4 (7th Cir. Sept. 10, 2021). However, in *LaRue*, "[t]he Court held that § 1132(a) *permitted* such individualized relief [in a defined contribution* plan], distinguishing *Russell* in the process." *Id.* (Emphasis supplied by the Court.)

> "Unlike the defined contribution plan" in *LaRue*, "the disability plan at issue in *Russell* did not have individual accounts; it paid a fixed benefit based on a percentage of the employee's salary." *Id.* at 255. And so "[t]he 'entire plan' language in *Russell*," the Court noted, "speaks to the impact of § 409 on plans that pay defined benefits." *Id.* at 255. Put another way, "*Russell*'s emphasis on protecting the 'entire plan' from fiduciary misconduct reflects the former landscape of employee benefit plans. That landscape has changed." *Id.* at 254.

> The difference between a defined benefit plan and a defined contribution plan was dispositive in *LaRue*. *Id.* at 254-55. As the Court explained, "[m]isconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan." *Id.* at 255. But "[f]or defined contribution plans," misconduct by a fiduciary "need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive." *Id.* at 255–56. The defined contribution plan participant in *LaRue*—unlike the defined benefit plan participant *Russell*—alleged fiduciary misconduct that fell "squarely within" § 1109, so the Court permitted his claim under § 1132(a). *Id.* at 253, 256. With *Russell* cabined to defined benefit plans, *LaRue* concluded "that although § [1132(a)] does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id.* at 256.

*Smith*, 2021 WL 4129456, at \*4. *See also Dorman*, 780 F. App'x at 513–14 (holding that claims for relief under § 502(a)(2) "are inherently individualized when brought in the context of a defined contribution plan," and that individual arbitration "is consistent with *LaRue*.").

In *DuCharme*, DST asserted the same:

The Supreme Court and numerous federal courts, including the Eighth Circuit, have upheld compulsory arbitration of federal statutory claims, including ERISA claims, where such arbitration prohibits plaintiffs from proceeding as a class…

It is well settled in the Eighth Circuit that claims alleging ERISA breach of fiduciary duties are properly arbitrable by agreement. <u>See Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.</u>, 847 F.2d 475 (8th Cir. 1988). In that case, the Eighth Circuit held that there was no "compelling basis to treat agreements to arbitrate ERISA claims differently from those cases in which the Supreme Court has enforced agreements made between private parties to arbitrate antitrust, Exchange Act, and RICO claims. Like other essentially fact-based claims for fiduciary mismanagement, we believe arbitrators are readily capable of handling the factual and legal complexities of ERISA claims and that those claims are not by their nature beyond the ken of arbitrators." <u>Id.</u> at 479 (internal citations and quotations omitted).

(Dkt. 305, ¶ 10; Dkt. 305-5 at 7 fn. 3, 9-10 at fn. 4.)

In fact, *every* circuit to consider the question has held that claims arising under ERISA may be subject to arbitration. *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 122 (2d Cir. 1991)("We hold that Congress did not intend to preclude a waiver of a judicial forum for statutory ERISA claims. We further hold that the FAA requires courts to enforce agreements to arbitrate such claims.").[8] And the Supreme Court's decisions in *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013), and *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) leave no doubt that it would agree with the unanimous view of the courts of appeals.

And, even if *Bird v. Shearson* was overruled in *Cooper* (it was not), the Arbitration Claimants and DST (as well as the Western District) are governed by the law in the Eighth Circuit.

Finally, the parties' Arbitration Agreement, which is valid and binding in the Eighth Circuit, includes a forum selection clause which states that the "arbitration hearing *shall* be held in the county of the Associate's principal place of employment (i.e., Kansas City, Missouri) and

---

[8] *Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000); *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1119 (3d Cir.1993); *VanPamel v. TRW Vehicle Safety Sys., Inc.*, 723 F.3d 664, 669-70 (6th Cir. 2013); *Dorman v. Charles Schwab Corp.,* 934 F.3d 1107, 1112 (9th Cir. 2019).

that "[a]fter the conclusion of the arbitration process…DST or the Associate may file a legal action…to enforce, vacate, modify, and/or appeal the final decision and award…*in the federal district court with jurisdiction over the county in which the hearing was held.*" (Dkt. 305-1, 305-2, emphasis added.) A forum selection clause *must* be given controlling weight in all but the most exceptional cases. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59 (2013). In this case, with respect to all issues pertaining to the arbitrations, it requires that the Court defer to the Western District. *Canfield*, 2021 WL 1022698, *4 (holding that issues pertaining to the arbitrations must be raised independently "in a court authorized to preside in some capacity over these extra-judicial proceedings.").

## IV.   There Has Been No Intervening Change in the Governing Law

DST is a corporation with its principal place of business in Kansas City, Jackson County, Missouri. (Dkt. 298-1, ¶ 13.) The Advisory Committee of the DST Systems, Inc. 401(k) Profit Sharing Plan (the "Advisory Committee"), maintains its address at the headquarters of DST Systems in Kansas City, Jackson County, Missouri. (Dkt. 298-1, ¶ 14.) Finally, the Compensation Committee of the Board of Directors of DST Systems, Inc. ("Compensation Committee"), maintains its address at the headquarters of DST Systems in Kansas City, Jackson County, Missouri. (Dkt. 298-1, ¶ 14.) DST is both the Plan sponsor and Plan administrator. (Dkt. 298-1, ¶ 13.) Accordingly, each of the DST Defendants, *and the administration of the Plan*, are governed by law as applied and interpreted by the Western District Court of Missouri, the Eighth Circuit Court of Appeals, and the Supreme Court of the United States.

The law in the Western District of Missouri remains that same as it ever was: "the Arbitration Agreement at issue is valid and … claims for breach of fiduciary duty fall within the Arbitration Agreement's scope." (Dkt. 305-10.) And, to the extent an individual bound by arbitration "alleges a § 502(a)(2) [claim] as an individual," his or her claims are arbitrable. (*Id. See*

*also Canfield*, 2021 WL 1022698, at *1 (observing that the District Court in Missouri "upheld the legitimacy of the agreement's class action waiver and held that Ducharme's individual claims were arbitrable."). Since *DuCharme*, the District Courts in Missouri have continued to rely upon *Arnulfo P. Sulit*, in which the Eighth Circuit stated, "[W]e perceive no inherent conflict between the arbitration of ERISA claims and the statute's purposes that would undermine the suitability of arbitration as a means of enforcing ERISA rights." 847 F.2d 475, 479 (8th Cir. 1988). *See e.g. G.W. Foods, Inc. Health, Welfare, & Benefits Plan v. WH Administrators, Inc.*, No. 6:17-CV-03380-SRB, 2018 WL 3414323, at *3 (W.D. Mo. May 17, 2018). And, as for Judge Brian C. Wimes, who entered the order in *DuCharme*, he has since confirmed five arbitration awards (each of which was confirmed *after Cooper*). (Schermerhorn Dec., ¶ 16.)

And, even if this Court disagrees with the rulings in *DuCharme* and *Parrott*, "the res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). The Supreme Court has long recognized "that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Traveling Men's Assn.*, 283 U.S. 522, 525 (1931).

In fact, since *Cooper* is applicable only to claims against Ruane, Cunniff & Goldfarb, Inc., it is inapplicable to the arbitrations for the additional reason that RCG is not a defendant in the arbitration proceedings. Finally, to the extent that DST asserts that this Court's Memorandum and Order (Dkt. 311) constitutes an intervening change in the law, it does not.

First, "[a]n order that grants or denies class certification may be altered or amended" at any time prior to final judgment. Fed. R. Civ. P. 23(c)(1)(C). In other words, the Court may, in its discretion, amend its Memorandum and Order if, for example, modification of the class is

necessary to protect the integrity of the judicial system. And "while under Rule 23(b)(1) and (b)(2) there is no absolute right to opt out, as there is under Rule 23(b)(3), courts do 'have the *discretionary power to allow exclusion*.'" *Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1303 (2d Cir. 1990) (emphasis added, quotation omitted).

In *Suffolk*, the Second Circuit upheld the district court's decision to allow a class member to opt-out of a mandatory class "inasmuch as 'basic fairness' supported the court's conclusion because Suffolk, having already litigated its claims before a jury at great expense, and obtained a favorable jury verdict, was in a different position than other class members." *Eubanks v. Billington*, 110 F.3d 87, 94 (D.C. Cir. 1997).

Here, the same rationale applies, but with even greater force. Permitting the Arbitration Claimants to opt out of the mandatory class or excluding those with pending claims from the definition of the class, is necessary to ensure basic fairness, to protect judicial integrity, and to avoid the unseemliness of interfering with a coordinate court of equal authority.

## V. An Injunction is Prohibited by the Federal Arbitration Act

While DST and *Ferguson* Plaintiffs appeal to efficiencies of a mandatory class,

[the] contractual and statutory right to arbitrate may ***not*** be sacrificed on the altar of efficient class action management. As the Supreme Court said in *Dean Witter [Reynolds Inc. v. Byrd,* 470 U.S. 213, 220 (1985)], "[the FAA] was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered, and we must not ... allow the fortuitous impact of the Act on efficient dispute resolution to overshadow the underlying motivation."

*In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298, 302 (8th Cir. 1995) (emphasis added). *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("arbitration procedure, when selected by the parties to a contract, [must] be speedy and not subject to delay and obstruction in the courts").

Nor does congressional approval of Rule 23 establish an entitlement to class proceedings for the vindication of statutory rights. To begin with, it is likely that

such an entitlement, invalidating private arbitration agreements denying class adjudication, would be an "abridg[ment]" or "modif[ication]" of a "substantive right" forbidden to the Rules, see 28 U.S.C. § 2072(b). But there is no evidence of such an entitlement in any event.

*Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).

Additionally, "[t]he rules of procedure provided in the Federal Arbitration Act govern proceedings arising under that Act. It is only where the Arbitration Act is silent that the Federal Rules of Civil Procedure become applicable." *Booth v. Hume Pub., Inc.*, 902 F.2d 925, 931 (11th Cir. 1990). As for an injunction, the FAA is *not* silent. "The FAA does **not** authorize a district court to enjoin arbitration; instead, § 16(a)(2) makes immediately appealable 'an interlocutory order granting ... an injunction against an arbitration that is subject to this title.'" *Piper Funds*, 71 F.3d at 302. Indeed, nothing would be more clearly at odds with the FAA's "statutory policy of rapid and unobstructed enforcement of arbitration agreements," *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 23 (1983), than an injunction or stay of an arbitration action duly filed in response to the final, unappealed order from the Western District. It is for this reason that the FAA permits a stay only of suits or proceedings that are "referable to arbitration." 9 U.S.C. § 3. In other words, the FAA requires that *this* case be stayed (since it includes, among others, Mr. DuCharme's arbitration) and not the other way around.

## VI.   The *Ferguson* Plaintiffs Have No Justification for Seeking an Injunction Since the Arbitrations *Benefit* the Class

Counsel for the *Ferguson* Plaintiffs are also barred from seeking to enjoin the arbitration proceedings. There is a severe conflict of interest between the Claimants and the *Ferguson* Plaintiffs and their counsel. By supporting DST's effort to enjoin the arbitrations, counsel for the *Ferguson* Plaintiffs are placing their *own* financial interests (a potential attorneys' fee) over the Claimants' real and legal interest in the monetary amounts ***already awarded*** (which amounts were awarded ***separate*** from any fee award). Both due process and Rule 23(a)(4) require "adequate

representation 'at all times' throughout the litigation." *Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 260 (2d Cir. 2001), *aff'd in part, vacated in part,* 539 U.S. 111 (2003).  To be adequate, class representatives "must have no interests antagonistic to the interests of other class members."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016). The interests of counsel for the *Ferguson* Plaintiffs are fundamentally antagonistic to the interests of the Arbitration Claimants. For example, the Arbitration Claimants who have already won their cases want to keep their hard-earned awards; but class counsel, who are working in tandem with DST, want to strip those awards from them and force them into a less valuable settlement with DST. Indeed, despite the *Ferguson* Plaintiffs' repeated insistence that no Arbitration Claimant will be made worse off by their concerted actions, DST is currently fighting to prevent the confirmation of more than 20 arbitration awards. This is a flagrant conflict of interest that renders the *Ferguson* Plaintiffs inadequate representatives of the Arbitration Claimants.

In any event, for the reasons described above, the *Ferguson* Plaintiffs have no justifiable reason for seeking to enjoin the arbitrations. By permitting the arbitrations to proceed, the *Ferguson* Plaintiffs *and the Class* will receive the *benefit* of the Arbitration Claimants' success, while avoiding any potential harm or loss. *Dorman*, 780 F. App'x at 514. And, in fact, the arbitrations have *already* benefited that class to the tune of more than $20,000,000.00. And, while the *Ferguson* Plaintiffs lament the small number of arbitration losses, the first of the awards in favor of DST was recently *vacated*. (Schermerhorn Dec., ¶ 17.) It is expected that the others will be reversed as well. Thus, rather than work irreparable harm to the class, by permitting the arbitrations to continue, the Court *benefits* both the Claimants *and the Class.*

## CONCLUSION

There is nothing standing in the way of honoring both the decisions in *DuCharme* and in *Cooper*. The Court could easily permit opt-outs, in accordance with both *Hecht v. United*

*Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012), and *Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1303 (2d Cir. 1990), so that those outside the Second Circuit desiring to arbitrate in connection with the losses to their individual accounts may do so in accordance with Eighth Circuit law, as applied by the Western District in *DuCharme*. Insofar as others wish to avoid arbitration, the Court may continue to oversee a non-mandatory representative action on behalf of those who have neither filed, nor wish to file, a claim in arbitration. And, to the extent either effort falls short, the Plan may still recover in the Secretary of Labor's separate, independent action. *See Scalia v. Ruane, Cunniff & Goldfarb, Inc., et al.*, 1:19-cv-9302-ALC (S.D.N.Y.).

Therefore, for all the foregoing reasons, the Arbitration Claimant's respectfully requests that the Court deny the request for a preliminary injunction and permit the Arbitration Claimants to opt out of the *Ferguson* Plaintiff's representative action.

DATED:  September 21, 2021                  Respectfully submitted,

                                            THE KLAMANN LAW FIRM
                                            _/s/ Andrew Schermerhorn_
                                            John M. Klamann
                                            Andrew Schermerhorn
                                            4435 Main Street, Suite 150
                                            Kansas City, MO 64111
                                            Telephone: (816) 421-2626
                                            Facsimile:  (816) 421-8686
                                            jklamann@klamannlaw.com
                                            ajs@klamannlaw.com

                                            *Counsel for the Arbitration Claimants*