UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL L. FERGUSON, MYRL C. JEFFCOAT, and DEBORAH SMITH, on behalf of the DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RUANE CUNNIFF & GOLDFARB INC., DST SYSTEMS, INC., THE ADVISORY COMMITTEE OF THE DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN, and THE COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF DST SYSTEMS, INC., <br><br> Defendants. | Case No. 17-CV-06685 (ALC)(BCM) |

**MEMORANDUM OF LAW IN RESPONSE TO
THE ARBITRATION CLAIMANTS' OPPOSITION TO
THE DST DEFENDANTS' MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

Preliminary Statement .................................................................................................. 1

Factual Background ..................................................................................................... 4

Argument ..................................................................................................................... 6

I.      The Effect of the Court's Class Certification Order Was to Halt Parallel
        Proceedings ........................................................................................................ 6

II.     A Preliminary Injunction Is Necessary to Give Effect to the Court's Class
        Certification Order and Protect Its Jurisdiction ................................................ 8

        A.      The Court Should Enjoin Parallel Proceedings Under the All Writs Act .............. 8

        B.      The Requirements for an Injunction Under Rule 65 Are Satisfied Here ................ 9

III.    An Injunction Is Consistent with the Federal Arbitration Act ........................................ 11

IV.     The Court Has Considered and Rejected Arbitration Claimants' Arguments ................. 12

        A.      This Court Has Jurisdiction over Arbitration Claimants ....................................... 12

        B.      Arbitration Claimants Are Not Permitted to Opt Out from the Mandatory
                Class ...................................................................................................................... 15

        C.      Judicial Estoppel Is Inapplicable ......................................................................... 16

        D.      Waiver Is Inapplicable .......................................................................................... 21

        E.      Arbitration Claimants' Law-of-the-Case Argument Is Wrong ............................. 22

Conclusion .................................................................................................................. 26

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Achtman* v. *Kirby, McInerney & Squires, LLP*,
   404 F. Supp. 2d 540 (S.D.N.Y. 2005) ........................................................................12

*Allstate Ins. Co.* v. *Elzanaty*,
   929 F. Supp. 2d 199 (E.D.N.Y. 2013) ........................................................................10

*SEC* v. *Alpine Sec. Corp.*,
   2018 WL 3377152 (S.D.N.Y. July 11, 2018) ..........................................................7, 13

*In re Am. Express Fin. Advisors Sec. Litig.*,
   672 F.3d 113 (2d Cir. 2011) ........................................................................................11

*Am. Mfrs. Mut. Ins. Co.* v. *Payton Lane Nursing Home, Inc.*,
   704 F. Supp. 2d 177 (E.D.N.Y. 2010) ........................................................................17

*Aramony* v. *United Way of Am.*,
   254 F.3d 403 (2d Cir. 2001) ........................................................................................22

*Arnulfo P. Sulit, Inc.* v. *Dean Witter Reynolds, Inc.*,
   847 F.2d 475 (8th Cir. 1988) ......................................................................................24

*In re Baldwin-United Corp.*,
   770 F.2d 328 (2d Cir. 1985) ..........................................................................................8

*Bank of Am., N.A.*, v. *UMB Fin. Servs., Inc.*,
   618 F.3d 906 (8th Cir. 2010) ......................................................................................12

*Beach* v. *JPMorgan Chase Bank, Nat'l Ass'n*,
   2019 WL 2428631 (S.D.N.Y. June 11, 2019) ...............................................13, 15, 16

*In re Beacon Assocs. Litig.*,
   282 F.R.D. 315 (S.D.N.Y. 2012) ................................................................................15

*Berthel Fisher & Co. Fin Servs., Inc.* v. *Larmon*,
   2011 WL 3294682 (D. Minn. Aug. 1, 2011) ..............................................................22

*In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*,
   2014 WL 12621614 (D.S.C. Oct. 15, 2014) ...............................................................11

*Boley* v. *Universal Health Servs., Inc.*,
   337 F.R.D. 626 (E.D. Pa. 2021) .................................................................................16

*Canfield* v. *SS&C Techs. Holdings, Inc.*,
  2021 WL 1022698 (S.D.N.Y. Mar. 17, 2021) ....................................................................20

*Christianson* v. *Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988)..........................................................................................................22

*In re Citigroup Pension Plan ERISA Litig.*,
  241 F.R.D. 172 (S.D.N.Y. 2006) .........................................................................................9

*City of N.Y.* v. *Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011)..............................................................................................14

*Clark* v. *Duke Univ.*,
  2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) ...................................................................16

*Coan* v. *Kaufman*,
  457 F.3d 250 (2d Cir. 2006)......................................................................................1, 6, 24

*Colesberry* v. *Ruiz Food Prods., Inc.*,
  2006 WL 1875444 (E.D. Cal. June 30, 2006) ...................................................................15

*Cooper* v. *Ruane Cunniff & Goldfarb Inc.*,
  990 F.3d 173 (2d Cir. 2021)....................................................................................5, 10, 24

*Cunningham* v. *Cornell Univ.*,
  2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) ......................................................................16

*Curtis* v. *Citibank, N.A.*,
  226 F.3d 133 (2d Cir. 2000)................................................................................................7

*Douglin* v. *GreatBanc Tr. Co.*,
  115 F. Supp. 3d 404 (S.D.N.Y. 2015)................................................................................16

*In re Drexel Burnham Lambert Grp., Inc.*,
  148 B.R. 993 (S.D.N.Y. 1992)...........................................................................................17

*DuCharme* v. *DST Sys., Inc.*,
  2017 WL 7795123 (W.D. Mo. June 23, 2017) ..................................................................20

*In re Federal Skywalk Cases*,
  680 F.2d 1175 (8th Cir. 1982) ............................................................................................7

*Ferguson* v. *Ruane Cuniff & Goldfarb Inc.*,
  2019 WL 1434435 (S.D.N.Y. Mar. 29, 2019) ...................................................................11

*Ferguson* v. *Ruane Cuniff & Goldfarb Inc.*,
  2021 WL 3667979 (S.D.N.Y. Aug. 17, 2021) ............................................................ *passim*

iii

*Gamache* v. *Hogue*,
   338 F.R.D. 275 (M.D. Ga. 2021) ........................................................................16

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................15

*Harrington* v. *Crater*,
   2017 WL 4621618 (E.D.N.Y. Oct. 7, 2017) ......................................................25

*Harris* v. *Koenig*,
   271 F.R.D. 383 (D.D.C. 2010) ..........................................................................16

*Hayman Cash Register Co.* v. *Sarokin*,
   669 F.2d 162 (3d Cir. 1982) ..............................................................................23

*Hecht* v. *United Collection Bureau, Inc.*,
   691 F.3d 218 (2d Cir. 2021) ..............................................................................15

*Hicks* v. *Bank of America, N.A.*,
   218 F. App'x 739 (10th Cir. 2007) .....................................................................18

*Hicks* v. *Cadle Co.*,
   355 F. App'x 186 (10th Cir. 2009) .....................................................................18

*Hoffman* v. *Blaski*,
   363 U.S. 335 (1960) ...........................................................................................23

*Howsam* v. *Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) .............................................................................................21

*Hursh* v. *DST Sys., Inc.*,
   2021 WL 4526849 (W.D. Mo. Oct. 4, 2021) ........................................... *passim*

*Hurtado* v. *Rainbow Disposal Co.*,
   2019 WL 1771797 (C.D. Cal. Apr. 22, 2019) ....................................................16

*Ins. Corp. of Ir., Ltd.* v. *Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982) ...........................................................................................14

*Int'l Ass'n of Machinists & Aerospace Workers* v. *Fansteel, Inc.*,
   900 F.2d 1005 (7th Cir. 1990) ...........................................................................22

*In re Interest Rate Swaps Antitrust Litig.*,
   351 F. Supp. 3d 698 (S.D.N.Y. 2018) ...............................................................22

*Jacobs* v. *Verizon Commc'ns Inc.*,
   2020 WL 4601243 (S.D.N.Y. June 1, 2020) ...............................................13, 16

*Jander* v. *Ret. Plans Comm. of IBM*,
  2021 WL 3115709 (S.D.N.Y. July 22, 2021) ........................................................16

*In re Joint E. & S. Dist. Asbestos Litig.*,
  134 F.R.D. 32 (E.D.N.Y. 1990) .....................................................................6, 10

*Kanawi* v. *Bechtel Corp.*,
  254 F.R.D. 102 (N.D. Cal. 2008) ..................................................................16

*Kennedy* v. *Basil*,
  2021 WL 1226768 (S.D.N.Y. 2021) ..............................................................18

*Kindle* v. *Dejana*,
  315 F.R.D. 7 (E.D.N.Y. 2016) .......................................................................16

*L.I. Head Start Child Dev. Servs., Inc.* v. *Econ. Opportunity Comm'n of Nassau
  Cnty., Inc.*,
  710 F.3d 57 (2d Cir. 2013) ...........................................................................24

*Leber* v. *Citigroup 401(k) Plan Inv. Comm.*,
  323 F.R.D. 145 (S.D.N.Y. 2017) ..............................................................13, 16

*New Hampshire* v. *Maine*,
  532 U.S. 742 (2001) ....................................................................................17

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................................16

*Mays* v. *Mahoney*,
  1994 WL 48831 (S.D.N.Y. Feb. 14, 1994) .....................................................22

*Md. Cas. Co.* v. *Realty Advisory Bd. on Lab. Rels.*,
  107 F.3d 979 (2d Cir. 1997) .........................................................................10

*In re Merck & Co. Sec., Derivative & ERISA Litig.*,
  2009 WL 331426 (D.N.J. Feb. 10, 2009) .......................................................16

*In re Mex. Money Transfer Litig.*,
  267 F.3d 743 (7th Cir. 2001) .......................................................................14

*Moreno* v. *Deutsche Bank Ams. Holding Corp.*,
  2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) ..............................................13, 16

*Morgan Stanley & Co.* v. *Seghers*,
  2010 WL 3952851 (S.D.N.Y. Oct. 8, 2010) ....................................................10

*Munro* v. *Univ. of S. Cal.*,
  2019 WL 7842551 (C.D. Cal. Dec. 20, 2019) .................................................16

*Mussat* v. *IQVIA, Inc.*,
  953 F.3d 441 (7th Cir. 2020) ......................................................................13

*In re N. Sea Brent Crude Oil Futures Litig.*,
  2017 WL 2535731 (S.D.N.Y. June 8, 2017) .............................................14

*Neil* v. *Zell*,
  275 F.R.D. 256 (N.D. Ill. 2011)..................................................................16

*Ng* v. *Prudential Ins. Co. of Am.*,
  159 F. Supp. 3d 273 (D. Mass. 2016) .......................................................14

*In re Nortel Networks Corp. ERISA Litig.*,
  2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009).........................................16

*Ostrander* v. *DST Sys., Inc.*,
  2018 WL 10799300 (W.D. Mo. Feb. 2, 2018) .........................................18, 20, 23

*Parvon* v. *Comm'r of Soc. Sec.*,
  2020 WL 1131220 (W.D.N.Y. Mar. 9, 2020)............................................25

*Phillips Petroleum Co.* v. *Shutts*,
  472 U.S. 797 (1985)...............................................................................14, 15

*In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*,
  71 F.3d 298 (8th Cir. 1995) .......................................................................12

*Powell* v. *Ocwen Fin. Corp.*,
  2019 WL 1227939 (S.D.N.Y. Mar. 15, 2019) ...........................................14

*In re Ramaekers*,
  33 F. Supp. 2d 312 (S.D.N.Y. 1999).........................................................25

*Ramirez* v. *J.C. Penney Corp.*,
  2017 WL 6462355 (E.D. Tex. Nov. 30, 2017) ..........................................16

*In re Rationis Enters., Inc. of Panama*,
  261 F.3d 264 (2d Cir. 2001).......................................................................13

*In re Real Est. Title & Settlement Servs. Antitrust Litig.*,
  869 F.2d 760 (3d Cir. 1989).......................................................................15

*Rodal* v. *Anesthesia Grp. of Onondaga, P.C.*,
  369 F.3d 113 (2d Cir. 2004).......................................................................21

*Rozo* v. *Principal Life Ins. Co.*,
  2017 WL 2292834 (S.D. Iowa May 12, 2017) ..........................................16

*Sacerdote* v. *N.Y. Univ.*,
   2018 WL 840364 (S.D.N.Y. Feb. 13, 2018)............................................................16

*Smith* v. *Board of Directors of Triad Mfg., Inc.*,
   2021 WL 4129456 (7th Cir. Sept. 10, 2021) ........................................................24

*Smith* v. *Tower Loan of Miss., Inc.*,
   216 F.R.D. 338 (S.D. Miss. 2003) .........................................................................12

*Sprint Spectrum L.P.* v. *Mills*,
   283 F.3d 404 (2d Cir. 2002)....................................................................................9

*State Farm Mut. Auto. Ins. Co.* v. *Parisien*,
   352 F. Supp. 3d 215 (E.D.N.Y. 2018) ...............................................................9, 10

*Stott* v. *Cap. Fin. Servs., Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) ..........................................................................11

*Sweda* v. *Univ. of Pa.*,
   2021 WL 2665722 (E.D. Pa. June 29, 2021) .........................................................16

*Teets* v. *Great-W. Life & Annuity Ins. Co.*,
   315 F.R.D. 362 (D. Colo. 2016) ............................................................................16

*In re Tribune Co. Fraudulent Conveyance Litig.*,
   2019 WL 1771786 (S.D.N.Y. Apr. 23, 2019).........................................................20

*Troll Co.* v. *Uneeda Doll Co.*,
   483 F.3d 150 (2d Cir. 2007)...................................................................................20

*Urakhchin* v. *Allianz Asset Mgmt. of Am., L.P.*,
   2017 WL 2655678 (C.D. Cal. June 15, 2017) .......................................................16

*Wal-Mart Stores, Inc.* v. *Dukes*,
   564 U.S. 338 (2011)...............................................................................................15

*Waldron* v. *Raymark Indus., Inc.*,
   124 F.R.D. 235 (N.D. Ga. 1989)............................................................................15

*Wildman* v. *Am. Century Servs.*,
   2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) .........................................................16

*Zambrana* v. *Califano*,
   651 F.2d 842 (2d Cir. 1981)...................................................................................23

**Statutes**

9 U.S.C. § 16(a)(2).........................................................................................................11

28 U.S.C. § 1651(a) ...........................................................................................8

29 U.S.C. §1132(e)(2) ......................................................................................14

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................... *passim*

Fed. R. Civ. P. 65 .................................................................... *passim*

## PRELIMINARY STATEMENT

This Court already has rejected the arguments that Arbitration Claimants make now and held that Arbitration Claimants' claims were not arbitrable and that Arbitration Claimants were not permitted to opt out of the Rule 23(b)(1) class. Continuing their pattern of defying this Court's jurisdiction, Arbitration Claimants attacked this Court's Order before the Western District of Missouri and have pursued new claims in arbitration. DST has not participated in those arbitrations in deference to this Court's Order. The recent order solicited by Arbitration Claimants in the Western District of Missouri squarely conflicts with this Court's conclusions and Second Circuit law, and interferes with this Court's ability to manage a 9,000-member class action by injecting the very inconsistent results and disparate treatment that this Court's Order sought to prevent. DST respectfully submits that the Western District of Missouri decision is wrong, and intends to appeal.

This Court should act swiftly to enjoin Arbitration Claimants from continuing to flout this Court's Order by enjoining them from instituting new actions or litigating in arbitration or other proceedings matters related to the Third Amended Complaint. Only an injunction satisfies the Second Circuit's directive in *Coan* that district courts must employ the "procedural safeguards" "necessary to protect absent parties, and to prevent redundant suits" so that ERISA claims like these are prosecuted on behalf the plan as a whole. *Coan* v. *Kaufman*, 457 F.3d 250, 260–61 (2d Cir. 2006). Having certified a mandatory class, this Court should ensure that all issues affecting the parties and class members are litigated before this Court—not through piecemeal attacks on this Court's jurisdiction in which Arbitration Claimants seek outcomes prejudicial to the parties, subjecting similarly situated class members to different rules and outcomes.

Arbitration Counsel's recent conduct amply demonstrates why an injunction is necessary. Arbitration Counsel, disqualified by this Court from representing Plan participants, have sought to undercut this Court's decision and avoid its jurisdiction by disregarding the effect of this Court's

Order and misleading arbitrators and courts.  Arbitration Counsel have falsely characterized this Court's orders in the arbitrations while instructing the AAA *not* to supply this Court's orders to arbitrators.  And Arbitration Counsel have told the Second Circuit in seeking an interlocutory appeal of the Court's Order that it "bars the completion of the arbitrations" while insisting in the Western District of Missouri that the Order has no effect on the arbitrations.

In the face of Arbitration Claimants' contumacious conduct, the question before the Court now is whether to effectuate its class certification order and ensure that the Plan's claims are resolved in one representative action with the procedural safeguards the Second Circuit requires. This Court has clear authority to enjoin Arbitration Claimants under the All Writs Act ("AWA") and Rule 65.  Although injunctions issued under the AWA need not comply with Rule 65, that rule is nonetheless satisfied here.  The law is clear that DST will be irreparably harmed if it is forced to defend against claims in arbitration that this Court and the Second Circuit have held are not arbitrable.  Arbitration Claimants, by contrast, will suffer no cognizable injury from an injunction. They have no arbitrable claims, and their interests are adequately represented here.  Contrary to Arbitration Claimants' arguments that they would "lose the benefits of arbitration" if enjoined, the effect, if any, of the arbitration results that they have insisted on procuring despite active litigation in this Court over their ability to do so may be resolved by this Court at the appropriate time, with a view to the management of the Class as a whole.  An injunction simply ensures that issues affecting the Class and the parties are litigated and resolved in this forum.

Seeking to avoid the effect of the Court's Order, Arbitration Claimants recycle the same arguments that this Court already considered and rejected in certifying the Class.  Their arguments concerning personal jurisdiction and opt-out rights are as meritless now as they were when the

Court first considered them.  Arbitration Claimants likewise argued judicial estoppel in opposing class certification, and those arguments necessarily were rejected.

Moreover, whatever relevance judicial estoppel had at class certification, it has no application on this motion.  The question presented by this motion has never been litigated elsewhere:  whether, now that the Court has certified a Rule 23(b)(1) class, the Court should give effect to its Order by enjoining parallel litigation of class claims.  Arbitration Claimants insist that DST should be judicially estopped because it previously urged that these claims were arbitrable. While Arbitration Claimants are incorrect, this motion does not seek a determination as to whether Arbitration Claimants' claims are arbitrable.  The Court already concluded they are not.  The relevant issue now is whether the Court's Order warrants entry of an injunction to prevent Arbitration Claimants from continuing to defy it.  Moreover, the *Ferguson* Plaintiffs, who Arbitration Claimants do not—and cannot—claim are estopped, have sought the same relief as the DST Defendants.  Arbitration Claimants thus cannot rely on judicial estoppel to avoid a resolution on the merits, which plainly counsels in favor of an injunction.

Arbitration Claimants' remaining arguments likewise were made and rejected at class certification.  Arbitration Claimants cannot show that DST waived its objections to arbitrability when it had been actively litigating with Arbitration Claimants whether these claims are arbitrable for more than a year, since before any arbitration hearing took place.  And Arbitration Claimants' argument that this Court should treat the *DuCharme* decision, which dismissed an action more than four years ago and involved different issues between two parties, as binding in a class action involving more than 9,000 Plan participants is baseless.  Indeed, the same judge who presided over *DuCharme* has now twice deferred to this Court by dismissing actions involving the Plan's claims in favor of this action.  Finally, the discretionary law-of-the-case doctrine applies only to

3

subsequent decisions made in the same case, not to decisions in different cases involving different issues and different parties.  To the extent it is relevant, the law-of-the-case doctrine precludes Arbitration Claimants from relitigating the same arguments they already lost at class certification.

## FACTUAL BACKGROUND

The ongoing arbitrations involve the *Ferguson* claims and class members, but are being conducted in the absence of class counsel and outside of this Court's supervision.  ECF No. 314-1 at 2–3.  Accordingly, on August 20, DST ceased participating in the arbitrations because it did not believe that it could do so consistent with this Court's class certification order (the "Order") and the law providing that the effect of mandatory class certification is to extinguish parallel litigation encompassed within the class.  *Id.*; ECF No. 314 ¶ 4; ECF No. 313 at 3–4.

More than 200 Arbitration Claimants have not yet had arbitration hearings.  In most of these cases, the parties have not selected arbitrators or scheduled hearings.  Recher Decl. ¶ 3.  Each week, new hearings begin for several Arbitration Claimants.  Each hearing lasts four to five days and involves previously recorded testimony from nine witnesses, and live arbitrator questions.  Since August 23, 2021—the Monday after this Court issued its Order—16 hearings have been held without DST present.  *Id.* ¶ 4.  Dozens of arbitrations also are in the post-hearing process, which involves post-hearing briefing or appeal.  *Id.* ¶ 7.  Arbitration Claimants have sought to take advantage of DST's adherence to this Court's Order by, among other things, baselessly asserting in their appeals of DST's wins that its absence "should be treated as an admission that Claimant is entitled to the reversal of the award."  Recher Decl. Ex. A.

Arbitration Claimants also have actively misled arbitrators.  For example, Arbitration Counsel instructed the AAA not to provide arbitrators with this Court's show-cause order, but instead to falsely inform arbitrators only that the Court denied DST's "request that [the Court] stay and/or enjoin the arbitrations."  Recher Decl. Ex. B.  Further, while some arbitrators have decided

to stay proceedings until they receive further direction from this Court, Arbitration Counsel have falsely continued to represent to other arbitrators that "*[e]very arbitrator* to decide" the issue "has agreed to proceed." *See, e.g.*, Recher Decl. Ex. C; Ex. D at 2; Ex. E.

To date, DST has prevailed after trial in more than 65 arbitrations. Recher Decl. ¶ 6. Arbitration Counsel downplay these results, calling it a "small number of arbitration losses." ECF No. 320 at 25. But in reality, dozens of their clients stand to recover nothing from arbitration. Yet Arbitration Counsel nonetheless urge this Court to exclude those clients from the Class—a striking conflict affecting the class members before this Court.

Arbitration Claimants' plain goal is to make as many arbitration awards as possible final while seeking exorbitant attorney's fees so that they can then file motions to confirm in the Western District of Missouri to seek results for individual class members that run afoul of this Court's rulings and Second Circuit precedent. To date, Arbitration Claimants have filed 91 confirmation actions. Recher Decl. ¶ 13. Arbitration Claimants continue to assert in these actions that the Court's Order is "non-binding" and "irrelevant." *Id.* ¶ 15; Ex. F at 7 n.3.

On October 4, 2021, Judge Laughrey granted 20 substantively identical motions to confirm, reaching conclusions contrary to those of this Court and the Second Circuit. *Hursh* v. *DST Sys., Inc.*, 2021 WL 4526849 (W.D. Mo. Oct. 4, 2021). DST respectfully submits that decision is erroneous, runs afoul of the legal principle that the effect of a mandatory class certification order is to supersede parallel litigation, and risks subjecting the parties and class members to different rules. DST intends to appeal that decision, and it should have no application here:

- The court's indication that the claims at issue are individually arbitrable, *id.* at *4, is inconsistent with this Court's resolution of this question, *Ferguson* v. *Ruane Cuniff & Goldfarb Inc.*, 2021 WL 3667979, at *3–4 (S.D.N.Y. Aug. 17, 2021), and controlling Second Circuit precedent, *see Cooper* v. *Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 184 (2d Cir. 2021). It also cannot be squared with *Coan*, which requires that these claims

be resolved on a Plan-wide basis and with procedural safeguards to ensure the equitable treatment of the parties and all class members. *Coan*, 457 F.3d at 259–61.

- The court's conclusion that DST waived its objections to arbitrability and is estopped in light of its prior positions in *DuCharme*, 2021 WL 4526849, at *5–10, is wrong on the merits and is inconsistent with the conclusions of this Court, which certified the Class over the same objections by Arbitration Claimants. Moreover, as discussed below, the Western District of Missouri resolved those questions in the context of whether these ERISA claims are arbitrable. That question, already resolved by this Court, is not raised by this motion.

- The *Hursh* decision interferes with this Court's jurisdiction over the Class, and risks subjecting different class members to different rules. In fact, a ruling that the arbitration awards are binding and confirmable may work against the interests of many of Arbitration Counsel's own clients—dozens of whom have lost in arbitration and may take nothing if the arbitration results are enforced. The consequences to other class members and parties—sought outside of this Court's oversight and in the absence of class counsel—are powerful reasons why those issues should not continue to be litigated in piecemeal fashion.

Twelve additional motions to confirm were granted on October 8, 2021. Fifty-nine other motions to confirm remain pending. Recher Decl. ¶ 14.

## ARGUMENT

### I. The Effect of the Court's Class Certification Order Was to Halt Parallel Proceedings

The effect of the Court's Order was to supersede and suspend other proceedings brought by class members. As the Eastern District of New York explained, "certification of a national mandatory class action pursuant to Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure will supersede all litigation against [defendant] pending in federal and state forums." *See, e.g.*, *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 36 (E.D.N.Y. 1990) (citations omitted); ECF No. 313 at 3–4 (collecting cases). Nowhere in their submissions do Arbitration Claimants even attempt to rebut the clear authority that the effect of this Court's Order was to enjoin their parallel proceedings. In fact, Arbitration Claimants conceded before the Second Circuit that this Court's certification of a mandatory class "bars the completion of the arbitrations." *DuCharme* v. *Ferguson*, No. 21-2102, ECF No. 28 at 2, 14 (2d Cir. Sept. 16, 2021). The requested injunction

therefore merely confirms the existing effect of this Court's Order.  Such an injunction is necessary

only because Arbitration Claimants have improperly continued to defy this Court's Order and

jurisdiction.

Further, it is black-letter law that litigants may not bring a collateral attack in another court

that seeks to reverse the findings of a first court in which they appeared and litigated:

> All courts hold that if a litigant appears at the fairness hearing and raises objections
> that are heard and rejected by the class action court, that specific litigant does not
> get to re-litigate these objections (or perhaps any) via a collateral attack.  She is
> issue precluded by virtue of her participation in the prior litigation.

William B. Rubenstein, 6 Newberg on Class Actions § 18:39 (5th ed., June 2021 Update)

(collecting cases).  Having appeared in this Court to challenge class certification, Arbitration

Claimants should not be permitted to "force" DST "to defend against largely the same arguments

in another federal district court" that they have litigated and lost here.  *See SEC* v. *Alpine Sec.*

*Corp.*, 2018 WL 3377152, at *3 (S.D.N.Y. July 11, 2018).  In similar circumstances in *Alpine*, for

example, Judge Cote enjoined under the AWA and Rule 65 a second-filed federal action that raised

the same issues litigated in this District and that "complain[ed] of injury caused by" that court's

opinion.  *Id.* (litigant was "entitled to take a number of actions in this Court or in the Second

Circuit," but not permitted to litigate the same issues "in another federal district court"); *see also*

*Curtis* v. *Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("Because of the obvious difficulties of

anticipating the claim or issue-preclusion effects of a case that is still pending, a court faced with

a duplicative suit will commonly . . . enjoin the parties from proceeding with it . . . .").

In light of this authority, the Western District of Missouri erred in reaching the merits of

Arbitration Claimants' motions.  The court asserted that *In re Federal Skywalk Cases*, 680 F.2d

1175 (8th Cir. 1982), "suggests that a class-certification order that interferes with pending

proceedings may be improper" because the Eighth Circuit vacated a class certification order that

"had purported to enjoin 'pending . . . actions,'" 2021 WL 4526849, at *10 (quoting *In re Federal Skywalk Cases*, 680 F.2d at 1182).  That the Eighth Circuit vacated a class certification order—under the Anti-Injunction Act and because of federalism concerns not present here, 680 F.2d at 1181–83—is of no moment.  *In re Federal Skywalk Cases* recognized that an order certifying a mandatory class was "injunctive in character," based on "the substantial effect of the order rather than its terminology."  *Id.* at 1180.  Further, "the substantial effect of the order also enjoined the state plaintiffs from pursuing their pending state court actions."  *Id.*  Here, too, the inherent effect of this Court's Order was to suspend parallel proceedings involving the Class's claims.

## II.    A Preliminary Injunction Is Necessary to Give Effect to the Court's Class Certification Order and Protect Its Jurisdiction

This Court should issue an injunction under the AWA to give effect to its Order and protect its jurisdiction over the properly certified mandatory class.  Although injunctions issued under the AWA need not meet Rule 65's requirements, those requirements are nevertheless met here.

### A.    The Court Should Enjoin Parallel Proceedings Under the All Writs Act

Arbitration Claimants fail to respond to or even acknowledge the fact that injunctions issued pursuant to the AWA need not comply with Rule 65.  *In re Baldwin-United Corp.*, 770 F.2d 328, 338–39 (2d Cir. 1985).  Rather, the AWA empowers federal district courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a); ECF No. 313 at 4–8.  As discussed further below, *see infra* at 11–12 & n.2, and in DST's prior briefing, ECF No. 313 at 5–6, courts routinely have enjoined the prosecution and filing of parallel proceedings, including arbitrations, to effectuate class certification orders and protect their jurisdiction over certified classes.

Arbitration Claimants' defiance of the Court's Order by proceeding in arbitration and filing dozens of confirmation actions illustrates precisely why an injunction is necessary.  Arbitration

Claimants' conduct wastes judicial resources and threatens this Court's ability to oversee this class action.  Further, Arbitration Claimants' myriad actions in the Western District of Missouri create a risk—now materialized—of inconsistent judgments prejudicing the Class and Defendants.  *See* ECF No. 313 at 6–7.  This is of particular concern in the ERISA context, where there is "a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.'"  *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) (citation omitted).

This Court has determined that issues relating to the Class's claims should be resolved in one representative proceeding brought on behalf of the Plan, in accordance with this Circuit's precedent.  2021 WL 3667979, at *4.  The Western District of Missouri now has reached the opposite conclusion, thereby threatening to "frustrate the implementation of" the Court's Order.  *See Sprint Spectrum L.P.* v. *Mills*, 283 F.3d 404, 413 (2d Cir. 2002).  An injunction is needed to prevent the harms that this Court sought to avoid by certifying a mandatory class, including inconsistent results prejudicing the Class and the parties.

B.   The Requirements for an Injunction Under Rule 65 Are Satisfied Here

"To obtain a preliminary injunction pursuant to Fed. R. Civ. P. 65, the moving party must demonstrate '(1) irreparable harm absent the injunctive relief and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'"  *State Farm Mut. Auto. Ins. Co.* v. *Parisien*, 352 F. Supp. 3d 215, 233 (E.D.N.Y. 2018) (citation omitted).

*First*, as explained in DST's prior briefing and in Plaintiffs' brief in support of DST's motion, permitting hundreds of parallel proceedings involving the Plan's claims will irreparably harm DST and the Class.  ECF No. 313 at 9–11; ECF No. 319 at 9–10.  The case law is clear that a party is irreparably harmed when it is forced to expend resources litigating in arbitration claims

that are not arbitrable.[1]  Permitting continued litigation in other fora involving the Class's claims likewise risks making the management of this class proceeding unworkable.

*Second*, DST already has succeeded on the merits.  This Court certified a mandatory class subsuming the arbitration claims.  *See, e.g.*, *Joint E. & S. Dist. Asbestos*, 134 F.R.D. at 36.  And the Second Circuit and this Court have decided that the claims asserted by Arbitration Claimants are not arbitrable.  *See Cooper*, 990 F.3d at 184–85; *Ferguson*, 2021 WL 3667979, at *4.

*Third*, the balance of hardships weighs decidedly in DST's favor.  Absent an injunction, Arbitration Claimants will continue to defy this Court's Order and invite inconsistent adjudications in hundreds of other proceedings.  As this Court found, "[a]llowing multiple actions, each of which would seek similar or the same relief from the Defendants on behalf of the Plan, would potentially prejudice individual class members and would threaten to create 'incompatible standards of conduct' for the Defendants."  2021 WL 3667979, at *7.  Arbitration Claimants' disregard of this Court's Order renders this proceeding unmanageable and requires DST to expend unnecessary resources litigating elsewhere claims that are before this Court.  ECF No. 313 at 7–12.

The Court should not credit Arbitration Claimants' hyperbolic assertion that, if the arbitrations are enjoined, "both the Claimants *and the Plan* will lose the benefits of arbitration, of the years-long effort litigating against DST, and of the tens of millions of dollars of *actual awards*

---

[1]   *See, e.g.*, *Allstate Ins. Co.* v. *Elzanaty*, 929 F. Supp. 2d 199, 222 (E.D.N.Y. 2013) (irreparable harm where party would "wast[e] time and resources in an arbitration with awards that might eventually be, at best, inconsistent with this Court's ruling, and at worst, essentially ineffective"); *Morgan Stanley & Co.* v. *Seghers*, 2010 WL 3952851, at *6 (S.D.N.Y. Oct. 8, 2010) (irreparable harm where party required "to expend time and resources defending itself in the arbitration," and "enforceability" was in "significant doubt"); *Md. Cas. Co.* v. *Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979, 984–85 (2d Cir. 1997) (similar); *Parisien*, 352 F. Supp. 3d at 233 (irreparable harm where party would be "required to waste time" and expenses "defending numerous" litigations "when those same proceedings could be resolved globally in" one action).

that have been entered against DST." ECF No. 320 at 6. Arbitration Claimants will suffer no cognizable harm if the arbitrations are enjoined because they do not have arbitrable claims. And this Court has found that their interests are adequately represented here. 2021 WL 3667979, at *7; *Ferguson* v. *Ruane Cuniff & Goldfarb Inc.*, 2019 WL 1434435, at *4–5 (S.D.N.Y. Mar. 29, 2019).

Arbitration Claimants also misstate the effect of an injunction. If an injunction is issued, Arbitration Claimants will be enjoined from multiplying proceedings by litigating class-certified issues elsewhere—outside of this Court's supervision and in the absence of class counsel. This Court, of course, may still oversee and resolve class-certified issues here. To issue an injunction, the Court need not now decide the effects of various arbitration results within the context of the Class. Rule 23's procedural safeguards permit the litigation of that question when appropriate. However that question is resolved, the answer cannot be that the Arbitration Claimants are free to litigate elsewhere in violation of the Court's ruling that they may not opt out from the Class.

### III.   An Injunction Is Consistent with the Federal Arbitration Act

Contrary to Arbitration Claimants' argument that the FAA precludes an injunction, the FAA expressly contemplates that courts may enjoin arbitrations. *See* 9 U.S.C. § 16(a)(2). Moreover, the Second Circuit has held that "a federal court may enjoin an arbitration that the court determines is not otherwise valid," and has affirmed "a stay of arbitration over various claims that we held were not within the scope of an arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140–41 (2d Cir. 2011).

Courts routinely enjoin the prosecution and filing of parallel proceedings, including arbitrations, to effectuate class certification orders and protect their jurisdiction. ECF No. 313 at 5–6.[2] For example, in *Stott* v. *Capital Financial Services, Inc.*, 277 F.R.D. 316 (N.D. Tex. 2011),

---

[2]   *See, e.g.*, *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, 2014 WL 12621614, at *10, *12–13 (D.S.C. Oct. 15, 2014) (enjoining "both subsequent and parallel

the court certified a Rule 23(b)(1) class and stayed pending arbitrations against the defendant, even though, unlike here, there was "no dispute that the individual class members ha[d] a substantive contractual right to arbitrate that [was] supported by . . . the Federal Arbitration Act." *Id.* at 338.

Arbitration Claimants' reliance on *In re Piper Funds, Inc., Institutional Government Income Portfolio Litigation*, 71 F.3d 298 (8th Cir. 1995), is misplaced. ECF No. 320 at 23–24. That decision does not, as Arbitration Claimants argue, hold that the FAA prohibits enjoining arbitrations. Instead, it recognized that the FAA itself did not supply a basis for the district court to enjoin a class member, who had the right to opt out, from pursuing its arbitration. *Id.* at 302–03. *In re Piper Funds* did not address whether courts have authority from other sources to enjoin arbitration. As numerous courts have concluded, courts have the clear power to enjoin arbitrations under the AWA and Rule 65. And here, unlike in *Piper Funds*, the Court already has determined that Arbitration Claimants do not have a right to opt out and that their claims are not arbitrable. *Ferguson*, 2021 WL 3667979, at *4, *7.[3]

## IV.    The Court Has Considered and Rejected Arbitration Claimants' Arguments

### A.    This Court Has Jurisdiction over Arbitration Claimants

Arbitration Claimants seek to evade the Court's jurisdiction by once again asserting the same mistaken arguments about personal jurisdiction. ECF No. 320 at 2–4. But now that the

---

arbitration proceedings"); *Achtman* v. *Kirby, McInerney & Squires, LLP*, 404 F. Supp. 2d 540, 544–45 (S.D.N.Y. 2005) (enjoining parallel litigation "to curb interference with the Court's continuing jurisdiction over the underlying" securities class action and to prevent the court's interpretation of its prior order from being "undermined"); *Smith* v. *Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 345–46 (S.D. Miss. 2003) (certifying mandatory class, staying pending proceedings, and enjoining future actions "related to the subject matter of this class action").

[3]    Indeed, since *In re Piper Funds*, the Eighth Circuit itself has affirmed injunctions against arbitration proceedings and, in doing so, recognized that a "district court has the inherent ability to protect its own jurisdiction over the dispute pending before it." *See Bank of Am., N.A.*, v. *UMB Fin. Servs., Inc.*, 618 F.3d 906, 914–15 (8th Cir. 2010) (affirming district court's *sua sponte* order enjoining arbitration).

Court has certified a mandatory class, there can be no question that it has jurisdiction to enjoin class members. *See, e.g.*, *Mussat* v. *IQVIA, Inc.*, 953 F.3d 441, 445 (7th Cir. 2020) ("Once certified, the class as a whole is the litigating entity, and its affiliation with a forum depends only on the named plaintiffs.") (citation omitted).  A court also may exercise jurisdiction over a non-party that "interfere[s]" with an action before it. *Alpine Sec. Corp.*, 2018 WL 3377152, at *4.[4]

Nor was there any error in the Court's exercise of jurisdiction over absent class members in certifying the Class.  Accepting Arbitration Claimants' argument that each member of an ERISA class must either have minimum contacts with the forum state or be granted opt-out rights would make the certification of nationwide mandatory classes impossible.  Such classes are routinely certified in ERISA fiduciary duty cases.  Arbitration Claimants' response that other certified mandatory classes in this district—involving plans administered by national employers like Verizon, Citigroup, and JPMorgan Chase—"consist[ed] entirely of plans administered and of individuals employed *within the forum*" is false.  ECF No. 320 at 3–4.[5]

The certification of nationwide ERISA classes likewise is consistent with the statute's nationwide-service-of-process provision, pursuant to which a party need only have minimum

---

[4]   Arbitration Claimants' citation to *In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264 (2d Cir. 2001), thus is inapposite.

[5]   *See, e.g.*, *Beach* v. *JPMorgan Chase Bank, Nat'l Ass'n*, 17-cv-563 (JMF), 2019 WL 2428631, at *9–10 (S.D.N.Y. June 11, 2019) (thousands of participants in JPMorgan Chase Bank retirement plan, including residents of Illinois, New York, and Florida, *see* ECF No. 55 at 7–8, 22); *Leber* v. *Citigroup 401(k) Plan Inv. Comm.*, 07-cv-9329 (SHS), 323 F.R.D. 145, 165 & n.17, 167 (S.D.N.Y. 2017) (nearly 200,000 participants in Citigroup plan, including residents of South Dakota, Tennessee, Florida, and California, *see* ECF No. 211 at 5–7, 32); *Moreno* v. *Deutsche Bank Ams. Holding Corp.*, 15-cv-9936 (LGS), 2017 WL 3868803, at *8–11 (S.D.N.Y. Sept. 5, 2017) (over 30,000 current and former participants of Deutsche Bank plan, covering all eligible employees nationwide, including residents of New York, New Jersey, and Illinois, ECF No. 162 at 6–7, 53–54); *Jacobs* v. *Verizon Commc'ns Inc.*, 16-cv-01082 (PGG), 2020 WL 4601243, at *3, *8, *13–15 (S.D.N.Y. June 1, 2020) (more than 140,000 participants in Verizon plan, including residents of California, ECF No. 1 at 14, 40–41), *R. & R. adopted*, 2020 WL 5796165 (S.D.N.Y. Sept. 29, 2020).

contacts with the United States to be subject to personal jurisdiction.[6]  29 U.S.C. §1132(e)(2); *Powell* v. *Ocwen Fin. Corp.*, 2019 WL 1227939, at *7 (S.D.N.Y. Mar. 15, 2019) (collecting cases); *see also In re N. Sea Brent Crude Oil Futures Litig.*, 2017 WL 2535731, at *4 (S.D.N.Y. June 8, 2017), *aff'd sub nom. Prime Int'l Trading, Ltd.* v. *BP P.L.C.*, 784 F. App'x 4 (2d Cir. 2019).

Arbitration Claimants' argument that the ERISA statute speaks only to defendants, not absent class members, makes no sense.  Absent class members are entitled to less due process protections than defendants because they have less at stake in litigation.  *Phillips Petroleum Co.* v. *Shutts*, 472 U.S. 797, 809–12 (1985).  Moreover, courts rely on nationwide-service-of-process provisions to find jurisdiction over parties other than defendants.  *See, e.g.*, *Ng* v. *Prudential Ins. Co. of Am.*, 159 F. Supp. 3d 273, 275–77 (D. Mass. 2016) (exercising personal jurisdiction over out-of-state third party pursuant to ERISA's nationwide-service-of-process provision); *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 746 (7th Cir. 2001) (in RICO class action, holding that "[i]f both the [class] representatives and the defendants are satisfied with venue (which they are) individual class members have no complaint" because "RICO authorizes nationwide service of process" and a federal district court "exercises the judicial power of the nation").

Having litigated and lost on the issue of jurisdiction before this Court, Arbitration Claimants are bound by the Court's resolution.  *City of N.Y.* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 139 (2d Cir. 2011) (holding that a party who "appears and challenges jurisdiction" agrees "to be bound by the court's determination on the jurisdictional issue") (citation omitted); *Ins. Corp. of Ir., Ltd.* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) ("By submitting to the jurisdiction of the court for the limited purpose of challenging jurisdiction, the defendant agrees to abide by that court's determination on the issue of jurisdiction: That decision will be res judicata

---

[6]   Arbitration Claimants have conceded as much before this Court.  *See* ECF No. 316 at 7.

on that issue in any further proceedings."). Even Arbitration Claimants' own authorities make clear that they are subject to personal jurisdiction where, as here, they vigorously opposed class certification, filed more than a dozen submissions on the merits, and argued they were inadequately represented. *See In re Real Est. Title & Settlement Servs. Antitrust Litig.*, 869 F.2d 760, 771 (3d Cir. 1989) ("[A] party should be deemed to consent to personal jurisdiction if it actually litigates the adequacy of representation issue before the district court . . . .").

B.   Arbitration Claimants Are Not Permitted to Opt Out from the Mandatory Class

The Court already considered Arbitration Claimants' arguments about their purported opt-out rights and held that it "cannot credit" these arguments. 2021 WL 3667979, at *7. Arbitration Claimants nevertheless improperly seek to relitigate that issue. ECF No. 320 at 2, 25–26.

Arbitration Claimants' authorities concerning opt-out rights in class actions involving individual damages claims remain irrelevant.[7] ERISA fiduciary duty actions "seek[] monetary relief for the Plan, not the individual Plaintiffs." *Colesberry* v. *Ruiz Food Prods., Inc.*, 2006 WL 1875444, at *5 (E.D. Cal. June 30, 2006). Such actions thus involve *no* individual damages claims and are uniquely suited for mandatory class certification. ECF No. 316 at 3–4. "Because of ERISA's distinctive 'representative capacity' and remedial provisions," ERISA fiduciary duty claims "present[] a paradigmatic example of a [Rule 23](b)(1) class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (citation omitted); *see also Beach*, 2019 WL 2428631, at *9; *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 342 (S.D.N.Y. 2012).

---

[7]   *See Shutts*, 472 U.S. at 799 (interest on royalty payments); *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 342 (2011) (backpay damages); *Hecht* v. *United Collection Bureau, Inc.*, 691 F.3d 218, 223 (2d Cir. 2012) (FDCPA damages); *Waldron* v. *Raymark Indus., Inc.*, 124 F.R.D. 235, 236 (N.D. Ga. 1989) (asbestos injuries); *In re Real Est. Title*, 869 F.2d at 762 (antitrust damages).

Consistent with dozens of courts in this Circuit[8] and elsewhere,[9] the Court certified the Class under Rule 23(b)(1), which "does not provide opt-out" rights.  2021 WL 3667979, at *7.

C.    Judicial Estoppel Is Inapplicable

Arbitration Claimants wholly ignore the fatal defect in their judicial estoppel argument: Plaintiffs also seek injunctive relief, and there is no argument that Plaintiffs are judicially estopped. ECF No. 319 at 15.  Accordingly, whether an injunction is warranted will need to be resolved on the merits, which, as explained above, plainly favor granting an injunction.

Further, judicial estoppel does not apply against DST because it has taken no prior position on the question here:  whether, in light of class certification, parallel litigation should be enjoined. Arbitration Claimants argue that estoppel applies because DST argued in the Western District of Missouri *DuCharme* action that these claims should be resolved in individual arbitration.  ECF

---

[8]    *See, e.g.*, *Sacerdote* v. *N.Y. Univ.*, 2018 WL 840364, at *6 (S.D.N.Y. Feb. 13, 2018); *Beach*, 2019 WL 2428631, at *9; *Moreno*, 2017 WL 3868803, at *8–10; *Cunningham* v. *Cornell Univ.*, 2019 WL 275827, at *7–8 (S.D.N.Y. Jan. 22, 2019); *Jacobs*, 2020 WL 4601243, at *12– 14; *Leber*, 323 F.R.D. at 164–65 & n.17; *Douglin* v. *GreatBanc Tr. Co.*, 115 F. Supp. 3d 404, 411–12 (S.D.N.Y. 2015); *Kindle* v. *Dejana*, 315 F.R.D. 7, 12–13 (E.D.N.Y. 2016); *Jander* v. *Ret. Plans Comm. of IBM*, 2021 WL 3115709, at *5 (S.D.N.Y. July 22, 2021); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 143–44 (S.D.N.Y. 2010).

[9]    *See, e.g.*, *Harris* v. *Koenig*, 271 F.R.D. 383, 394–95 (D.D.C. 2010); *Munro* v. *Univ. of S. Cal.*, 2019 WL 7842551, at *9–10 (C.D. Cal. Dec. 20, 2019); *Wildman* v. *Am. Century Servs.*, 2017 WL 6045487, at *6 (W.D. Mo. Dec. 6, 2017); *Sweda* v. *Univ. of Pa.*, 2021 WL 2665722, at *5 (E.D. Pa. June 29, 2021); *Boley* v. *Universal Health Servs., Inc.*, 337 F.R.D. 626, 639 (E.D. Pa. 2021); *Neil* v. *Zell*, 275 F.R.D. 256, 268 (N.D. Ill. 2011); *Rozo* v. *Principal Life Ins. Co.*, 2017 WL 2292834, at *6 (S.D. Iowa May 12, 2017); *Hurtado* v. *Rainbow Disposal Co.*, 2019 WL 1771797, at *10–11 (C.D. Cal. Apr. 22, 2019); *In re Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827, at *16 (M.D. Tenn. Sept. 2, 2009); *Gamache* v. *Hogue*, 338 F.R.D. 275, 291–92 (M.D. Ga. 2021); *Ramirez* v. *J.C. Penney Corp.*, 2017 WL 6462355, at *3 (E.D. Tex. Nov. 30, 2017), *R. & R. adopted*, 2017 WL 6453012 (E.D. Tex. Dec. 18, 2017); *Teets* v. *Great- W. Life & Annuity Ins. Co.*, 315 F.R.D. 362, 374 (D. Colo. 2016); *Kanawi* v. *Bechtel Corp.*, 254 F.R.D. 102, 111–12 (N.D. Cal. 2008); *Clark* v. *Duke Univ.*, 2018 WL 1801946, at *9–10 (M.D.N.C. Apr. 13, 2018); *Urakhchin* v. *Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678, at *9 (C.D. Cal. June 15, 2017); *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 2009 WL 331426, at *10–12 (D.N.J. Feb. 10, 2009).

No. 320 at 7–8.[10]  Arbitrability likewise is the issue as to which the Western District of Missouri decided that DST was estopped.  2021 WL 4526849, at *9–10.  While DST believes that conclusion is incorrect, it has no bearing here because DST's motion for an injunction does not turn on the arbitrability of these claims.  This Court already found they are not arbitrable.  2021 WL 3667979, at *3–4.  The Western District of Missouri did not consider whether DST is estopped from asserting any position on the effect of mandatory class certification.  And DST plainly is not.

Each of the three factors that courts consider in deciding whether to apply judicial estoppel counsels against applying that doctrine here.  Those factors are whether the party's later position is "clearly inconsistent" with its earlier position; "whether the party has succeeded in persuading a court to accept [its] earlier position"; and "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  *New Hampshire* v. *Maine*, 532 U.S. 742, 750–51 (2001).

DST has not litigated elsewhere, let alone taken a position on, whether an injunction should issue as a result of this Court's mandatory class certification order.  No class had been certified when *DuCharme* was litigated, and DST took no position there on the consequences of certification.  *See, e.g.*, *Am. Mfrs. Mut. Ins. Co.* v. *Payton Lane Nursing Home, Inc.*, 704 F. Supp. 2d 177, 198 (E.D.N.Y. 2010) (holding that "judicial estoppel cannot be applied to" party who "did not make any representation" about relevant issue in prior proceedings).[11]  DST, like the other parties and class members, is bound by this Court's Order.  It is entitled to litigate issues presented

---

[10]   Arbitration Claimants falsely assert that DST has "persuaded" arbitrators that these claims are arbitrable.  ECF No. 320 at 14.  But arbitrability has not been litigated, let alone resolved, in the arbitrations.

[11]   The doctrine of issue preclusion is inapplicable for these same reasons.  *See, e.g.*, *In re Drexel Burnham Lambert Grp., Inc.*, 148 B.R. 993, 999 (S.D.N.Y. 1992) ("Collateral estoppel does not apply where the issues are different.").

by this new legal and procedural context and cannot be judicially estopped based on positions taken on different issues, facts, law, and procedural circumstances.

Nor did DST "succeed[] in persuading" the *DuCharme* court to adopt any position on the effect of class certification. To the contrary: DST expressly took no position as to the effect of a certified class on those who signed an arbitration agreement. *DuCharme* v. *DST Sys. Inc.*, 4:17-cv-00022-BCW, ECF No. 55 at 21 (W.D. Mo. June 5, 2017). Finally, Arbitration Claimants wrongly contend that, if the Court were to give effect to its Order, "DST would derive an unfair advantage, *and* impose an unfair detriment on" them because of their purported reliance on the *DuCharme* dismissal order to file individual arbitrations. ECF No. 320 at 14–16. In fact, far from filing individual arbitrations in reliance on *DuCharme*, Arbitration Counsel instead sought to do exactly what the *Ferguson* plaintiffs did: file a putative class action in federal court on behalf of a plan participant not subject to an arbitration agreement. Only after that case was dismissed in favor of *Ferguson* did Arbitration Claimants pursue individual arbitration—while fully aware that the *Ferguson* Plaintiffs had filed an action in this Court on behalf of all Plan participants. *See Ostrander* v. *DST Sys., Inc.*, 2018 WL 10799300, at *3 (W.D. Mo. Feb. 2, 2018).[12]

Instead, it is Arbitration Claimants who seek to impose a detriment on the Class, the Plan, and the parties by continuing to pursue the Plan's claims in arbitration—while seeking to relitigate,

---

[12] Arbitration Claimants' inapposite cases also do not warrant the application of judicial estoppel. At issue in *Kennedy* v. *Basil*, 2021 WL 1226768 (S.D.N.Y. 2021), were directly conflicting statements as to the ownership of trademarks, not, as here, a position taken on an issue that has not been previously litigated. And in both *Hicks* v. *Bank of America, N.A.*, 218 F. App'x 739 (10th Cir. 2007), and *Hicks* v. *Cadle Co.*, 355 F. App'x 186 (10th Cir. 2009), the estopped party had joined in a request to stay litigation in favor of arbitration, before later contending that the arbitrator lacked jurisdiction over it. 218 F. App'x at 746; 355 F. App'x at 193–94. DST, on the other hand, objected to proceeding in arbitration while the Second Circuit resolved arbitrability in *Cooper*, and requested that this Court—and dozens of arbitrators—enjoin the arbitrations pending this Court's resolution of Plaintiffs' class certification motion.

in other courts and before this Court, issues that they have litigated and lost here. Denying the requested relief would simply grant Arbitration Claimants a *de facto* opt-out right, notwithstanding this Court's express holding that they may not opt out of the Class to pursue individual actions. 2021 WL 3667979, at *7. Arbitration Claimants' position also imposes a clear detriment on the dozens of Arbitration Claimants who have litigated and lost their claims in arbitration. Remarkably, those Arbitration Claimants now find their own counsel insisting on their behalf that they would "lose the benefits of arbitration," ECF No. 320 at 15, should they not be allowed to opt out of the mandatory class and be bound by an arbitration award that denied their claims.

Rather than address the issue actually presented by this motion, Arbitration Claimants instead contend that DST cannot assert that the claims are not arbitrable. But that issue already was resolved by this Court at class certification, on Plaintiffs' motion. Arbitration Claimants thus simply relitigate the question of whether DST should be estopped from supporting class certification. Arbitration Claimants already argued, in opposing class certification, that DST should be judicially estopped from taking these positions. ECF No. 182 at 24–25; ECF No. 304 at 4, 14. The Court necessarily and correctly rejected that argument in certifying the Class.

Judicial estoppel did not apply on class certification because the Court resolved a motion filed by Plaintiffs, not DST, and relied on *Cooper*, in which DST was not a party. Moreover, *Ferguson* involved different facts and law than *DuCharme*. ECF No. 306 at 15–16. This Court is the first court to resolve the question of whether these claims should proceed as a mandatory class.

*DuCharme* likewise was decided prior to *Cooper*. Here, this Court correctly determined in accordance with *Cooper* that the Class's claims fall outside DST's Arbitration Agreement and in any event cannot be pursued on an individual basis without running afoul of *Coan*. 2021 WL 3667979, at *3–4. The "intervening change in governing law" occasioned by *Cooper*—a Second

Circuit decision concerning the arbitrability of the same claims at issue here, under the same Arbitration Agreement—likewise rendered inappropriate the application of judicial estoppel in the class certification context.  *See In re Tribune Co. Fraudulent Conveyance Litig.*, 2019 WL 1771786, at *4 (S.D.N.Y. Apr. 23, 2019) (citation omitted), *aff'd*, 10 F.4th 147 (2d Cir. 2021).

Further, DST's support of Plaintiffs' class certification motion was not inconsistent with the positions DST took in *DuCharme*.  Arbitration Claimants misleadingly assert that the *DuCharme* court compelled arbitration at DST's request.  ECF No. 320 at 1, 7, 17.  Rather, the court dismissed the case because it was brought by a plaintiff subject to an arbitration agreement, who had "waived his right to act in a representative capacity on behalf of a class or collective action under the Arbitration Agreement from which he did not opt out."  *DuCharme* v. *DST Sys., Inc.*, 2017 WL 7795123, at *1 (W.D. Mo. June 23, 2017); *Canfield* v. *SS&C Techs. Holdings, Inc.*, 2021 WL 1022698, at *3 (S.D.N.Y. Mar. 17, 2021) (recognizing that "rather than compel arbitration, the court dismissed the case").  And when the Court in *DuCharme* asked whether a Plan participant not subject to an arbitration agreement could bring a collective action, DST acknowledged that such a participant may be able to do so.  *DuCharme*, ECF No. 55 at 51, 56; ECF No. 59 at 10.  In contrast to the named plaintiff in *DuCharme*, the *Ferguson* Plaintiffs were not subject to any arbitration agreement.[13]  *See Troll Co.* v. *Uneeda Doll Co.*, 483 F.3d 150, 155 & n.7 (2d Cir. 2007) (rejecting judicial estoppel argument where factual positions asserted in

---

[13]   Arbitration Counsel previously recognized the relevance of whether a representative action was brought by a plaintiff who had opted out of arbitration, as they later filed in the Western District of Missouri a putative class action alleging the same claims on behalf of a lead plaintiff who, unlike Mr. DuCharme, was not subject to an arbitration agreement.  That case was dismissed in favor of this first-filed action, by the same judge who had presided over *DuCharme*.  *Ostrander*, 2018 WL 10799300, at *3.  Having failed to bring an action in their preferred forum, Arbitration Claimants baselessly accuse DST of "forum shopping" when it was the *Ferguson* Plaintiffs, not DST, who determined where to file this lawsuit.

different litigations were "not necessarily contrary to one another"); *Rodal* v. *Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 119 (2d Cir. 2004) (similar).

        D.    <u>Waiver Is Inapplicable</u>

      Arbitration Claimants incorrectly assert that DST waived its objections to arbitrability because it supposedly "agre[ed] to arbitration" and not "once challeng[ed] the validity of the arbitration proceedings or the enforceability of the Arbitration Agreement." ECF No. 320 at 17. Arbitration Claimants already made this argument in objecting to class certification. ECF No. 304 at 10–11. In concluding that Arbitration Claimants' claims are not arbitrable, and that they may not opt out of the Class, the Court necessarily considered and rejected this argument. 2021 WL 3667979, at *3–4, *6–7. Arbitration Claimants' waiver argument thus has no bearing.

      Further, Arbitration Claimants' contention that DST consented to arbitrate these claims is simply wrong. In August 2019, before the parties had even scheduled an arbitration, DST opposed proceeding with the arbitrations pending the Second Circuit's consideration of "significant questions about the enforceability of the parties' arbitration agreements" in *Cooper*. ECF No. 314-4 at 2. And DST has litigated the non-arbitrability of Arbitration Claimants' claims before this Court for more than a year. *See Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (arbitrability is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise") (alteration omitted) (citation omitted). In July 2020, DST requested that the Court, as well as numerous arbitrators, enjoin the arbitrations until Plaintiffs' class certification motion was resolved. *See, e.g.*, ECF No. 161. DST repeatedly has argued before this Court that the claims asserted by Arbitration Claimants belong to the Plan, not the individual participants, and that these claims may not be arbitrated on an individual basis. *See, e.g.*, ECF No. 186 at 4–7; ECF No. 277 at 9–16; ECF No. 306 at 1–12. While the Western District of Missouri acknowledged that DST sought to stay the arbitrations, it did not address the fact that, since before any arbitration

hearings began, DST has been actively opposing arbitrability in this Court.  *See* 2021 WL 4526849, at *8.

Moreover, in the "Joint Submission for Arbitration" on which Arbitration Claimants rely (and on which they relied in opposing certification), ECF No. 320 at 8, DST expressly reserved all arguments and defenses, including those arising out of the Agreement.  ECF No. 305-11 at 2.  A party does not waive the right to contest arbitrability by participating in arbitration where, as here, it has objected to arbitrability.  *See, e.g.*, *Berthel Fisher & Co. Fin Servs., Inc.* v. *Larmon*, 2011 WL 3294682, at *3 (D. Minn. Aug. 1, 2011), *aff'd*, 695 F.3d 749 (8th Cir. 2012); *Int'l Ass'n of Machinists & Aerospace Workers* v. *Fansteel, Inc.*, 900 F.2d 1005, 1008–10 (7th Cir. 1990).

E.   Arbitration Claimants' Law-of-the-Case Argument Is Wrong

1.   *The Law-of-the-Case Doctrine Bars Arbitration Claimants' Arguments*

Arbitration Claimants baselessly assert that "[i]n the arbitration proceedings pending in Missouri, the decision in *DuCharme* remains the law of the case."  ECF No. 320 at 18.  The law-of-the-case doctrine does not apply to decisions in different cases.  Rather, as the Second Circuit has held, the discretionary doctrine applies "in subsequent stages of ***the same case***."  *Aramony* v. *United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) (emphasis added) (citations omitted).[14]

Arbitration Claimants' primary authority, *Christianson* v. *Colt Industries Operating Corp.*, 486 U.S. 800 (1988), proves the point.  In that case, the Supreme Court explained that "the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages *in the same case*."  *Id.* at 815–16 (alteration omitted) (emphasis added) (quoting *Arizona* v. *California*, 460 U.S. 605, 618 (1983)).  Pursuant

---

[14]   Accordingly, courts in this District have held that the doctrine "does not apply" to a "separate action."  *In re Interest Rate Swaps Antitrust Litig.*, 351 F. Supp. 3d 698, 703 (S.D.N.Y. 2018); *see also Mays* v. *Mahoney*, 1994 WL 48831, at *4 n.1 (S.D.N.Y. Feb. 14, 1994).

to this principle, the Court considered whether the doctrine prevents a transferee court from reconsidering the jurisdictional decision of a transferor court in the same case. *Id.* at 817.[15]

Proper application of the law-of-the-case doctrine—applying this Court's decisions in this case—forecloses Arbitration Claimants' arguments.  In opposing class certification, Arbitration Claimants asserted, based on *DuCharme*, that certification of a mandatory class would "violat[e] the 'law of the case' doctrine" and that "comity *requires*" that the Court allow the Arbitration Claimants to opt out of the Class.  ECF No. 304 at 23.  The Court declined to credit this argument. 2021 WL 3667979, at *7.  Arbitration Claimants cannot relitigate the same questions again.

>2.    *The Court's Class Certification Order Is Not Inconsistent with* DuCharme

This Court's Order in no way failed to give appropriate deference to the Western District of Missouri's final order in *DuCharme*.  As explained above, the *DuCharme* court dismissed the purported class action, brought by a plaintiff who was subject to an arbitration agreement, and did not compel arbitration or decide class certification.  *See supra* at 20.  In fact, Judge Wimes, who presided over *DuCharme*, has dismissed two actions brought by Arbitration Counsel after recognizing this Court's jurisdiction over the Plan's claims in *Ferguson*, *see Ostrander*, 2018 WL 10799300, at *3; *Ostrander* v. *DST Sys., Inc.*, No. 4:20-cv-00973-BCW, ECF No. 23 (W.D. Mo. Sept. 3, 2021), rejecting the same estoppel arguments that Arbitration Claimants make here, *see Ostrander*, No. 4:20-cv-00973-BCW, ECF No. 11 at 8–9.

---

[15]    Arbitration Claimants' other authorities are equally inapposite; none holds that the law-of-the-case doctrine may be applied to different cases. *See Hoffman* v. *Blaski*, 363 U.S. 335 (1960) (no discussion of law of the case); *Zambrana* v. *Califano*, 651 F.2d 842 (2d Cir. 1981) (same); *Hayman Cash Register Co.* v. *Sarokin*, 669 F.2d 162, 164–170 (3d Cir. 1982) (considering doctrine's applicability to transferor court's jurisdictional decision in the same case).

3.     *ERISA § 502(a)(2) Claims Cannot Be Brought for Individualized Relief*

Ignoring this Circuit's controlling precedent, Arbitration Claimants argue that the Seventh Circuit's recent *Smith* decision confirms that "*DuCharme* is correct." ECF No. 320 at 19. *Smith*, however, did not endorse individual arbitration of ERISA fiduciary duty claims. Instead, it held that the ERISA claims at issue could not be individually arbitrated because the arbitration agreement foreclosed plan-wide remedies in contravention of the ERISA statute. *Smith* v. *Board of Directors of Triad Manufacturing, Inc.*, 2021 WL 4129456, at *6–7 (7th Cir. Sept. 10, 2021).

*Smith* thus recognized that arbitration is not permissible where "what the statute permits, the [agreement] precludes." *Id.* at *7. Here, the Arbitration Agreement precludes representative claims and both does not encompass these ERISA claims by its terms and runs afoul of Second Circuit's requirement that ERISA §§ 502(a)(2) and 409(a) claims be prosecuted on a plan-wide basis. *See Cooper*, 990 F.3d at 184–85; 2021 WL 3667979, at *4. Arbitration Claimants seize upon *Smith*'s discussion, unnecessary to its holding, of whether § 502(a)(2) claims must be brought in a representative capacity. ECF No. 320 at 19. The Seventh Circuit opined, in dicta, that *LaRue* permits "individualized relief" and therefore "individualized arbitration" was not "inherently incompatible with ERISA." *Smith*, 2021 WL 4129456, at *4, *7. That discussion, however, misinterprets *LaRue* and squarely conflicts with this Circuit's controlling precedent. *See Cooper*, 990 F.3d at 180; *Coan*, 457 F.3d at 259; *L.I. Head Start Child Dev. Servs., Inc.* v. *Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 710 F.3d 57, 65 (2d Cir. 2013).

Arbitration Claimants also misleadingly assert that "*every* circuit to consider the question has held that claims arising under ERISA may be subject to arbitration." ECF No. 320 at 20. Arbitration Claimants' cases are inapposite. The claims in *Bird* v. *Shearson Lehman / American Express, Inc.*, 926 F.2d 116 (2d Cir. 1991), and *Arnulfo P. Sulit, Inc.* v. *Dean Witter Reynolds, Inc.*, 847 F.2d 475 (8th Cir. 1988), were between the plan and its broker. Neither case—nor the

24

other cases that Arbitration Claimants cite—addressed a plan participant's ability to individually arbitrate ERISA fiduciary duty claims.[16]   Arbitration Claimants thus conflate whether ERISA always precludes arbitration—an issue not presented here—with whether plan participants may individually arbitrate derivative § 502(a)(2) claims, which must be prosecuted on a plan-wide basis—the issue already resolved by *Cooper* and this Court's Order.

4.    *This Court Is Not Bound by Eighth Circuit Law*

Arbitration Claimants assert that "the DST Defendants, *and the administration of the Plan*, are governed by law as applied and interpreted by the Western District" of Missouri, the Eighth Circuit, and the Supreme Court.  ECF No. 320 at 20–21.  Arbitration Claimants cite no authority for this proposition, and there is none—Second Circuit law applies to federal claims properly venued in this District.  *Parvon* v. *Comm'r of Soc. Sec.*, 2020 WL 1131220, at *6 (W.D.N.Y. Mar. 9, 2020).  Federal courts do not conduct choice-of-law analysis on federal claims as between various federal circuits.  *See In re Ramaekers*, 33 F. Supp. 2d 312, 315 (S.D.N.Y. 1999).

Arbitration Claimants also misconstrue the Arbitration Agreement's permissive forum-selection clause as a choice-of-law provision, incorrectly asserting that the clause "requires that the Court defer to the Western District" of Missouri.  ECF No. 320 at 20–21.  But "choice of law provisions and forum selection clauses are separate and distinct."  *Harrington* v. *Crater*, 2017 WL 4621618, at *3 (E.D.N.Y. Oct. 7, 2017).  A "forum selection clause does not address the law the chosen forum is to apply."  *Id.* (citation omitted).

---

[16]   Because *Arnulfo P. Sulit* did not address whether a plan participant may individually arbitrate ERISA fiduciary duty claims, DST respectfully disagrees with the Western District of Missouri's application of that case.  *See* 2021 WL 4526849, at *4.  In any event, that interpretation squarely conflicts with the controlling precedent in this Circuit.

## **CONCLUSION**

DST respectfully requests that the Court issue a preliminary injunction enjoining the Arbitration Claimants and those acting in concert with them, including Arbitration Counsel, during the pendency of this class action from instituting new actions or litigating in arbitration or other proceedings matters arising out of or relating to the facts or transactions alleged in the *Ferguson* amended complaint.

Dated: October 12, 2021     Respectfully submitted,
   New York, New York

            PAUL, WEISS, RIFKIND, WHARTON &
            GARRISON LLP

            */s/ Lewis R. Clayton*
            Lewis R. Clayton (lclayton@paulweiss.com)
            Jessica S. Carey (jcarey@paulweiss.com)
            Jeffrey J. Recher (jrecher@paulweiss.com)
            1285 Avenue of the Americas
            New York, NY 10019
            Telephone: (212) 373-3000
            Facsimile: (212) 757-3990

            *Counsel for Defendants DST Systems, Inc., the*
            *Advisory Committee of the DST Systems, Inc.*
            *401(k) Profit Sharing Plan, and the Compensation*
            *Committee of the Board of Directors of DST*
            *Systems, Inc.*