# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL L. FERGUSON, MYRL C. JEFFCOAT AND DEBORAH SMITH, on behalf of the DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>RUANE CUNNIFF & GOLDFARB INC. et al.<br><br>Defendants. | CIVIL ACTION NO.<br>1:17-cv-06685-ALC-BCM |

**THE ARBITRATION CLAIMANTS' CONSOLIDATED REPLY
TO DST'S AND THE *FERGUSON* PLAINTIFFS' BRIEFS
IN OPPOSITION TO THE MOTION TO STAY**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... 3

    I.    Introduction .................................................................................................................. 1

    II.    The Arbitration Claimants Suffer from Irreparable Harm ............................................ 4

    III.    DST Will Not Suffer Irreparable Harm ........................................................................ 5

    IV.    The Class Members Will Not Suffer Harm ................................................................. 7

    V.    Public Policy Weighs in Favor of a Stay ..................................................................... 9

    VI.    There are Serious Questions Going to the Merits of the Injunction ........................... 10

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199 (E.D.N.Y. 2013) ............................................... 6

*Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 478–79 (8th Cir. 1988) ......... 9

*Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 122 (2d Cir. 1991) ................................. 9

*Boggs v. Boggs*, 520 U.S. 833 (1997) ............................................................................................ 4

*Demopoulos v. Curcio*, 2021 WL 799330 (E.D.N.Y. Jan. 10, 2021) ............................................. 9

*Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019) ................................................ 9

*Emery Air Freight Corp. v. Loc. Union* 295, 786 F.2d 93 (2d Cir. 1986) ................................. 5, 6

*In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32 (E.D.N.Y. 1990) ................................... 10

*Int'l Bhd. of Elec. Workers, AFL-CIO, Loc. Union No. 3 v. Charter Commc'ns, Inc.*, 277 F. Supp. 3d 356 (E.D.N.Y. 2017) ............................................................................................................ 7

*Kramer v. Smith Barney*, 80 F.3d 1080 (5th Cir. 1996) ................................................................. 9

*LaFlamme v. Carpenters Loc. No. 370 Pension Plan,* 212 F.R.D. 448 (N.D.N.Y. 2003) ............. 8

*Lamar Advert. of Penn, LLC v. Town of Orchard Park, New York*, 356 F.3d 365 (2d Cir. 2004) 11

*Mathews v. Eldridge*, 424 U.S. 319 (1976) .................................................................................... 4

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993) ................... 9

*S.E.C. v. Credit Bancorp, Ltd.*, 290 F.3d 80 (2d Cir. 2002) ......................................................... 11

*Schoolcraft v. Sullivan*, 971 F.2d 81 (8th Cir. 1992) ..................................................................... 4

*Schweiker v. Chilicky*, 487 U.S. 412 (1988) .................................................................................. 4

*State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215 (E.D.N.Y. 2018) ...................... 6

*UBS Sec., LLC v. Voegeli*, 405 F. App'x 550 (2d Cir. 2011) ........................................................ 6

*Williams v. Imhoff*, 203 F.3d 758 (10th Cir. 2000) ........................................................................ 9

**Statutes**

29 U.S.C.A. § 1001 ......................................................................................................................... 4

I.    **Introduction**

The Court should grant a stay of its preliminary injunction pending appeal because all four relevant factors weigh in favor of doing so. *First*, there are serious questions going to the merits of this dispute. Whether or not these claims are arbitrable under ERISA, particularly when DST continues to arbitrate the claims of the non-class members (and given the Western District's *prior* determination that those claims pending against DST in Missouri *are* arbitrable), is at the heart of this appeal and, despite what DST and the *Ferguson* Plaintiffs claim, there remain *serious questions* going to the merits. One need only look at the more than 175 final judgments recently entered by the Western District of Missouri to see that another court (the one which *originally* decided the issue) disagrees with this court's determination that Rule 23 supplants the Federal Arbitration Act *and the prior final orders of a coordinate court*. *See e.g., Bostick v. DST Sys., Inc.*, No. 4:21-09133-NKL, 2021 WL 6050907, at *3 (W.D. Mo. Dec. 21, 2021).

*Second*, there is no denying that Arbitration Claimants are facing irreparable and significant harm. The Supreme Court recognizes that a delay in receiving retirement savings qualifies as "irreparable harm." In this case, hundreds of arbitrations are now being delayed while "class counsel" does *nothing* to advance discovery or trial preparation. And while the Court previously stated that any "lost time value" is "recoverable as pre-judgment or post-judgment interest on the awards," (Dkt. No. 333), that ignores the reality that retirement savings nearly *always* earn interest amounts that *greatly* exceed the current pre- and post-judgment interest rates.

*Third*, neither DST nor the non-arbitrating class members face *any* harm resulting from a stay of the injunction. As an initial matter, DST *compelled* arbitration, so it can hardly be heard to complain of having to arbitrate. More critically, however, a party does <u>not</u> suffer harm by having to arbitrate claims that are properly arbitrable. To be sure, although this Court determined that claims pending against DST are *not* arbitrable, the Court's ruling was based on Second Circuit law

1

(and applies only to claims pending in the Southern District of New York) as opposed to the law in the Eighth Circuit which is the law *applicable* to the arbitrations. As this Court previously held, the Western District of Missouri is properly "charged with reviewing arbitral agreements and awards" and is "a court authorized to preside" over the arbitration proceedings. *Canfield v. SS&C Techs. Holdings, Inc.*, No. 18-CV-8913 (ALC), 2021 WL 1022698, at *1 (S.D.N.Y. Mar. 17, 2021). In fact, the parties' Arbitration Agreement expressly ***requires*** the application of the law ***as applied by the Western District of Missouri***. (Dkt. 305-1 at A-2.) Thus, while those wishing to arbitrate against DST in the Second Circuit may have to contend with the law as interpreted in *Coan* and *Cooper*, the claims that were brought in Missouri (years before the certification of a class) are governed by the law as applied ***by the Western District of Missouri***.

As for the *Ferguson* Plaintiffs, they claim, *without any concrete and articulable evidence whatsoever*, that the class will suffer irreparable harm if the injunction is stayed. The Court must not accept the assertion on the Plaintiffs' mere *ipse dixit.* Indeed, the Western District expressly found that there was *no* "concrete and articulable evidence that the non-arbitrating plan members would be adversely affected by individual arbitration awards." *Bostick*, 2021 WL 6050907, at *3. This is because those who choose *not* to arbitrate may still recover the *entire sum* of their losses *regardless* of the arbitral awards. As the *Ferguson* Plaintiffs readily admit, the Plan participants have separate *individual* accounts, Thus, as for those who have *already recovered*, DST will receive an offset. As for those who have not recovered, DST will not. Thus, no one will be made to accept less simply because others, in a different forum, recovered sooner from DST.

*Fourth,* the strong public policy favoring arbitration, and that which favors candor with the court, does not tolerate a party dictating which claims it will arbitrate and which ones it will not. In this case, DST *continues* to arbitrate against those who are excluded from the class. DST should

not be permitted to deny arbitration to those who *were ordered* to arbitrate by the Western District of Missouri, while *continuing to arbitrate* against those who are excluded from the class.

At every turn, DST has attempted to have it both ways. The Western District, which *compelled arbitration* more than four years ago, and which applied the law that is *applicable* to the arbitrations, has already rebuked DST for having joined the *Ferguson* Plaintiffs' campaign to cause this Court to ignore the jurisdiction of the Western District, to enter an order that *directly conflicts* with that of the Western District, and to wrongly apply the law of the Second Circuit to the hundreds of arbitrations that are pending *in the Eighth Circuit.*

In their latest brief, the *Ferguson* Plaintiffs outright lie to the Court. They falsely state that "[t]he Arbitration Claimants' counsel have continued to litigate in the arbitral forum and filed numerous new actions – **even since the Court issued its preliminary injunction**." (Dkt. No. 354 at p. 3.) This is utterly false. Arbitration Counsel ceased litigating in the arbitral forum on the same day the Court issued its injunction, even stopping one arbitration mid-stream, and have filed **no** new actions. But unless the Court *admonishes* those who deceive it, we fear and expect that it will continue unabated.

DST, meanwhile, asserts that Arbitration Counsel "improperly confirmed" awards, as if the Western District were merely a pawn. The Western District is *not* a pawn, and its judgments are owed the same deference this Court would expect. And while DST makes hyperbolic accusations about the Arbitration Claimants' "defiance of the injunction," *in fact*, Arbitration Counsel *immediately* ceased litigating "matters arising out of or relating to the facts or transactions alleged in the *Ferguson* amended complaint."

In issuing the injunction, the Court stated: "Obviously, if the Eighth Circuit orders you to do something, that's different than you -- whatever. …the Eighth Circuit will do what it will do.

3

(Dkt. 335 at 15:9-15.) Having been notified of this Court's injunction, the Eighth Circuit *ordered* Arbitration Counsel to respond to DST's belabored request that it stay its appeals; and now, having decided that this Court's injunction does *not* apply to those matters presently pending on appeal in the Eighth Circuit, it has also ordered the parties to brief the merits of DST's appeals.

This, of course, should come as no surprise. The Courts in Missouri are wise to the gamesmanship by DST and the *Ferguson* Plaintiffs to thwart the jurisdiction of the Western District, to defy the prior ruling in *DuCharme*, and to ignore the law that is *applicable* to the arbitrations.

## II.     The Arbitration Claimants Suffer from Irreparable Harm

ERISA is intended to protect pension benefits so that the amounts saved may provide for "the continued well-being and security of millions of employees, retirees, and their dependents." 29 U.S.C.A. § 1001a; *see also Boggs v. Boggs*, 520 U.S. 833, 840–41 (1997) ( "the continued well-being and security of millions of employees and their dependents are directly affected by these plans").The Arbitration Claimants are seeking to recover the losses sustained in their individual Plan accounts so that they may enjoy the well-being and security achieved through their years of service to DST. With hundreds having *already won an award,* the injunction is now causing needless and *harmful* delay while *no progress* is being made in the *Ferguson* case.

In other similar situations—when the recovery of federally protected benefits is delayed— the Supreme Court has easily found "irreparable harm." *Schweiker v. Chilicky*, 487 U.S. 412, 428 (1988) ("We agree that suffering months of delay in receiving the income on which one has depended for the very necessities of life cannot be fully remedied by the 'belated restoration of back benefits.'"); *Mathews v. Eldridge*, 424 U.S. 319, 331–32 (1976). Relying on this precedent, circuit courts have repeated that a delay in the receipt of retirement benefits causes irreparable

harm. *Schoolcraft v. Sullivan*, 971 F.2d 81, 86–87 (8th Cir. 1992) ("The district court held that retroactive benefits provided an adequate remedy. The overwhelming body of case law, however, is to the contrary.").

In this case, the Arbitration Claimants are being denied federally protected benefits that many of them depend on for the very necessities of life. As described in Arbitration Claimants' Memorandum in Support of their Motion to Stay, several of the Arbitration Claimants *have died* since having won an award—never getting to enjoy the well-being and security that was rightfully theirs to enjoy. Many more who have won awards are now retired and depend on their federally protected benefits to provide them the security they were promised by DST. Yet, as a result of the injunction, they may have to wait *years* to recover. Meanwhile, those Arbitration Claimants who have completed their hearings, but still await an award, are now faced with the unfair and intolerable prospect that they will either have to *retry* their cases or rely upon the arbitrators to recall, after many, many months, the relevant and determinative facts.

By now, the Court is aware that each arbitration takes many months to complete. And then, after their completion, each takes many more months to be confirmed. By staying the injunction, the Court will merely permit the continuation of the arbitration proceedings while the Second Circuit considers the validity of the injunction and Eighth Circuit considers DST's appeals of the awards. Already, both Courts of Appeals will have to consider the significance of more than 175 confirmed awards. By allowing the arbitrations to proceed, the Court does not add to their task, it merely ensures that, in the event the arbitrations are deemed valid, justice will not have been needlessly delayed for those who were *compelled* to arbitrate.

### III.   DST Will Not Suffer Irreparable Harm

It is well established that requiring a party to arbitrate will almost never expose them to irreparable harm: "[A]rbitration by itself imposes no such injury to the resisting party, except

5

perhaps in 'extraordinarily rare' circumstances, which we need not try here to imagine." *Emery Air Freight Corp. v. Loc. Union 295*, 786 F.2d 93, 100 (2d Cir. 1986). So rare is arbitration considered "irreparable harm" that DST cites only two cases—both of which involve the filing of arbitrations in violation of the Racketeer Influenced and Corrupt Organizations Act.[1] Obviously, those cases do not apply here. The arbitrations here were *not* filed as part of a conspiracy to defraud DST. On the contrary, they were initiated after DST *sought* and *obtained* an order *compelling* arbitration.[2] And while DST and the *Ferguson* Plaintiffs accuse Arbitration Counsel of having violated this Court's prior orders, their assertions are *false*. Arbitration Counsel has *never* violated an order from the Court.

Thus, since this case does not present the kind of "extraordinarily rare" circumstance described in either *Parisien* and *Elzanaty*, DST must prove that by continuing in arbitration, it is being "forced to arbitrate a claim [it] did not agree to arbitrate." *UBS Sec., LLC v. Voegeli*, 405 F. App'x 550, 552 (2d Cir. 2011). *See also Emery Air Freight*, 786 F.2d at 100 ("[t]he monetary cost of arbitration certainly does not impose such legally recognized irreparable harm."). Of course, as the Court well knows, DST *did* agree to arbitrate—it *compelled it*.

---

[1] *See State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215 (E.D.N.Y. 2018), and *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199 (E.D.N.Y. 2013).

[2] Both DST and the *Ferguson* plaintiffs try claiming that the Western District never actually ruled on the arbitrability of the claims against it, but instead, held only that Mr. DuCharme "waived his right to act in a representative capacity on behalf of the class." Having tried to sell the same snake oil to the Western District, the Court set the record straight:

> [b]y dismissing Ducharme's individual and collective claims because he signed the arbitration agreement, Judge Wimes necessarily found that the arbitration agreement covered fiduciary breach claims against DST. If the arbitration agreement did not apply to the fiduciary breach claims, there would be no logical explanation for the dismissal of the claims.

*Bostick*, 2021 WL 6050907, at *2. Indeed, the Western District held that: "There is no doubt that DST persuaded Judge Wimes to accept its position that Plan participants who were parties to the arbitration agreement were required to arbitrate their claims. In dismissing the complaint in *DuCharme*, Judge Wimes expressly held that 'the Arbitration Agreement at issue is valid and Ducharme's claims for breach of fiduciary duty fall within the Arbitration Agreement's scope.'" *Id*. at *11.

6

Finally, a party that declines to participate in arbitration cannot claim harm from the denial of an injunction or, in this case, a stay: "In the special circumstances of this case, [the party opposing arbitration] has not demonstrated irreparable harm. It has decided not to participate in the arbitration, so it will not expend time or resources arbitrating the dispute in the absence of a preliminary injunction. Even if it chose to participate, the cost of adjudicating a dispute on its own does not constitute irreparable injury." *Int'l Bhd. of Elec. Workers, AFL-CIO, Loc. Union No. 3 v. Charter Commc'ns, Inc.,* 277 F. Supp. 3d 356, 365 (E.D.N.Y. 2017). Moreover, a party opposing arbitration does not face irreparable harm because it will continue to possess the ability to challenge any arbitration award in the district court *where the arbitrations are pending*. "If the arbitration results in an outcome favorable to [the arbitration claimant], it will need to enforce its award in the district court that is empowered to vacate arbitral awards where the arbitrators exceeded their powers." *Id.* at 365 (internal citations omitted). Thus, the arbitration respondent— here, DST—"will still have the right to judicial review of the award and may seek its vacatur by arguing that there was no contract requiring arbitration." *Id.*

This, of course, is true in this case. DST has the right—a right it has been exercising—to argue to the Western District that no agreement to arbitrate exists. And it has the right to appeal the decisions of the Western District—a right it has also been exercising—to the Eighth Circuit Court of Appeals. Accordingly, DST will *not* suffer irreparable harm from the issuance of a stay.

**IV.    The Class Members Will Not Suffer Harm**

Neither DST nor the Plaintiffs can articulate how the arbitration awards are causing harm to the class members. The closest either comes is DST's assertion that by recovering amounts from DST, the Arbitration Claimants somehow jeopardize the ability of others to recover the full amount of the losses sustained in their individual accounts. This assertion is based on the false premise that the Court will refuse to determine the damages sustained in the *individual accounts* of each

7

member of the class. DST is flat out wrong. This Court *must* determine damages on an individual basis. *LaFlamme v. Carpenters Loc. No. 370 Pension Plan,* 212 F.R.D. 448, 459 (N.D.N.Y. 2003) ("Assuming the class prevails, it is true that some specific evidence will need to be eventually adduced to determine the recalculation of benefits….").

The Secretary of Labor made the same commonsense observation two years ago in the matter of *Ruane, Cunniff & Goldfarb, Inc. Payne, et al.*, 1:19-cv-11297 (ALC)(BCM), Dkt. 40 (Jan. 24, 2020). There, the Secretary explained that the "individual arbitration proceedings may [] occur simultaneously without diminishing the independent rights of action of other plan participants or the Secretary." *Id.* (citing *Dorman v. Charles Schwab Corp.,* 780 F. App'x 510, 514 (9th Cir. 2019) (unpublished opinion) ("When an individual participant agrees to arbitrate, he does not give up any substantive rights that belong to other Plan participants.")). As the Secretary explained, "[a]ny payments on concurrent judgments and/or arbitral awards for the same loss to the Plan will be credited to all of those judgments and/or awards." *Id.* This means that any amounts awarded to a particular participant will be credited the amounts *already paid* to *that participant.*

The Western District agrees and has already held that the awards against DST ***do not*** negatively affect other class members. The Western District found that there was no basis for concluding "that an individual arbitration under these circumstances would adversely affect other plan participants[.]" *Bostick v. DST Sys.*, 2021 WL 6050907, at *2. In fact, on the contrary, the Western District found the opposite was likely true: "a collective action under these circumstances could adversely affect the arbitration claimants who voluntarily agreed to arbitrate with DST." *Id.*

Thus, in no event will the amounts awarded to the Arbitration Claimants affect the damage determinations made by the Court for those who remain in the class. Each participant's losses are a product of the activity in their own *individual accounts*.

8

## V. Public Policy Weighs in Favor of a Stay

DST does not deny the strong public policy in favor of arbitration. Instead, DST claims that "[n]o public policy favors arbitrating non-arbitrable claims." (Dkt. No. 352 at p. 24.) In all but this Court, though, claims under ERISA *are arbitrable*. *See Bostick v. DST Sys.,* 2021 WL 6050907, at *1 (observing that "federal appellate courts overwhelmingly have found that 'individualized arbitration [is not] inherently incompatible with ERISA.'" (quoting *Smith v. Board of Directors of Triad Manufacturing, Inc.*, 13 F.4th 613, 622 (7th Cir. 2021)).[3] And while the law in the Southern District applies to the claims of the *Ferguson* Plaintiffs, it *does not* apply to the claims filed by the Arbitration Claimants *in the Western District of Missouri*. Lest there be any doubt, the Western District has now confirmed in more than 177 orders that, "based on its understanding of the law in the Eighth Circuit and the unique connection these cases have to the Western District of Missouri," the claims against DST under ERISA ***are arbitrable****. Id.* at *3.

Thus, as the Eastern District recently explained in *Demopoulos v. Curcio*, 2021 WL 799330 (E.D.N.Y. Jan. 10, 2021), because ERISA claims *are arbitrable*, public policy does not tolerate injunctions preventing such claims from proceeding in arbitration:

> Plaintiffs argue that their requested injunction is in the public interest because it "will ensure compliance with ERISA, a statute designed to ensure the protection of benefits for participants and beneficiaries in employee pension and welfare plans." (Mem. in Supp. at 20.) This argument fails to explain why permitting the arbitration to proceed will not ensure compliance with ERISA, given that ERISA claims are arbitrable. *See Bird v. Shearson Lehman/Am. Express*, 926 F.2d 116, 122 (2d Cir. 1991) (holding that ERISA claims may be arbitrated and finding that the district court "erred in denying appellants' motion to compel arbitration of appellees' ERISA claim"). Denying the Motion is also appropriate in light of the "strong public policy in favor of arbitration." *Zheng v. Gen. Elec. Co.*, No. 15-CV-1232 (TJM)(CFH), 2016 WL 11605145, at *5 (N.D.N.Y. Nov. 16, 2016).

---

[3] *See also Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116 (2d Cir. 1991); *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107, 1112 (9th Cir. 2019); *Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000); *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 478–79 (8th Cir. 1988).

>Accordingly, issuance of a preliminary injunction against the arbitration is not in the public interest.

*Id.* at *10–11.

## VI. There are Serious Questions Going to the Merits of the Injunction

This Court's injunction rests on its conclusion that the claims in arbitration are not arbitrable, even despite their pendency in the Western District of Missouri where such claims *are arbitrable*. As we made clear in our opening brief, there can be no doubt that there remain serious questions going to the merits of the injunction. Indeed, the Western District of Missouri, which first resolved the issue of arbitrability, continues to disagree with this Court's determination.

To distract from the weight of this issue, DST claims that "the question of whether the claims they were pursuing are arbitrable … is not the relevant question on an appeal from the Court's injunction." (Dkt. No. 352 at p. 13.) That is absurd. If the claims are arbitrable, the injunction is likely to be reversed. If they are not, it is likely to be upheld.

Nor does it matter that the injunction was issued after the class certification order. Unlike the class certification order in *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32 (E.D.N.Y. 1990), which *expressly stayed* all pending related proceedings (and upon which the Court relied in the hearing on November 18, 2021), the certification order here did not include any language describing, in reasonable detail, the act or acts restrained or otherwise barred by the certification of a mandatory class. In fact, even after issuing the class certification order, the Court *denied* DST's request for a temporary restraining order and indicated that DST may be *estopped* from avoiding the arbitrations. (ECF No. 318.)

In any event, as it reviews the Court's preliminary injunction, the Second Circuit's jurisdiction "extends to all matters inextricably bound up with the preliminary injunction." *S.E.C. v. Credit Bancorp, Ltd.*, 290 F.3d 80, 86–87 (2d Cir. 2002) (internal citation omitted); *see also*

10

*Lamar Advert. of Penn, LLC v. Town of Orchard Park, New York*, 356 F.3d 365, 372 (2d Cir. 2004) ("Because the district court here denied Lamar's request for a preliminary injunction for the very same reasons it denied Lamar's motion for summary judgment, we find the issues of whether Lamar has standing and whether its claims are moot are indeed inextricably intertwined with the plaintiff's motion for preliminary injunction, over which we have appellate jurisdiction.").

Thus, the appeal of the preliminary injunction necessarily involves the issue of whether or not their claims under ERISA are arbitrable and therefore clearly raises serious questions going to the merits.

## CONCLUSION

WHEREFORE, for the reasons stated above, the Arbitration Claimants respectfully ask the Court to enter an order staying the preliminary injunction pending appeal.

Respectfully submitted,   THE KLAMANN LAW FIRM

BY: /s/ *Andrew Schermerhorn*
John M. Klamann  MO 29335
Andrew Schermerhorn  MO 62101
4435 Main Street, Suite 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile:  (816) 421-8686
jklamann@klamannlaw.com
ajs@klamannlaw.com

KAPKE & WILLERTH
George E. Kapke Jr. MO 52114
Mike Fleming MO 53970
3304 N.E. Ralph Powell Road
Lee's Summit, MO 64064
Telephone: (816) 461-3800
Facsimile:  (816) 254-8014
ted@kapkewillerth.com
mike@kapkewillerth.com

WHITE, GRAHAM, BUCKLEY & CARR
William Carr   MO 40091

>Bryan T. White MO 58805
>19049 East Valley View Parkway
>Independence, Missouri 64055
>(816) 373-9080 Fax: (816) 373-9319
>bwhite@wagblaw.com
>
>HUMPHREY, FARRINGTON & McCLAIN
>Kenneth B. McClain   MO 32430
>221 West Lexington, Suite 400,
>P.O. Box 900
>Independence, Missouri 64051
>Telephone: (816) 836-5050
>Facsimile:  (816) 836-8966
>kbm@hfmlegal.com