**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL L. FERGUSON, MYRL C. JEFFCOAT AND DEBORAH SMITH, on behalf of the DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN, | CIVIL ACTION NO. 1:17-cv-06685-ALC-BCM |
| Plaintiffs, | |
| v. | |
| RUANE CUNNIFF & GOLDFARB INC. et al. | |
| Defendants. | |

**ARBITRATION CLAIMANTS' RESPONSE BRIEF REGARDING THE ISSUE OF THE FINAL ARBITRATION AWARDS THAT HAVE BEEN ENTERED AGAINST THE DST DEFENDANTS**

## <u>TABLE OF CONTENTS</u>

I. PRELIMINARY STATEMENT ........................................................................ 1

II. ARGUMENT ................................................................................................... 2

 A. This Court Does *Not* have the Authority to "Affect" the Final Judgments Issued by the U.S. District Court for the Western District of Missouri ............................ 2

 B. The Arbitration Awards Do *Not* Adversely Affect the Class ................................ 7

 C. The Judgments were *Not* Improperly "Procured" .................................................. 9

 D. The Claims Against DST *Are Arbitrable* in the Western District of Missouri ..... 13

 E. Arbitration Counsels' Fees Do Not Dilute the Amounts Awarded to the Arbitration Claimants, Do Not Harm the Class, and Were Within Each Arbitrator's Authority to Award ......................................................................... 14

III. CONCLUSION ............................................................................................... 17

## **TABLE OF AUTHORITIES**

**Cases**

*Allen v. McCurry*, 449 U.S. 90 (1980) ................................................................... 5

*Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 478–79 (8th Cir. 1988) ....... 14

*Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031 (7th Cir. 2000) ............................................................................. 6

*Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 122 (2d Cir. 1991) ............................... 14

*Bostick v. DST Systems, Inc.*, No. 4:21-09133-NKL, 2021 WL 6050907, at *2 (W.D. Mo. Dec. 21, 2021) ........................................................................................ passim

*Brown v. Aventis Pharm., Inc.*, 341 F. 3d 822 (8th Cir. 2003) ...................................... 15

*Covington Indus., Inc. v. Resintex A. G.*, 629 F.2d 730 (2d Cir. 1980) ......................... 3, 4, 5, 6

*Cty. of Morris v. Nationalist Movement*, 273 F.3d 527 (3d Cir. 2001)........................................ 16

*Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d 1108 (2d Cir.1980) .................................. 10

*Doe I v. Exxon Mobil Corp.*, No. 1:01-CV-1357-RCL, 2021 WL 1910892 (D.D.C. May 12, 2021) ........................................................................................................ 2

*Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019) .............................................. 14

*Harper Macleod Solics. v. Keaty & Keaty*, 260 F.3d 389 (5th Cir. 2001)................................. 4, 5

*Harper Macleod Solics. v. Keaty & Keaty*, 260 F.3d 389, 397 (5th Cir. 2001)........................... 3

*In re Choez*, No. 15-45404-ESS, 2017 WL 5604109 (Bankr. E.D.N.Y. Nov. 20, 2017).............. 6

*In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32 (E.D.N.Y. 1990).................................... 10

*Indian Head National Bank of Nashua v. Brunelle*, 689 F.2d 245 (1st Cir.1982)........................ 6

*Kay v. Ehrler*, 499 U.S. 432 (1991) ........................................................................... 17

*Kramer v. Smith Barney*, 80 F.3d 1080 (5th Cir. 1996)........................................................... 14

*Lapin v. Shulton, Inc.*, 333 F.2d 169, 172 (9th Cir. 1964) ....................................................... 7

*LaRouche v. Kezer*, 20 F.3d 68 (2d Cir. 1994) ...................................................................... 16

*Local 513, Int'l Union Operating Engineers v. Larry Ortmann Contracting, Inc.*, No. 4:08-CV-1177 CAS, 2009 WL 151698 (E.D. Mo. Jan. 22, 2009).......................................................... 15

*N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137 (5th Cir.1996) ....................................................... 4

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993) ................ 14

*Segal v. Trans World Airlines, Inc.*, 63 F. Supp. 2d 373 (S.D.N.Y. 1999).................................. 8

*Torquay Corp. v. Radio Corp. of Am.*, 2 F. Supp. 841 (S.D.N.Y. 1932)...................................... 7

*Vega v. Trinity Realty Corp.*, No. 14-CV-7417 (RJS), 2021 WL 738693, at *4 (S.D.N.Y. Feb. 24, 2021) ................................................................................................................ 6

*White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445 (1982).......................... 17

*Williams v. Imhoff*, 203 F.3d 758 (10th Cir. 2000) ...................................................................... 14

*Zdrok v. V Secret Catalogue, Inc.*, 215 F. Supp. 2d 510 (D.N.J. 2002).......................................... 7

**<u>Rules</u>**

Fed. R. Civ. P. 65(d) ..................................................................................................................... 11

# I.     PRELIMINARY STATEMENT

It would be unjust if DST, relying upon the law as interpreted by the Eighth Circuit Court of Appeals and the Western District of Missouri, could move the Western District to *force* its employees into individual arbitrations, fully litigate in those arbitrations, and then, having lost in arbitration, convince *another court*, years later, to annul the arbitration awards that were rendered against it. Yet, that is precisely what DST asks this Court to do.

To distract from the absurdity of its request, DST now claims that the Western District never actually ruled on the arbitrability of the claims against it, but instead held only that Mr. DuCharme "waived his right to act in a representative capacity on behalf of the class." (ECF No. 342 at 5.) Having tried to sell the same snake oil to Judge Laughery, she set the record straight:

> [b]y dismissing Ducharme's individual and collective claims because he signed the arbitration agreement, Judge Wimes necessarily found that the arbitration agreement covered fiduciary breach claims against DST. If the arbitration agreement did not apply to the fiduciary breach claims, there would be no logical explanation for the dismissal of the claims.

*Kevin Bostick v. DST Systems, Inc*., No. 4:21-09133-NKL, 2021 WL 6050907, at *2 (W.D. Mo. Dec. 21, 2021). Indeed, the Western District held that: "There is no doubt that DST persuaded Judge Wimes to accept its position that Plan participants who were parties to the arbitration agreement were required to arbitrate their claims. In dismissing the complaint in *DuCharme*, Judge Wimes expressly held that 'the Arbitration Agreement at issue is valid and Ducharme's claims for breach of fiduciary duty fall within the Arbitration Agreement's scope.'" *Id*. at *11.

Make no mistake—DST is asking this Court to ignore the final judgment, entered more than four years ago in *DuCharme*, and to nullify the hundreds more that were entered last year. It is a ludicrous request, and there is *no authority* permitting the Court to grant it.[1]

---

[1] Undeterred by the complete absence of authority to support its request, DST makes hyperbolic accusations that are demonstrably false and completely irrelevant. Judge Royce C. Lamberth recently criticized Paul Weiss for making

In November, the Court stated: "I also acknowledge the decisions of the Western District of Missouri confirming arbitration awards for claims at issue here, and I certainly do not mean to disrespect that court's *authority and jurisdiction*." Hr'g Tr., 10:13-16 (S.D.N.Y. Nov. 18, 2021) (emphasis added). Indeed, considerations of civility, comity, and the orderly administration of justice *demand* that the Court respect, recognize and honor the Western District's authority and jurisdiction over the arbitrations. In this case, that means simply that the Court may not modify, alter, or otherwise affect the final judgments of the Western District.

## II.   ARGUMENT

### A.   This Court Does *Not* have the Authority to "Affect" the Final Judgments Issued by the U.S. District Court for the Western District of Missouri

For its remarkable and unbelievable assertion that "the Court has the authority to modify, alter, or otherwise affect" the final judgments of the Western District, DST cites a *single* case, *Covington Indus., Inc. v. Resintex A. G.*, 629 F.2d 730 (2d Cir. 1980). Not surprisingly, *Covington* does *not* hold that a district court can, where it disagrees with an earlier judgment, modify, alter, or otherwise affect the final judgments of that district court.

In *Covington,* the plaintiffs sued the defendants for breach of contract and fraudulent misrepresentation. Although the defendants (who resided in Switzerland) had never entered their appearance in the action, the U.S. District Court for the Northern District of Georgia entered a default judgment against them. *Id.* at 732. The plaintiffs subsequently registered the default judgment in the U.S. District Court for the Eastern District of New York and instituted garnishment proceedings against the defendants' New York bank account. *Id.* After receiving notice of the

---

unsubstantiated allegations against opposing counsel with the intention of casting them in an unfavorable light before the Court. *See Doe I v. Exxon Mobil Corp.*, No. 1:01-CV-1357-RCL, 2021 WL 1910892 (D.D.C. May 12, 2021) (Memorandum Opinion admonishing Paul, Wiess). Despite its professing to have "taken seriously the Court's ruling [and] admonition," counsel for DST continues to do precisely the same in this case, completely unabated.

garnishment proceedings, the defendants moved, pursuant to Rule 60(b)(4), Fed.R.Civ.P., for an order declaring the default judgment void on the ground that the Northern District of Georgia lacked personal jurisdiction. *Id.* The Eastern District granted the motion and vacated the default judgment. *Id.* The plaintiffs appealed to the Second Circuit Court of Appeals. *Id.*

On appeal, the Second Circuit reasoned that since a default judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity, "Rule 60(b)(4) may be invoked *in the registration court* to obtain relief from a foreign default judgment attacked as void for lack of personal jurisdiction over the parties against whom it was rendered." *Id.* at 732, 734 (emphases added). As the Fifth Circuit Court of Appeals observed, "[t]his principle has a long lineage in our jurisprudence." *Harper Macleod Solics. v. Keaty & Keaty*, 260 F.3d 389, 397 (5th Cir. 2001) (citing *Chicago Life Ins. Co. v. Cherry*, 244 U.S. 25, 29, 37 S.Ct. 492, 61 L.Ed. 966 (1917) ("There is no doubt of the general proposition that in a suit upon a judgment the jurisdiction of the court rendering it over the person of the defendant may be inquired into."). "The requirement that a court have jurisdiction over the person before rendering judgment is rooted in due process and is a basic requirement that must be satisfied before a valid judgment can be had...." *Id.* (citing *Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 702 ("The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause."). If the rendering court did not have such jurisdiction, its judgment is invalid. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir.1996) ("A judgment is void ... if the court that rendered it lacked jurisdiction ... of the parties [.]") (internal quotations omitted).

Here, of course, there is no disputing that DST was subject to the personal jurisdiction of the Western District. In fact, as the Western District observed, because DST's principal place of business is in Kansas City, Missouri, DST does not—and cannot reasonably—suggest that the

Western District lacks personal jurisdiction. *Bostick v. DST Sys.*, 2021 WL 6050907, at \*6. Thus, *Covington* does not apply.

In fact, in *Covington*, the Second Circuit cautioned that even where a rendering court lacks personal jurisdiction over the defendant—which is **not** the case here—relief from a default judgment is appropriate *only* "if the issue of [personal] jurisdiction has not previously been litigated." *Covington*, 629 F.2d. at 732. Otherwise, where the defendant had the opportunity to litigate the issue of the court's jurisdiction, *"inquiry into the matter is barred by the principles of res judicata."* *Id.* (Emphasis added.) *See also Harper Macleod Solics. v. Keaty & Keaty*, 260 F.3d 389, 395 (5th Cir. 2001) ("Principles of issue preclusion apply with equal force in courts of rendition and registration: neither should re-adjudicate issues first heard and ruled on by another federal court.").

In other words, in *Covington*, the court advised that the doctrine of *res judicata*, which holds that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action," *Allen v. McCurry*, 449 U.S. 90, 94 (1980), applies in the Second Circuit, *even to those cases with which a court in the Southern District of New York might disagree.*

Additionally, the Second Circuit reasoned that the district court's authority to void the foreign default judgment in *Covington* arose only from the fact that the plaintiffs in *Covington* had sought to utilize the machinery of the Eastern District to enforce the foreign default judgment. *Covington*, 629 F.2d at 734 ("[S]ince by registering the judgment in a particular forum the creditor seeks to utilize the enforcement machinery of that district court it is not unreasonable to hold that the latter court has the power to determine whether relief should be granted the judgment debtor under 60(b)." (quoting 7 Moore's Federal Practice P 60.28(1) at 391-92 (2d ed. 1979)). Had the

plaintiffs not registered the judgment in the Eastern District of New York and sought to enforce the judgment in the Eastern District of New York, the Eastern District of New York would not have the authority to grant relief from the foreign judgment.

Here, the Arbitration Claimants are <u>not</u> seeking to utilize the machinery of the Southern District to enforce a default—or *any*—judgment. Thus, even if *Covington* applied to judgments other than default judgments (it does *not*), it does not apply here.[2]

In sum, in *Covington*, (1) the defendants did <u>not</u> appear in the rendering court; (2) the defendants did not previously litigate, nor have the opportunity to litigate, whether the defendants were subject to the personal jurisdiction of the rendering court; (3) the defendants were *not* subject to the personal jurisdiction of the rendering court; (4) the rendering court entered default judgment against the defendants; and (5) the plaintiffs chose to use the machinery of the Eastern District of New York to register and enforce the default judgment by seeking to reach the defendants' New York assets. *Id.* Only under *those limited circumstances* did the Second Circuit hold that a motion may be brought under Rule 60(b)(4) to void a foreign judgment.[3] *See also Indian Head National Bank of Nashua v. Brunelle,* 689 F.2d 245 (1st Cir.1982) (holding that Rule 60(b) motions must be brought in the rendering court unless the motion is made pursuant to Rule 60(b)(4) for relief from *default judgments* on the ground that the judgments were void because the rendering courts *lacked jurisdiction* over the party against whom enforcement was sought); *In re Choez*, No. 15-45404-ESS, 2017 WL 5604109, at *6 (Bankr. E.D.N.Y. Nov. 20, 2017) (observing that precedent exists only for the proposition that Rule 60(b)(4) may be invoked in the registration court to obtain

---

[2] Relatedly, since the Arbitration Claimants are not requesting that this Court compel arbitration or enforce any awards (since they have *already* been compelled and enforced in the Western District of Missouri), the Second Circuit's decision in *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 184 (2d Cir. 2021), does not apply.

[3] The Second Circuit held that subsection four of Rule 60 "is unique" and expressly stated that its decision *should not* be construed as authorizing an attack on a foreign judgment under any other subsection of Rule 60. *Covington*, 629 F.2d at 733 n. 3. *See also Vega v. Trinity Realty Corp.*, No. 14-CV-7417 (RJS), 2021 WL 738693, at *4 (S.D.N.Y. Feb. 24, 2021) ("Voidness is 'unique' among the six reasons for vacating a judgment under Rule 60(b).")

relief from a foreign default judgment attacked as void for lack of personal jurisdiction over the parties against whom it was rendered); *C.f. Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1034 (7th Cir. 2000) (holding that *all* Rule 60(b) motions *must* be presented to the rendering court).

DST does not cite a *single case*, and we have found none, where a court of registration entertained a Rule 60(b) motion other than one attacking a <u>default judgment</u> for <u>lack of personal jurisdiction</u>.[4] The instant case presents no such challenges.

Thus, contrary to DST's paper-thin assertion, the Court may ***not*** relieve DST of the judgments entered against it. Indeed, for a non-rendering court to entertain a request for relief pursuant to Rule 60(b) "would be to usurp the power of the rendering court." *Zdrok v. V Secret Catalogue, Inc.,* 215 F. Supp. 2d 510, 515–16 (D.N.J. 2002), *vacated on other grounds,* 108 F. App'x 692 (3d Cir. 2004). As was stated in our opening brief, established principles of finality and comity preclude this Court from interfering with the Western District's final judgments. *Torquay Corp. v. Radio Corp. of Am.*, 2 F. Supp. 841, 844 (S.D.N.Y. 1932) ("Assuming for the moment that this court has jurisdiction of the present suit, it is clear, as a matter of comity and of the orderly administration of justice, that this court should refuse to exercise its jurisdiction to interfere with the operation of a decree of another federal court. Especially is this so where it is clear that the [rendering court] would have jurisdiction of such a suit as is now before this court.").[5]

---

[4] "That one district court may exercise such authority over another is a necessary consequence of the established rule that a defendant may challenge a rendering court's personal jurisdiction in a court in which enforcement of a default judgment is attempted. Such authority also reflects the federal system's disdain for default judgments." *Harper*, 260 F.3d at 395.

[5] *See also Segal v. Trans World Airlines, Inc*., 63 F. Supp. 2d 373, 380 (S.D.N.Y. 1999) ("The rendering court is almost always better able to resolve such a motion, as that court will be more familiar with the facts of the case and more conversant with the applicable law, especially where, as here, counsel for both [the defendant] and plaintiff previously argued before the [rendering] court the very issues plaintiff now seeks to revisit by her instant motion.").

In fact, since DST has appealed each of the judgments rendered by the Western District to the Eighth Circuit Court of Appeals, the district courts, including this one, lack any authority over the matters on appeal. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court[s] of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). It is not "tolerable" to have "a district court and a court of appeals ... simultaneously analyzing the same judgment," *id.* at 59 *i.e.*, to have "situations ... in which district courts and courts of appeals would both have ... the power to modify the same judgment." *Id.* at 59-60.

In this case, DST has now appealed *every* judgments rendered by the Western District and, on January 3, 2022, the Eighth Circuit Court of Appeals issued an Order in the matter captioned *Theresa Hursh, et al. v. DST Systems, Inc.*, No.: 21-3554, et al., declaring that it "do[es] not construe [this Court's] order as enjoining the parties in [that] court," and therefore "decline[d] to stay the briefing schedule[.]" Thus, DST's appeals of the more than 175 judgments are now set to be fully aired in the Eighth Circuit Court of Appeals and may not be decided here.

## B.    The Arbitration Awards Do *Not* Adversely Affect the Class

Lacking any authority permitting the nullification of the arbitration awards, DST tries distracting by making a variety of false and hyperbolic accusations. For example, DST asserts that the Arbitration Claimants "have sought to race ahead their purported individual arbitration claims … in the hopes of advantaging a small minority of class members to the detriment of other class members and the parties." (ECF No. 342 at 3.) DST even goes so far as to claim that the amounts awarded to the Arbitration Claimants "may diminish funds available for a potential comprehensive settlement." (*Id.* at 17.) Both claims are plainly and patently <u>false</u>.

As we explained in our opening brief, the amounts awarded to the Arbitration Claimants *do not* jeopardize the class's ability to protect its interests or to recover from DST. (ECF No. 340 at 22-23.) The awards in arbitration merely have the effect of reducing the amount that DST may be required to pay in subsequent litigation to those who have *already recovered*. It does *not* reduce the amount payable or owing to those who have not yet recovered from DST. (*Id.*)

The Secretary of Labor made the same commonsense observation two years ago in the matter of *Ruane, Cunniff & Goldfarb, Inc.*, 1:19-cv-11297 (ALC)(BCM), Dkt. 40 (Jan. 24, 2020). There, the Secretary explained that the "individual arbitration proceedings may [] occur simultaneously *without diminishing* the independent rights of action of other plan participants or the Secretary." *Id.* (emphasis added) (citing *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019) (unpublished opinion) ("When an individual participant agrees to arbitrate, he does not give up any substantive rights that belong to other Plan participants.")). This is because, as the Secretary explained, "[a]ny payments on concurrent judgments and/or arbitral awards for the same loss to the Plan will be credited to all of those judgments and/or awards." *Id.*

The Western District agrees and has already held that the awards do not negatively affect other class members. The Honorable Nanette K. Laughrey found that there was *no basis* for concluding "that an individual arbitration under these circumstances would adversely affect other plan participants[.]" *Bostick v. DST Sys.*, 2021 WL 6050907, at *2.

And, while DST asserts that any recovery must "flow[] to the Plan as a whole," this is entirely untrue. Indeed, while the *Ferguson* plaintiffs took "no position on the enforceability of any Arbitration Awards," even they conceded that "any recovery will ultimately be allocated among the participants' [individual] accounts." (ECF No. 345 at 4 fn. 1.) In fact, even when certifying mandatory, non-opt out classes in ERISA claims, courts in the Second Circuit recognize

that damages must still be determined on an individual basis. *LaFlamme v. Carpenters Loc. No. 370 Pension Plan,* 212 F.R.D. 448, 459 (N.D.N.Y. 2003).

Second, as we also explained in our opening brief, DST cannot claim to have limited funds such that the awards in arbitration threaten what may be available to the rest of the Plan. (ECF 340 at 24.) Counsel for DST expressly stated to the Court that DST is a subsidiary of SS&C Technologies Holdings, Inc. ("SS&C"), which is "good for these – any of these obligations," Hr'g Tr., 11:23-12:4 (S.D.N.Y. Nov. 18, 2021). Indeed, as of September 30, 2021, SS&C's total assets were $16.93 billion, including $3.78 billion in current assets. (ECF No. 331.) The losses alleged in this case, *by all the parties*, are *well below* an amount that would pose a risk to DST's ability pay. This remains true when considering awards and potential awards for attorney fees as well.

### C.   The Judgments were *Not* Improperly "Procured"

DST wrongly claims that "the vast majority of the arbitration awards were *procured* and reduced to judgments only because of Arbitration Claimants' extraordinary campaign to frustrate this Court's orders and undermine its jurisdiction over the class." (ECF No. 342 at 3.) This, again, is false. First, on three occasions, this Court *refused* to grant DST's request that it stay the arbitrations, including as recently as August 31, 2021. (ECF Nos. 164, 318 and "Minute Entry" dated July 15, 2020.) Thus, the Arbitration Claimants never violated an order by pursuing their claims in arbitration. In fact, until this Court's injunction on November 18, 2021, the only order directed at any of the Arbitration Claimants was the Western District's order in *DuCharme compelling* arbitration. On the date this Court entered its injunction, the Arbitration Claimants immediately stopped even the arbitration proceeding that was then underway. That is not to say, however, that we agree that the injunction is valid, which it is not, but it is to say that we have respected and honored this Court's orders on their face and pending appeal.

Despite all this, DST argues that the Arbitration Claimants nonetheless acted improperly by failing to treat the Court's class certification order as an injunction. But *even DST* continued to arbitrate for several days after the Class Certification Order, going so far as to tell the arbitrators, after it informed them of the Order, that it "was not asking [them] to do anything at the present time" since it *agreed* that the arbitration should proceed (be it while DST "reserve[ed] all [its] rights under [the] decision with respect to these arbitration proceedings"). *Lisa Alexander, et al. v. DST Systems, Inc.*, AAA No. 01-19-0001-8276, Transcript of Hearing, 1211:17-25.

And while the Court may have felt that its class certification order "explained" that a mandatory class "supersedes all litigation against the defendants pending in federal and state forums," (Hr'g Tr., 5:21-6:10 (Nov. 18, 2021)), we respectfully disagree. Unlike the class certification order in *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32 (E.D.N.Y. 1990), which *expressly stayed* all pending related proceedings (and upon which the Court relied in the hearing on November 18, 2021), the certification order here did not include any such language describing in reasonable detail the act or acts restrained or otherwise barred by the certification of a mandatory class. In fact, even after issuing the class certification order, the Court *denied* DST's request for a temporary restraining order and indicated that DST may be *estopped* from avoiding the arbitrations. (ECF No. 318.)

Meanwhile, DST's conveniently post facto argument that the class certification order was, in fact, an injunction does not pass muster. In *Diapulse Corp. of America v. Carba, Ltd.,* 626 F.2d 1108 (2d Cir.1980), the Second Circuit discussed the requirements of an injunction order as follows:

> A court is required to frame its orders so that those who must obey them will know what the court intends to forbid. "[B]asic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard,* 414 U.S. 473, 476 (1974). It is for this reason that Fed.R.Civ.P. 65(d), like

> its predecessor 28 U.S.C. § 383, provides that every order granting an injunction shall be specific in its terms and describe in reasonable detail the acts sought to be restrained. An order which does not satisfy the requirement of specificity and definiteness will not withstand appellate scrutiny.

*Id.* at 1111 (internal citations omitted). *See also* Fed. R. Civ. P. 65(d) (stating that "[e]very order granting an injunction and every restraining order must: … (B) state its terms specifically; and (C) describe in reasonable detail--*and not by referring to the complaint* or other document--the act or acts restrained or required." (Emphasis added.)). The class certification order was *not* an injunction.

Nor did others interpret it as one. In the matter of *Brian White v. DST Systems, Inc.,* AAA No. 01-19-0001-9104, for example, Arbitrator Stephanie Cohen denied DST's request that it terminate the arbitration, stating:

> DST's letter request to terminate these proceedings based upon the *Ferguson* order is denied without prejudice. **The *Ferguson* order does not state that this arbitration proceeding, which was pending before issuance of the order and proceeded through a hearing and award, is enjoined** and does not otherwise address the effect of the order on pending arbitration proceedings.

Likewise, in the matter of *Robert Conklin v. DST Systems, Inc. et al.*, No. 01-19-0001-8717, Arbitrator Michael J. Leech reasoned that, "**[t]he court's [class certification] order does not, by its terms, terminate or enjoin the arbitrations as such**."[6] And in the matter of *Reba Jackson v. DST Systems, Inc.*, AAA No. 01-19-0001-9627, Arbitrator Thomas Gibbons stated:

---

[6] Likewise, in the matter of *Kristin Smithmier v. DST Systems, Inc.*, AAA No. 01-19-0001-9272, Arbitrator John (Jay) McCauley refused a stay, stating:

> Long before the August 17, 2021 ruling in the *Ferguson* case, the precise issue of whether this case is subject to arbitration was submitted to a court of competent jurisdiction, namely, the U.S. District Court for the Western District of Missouri. That Court issued an order compelling arbitration, thereby vesting the arbitrator with jurisdiction to adjudicate this matter. The order compelling arbitration was not appealed, let alone stayed pending appeal. More to the point, because it was issued by a court of competent jurisdiction, it is not subject to collateral attack by another district court, including the U.S. District Court for the Southern District of New York. The Arbitrator notes that although the *Ferguson* order purports to be applicable to this arbitration (see Exhibit A attached to the order), the text of the *Ferguson* ruling does not appear to address in any way the question of

**the Court did not enjoin or restrain the arbitrations from proceeding and without such an injunction or restraining order, despite the implications of the class action, the matter before this Arbitrator must proceed.** This is especially true since there are two orders from the U.S. District Court for the District of Missouri, Western Division, where the vast majority of these arbitration proceedings are pending in Jackson County, Missouri, declaring that the parties' "Arbitration Agreement at issue is valid and (that the) claims for breach of fiduciary duty fall within the Arbitration Agreement's scope." *DuCharme v. DST Systems, Inc.*, Case No. 4:17-cv-00022-BCW (W.D.Mo.); *Rob Parrott v. DST Systems, Inc.*, 4:21-mc-09012-NKL (W.D.Mo.).

Additionally, in the matters of *Jacque Ivey v. DST Systems, Inc.*, AAA No. 01-19-0004-4476, and *Robert LaValley v. DST Systems, Inc.*, 01-19-0001-9655, Arbitrator Patricia A. Cullen held that "**I am not aware of an order from any Court which has the effect of enjoining these proceedings at this late stage**, after a full evidentiary hearing has been completed." Arbitrator Kevin B. Krauss was even more succinct. In the matter of *JoCarol Inzenga v. DST Systems, Inc.*, AAA No. 01-19-0001-9624, Arbitrator Krauss simply ordered that "**until I get an Order from the federal court enjoining this arbitration the hearing will go on as scheduled**."

Dozens of other arbitrators, all having received a copy of this Court's class certification order, also found that it did not bar or otherwise stay the arbitration actions pending in Missouri. Thus, respectfully, the Arbitration Claimants cannot fairly be described as having violated or "frustrated" the Court's class certification order by continuing to participate in the arbitration actions in Missouri that *DST compelled*.

---

its authority to reverse the prior final adjudication of the District Court for the Missouri Western District.

Based upon a full review of the parties' submissions, Arbitrator McCauley "declare[d] that [the] arbitration remains subject to his jurisdiction."

Arbitrator Joseph Z. Fleming echoed Arbitrator McCauley's reasoning. In the matter of *Heath Mustain v. DST Systems, Inc.*, AAA No. 01-19-0001-9687, Arbitrator Fleming held that "based on the proceedings, the record in this matter, and the facts and the law, […] Federal Rule of Civil Procedure 23(b)(1) cannot reverse the FAA, ERISA, and the doctrines of res judicata."

Finally, DST's suggestion that the Arbitration Claimants "procured" the judgments as if by misconduct is completely out of line. The motions to confirm were filed in the normal course, after the completion of the arbitration actions. In fact, the Arbitration Claimants filed these motions not, as DST suggests, to defy this Court, but only because DST stopped voluntarily paying the arbitration awards.[7] The Western District considered these motions in an ordinary, transparent and open manner (including briefing by DST and its participation in oral argument), resulting in a thorough order that plainly speaks for itself. *See e.g., Bostick v. DST Sys., Inc.*, 2021 WL 6050907.

"Arbitration is supposed to be swift." *Graphic Commc'ns Union, Chicago Paper Handlers' & Electrotypers' Loc. No. 2 v. Chicago Trib. Co*., 779 F.2d 13, 15 (7th Cir. 1985). Thus, having received an order *compelling* arbitration, there is nothing improper about pursuing arbitration (at least until being ordered to stop in a facially valid order).

In contrast, the Western District has, on multiple occasions, described *DST's conduct* as improper. *Id.* at *3 (describing DST's efforts to deprive the Western District of authority over the arbitrations as "obvious forum-shopping"), *10-11 (describing DST as having taken "inconsistent positions" in an effort to gain a strategic advantage). Indeed, it is plain that the *Ferguson* case is an extraordinary campaign by DST and the *Ferguson* plaintiffs' counsel to frustrate the *Western District's* orders and to undermine its *proper* and *prior* jurisdiction over the arbitrations.

### D.  The Claims Against DST *Are Arbitrable* in the Western District of Missouri

In all but this Court, claims under ERISA are arbitrable. *See Bostick v. DST Sys.,* 2021 WL 6050907, at *1 (observing that "federal appellate courts overwhelmingly have found that 'individualized arbitration [is not] inherently incompatible with ERISA.'" (quoting *Smith v. Board*

---

[7] DST fails to explain or even address how the awards it voluntarily paid do not undermine the class or diminish the available funds, when it claims the awards it does not want to pay will do exactly that. The truth is, of course, that satisfaction of the awards will *not* affect any other class member's recovery.

*of Directors of Triad Manufacturing, Inc.*, 13 F.4th 613, 622 (7th Cir. 2021)).[8] And while the law as interpreted by the Southern District may apply to the claims of the *Ferguson* plaintiffs (who purportedly opted out of the Arbitration Agreement), it *does not* apply to the claims filed by the Arbitration Claimants *in the Western District of Missouri*. In fact, as we explained in our opening brief, the parties' Arbitration Agreement expressly *requires* the application of the law ***as applied by the Western District of Missouri***. (Dkt. 305-1 at A-2.) And, lest there be any doubt, the Western District has now confirmed in more than 177 orders, that "based on its understanding of the law in the Eighth Circuit and the unique connection these cases have to the Western District of Missouri," the claims against DST under ERISA ***are arbitrable***. *Bostick v. DST Sys.,* 2021 WL 6050907, at *3.

Thus, the claims pending in Missouri are <u>not</u> governed by either *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021), or *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006). In fact, the Western District has now expressly held, in more than 177 final judgments, that the Second Circuit's reasoning in *Cooper* and *Coan* "d[oes] *not* apply to individuals bringing a representative ERISA claim [in the Western District of Missouri] on behalf of the plan for damages to their *individual accounts." Bostick v. DST Syst. Inc.*, 2021 WL 6050907, at *1 (emphases added).

### E.   Arbitration Counsels' Fees Do Not Dilute the Amounts Awarded to the Arbitration Claimants, Do Not Harm the Class, and Were Within Each Arbitrator's Authority to Award

DST is wrong to suggest that the successes achieved in the arbitrations are somehow diluted by the fees awarded to Arbitration Counsel. (ECF No. 342 at 4.)  The amounts awarded in

---

[8] *See also Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116 (2d Cir. 1991); *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107, 1112 (9th Cir. 2019); *Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000); *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 478–79 (8th Cir. 1988).

attorneys' fees in the arbitrations were decided and awarded *separate* from the damage amounts awarded to the Arbitration Claimants (this of course, will *not* be true of any class action settlement). Additionally, by all measures, the Arbitration Claimants have achieved an astounding recovery. The Arbitration Claimants, who according to DST represent only 5% of the class, have already been awarded more than $11 million in damages and have recovered nearly $8 million in settlements (all *separate* from attorneys' fees). By extrapolation (if one assumes that DST is honest about the relative share of the Plan represented by the Arbitration Claimants), this will mean a recovery of $380 million for the entire Plan, *separate from attorneys' fees*. And this does not even account for the hundreds of Arbitration claimants who have yet to receive their arbitration award.

As for the fees, themselves, they were *not* "procured" through "manipulation" of the arbitral process. On the contrary, the fees have been awarded to Arbitration Counsel by hundreds of individual arbitrators, one case at a time, each using and properly applying the "lodestar" method approved by the Eight Circuit Court of Appeals. *See Brown v. Aventis Pharm., Inc.,* 341 F. 3d 822, 829 (8th Cir. 2003); see also *Local 513, Int'l Union Operating Engineers v. Larry Ortmann Contracting, Inc.,* No. 4:08-CV-1177 CAS, 2009 WL 151698, at *2 (E.D. Mo. Jan. 22, 2009) ("The Eighth Circuit has affirmed this Court's use of the lodestar approach to determining an attorney's fee award in an ERISA withdrawal liability case."). Each individual arbitrator, acting within his or her authority, considered the time spent, reasonable hourly rates, and the relation of the activity being claimed to the outcome of the arbitration, and, under Eighth Circuit law, entered what he or she believed to be a reasonable attorney fee.

In the matter of *Percy Payne v. DST Systems, Inc.*, AAA No. 01-18-0003-0418, for example, DST appealed an award of fees that was many times the amount of a settlement paid to

Mr. Payne.[9] Judge Melvia B. Green, however, ruled on appeal that the award "was warranted due to the unique facts and circumstances of [the] case and [the] vigorous defense by DST." Indeed, as Judge Green observed, "much of the work expended by Payne's counsel was necessitated as a direct result of DST's litigation strategy." This, of course, is true of *every* arbitration.

And, while DST asserts that the fee requests "suffer[] from numerous infirmities," *hundreds of arbitrators* have found otherwise. In the matter of *Scott Yungeberg v. DST Systems, Inc.*, AAA No. 01-19-0001-9066, for example, Arbitrator George P. Wood stated that his "experience with attorney fee applications spans some thirty-five (35) years." Having "scrutinized the simultaneous and reconstructed time records consisting of thousands of entries and calculation of rates per attorney and cost details," and applying the "lodestar" method, Arbitrator Wood found that "the attorney's fees requested by Claimant are reasonable" and, accordingly, awarded counsel $228,878.35 in attorneys' fees. Nearly the same amount was awarded in the case about which DST principally complains in its brief. What DST inadvertently admits, however, is that it deployed the same vigorous defense that required the Arbitration Counsel to expend the same vigorous energies on *every* claim, including even those in which less than $400 was at stake.

In any event, the issue of attorneys' fees awarded by the arbitrators, which have now been confirmed by the Western District, are simply not before this Court. Even if this Court *could* moot the judgments entered by the Western District (it *cannot*), an award of attorney's fees "is not precluded" just because a case later becomes moot. *Cty. of Morris v. Nationalist Movement*, 273 F.3d 527, 534 (3d Cir. 2001); *LaRouche v. Kezer*, 20 F.3d 68, 75 (2d Cir. 1994) ("mootness is not determinative as to the propriety of an award of attorney's fees."). Moreover, while DST asserts that the Court's class certification order vests it with authority over the members of the class, DST

---

[9] Again, unable to reconcile its arguments with the fact that many of the arbitration awards have already been paid, DST chooses to simply ignore this reality.

does not even assert that the Court has any authority over the fees *already awarded* to Arbitration Counsel (who are *not* members of the class). To be clear, a judicial award of attorneys' fees under a fee shifting statute is manifestly *not* an award to the plaintiff. *See Kay v. Ehrler*, 499 U.S. 432 (1991). In fact, a judgment on fees is so divorced from the merits—so "ancillary" to the underlying claims—that the absence of a decision on fees does not deprive the underlying merits judgment of finality for purposes of appeal. *See White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445 (1982). Indeed, when fees are awarded, they go to counsel; the plaintiff has no claim whatsoever on the money.

Accordingly, *even if* the Court's class certification order vested it with authority over the claims of the class (it does not), it *does not* grant the Court the authority to reverse or otherwise "affect" the amounts awarded—and now confirmed—in attorneys' fees.

In any event, the issue of fees is now on appeal to the Eighth Circuit Court of Appeals. Accordingly, the Court lacks any authority over the matter. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).

## III. CONCLUSION

For all of these reasons, because the Court cannot disturb the arbitration and fee awards that have already been entered against the DST Defendants it should, in due course, assuming the survival of the mandatory class on appeal to the Second Circuit, and assuming that additional recoveries are obtained by either the *Ferguson* Plaintiffs and/or the Secretary of Labor, calculate and account for any amounts already secured on behalf of the Plan in a manner that protects against any overlap in claims or damages.

Respectfully submitted,

THE KLAMANN LAW FIRM

BY:  /s/  *Andrew Schermerhorn*
John M. Klamann  MO 29335
Andrew Schermerhorn  MO 62101
4435 Main Street, Suite 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile:  (816) 421-8686
jklamann@klamannlaw.com
ajs@klamannlaw.com

KAPKE & WILLERTH
George E. Kapke Jr. MO 52114
Mike Fleming MO 53970
3304 N.E. Ralph Powell Road
Lee's Summit, MO 64064
Telephone: (816) 461-3800
Facsimile:  (816) 254-8014
ted@kapkewillerth.com
mike@kapkewillerth.com

WHITE, GRAHAM, BUCKLEY & CARR
William Carr   MO 40091
Bryan T. White MO 58805
19049 East Valley View Parkway
Independence, Missouri 64055
(816) 373-9080 Fax: (816) 373-9319
bwhite@wagblaw.com

HUMPHREY, FARRINGTON &
McCLAIN
Kenneth B. McClain   MO 32430
221 West Lexington, Suite 400,
P.O. Box 900
Independence, Missouri 64051
Telephone: (816) 836-5050
Facsimile:  (816) 836-8966
kbm@hfmlegal.com