UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL L. FERGUSON, MYRL C. JEFFCOAT, and DEBORAH SMITH, on behalf of the DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RUANE CUNNIFF & GOLDFARB INC., DST SYSTEMS, INC., THE ADVISORY COMMITTEE OF THE DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN, and THE COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF DST SYSTEMS, INC., <br><br> Defendants. | Case No. 17-CV-06685 (ALC)(BCM) |

## THE DST DEFENDANTS' RESPONSE BRIEF REGARDING ARBITRATION AWARDS THAT HAVE BEEN ENTERED AGAINST THE DST DEFENDANTS

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................. 1

Argument ...................................................................................................................... 5

I.      Arbitration Claimants' Submission Confirms That the Arbitration Awards Should Be Addressed in the Context of a Plan of Allocation ........................................ 5

II.     The Principles of "Finality" on Which Arbitration Claimants Rely Show That the Arbitration Awards Should Not Be Afforded Any Preclusive Effect .............................. 10

        A.      Arbitration Claimants' Arguments Regarding "Finality" Have No Application Here ................................................................................. 11

        B.      The Judgments Procured by Arbitration Claimants Do Not Control in This Mandatory Class Proceeding ............................................................... 12

        C.      Neither Claim Preclusion nor Issue Preclusion Applies to the Arbitration Awards ............................................................................................ 14

        D.      The Court Should Reject Arbitration Claimants' Arguments Regarding the Law-of-the-Case Doctrine and the Full-Faith-and-Credit Statute ...................... 21

III.    The Court Should Reject Arbitration Claimants' Attempt to Reargue That They Should Be Permitted to Opt Out of the Class .................................................. 22

Conclusion ................................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen* v. *McCurry*,
 449 U.S. 90 (1980)................................................................................................17

*In re Am. Preferred Prescription, Inc.*,
 265 B.R. 27 (E.D.N.Y. 2000) ............................................................................14

*Aramony* v. *United Way of Am.*,
 254 F.3d 403 (2d Cir. 2001)...............................................................................21

*Beach* v. *JPMorgan Chase Bank, Nat'l Ass'n*,
 2019 WL 2428631 (S.D.N.Y. June 11, 2019) .....................................................7

*Beck* v. *Levering*,
 947 F.2d 639 (2d Cir. 1991)..................................................................................7

*Bonar* v. *Dean Witter Reynolds, Inc.*,
 835 F.2d 1378 (11th Cir. 1988) ..........................................................................12

*Brown* v. *State Farm Fire & Cas. Co.*,
 2013 WL 6331158 (D. Conn. Dec. 5, 2013).......................................................15

*Chicago, R.I. & P. Ry. Co.* v. *Schendel*,
 270 U.S. 611 (1926).............................................................................................15

*In re Citigroup Pension Plan ERISA Litig.*,
 241 F.R.D. 172 (S.D.N.Y. 2006) .......................................................................5, 9

*Coan* v. *Kaufman*,
 457 F.3d 250 (2d Cir. 2006).......................................................................*passim*

*Comm'r of Internal Revenue* v. *Sunnen*,
 333 U.S. 591 (1948).............................................................................................17

*Cooper* v. *Ruane Cunniff & Goldfarb Inc.*,
 990 F.3d 173 (2d Cir. 2021)........................................................................ *passim*

*Corbett* v. *MacDonald Moving Servs., Inc.*,
 124 F.3d 82 (2d Cir. 1997)..................................................................................15

*County of Suffolk* v. *Long Island Lighting Co.*,
 907 F.2d 1295 (2d Cir. 1990)..........................................................................22, 23

*Covington Indus., Inc.* v. *Resintex A. G.*,
   629 F.2d 730 (2d Cir. 1980)........................................................................12

*Cunningham* v. *Cornell Univ.*,
   2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) ...........................................7, 8

*Dish Network Corp.* v. *Ace Am. Ins. Co.*,
   431 F. Supp. 3d 415 (S.D.N.Y. 2019)......................................................16

*Donel Corp.* v. *Kosher Overseers Ass'n of Am., Inc.*,
   2001 WL 1135625 (S.D.N.Y. Sept. 26, 2001).........................................18

*Douglin* v. *GreatBanc Tr. Co.*,
   115 F. Supp. 3d 404 (S.D.N.Y. 2015).........................................................8

*Dunlop* v. *Pan Am. World Airways, Inc.*,
   672 F.2d 1044 (2d Cir. 1982)...........................................................11, 12

*EDP Med. Comput. Sys., Inc.* v. *United States*,
   480 F.3d 621 (2d Cir. 2001)......................................................................14

*Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.*,
   544 U.S. 280 (2005).................................................................................14

*In re Federal Skywalk Cases*,
   680 F.2d 1175 (8th Cir. 1982) ................................................................18

*Federated Dep't Stores, Inc.* v. *Moitie*,
   452 U.S. 394 (1981)................................................................................15

*Ferguson* v. *Ruane Cuniff & Goldfarb Inc.*,
   2021 WL 3667979 (S.D.N.Y. Aug. 17, 2021) ............................... *passim*

*Forsyth* v. *City of Hammond*,
   166 U.S. 506 (1897).................................................................................15

*Gonzalez* v. *Crosby*,
   545 U.S. 524 (2005)............................................................................4, 11

*Herman* v. *S.C. Nat'l Bank*,
   140 F.3d 1413 (11th Cir. 1998) ................................................................7

*Holzer* v. *Mondadori*,
   2013 WL 1104269 (S.D.N.Y. Mar. 14, 2013) ........................................19

*Hursh* v. *DST Sys., Inc.*,
   2021 WL 4526849 (W.D. Mo. Oct. 4, 2021).........................................12

*Jacobs* v. *Verizon Commc'ns Inc.*,
    2020 WL 4601243 (S.D.N.Y. June 1, 2020) .......................................................................8

*Kindle* v. *Dejana*,
    315 F.R.D. 7 (E.D.N.Y. 2016) ...........................................................................................8

*L.I. Head Start Child Dev. Servs., Inc.* v. *Econ. Opportunity Comm'n of Nassau*
    *Cnty., Inc.*,
    710 F.3d 57 (2d Cir. 2013).................................................................................................8

*LaRue* v. *DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008)...........................................................................................................8

*Leber* v. *Citigroup 401(k) Plan Inv. Comm.*,
    323 F.R.D. 145 (S.D.N.Y. 2017) ......................................................................................8

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................................................8

*McDonald* v. *City of W. Branch, Mich.*,
    466 U.S. 284 (1984).........................................................................................................21

*Moreno* v. *Deutsche Bank Ams. Holding Corp.*,
    2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017)..................................................................7, 8

*Motorola Credit Corp.* v. *Uzan*,
    388 F.3d 39 (2d Cir. 2004)...............................................................................................20

*Nemaizer* v. *Baker*,
    793 F.2d 58 (2d Cir. 1986)...............................................................................................15

*Sonya C. ex rel. Olivas* v. *Ariz. Sch. for the Deaf & Blind*,
    743 F. Supp. 700 (D. Ariz. 1990) ....................................................................................15

*Parvon* v. *Comm'r of Soc. Sec.*,
    2020 WL 1131220 (W.D.N.Y. Mar. 9, 2020)..................................................................19

*In re Ramaekers*,
    33 F. Supp. 2d 312 (S.D.N.Y. 1999).................................................................................19

*Sacerdote* v. *N.Y. Univ.*,
    2018 WL 840364 (S.D.N.Y. Feb. 13, 2018)..................................................................7, 9

*Shakman* v. *Clerk of Cir. Ct.*,
    969 F.3d 810 (7th Cir. 2020) ...........................................................................................13

*Shulman* v. *Becker & Poliakoff, LLP*,
    2018 WL 4961003 (S.D.N.Y. Oct. 15, 2018)..................................................................13

*S. Pac. R.R. Co.* v. *United States*,
    168 U.S. 1 (1897) ........................................................................................... 16, 17

*Starbucks Corp.* v. *Wolfe's Borough Coffee, Inc.*,
    736 F.3d 198 (2d Cir. 2013) ............................................................................ 22

*Stoll* v. *Gottlieb*,
    305 U.S. 165 (1938) ........................................................................................ 15

*Suel* v. *Sec'y of HHS*,
    192 F.3d 981 (Fed. Cir. 1999) ........................................................................ 21

*Wellons, Inc.* v. *T.E. Ibberson Co.*,
    869 F.2d 1166 (8th Cir. 1989) ........................................................................ 16

*Williams* v. *Ward*,
    556 F.2d 1143 (2d Cir. 1977) .......................................................................... 15

*Williams, Scott & Assocs. LLC* v. *Bharara*,
    2021 WL 467252 (S.D.N.Y. Feb. 8, 2021) .................................................... 15

*Wood* v. *Orange Cnty.*,
    715 F.2d 1543 (11th Cir. 1983) ...................................................................... 14

**Statutes**

28 U.S.C. § 1738 ..................................................................................................... 4, 21

**Other Authorities**

Fed. R. Civ. P. 23 ..................................................................................................... 6, 17

Fed. R. Civ. P. 60 ......................................................................................... 1, 4, 11, 12

v

## PRELIMINARY STATEMENT

The Arbitration Claimants wrongly insist that they now must be rewarded for their misconduct because this Court supposedly is powerless to address the judgments that they procured immediately after class certification in defiance of this Court's orders and jurisdiction. The Court already has concluded that Arbitration Claimants' initiation of those proceedings was designed to undermine its jurisdiction and frustrate its class certification order, which subsumed Arbitration Claimants' parallel proceedings and found that the claims that Arbitration Claimants were pursuing were not arbitrable. The judgments procured by Arbitration Claimants do not control in this mandatory class proceeding with more 9,000 class members. The Western District of Missouri considered only what it described as a "ministerial task" of confirmation under the FAA. The judgments do not, and could not, purport to decide how this Court—which has exercised its jurisdiction and oversight over a mandatory class including Arbitration Claimants—should address the effect of the arbitration awards in the context of this proceeding.

Arbitration Claimants cannot explain how their position that they should be entitled to recover individually and outside of this mandatory class proceedings is in any way compatible with settled law that an ERISA fiduciary duty case of this kind may be prosecuted only on a representative basis. Nor is there is any reasonable dispute that the Court has the jurisdiction and authority to resolve all issues affecting the parties and class members before it. Moreover, as discussed below, Arbitration Claimants' basic argument that the judgments they improperly procured are inviolable is disproven by Federal Rule of Civil Procedure 60, which expressly affords courts the authority to modify judgments for any reason justifying relief.

While Arbitration Claimants' arguments are fundamentally wrong, they also are beside the point. The DST Defendants do not believe that the arbitration awards are effective under this Court's decisions and the Second Circuit law, but the relevant question is *when* the Court need

address the arbitration awards. On that issue, Arbitration Claimants' brief confirms that the Court should find that existing arbitration awards will be considered and addressed in connection with a plan of allocation to be reviewed and approved by the Court at settlement or after trial.

Arbitration Claimants acknowledge that the plan of allocation accompanying the previously proposed class settlements addressed recoveries for particular class members that accounted for judgments procured after arbitration. While Arbitration Claimants wrongly contend that the previously proposed plan of allocation—a mechanism for allocating settlement funds in compromise of disputed claims—somehow silently "recogniz[ed]" that their arbitration awards may not be disturbed, Arbitration Claimants do not dispute the fundamental point that a plan of allocation in a future settlement or after judgment may effectively address the arbitration awards. *See* ECF No. 340 at 3. Further, without a settlement or trial, the overall recoveries, if any, for the class as a whole are unknown. The Court will have made no findings on the merits, or assessments of reasonableness in connection with reviewing a settlement, as to the nature of any breach, the time period over which such a breach occurred, and the appropriate measure of damages, if any. It is of particular importance in representative ERISA cases that a determination be made at the time of a plan of allocation as to whether any recoveries fairly address *all* class members. As the Second Circuit has recognized, ERISA actions like this one require "procedural safeguards" that "ensure that any 'recovery inures to the benefit of the plan as a whole,'" *not* individual participants like Arbitration Claimants. *Cooper* v. *Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 184 (2d Cir. 2021) (quoting *Coan* v. *Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006)).

Arbitration Claimants' brief likewise highlights the risks of prematurely addressing the arbitration awards *without* a comprehensive plan of allocation. Arbitration Claimants admit, as they must, that any recovery on arbitration awards would "decrease" "the amounts that may be

recouped by the Plan in subsequent actions."  ECF No. 340 at 3 (alteration omitted).  That means that any recovery by the Arbitration Claimants, based on the wildly inconsistent liability and damages findings of various arbitrators, would diminish the alleged damages available to the Plan and the other class members.  Avoiding the prejudice that flows from such inconsistent judgments is a principal reason why ERISA claims like those here are routinely certified as mandatory classes.

We therefore respectfully submit that it is premature to resolve at this time the effect of the arbitration awards, and that the Court should find that it will address the arbitration awards in connection with reviewing and approving a plan of allocation after trial or in considering any proposed settlement.  While we therefore believe it is unnecessary for the Court to reach Arbitration Claimants' arguments now, those arguments are fundamentally meritless.

Arbitration Claimants seek to give the arbitration awards immediate effect through a hodgepodge of generalized appeals to "finality" that amount to the height of bad faith.  While Arbitration Claimants now assert that "[f]inality is fundamental to the Rule of Law," ECF No. 340 at 12, and that "a judgment may not be collaterally attacked unless it is void," ECF No. 340 at 14, Arbitration Claimants disregarded the principles they now espouse as soon as they set out to undermine the class certification order by relitigating in another court the same arguments they had unsuccessfully advanced in this Court—conduct that the Court concluded was "quite clearly . . . in frustration of" its class certification order and warranted an injunction.  ECF No. 335 at 6:21–24.  And each of the arguments made by Arbitration Claimants fails.

*First*, Arbitration Claimants insist that "it is a doctrine of law too long established to require a citation of authorities" that the judgments they improperly sought may not be disturbed.  ECF No. 340 at 2.  Arbitration Claimants ignore that they are class members in this case, and they do not—and cannot—dispute that this Court has the authority—and, as the Second Circuit has

concluded, the responsibility—to enter orders governing class members and ensuring that all parties and class members are treated equitably in this representative action.  Arbitration Claimants identify no authority for the proposition that, where a litigant attempts to frustrate a class action proceeding, the class action court is powerless to address the judgments procured by that litigant's misconduct.  In fact, the authorities on which Arbitration Claimants rely have nothing to do with class action management or resolution, and many of their cases were decided before the Federal Rules of Civil Procedure were even promulgated.  Federal Rule of Civil Procedure 60(b) expressly provides that courts may grant relief from judgments for *any* reason that justifies relief, and allows courts other than the one in which the judgment originated to afford such relief.  An "appeal to the virtues of finality" carries "little weight" in those circumstances.  *Gonzalez* v. *Crosby*, 545 U.S. 524, 529 (2005).

*Second*, Arbitration Claimants' arguments about "finality" principally draw from cases addressing claim preclusion or issue preclusion.  But those doctrines have no application here, and Arbitration Claimants do not even attempt to explain how they apply.  Further, the principles underlying these doctrines—avoiding multiple lawsuits, conserving judicial resources, and preventing inconsistent decisions—counsel *against* giving effect to arbitration awards that Arbitration Claimants sought to confirm for the admitted purpose of collaterally attacking this Court's class certification order.

*Third*, Arbitration Claimants turn to the law-of-the-case doctrine and the full-faith-and-credit statute, 28 U.S.C. § 1738.  But the law-of-the-case doctrine applies only to prior decisions in the same action, and here provides that this proceeding subsumed the claims that Arbitration Claimants were pursuing and that those claims are not arbitrable.  And the full-faith-and-credit statute has no application at all:  It applies to state-court judgments.

*Finally*, Arbitration Claimants again argue that they should be permitted to opt out of the class. This argument has been repeatedly made by Arbitration Claimants and repeatedly rejected.

## ARGUMENT

### I. Arbitration Claimants' Submission Confirms That the Arbitration Awards Should Be Addressed in the Context of a Plan of Allocation

Arbitration Claimants' submission confirms that a plan of allocation is the appropriate context in which to resolve, if necessary, the effectiveness of the arbitration awards. A plan of allocation permits the parties and the Court to develop a fair and equitable plan that accounts for all class members and, as applicable, any findings on liability or damages made by the Court. It likewise allows the Court and the parties to give effect to the Second Circuit's requirement that "procedural safeguards" be employed in a representative action to protect all plan participants and "ensure that any 'recovery inures to the benefit of the plan as a whole.'" *Cooper* v. *Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 184 (2d Cir. 2021) (quoting *Coan* v. *Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006)). Such safeguards are particularly important because ERISA imposes "a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike,'" *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 & n.54 (S.D.N.Y. 2006) (quoting *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 614 (1997)).

Arbitration Claimants acknowledge that the class settlements proposed by the parties in January 2021 specifically contemplated a plan of allocation addressing arbitration awards. *See* ECF No. 340 at 3, 18. It of course is not the case, as Arbitration Claimants argue, that the plan of allocation—a proposed mechanism for resolving disputed claims—represents an admission about the appropriate treatment of arbitration judgments that did not even exist when the settlement was proposed. *See* ECF No. 340 at 18. But the previously proposed settlements, which were denied on different grounds, provide a specific example of how a plan of allocation may address

arbitration awards.  The parties remain engaged in settlement discussions, and to the extent that any new settlement is proposed, the DST Defendants anticipate that it, too, will contain a proposed plan of allocation.  The appropriate time to decide the effect of the arbitration awards, if any, is in connection with a plan of allocation that concretely expresses how any recovery might be allocated amongst *all* class members, including the dozens of Arbitration Claimants who lost in arbitration and were awarded nothing.  Such a plan of allocation will be subject to review and approval by the Court, and to the extent that Arbitration Claimants have any objections, they may be heard at that time.

Further, depending on the plan of allocation that may ultimately be proposed, Arbitration Claimants may not have any colorable objections.  The arbitration awards themselves contemplate only limited awards for class members.  As discussed in DST's opening brief, the vast majority of the arbitration awards—nearly 70%—consist of exorbitant and duplicative attorney's fees, expenses, and costs.  *See* ECF No. 342 at 12–14.  The simple fact is that Arbitration Claimants' counsel, previously disqualified by this Court, have sought to avoid and undermine this class proceeding to rack up attorney's fees many multiples of any recovery achieved by their clients— including fees based on work supposedly performed unsuccessfully litigating in this Court.  *See id.*  The arbitration awards thus may not present any significant impediment to a reasonable plan of allocation because an allocation plan need not address attorney's fees, which are recoverable in a class action only through a proper motion and Court approval.  Rule 23 provides that, to the extent Arbitration Counsel seek fees, they must do so through a motion "at a time the court sets," and demonstrate that their work benefitted the class.  *See* Fed. R. Civ. P. 23(h); ECF No. 342 at 22–24.

In addition to recognizing that the arbitration awards may be addressed in a plan of allocation, Arbitration Claimants' brief also demonstrates how prematurely addressing the arbitration awards in the absence of a comprehensive plan of allocation would prejudice the parties and other class members. Arbitration Claimants concede, as they must, that any recovery on arbitration awards would decrease "amounts that may be recouped by the Plan" in this action. *See* ECF No. 340 at 19. As a consequence, should Arbitration Claimants recover on arbitration awards before a comprehensive plan of allocation can be considered, the amounts recoverable by the Plan, if any, on the same claims and same allegations would be reduced.[1] That outcome could lead to a disproportionate reduction in the alleged damages available to the Plan in this action, as any alleged Plan-wide damages would be offset by wildly inconsistent damages amounts determined by dozens of arbitrators. The risk of inconsistent judgments that adversely affect the parties or absent class members is precisely why courts routinely certify mandatory classes for derivative ERISA fiduciary duty claims.[2]

---

[1] This is because, under the one satisfaction rule, the Plan cannot recover for the same injury, if any, more than once. ECF No. 342 at 17–18. That is the basic principle that the Department of Labor ("DOL") recognized in arguing in *Ruane, Cunniff & Goldfarb, Inc.* v. *Payne*, No. 1:19-cv-11297-ALC, ECF No. 40 (S.D.N.Y.), that "the Plan can only recover its losses once." *Id.* at 17. Contrary to Arbitration Claimants' suggestion, nowhere in its brief in *Ruane* did the DOL "explain[] that . . . the Court may not invalidate prior judgments or awards." *See* ECF No. 340 at 19.

Further, *Beck* v. *Levering*, 947 F.2d 639 (2d Cir. 1991), does not support Arbitration Claimants' assertion that the Court must recognize the individual arbitration awards. *Beck* merely held that an action brought by plan participants or fiduciaries to recover plan losses does not bar the DOL from bringing a separate enforcement action. *See Beck*, 947 F.2d at 642; *see also Herman* v. *S.C. Nat'l Bank*, 140 F.3d 1413, 1424–26 (11th Cir. 1998). The DOL's action was consolidated with the action brought by private plaintiffs and resulted in a concurrent judgment. *Beck*, 947 F.2d at 641–42. *Beck* recognized only the unremarkable proposition that double recovery was not available in those circumstances. *Id.* at 642.

[2] *See, e.g.*, *Sacerdote* v. *N.Y. Univ.*, 2018 WL 840364, at *6 (S.D.N.Y. Feb. 13, 2018); *Beach* v. *JPMorgan Chase Bank, Nat'l Ass'n*, 2019 WL 2428631, at *9 (S.D.N.Y. June 11, 2019); *Moreno* v. *Deutsche Bank Ams. Holding Corp.*, 2017 WL 3868803, at *8–10 (S.D.N.Y. Sept. 5, 2017); *Cunningham* v. *Cornell Univ.*, 2019 WL 275827, at *7–8 (S.D.N.Y. Jan. 22,

Arbitration Claimants' arguments to avoid these consequences are based on a fundamentally incorrect premise that is contrary to the law in the Second Circuit and this Court's decisions. Arbitration Claimants assert that their recovery on arbitration awards would "*not* reduce the amount payable or owing to those who have yet recovered from DST," ECF No. 340 at 23, because the "Court *must* determine damages on an individual basis," ECF No. 355 at 7–8. That is the same basic argument—based on a misreading of *LaRue* v. *DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008)—that the Court already rejected in finding that these ERISA fiduciary duty claims may not be prosecuted on an individual basis. *Ferguson* v. *Ruane Cuniff & Goldfarb Inc.*, 2021 WL 3667979, at *4 (S.D.N.Y. Aug. 17, 2021). As the Second Circuit has repeatedly held, ERISA fiduciary duty claims like those here must be asserted on a representative and derivative basis on behalf of the Plan as a whole—not individually. *See Cooper*, 990 F.3d at 180, 184; *Coan*, 457 F.3d at 259–62.[3]

Arbitration Claimants also argue, relying on a decision they procured from the Western District of Missouri in actions that this Court has found were "quite clearly . . . in frustration of" its class certification order, *see* ECF No. 335 at 6:20–24,[4] that allowing them to recover

---

2019); *Jacobs* v. *Verizon Commc'ns Inc.*, 2020 WL 4601243, at *12–14 (S.D.N.Y. June 1, 2020), *R. & R. adopted*, 2020 WL 5796165 (S.D.N.Y. Sept. 29, 2020); *Leber* v. *Citigroup 401(k) Plan Inv. Comm*., 323 F.R.D. 145, 164–65 & n.17 (S.D.N.Y. 2017); *Douglin* v. *GreatBanc Tr. Co.*, 115 F. Supp. 3d 404, 411–12 (S.D.N.Y. 2015); *Kindle* v. *Dejana*, 315 F.R.D. 7, 12–13 (E.D.N.Y. 2016); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 143–44 (S.D.N.Y. 2010).

[3]    *See also, e.g.*, *L.I. Head Start Child Dev. Servs., Inc.* v. *Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 710 F.3d 57, 66 (2d Cir. 2013) ("It is of no moment that **recovery inuring to the Plan** may ultimately benefit particular participants.") (emphasis added); *see also Moreno*, 2017 WL 3868803, at *3 (citing *LaRue*, 552 U.S. at 263 n* (Thomas, J., concurring)) ("[A]ny monetary recovery is awarded to the Plan, not the participants.").

[4]    As DST has explained in prior submissions, ECF No. 324 at 5–8, it respectfully disagrees with the Western District of Missouri decisions on which Arbitration Claimants extensively rely.

prematurely, outside the context of a comprehensive resolution of this action, will not prejudice other class members because "the Court may calculate and account for any amounts already secured by the Arbitration Claimants in a manner that protects against any overlap." ECF No. 340 at 3–5, 11, 19, 24. But whether particular class members are permitted to recover more than once (and they cannot) is beside the point. The problem is that allowing several hundred class members to recover in individual actions decided by various arbitrators on different and irreconcilable grounds, and then subtracting those inconsistent recoveries from any alleged Plan-wide damages in this proceeding, risks prejudicing other parties and class members. *See Sacerdote* v. *N.Y. Univ.*, 2018 WL 840364, at *6 (S.D.N.Y. Feb. 13, 2018); *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. at 179 & n.54. Indeed, this Court already has determined that "[a]llowing multiple actions, each of which would seek similar or the same relief from the Defendants on behalf of the Plan, would potentially prejudice individual class members." *Ferguson*, 2021 WL 3667979, at *7; ECF No. 335 at 6:6–10.

There is no reason to invite the risk of prejudicing the parties and other class members by addressing now the recovery, if any, available in connection with the arbitration awards. Arbitration Claimants, who have sought to undermine this class proceeding by inviting contrary rulings from other courts, should not be rewarded for that conduct by receiving preferential treatment over the other approximately 9,000 class members. We thus respectfully submit that the Court should find that the effect of the arbitration awards will be resolved, as necessary, at the time a plan of allocation is considered by the Court. To the extent that the recoveries contemplated by a proposed plan of allocation require addressing the arbitration awards' effectiveness, if any, the

---

*See, e.g.*, ECF No. 340 at 3–12, 15, 19–23. DST has appealed the decisions to the Eighth Circuit. *See* ECF No. 352 at 4–5.

Court may resolve at that time the significant issues affecting Arbitration Claimants' ability to recover under the arbitration awards, including, as set forth in DST's opening brief, that the individual arbitration of these claims is improper and inconsistent with ERISA and that Arbitration Claimants procured the awards by misconduct, flouting this Court's class certification order and injunction. *See* ECF No. 342 at 18–21.

## II.   The Principles of "Finality" on Which Arbitration Claimants Rely Show That the Arbitration Awards Should Not Be Afforded Any Preclusive Effect

Arbitration Claimants insist that "the Court must recognize and honor the arbitration awards," despite the fact that Arbitration Claimants sought confirmation of those awards as part of a campaign to frustrate this Court's class certification order by procuring inconsistent judgments. ECF No. 340 at 1, 5, 24. Arbitration Claimants now assert that this Court is powerless to address the judgments they improperly procured by appealing to general policy pronouncements about "finality" from cases (many of which predate the Federal Rules of Civil Procedure) involving a variety of inapplicable legal doctrines, none of which Arbitration Claimants make any effort to apply here. None of Arbitration Claimants' authorities involve the oversight or resolution of a class action, and the sweeping and baseless assertions in their brief are disproved by the Federal Rules of Civil Procedure.

In addition, Arbitration Claimants' arguments fundamentally are beside the point. As the Court already has found, Arbitration Claimants are class members in this mandatory class proceeding, their parallel proceedings have been subsumed by this action, and they have no right to opt out to pursue individual claims that the Second Circuit has recognized run afoul of ERISA and Second Circuit law. Their claims thus will be adjudicated in this proceeding. In those circumstances, the appropriate time to consider the arbitration awards is in connection with a plan

of allocation, when Arbitration Claimants' claims can be evaluated with a view to the determinations and recoveries, if any, applicable to all class members.

A.  **Arbitration Claimants' Arguments Regarding "Finality" Have No Application Here**

Arbitration Claimants argue that this Court is powerless to address the arbitration awards based on the principle of "finality," even asserting that a final judgment "cannot again be brought into litigation upon any ground whatsoever." ECF No. 340 at 2, 12–18. The notion that a court is rendered powerless in the face of a judgment from another court is simply wrong. Federal Rule of Civil Procedure 60 expressly grants courts the authority to modify or grant relief from existing judgments for *any* reason justifying relief. Indeed, the Supreme Court has held that, in a case implicating Rule 60, an "appeal to the virtues of finality" should be afforded "little weight." *Gonzalez* v. *Crosby*, 545 U.S. 524, 529 (2005). The Court explained that finality, "standing alone, is unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality." *Id.* Arbitration Claimants ignore Rule 60 and cite to cases decided before the Federal Rules of Civil Procedure were even promulgated in 1938. As the DST Defendants demonstrated in their opening brief, the Court has ample authority to address the judgments procured by Arbitration Claimants as necessary. *See* ECF No. 342 at 24–25.

As the Second Circuit has recognized, Rule 60(b) provides this Court a "grand reservoir of equitable power (that should be) liberally applied." *Dunlop* v. *Pan Am. World Airways, Inc.*, 672 F.2d 1044, 1051 (2d Cir. 1982) (citations omitted). And, contrary to Arbitration Claimants' argument that a judgment may be set aside only "*in the court of its rendition*," ECF No. 340 at 2, 16, 20 (emphasis in original), the Second Circuit has recognized that "Rule 60(b) does not specify the correct forum for presenting a motion for relief from judgment," and where two "federal court[s] of coordinate authority" are similarly situated in their ability to resolve the issues, a

11

movant may seek relief in a different court than the one that entered the judgment.  *Covington Indus., Inc.* v. *Resintex A. G.*, 629 F.2d 730, 733 (2d Cir. 1980).  Thus, while the Court need not reach this question now, this Court plainly has authority to set aside the judgments that Arbitration Claimants improperly procured while flouting the Court's class certification decision.  *See Dunlop*, 672 F.2d at 1051 (recognizing that Rule 60 "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice").  Even the cases cited by Arbitration Claimants recognize that Rule 60(b) "counteract[s] the strong policy favoring the finality of awards and judgments."  *Bonar* v. *Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 n.8 (11th Cir. 1988); *see* ECF No. 340 at 12.

**B.    The Judgments Procured by Arbitration Claimants Do Not Control in This Mandatory Class Proceeding**

Arbitration Claimants also fail to recognize that the awards that they insist should be given immediate effect have been subsumed by this mandatory class proceeding.  The judgments procured by Arbitration Claimants do not control in this mandatory class proceeding with more 9,000 class members.  Nothing in those judgments purports to decide or control how this Court should address the effect of the arbitration awards in the context of this proceeding and, here, the Court already found that the parallel proceedings brought by Arbitration Claimants were subsumed by this action at the time it certified the class.  ECF No. 335 at 5:21–6:5 (recognizing that the class certification order "supersede[d] all litigation against the defendants pending in federal and state forums").  The Western District of Missouri stated that it viewed its decision as "effectively a ministerial task," and recognized that issues surrounding class member recoveries would need to be considered in the context of this class action.  *See Hursh* v. *DST Sys., Inc.*, 2021 WL 4526849, at *11 (W.D. Mo. Oct. 4, 2021).  None of the Arbitration Claimants' authorities address class action procedure.

Arbitration Claimants thus ignore that the Court "has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Shulman* v. *Becker & Poliakoff, LLP*, 2018 WL 4961003, at *3 (S.D.N.Y. Oct. 15, 2018) (quoting *Gulf Oil Co.* v. *Bernard*, 452 U.S. 89, 100 (1981)).  This duty and authority to supervise the class takes on particular importance in the context of ERISA fiduciary duty claims, for which the Second Circuit requires the Court and the parties to employ "procedural safeguards" that "ensure that any 'recovery inures to the benefit of the plan as a whole,'" *not* individual plan participants like Arbitration Claimants.  *Cooper*, 990 F.3d at 184 (2d Cir. 2021) (quoting *Coan*, 457 F.3d at 261).

Arbitration Claimants also ignore that, at the conclusion of this class action, whether after trial or settlement, the claims of *all* class members—including Arbitration Claimants—will be finally resolved and released.  *See Shakman* v. *Clerk of Cir. Ct.*, 969 F.3d 810, 813 (7th Cir. 2020) ("A mandatory class action settlement 'finally disposes of any right or claim an unnamed class member might have' because it has preclusive effect on the members of the class.") (alterations omitted) (quoting *Devlin* v. *Scardelletti*, 536 U.S. 1, 9 (2002)); *see also* ECF No. 342 at 24–25.  The release of all class members' claims when this action is resolved will encompass the claims and disputed judgments obtained by Arbitration Claimants in the same way as it will discharge any claims belonging to other class members.  The fact that Arbitration Claimants' purported claims will necessarily be resolved by the operation of releases and final judgment in this action further counsels in favor of addressing the status of the arbitration awards at that time—in connection with a plan of allocation.

C.    **Neither Claim Preclusion nor Issue Preclusion Applies to the Arbitration Awards**

While resorting to vague appeals to "finality," Arbitration Claimants make no effort to apply any particular legal doctrine to the facts of this case.  For example, while many of the quotations featured in Arbitration Claimants' brief are drawn from cases involving claim preclusion[5] or issue preclusion (or res judicata and collateral estoppel, respectively), Arbitration Claimants do not argue that either doctrine actually applies here.  And it is clear that neither claim preclusion nor issue preclusion applies.

With respect to claim preclusion,[6] Arbitration Claimants do not—and cannot—explain how an award from an individual arbitration purporting to seek individual damages on behalf of one Plan participant against DST could have claim-preclusive effect in a derivative action involving representative claims brought by the Plan as a whole (which has more than 9,000 participants) against multiple defendants.  Plan-wide claims were not—and could not have been— litigated in arbitration.[7]  In fact, as discussed in DST's opening brief, the individual arbitration

---

[5]    Arbitration Claimants suggest that, when the arbitration awards and judgments on their motions to confirm were entered, this Court's jurisdiction over their claims somehow evaporated.  ECF No. 340 at 17–18.  This makes no sense.  As an initial matter, as the Second Circuit has recognized, Arbitration Claimants have no individual claims for breaches of fiduciary duty under ERISA.  *Cooper*, 990 F.3d at 180.  And in any event, preclusion "is not a jurisdictional matter."  *Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005).  Nor is there any question that the Court has jurisdiction over the class as a whole and its members, including the Arbitration Claimants.  ECF No. 324 at 12–15.

[6]    Claim preclusion "bars 'later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.'"  *EDP Med. Comput. Sys., Inc.* v. *United States*, 480 F.3d 621, 624 (2d Cir. 2007) (alteration in original) (quoting *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985)).

[7]    As Arbitration Claimants' authorities recognize, claim preclusion does not bar a party from litigating a claim that was not and could not have been raised in the prior action.  *See Wood* v. *Orange Cnty.*, 715 F.2d 1543, 1548–49 (11th Cir. 1983); *In re Am. Preferred Prescription, Inc.*, 265 B.R. 27, 31 (E.D.N.Y. 2000).  Here, the Second Circuit has concluded that DST's arbitration agreement "prohibits joinder of multiple parties and class or collective actions,"

awards procured by Arbitration Claimants are not even enforceable, and thus can hardly control the disposition or management of a 9,000-member class action proceeding.  *See* ECF No. 342 at 18–20.  This Court already has found that the claims that Arbitration Claimants were pursuing are not arbitrable and that their individual arbitrations run afoul of the representativeness requirements established by the Second Circuit in *Coan*.  *Ferguson*, 2021 WL 3667979, at *4.  The Second Circuit has recognized that courts should "decline to enforce" arbitration awards procured in violation of *Coan*'s requirements.  *Cooper*, 990 F.3d at 184.[8]

---

while plaintiffs in this action are pursuing ERISA fiduciary duty claims in a "representative capacity" on behalf of the Plan as a whole, as Second Circuit law requires.  *See Cooper*, 990 F.3d at 184–85.

[8]   Arbitration Claimants' citations to cases involving claim preclusion thus are inapplicable. *Williams* v. *Ward*, 556 F.2d 1143, 1153–55 (2d Cir. 1977) (applying claim preclusion to bar plaintiff from relitigating claims that plaintiff had litigated in different district court); *Williams, Scott & Assocs. LLC* v. *Bharara*, 2021 WL 467252, at *5–7 (S.D.N.Y. Feb. 8, 2021) (applying claim preclusion to bar plaintiff from relitigating same claims against same defendants); *Chicago, R.I. & P. Ry. Co.* v. *Schendel*, 270 U.S. 611, 617 (1926) (applying claim preclusion to permit only one representative action on behalf of deceased in railway accident); *Brown* v. *State Farm Fire & Cas. Co.*, 2013 WL 6331158, at *2 (D. Conn. Dec. 5, 2013) (applying claim preclusion to bar plaintiff from litigating claims arising from same transaction already litigated against defendant); *Nemaizer* v. *Baker*, 793 F.2d 58, 59–60 (2d Cir. 1986) (applying claim preclusion to bar party from litigating claims that party had voluntarily agreed to dismiss); *Federated Dep't Stores, Inc.* v. *Moitie*, 452 U.S. 394, 399 (1981) (applying claim preclusion to bar relitigation where prior unappealed judgment was final and involved the same claims and parties); *Stoll* v. *Gottlieb*, 305 U.S. 165, 168–71, 177 (1938) (applying claim preclusion to bar party to federal court action from pursuing state court action seeking same relief against same party); *Forsyth* v. *City of Hammond*, 166 U.S. 506, 517–20 (1897) (affording preclusive effect to state court's determination of question of state law in federal court action involving same parties and claims); *Corbett* v. *MacDonald Moving Servs., Inc.*, 124 F.3d 82, 84 (2d Cir. 1997) (applying claim preclusion where parties instituted new action to relitigate claims that had been released in bankruptcy); *Sonya C. ex rel. Olivas* v. *Ariz. Sch. for the Deaf & Blind*, 743 F. Supp. 700, 709 (D. Ariz. 1990) (affording preclusive effect to prior guardianship proceedings in later suit because guardianship was not void and parties had opportunity to intervene in prior proceeding).

Arbitration Claimants also have not shown, and cannot show, that issue preclusion applies.[9] Arbitration Claimants do not even attempt to articulate any particular issues to which preclusion could apply. Nor could they. The principal issues—including that Arbitration Claimants' claims are not arbitrable and that they were not free to opt out to litigate claims subsumed by this class proceeding—were resolved by this Court *before* Arbitration Claimants procured inconsistent judgments from another court, in connection with which they acknowledged that their actions constituted "[a] collateral attack" on this Court's class certification order. ECF No. 325-6 at 6 n.3. Additionally, the arbitration awards themselves are wildly inconsistent as to both liability and damages. ECF No. 342 at 14. Issue preclusion cannot apply where there are inconsistent decisions on the same issue. *See Dish Network Corp.* v. *Ace Am. Ins. Co.*, 431 F. Supp. 3d 415, 427 (S.D.N.Y. 2019) (explaining that issue preclusion should not be applied where it would be unfair to do so, including where the judgment relied upon "is itself inconsistent with one or more previous judgments in favor of the defendant") (quoting *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 330 (1979)).[10]

---

[9] "Issue preclusion bars litigation of an issue when: '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party has a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Dish Network Corp.* v. *Ace Am. Ins. Co.*, 431 F. Supp. 3d 415, 426 (S.D.N.Y. 2019) (quoting *Ball* v. *A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006)). "A district court 'is generally accorded wide discretion to determine when offensive collateral estoppel should be applied.'" *Id.* (declining to apply issue preclusion where "neither of the principal purposes of" issue preclusion—namely, "to promote judicial efficiency and to avoid inconsistent rules of decision"—"would be served by applying it") (quoting *Remington Rand Corp.* v. *Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1486 (2d Cir. 1995)).

[10] Arbitration Claimants' citation to *Wellons, Inc.* v. *T.E. Ibberson Co.*, 869 F.2d 1166 (8th Cir. 1989), which recognizes that issue preclusion may apply on the basis of an arbitration award where the requirements for issue preclusion are otherwise satisfied, thus is inapposite. *See id.* at 1168–1169. Similarly, because Arbitration Claimants do not identify any issues subject to preclusion, their citation to *Southern Pacific Railroad Co.* v. *United States*, 168 U.S. 1 (1897), also is irrelevant. In that land dispute case, the Supreme Court held that a party was not

If anything, the doctrines of claim and issue preclusion counsel *against* giving the arbitration awards any effect where, as here, Arbitration Claimants' conduct in procuring the judgments, over which they now insist this Court has no authority, undermined each of the principles underlying those doctrines. Claim and issue preclusion are designed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen* v. *McCurry*, 449 U.S. 90, 94 (1980). Yet Arbitration Claimants specifically sought to multiply litigation and engender inconsistent results by attacking this Court's class certification order in another forum for the plain purpose of attempting to memorialize arbitration awards that they would then argue this Court was powerless to address.

On August 17, 2021, this Court certified a mandatory class under Federal Rule of Civil Procedure 23(b)(1) and specifically held that the claims that Arbitration Claimants were pursuing in individual arbitrations are not arbitrable and that Arbitration Claimants may not opt out of the class to litigate them. *Ferguson*, 2021 WL 3667979, at *3–4, *6–7. The Court further made clear that, in the context of ERISA fiduciary duty claims, "[a]llowing multiple actions, each of which would seek similar or the same relief from the Defendants on behalf of the Plan, would potentially prejudice individual class members and would threaten to create 'incompatible standards of conduct' for the Defendants." *Id.* at *7. As this Court has affirmed, its certification of a mandatory class "supersede[d] all litigation against the defendants pending in federal and state forums, such that the effect of conditional class certification is for all pending state and federal cases to become

---

permitted to relitigate an issue regarding title to property that had been previously litigated and adjudicated. *See id.* at 61–62.

Arbitration Claimants' authorities also recognize that it may be inappropriate to apply issue preclusion where a subsequent clarification in the law may have resulted in a different result in the earlier case. *Comm'r of Internal Revenue* v. *Sunnen*, 333 U.S. 591, 606–07 (1948).

part of the mandatory class and cease to exist as independent cases."  ECF No. 335 at 5:21–6:4 (citing *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 36 (E.D.N.Y. 1990)).  Once the class had been certified, Arbitration Claimants were "not free to initiate actions in other courts to litigate class certified issues."  *In re Federal Skywalk Cases*, 680 F.2d 1175, 1180 (8th Cir. 1982).

Rather than obey the class certification order, Arbitration Claimants chose to multiply proceedings, filing scores of individual actions—starting only three days after this Court certified the class—seeking to confirm arbitration awards in the Western District of Missouri.  They also wasted judicial resources by imploring another court to resolve on an individual basis claims that had been subsumed by this class proceeding, and they expressly sought from that court decisions contrary to this Court's class certification order, thereby undermining reliance on this Court.

As detailed in DST's opening brief, after the Court certified the class, and after DST stopped participating in the arbitrations consistent with the Court's class certification order, Arbitration Claimants likewise chose to proceed in arbitration and to take advantage of DST's absence, procuring additional awards and persuading various arbitrators and the AAA to close proceedings.  ECF No. 342 at 9.  When the Court certified the class, only 15 awards were not subject to further proceedings within the AAA, and no unpaid awards were enforceable or reduced to judgments.  *See Donel Corp.* v. *Kosher Overseers Ass'n of Am., Inc.*, 2001 WL 1135625, at *1 (S.D.N.Y. Sept. 26, 2001); *see also Cooper*, 990 F.3d at 184–85 (stating that courts in the Second Circuit would "decline to enforce any award" that was obtained in individual arbitration under DST's arbitration agreement "for running afoul of *Coan*").  Arbitration Claimants nevertheless took advantage of DST's adherence to this Court's orders and absence from arbitration proceedings to embark on a campaign to close arbitration proceedings and attempt to obtain judgments on awards that had been subject to further litigation.  Arbitration Claimants' brief makes

plain the improper purpose behind this conduct:  They sought to rush after class certification to seek judgments on awards so that they could argue, as they now do, that they have successfully escaped this Court's oversight, effectively obtaining an opt-out right that the Court expressly denied them in certifying the class.

Moreover, in litigating the motions to confirm, Arbitration Claimants explicitly asked the Western District of Missouri to reach conclusions contrary to those reached by this Court in certifying the class, including on the question of whether the claims they were pursuing are arbitrable.[11]  They argued to the Western District of Missouri that this Court's class certification order was "non-binding" and "irrelevant," that the Court failed to "engage with . . . fundamental issues," and that their "collateral attack is certain to succeed."  ECF No. 342 at 9.  That conduct resulted in 177 judgments issued by the Western District of Missouri, totaling about $34.45 million—almost 70% of which is made up of attorney's fees, not purported damages to their clients.[12]  ECF No. 342 at 9–10.  In enjoining Arbitration Claimants from engaging in further arbitration and litigation arising from or relating to the class's claims, this Court recognized that

---

[11]   Arbitration Claimants wrongly continue to insist that this Court was bound by Eighth Circuit law in deciding this question.  *See* ECF No. 340 at 7–8, 15.  Second Circuit law applies to federal claims properly venued in this district.  *Parvon* v. *Comm'r of Soc. Sec.*, 2020 WL 1131220, at *6 (W.D.N.Y. Mar. 9, 2020).  And federal courts do not engage in choice-of-law analysis concerning federal substantive law as between various federal circuits.  *See In re Ramaekers*, 33 F. Supp. 2d 312, 315 (S.D.N.Y. 1999).

   Further, in determining arbitrability, courts apply federal substantive law, not an arbitration agreement's choice-of-law provision (which, here, applies to the substantive claims brought in arbitration, not threshold questions like arbitrability).  *See, e.g.*, *Holzer* v. *Mondadori*, 2013 WL 1104269, at *11 (S.D.N.Y. Mar. 14, 2013).

[12]   There are a number of other arbitration awards that Arbitration Claimants have not sought to confirm in the Western District of Missouri.  As the Second Circuit has recognized, courts should "decline to enforce" arbitration awards based on the individual prosecution of ERISA fiduciary duty claims that, as here, run afoul of *Coan*'s requirements.   *Cooper*, 990 F.3d at 184–85.

this conduct by Arbitration Claimants was "quite clearly . . . in frustration of" its class certification order.  ECF No. 335 at 6:21–24.

Arbitration Claimants then asserted before the Eighth Circuit that the injunction did not reach their conduct in those actions, arguing, among other things, that this Court "appears willing to disregard the law."  ECF No. 352 at 4.  The Eighth Circuit subsequently declined to stay the briefing schedule on DST's appeals from the Western District of Missouri's orders.

In an analogous context, the Second Circuit has held "that orders of foreign courts are not entitled to comity if the litigants who procure them have 'deliberately courted legal impediments' to the enforcement of a federal court's orders," and if the litigants have sought to interfere with the Southern District of New York's jurisdiction over a proceeding.  *See Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 60 (2d Cir. 2004) (quoting *Societe Internationale* v. *Rogers*, 357 U.S. 197, 208–09 (1958)).  Nevertheless, Arbitration Claimants now argue, based on principles of "finality," that this Court is powerless to address the judgments that they procured through what they themselves called a "collateral attack" on the Court's prior decision.  Having obtained judgments contrary to this Court's order, and having argued to the Eighth Circuit that this Court's injunction did not reach their litigation in that forum, Arbitration Claimants now take the position that "a judgment may not be collaterally attacked unless it is void."  ECF No. 340 at 14.  Arbitration Claimants also assert that court decisions "are not advisory; they are obligatory."  ECF No. 340 at 1.  But they seek selective application of the principle they urge:  They chose to treat this Court's class certification order as advisory, and they now ask this Court to recognize the judgments and awards that they obtained in violation of that order as obligatory.

### D.   The Court Should Reject Arbitration Claimants' Arguments Regarding the Law-of-the-Case Doctrine and the Full-Faith-and-Credit Statute

Arbitration Claimants also inexplicably suggest that this Court should honor the arbitration awards under the law-of-the-case doctrine, and they rely on cases involving the full-faith-and-credit statute as support for their "finality" arguments. *See* ECF No. 340 at 13–14. Both arguments lack merit.

The law-of-the-case doctrine does not apply to decisions in different cases. Rather, the doctrine applies "in subsequent stages of the same case." *Aramony* v. *United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) (citations omitted). Here, proper application of the doctrine means that Arbitration Claimants should not be permitted to relitigate the same questions, including, as discussed below, the question of whether they may opt out of the class. *See Ferguson*, 2021 WL 3667979, at *7. And Arbitration Claimants' own authority shows why Arbitration Claimants should not be permitted to benefit from their efforts to relitigate in other proceedings questions that already had been resolved against them by this Court. *See, e.g.*, *Suel* v. *Sec'y of HHS*, 192 F.3d 981, 984–85 (Fed. Cir. 1999) (explaining that the law-of-the-case doctrine "ensures judicial efficiency and prevents endless litigation. Its elementary logic is matched by elementary fairness—a litigant given one good bite at the apple should not have a second.") (quoting *Perkin-Elmer Corp.* v. *Computervision Corp.*, 732 F.2d 888, 890 (Fed. Cir. 1984)).

Arbitration Claimants also rely upon cases involving the full-faith-and-credit statute, 28 U.S.C. § 1738, and refer repeatedly to the notion that the arbitration awards should be given "full faith and credit." *See* ECF No. 340 at 1 (citing *San Remo Hotel, L.P.* v. *City & Cnty. of San Francisco*, 545 U.S. 323, 336–37 (2005)), 5, 13, 15 (citing *Midessa Television Co.* v. *Motion Pictures for Television, Inc.*, 290 F.2d 203 (5th Cir. 1961)), 16 (citing *Durfee* v. *Duke*, 375 U.S. 106 (1963)). But the full-faith-and-credit statute applies only to state-court judgments, as well as

21

acts by state legislatures and records of state courts—none of which are at issue here.  *See McDonald* v. *City of W. Branch, Mich.*, 466 U.S. 284, 287–88 & n.7 (1984).  This statute "does not apply to arbitration awards."  *Id.* at 288.

## III.   The Court Should Reject Arbitration Claimants' Attempt to Reargue That They Should Be Permitted to Opt Out of the Class

Arbitration Claimants' fundamental argument that the arbitration awards should be given immediate effect, thereby permitting them to resolve their claims independently of this class proceeding, effectively seeks from the Court an opt-out right that it has repeatedly (and correctly) denied.  And Arbitration Claimants acknowledge as much, arguing yet again that "'basic fairness' obviously requires that [Arbitration Claimants] be permitted to opt out."  ECF No. 340 at 4.

Arbitration Claimants have repeatedly made this same incorrect argument, and it has been repeatedly rejected by the Court.  Arbitration Claimants made the same argument in opposing class certification and in opposing the issuance of an injunction prohibiting them from violating the Court's class certification order.  *See* ECF No. 304 at 16–23; ECF No. 320 at 2–4, 22–23, 25–26.  This Court already has considered and rejected Arbitration Claimants' argument, holding that "the Court cannot credit the Arbitration Claimants' arguments regarding the right to opt out of the class action."  *Ferguson*, 2021 WL 3667979, at *7.  That conclusion is the law of the case, and Arbitration Claimants may not relitigate it.  *See Starbucks Corp.* v. *Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 208 (2d Cir. 2013).  And Arbitration Claimants' position is particularly incredible here:  After this Court resolved at class certification that they were not permitted to opt out, Arbitration Claimants now demand an opt-out right by relying on the judgments they procured in frustration of the class certification order.

In any event, Arbitration Claimants' reliance on *County of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir. 1990), is misplaced.  *County of Suffolk* merely provides that a district

22

court may, in narrow circumstances where doing so "would not 'substantially impair or impede the ability of class members to protect their interests,'" exercise its discretion to allow "a ***single class member*** the option of exclusion from a class." *Id.* at 1304–05 (alterations omitted) (emphasis added) (quoting Fed. R. Civ. P. 23(b)(1)(B)).   But this Court already found that permitting Arbitration Claimants to opt out "would potentially prejudice individual class members and would threaten to create 'incompatible standards of conduct' for the Defendants." *Ferguson*, 2021 WL 3667979, at *7.   Accordingly, even if Arbitration Claimants were permitted to relitigate the question of whether they should be permitted to opt out—which they should not be—the narrow exception identified in *County of Suffolk* has no application here.

## CONCLUSION

DST respectfully submits that the Court should hold in abeyance any determination as to the status of the arbitration awards and consider the effect of such awards, if necessary, in connection with a plan of allocation presented with a proposed settlement or after trial.

Dated:  January 26, 2022
        New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

*/s/ Lewis R. Clayton*
Lewis R. Clayton (lclayton@paulweiss.com)
Jessica S. Carey (jcarey@paulweiss.com)
Jeffrey J. Recher (jrecher@paulweiss.com)
Nina M. Kovalenko (nkovalenko@paulweiss.com)
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

*Counsel for Defendants DST Systems, Inc., the Advisory Committee of the DST Systems, Inc. 401(k) Profit Sharing Plan, and the Compensation Committee of the Board of Directors of DST Systems, Inc.*

24