UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL L. FERGUSON, MYRL C. JEFFCOAT, and DEBORAH SMITH, on behalf of the DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RUANE CUNNIFF & GOLDFARB INC., DST SYSTEMS, INC., THE ADVISORY COMMITTEE OF THE DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN, and THE COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF DST SYSTEMS, INC.,<br><br>Defendants. | Case No. 17-CV-06685 (ALC)(BCM) |

## ESI DISCOVERY AND ESI PROTOCOL

Pursuant to paragraph 15 of the Court's July 12, 2022 Coordinated Case Management Order (ECF No. 396), the parties in the above-captioned matter state as follows:

1. The potential sources of relevant ESI and potentially appropriate custodians include, but are not limited to, the persons and entities identified as likely to have discoverable information in the parties' Rule 26(a)(1) initial disclosures, which the parties have already exchanged. The parties represent to the Court that they have taken steps, including but not limited to implementing appropriate litigation holds, to preserve relevant ESI.

2. The parties have agreed to comply with the Agreement Regarding Production Format, *i.e.*, ESI Protocol, set forth below, to ensure the proper form of production of ESI as well as hard copy documents. The parties agree to meet and confer to resolve any issues in ESI

search and review procedures that may arise in responding to the parties' requests for production of documents.

3. At this time, the parties do not anticipate any difficulties regarding discovery or production of ESI and thus do not seek any limitations on the same. The parties have not developed cost estimates for discovery and production of ESI at this moment. However, the parties will work cooperatively to contain costs.

* * *

The following constitutes the parties' agreed-upon ESI Protocol:

### AGREEMENT REGARDING PRODUCTION FORMAT

1. This Agreement Regarding Production Format ("Agreement") specifies the form in which the parties in the above-captioned matter agree to produce Hard Copy Documents and Electronic Files for use in this litigation.

2. The production of Hard Copy Documents or Electronic Files in a manner consistent with the specifications set forth in this Agreement shall, absent exceptional circumstances, be sufficient to satisfy a Producing Party's obligation to produce its materials in reasonably useable form and as they are maintained in the ordinary course of business.

3. The parties will use best efforts to comply with the requirements set forth in this Agreement and will agree to reasonable modifications where appropriate.

4. The parties agree to provide a copy of this agreement to any third parties producing Hard Copy Documents and Electronic Files in response to a subpoena issued in this litigation. The parties will request that such third parties use their best efforts to comply with the requirements set forth in this Agreement.

5. The parties agree that should a dispute arise out of the implementation of this Agreement, the parties shall meet and confer in an attempt to resolve the dispute.

6. Nothing in this Agreement shall limit a party's right to object to any discovery pursuant to any applicable rule or law, or to modify this Agreement through agreement of the parties or through Court intervention.

**I.     Definitions**

    **A.** "Producing Party" means any party (including a third party) that provides Hard Copy Documents, Electronic Files, or other materials in connection with this litigation.

    **B.** "Receiving Party" means a party that is the recipient of Hard Copy Documents, Electronic Files, or other materials from a Producing Party in connection with this litigation.

    **C.** "Hard Copy Document" means a document that is maintained in hard copy, paper, or other tangible form.

    **D.** "Electronic File" means an electronically stored data-containing object that has been initially created in digital form in the usual course of business. Electronic Files include, but are not limited to, email (*e.g.*, .msg), messaging data (*e.g.*, SMS, iMessages, Instant Messenger), spreadsheet files (*e.g.*, .xls files), slide presentation files (*e.g.*, .ppt), word processing files (*e.g.*, .doc files), audio or audiovisual files (*e.g.*, .wav, .mpeg), image files (*e.g.*, .pdf, .tif, .jpg), and container files (*e.g.*, .pst, .zip).

    **E.** "Structured Database Systems" means databases, such as, but not limited to, Human Resource Information Systems, accounting systems, people management systems, and time management systems. As used in this agreement, the term does not include documents stored on systems like Microsoft SharePoint, individual emails stored in an email system, or individual electronic files, such as spreadsheets, word processing, or presentation documents.

**II.    Production Format Specifications**

    **A.     General Form of Production**. Except as provided in Sections II.B, II.C, and II.H, all Electronic Files and Hard Copy Documents shall be produced as single-page, black and white, Group IV TIFF image files with the associated text and metadata specified in this Section II.A. The parties may, however, elect to produce Electronic Files and Hard Copy Documents in color to the extent those documents contain color.

1.      **Image Requirements**.  Digital images shall be produced as Group IV black and white (or, as stated in the preceding paragraph, color) single-page TIFF images files of at least 300 dpi resolution.  The page size of a TIFF image file shall be 8.5 x 11 inches unless, in the reasonable judgment of the Producing Party, a particular document requires a different page size.  Each TIFF image shall be branded with a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length of not less than six numeric digits (including zero-padding) across the entire production; (3) be sequential within a given document; and (4) include at least a three-letter prefix identifying the Producing Party.  Such Bates number must be applied in a manner that does not obscure the underlying document.  Each TIFF image file shall be named with the same page-level bates number branded on the underlying image.  If required, suffix numbering can be used to interleave any individual images or documents that required extra processing (*e.g.*, processing exceptions).

2.      **Text Requirements**.  All Electronic Files and Hard Copy Documents shall be produced with a corresponding document-level multi-page text file (*i.e.*, one .TXT file per Electronic File or Hard Copy Document, not one text file per page).  The text file for an Electronic File shall be created by extracting text directly from the underlying native file, unless: (1) the Electronic File must be redacted prior to production, in which case the text file shall be generated by applying industry standard OCR technology to the redacted version of the Electronic File; or (2) the text in the Electronic File cannot easily be extracted (*e.g.*, text within a JPEG image), in which case the text file shall be generated by applying industry standard OCR technology to the TIFF image version of the Electronic File.  The text file for Hard Copy Documents shall also be created using industry standard OCR technology, and the parties agree that there is no guarantee that each page of a hardcopy document shall yield useable OCR text.  Each text file shall be named with the beginning Bates number of the Electronic File or Hard Copy Document to which the text file relates.

**3.** **Metadata Requirements**.  Electronic Files shall be produced with metadata specified in Exhibit A to this Agreement.  Redacted or Hard Copy Documents shall be produced with the metadata specified in Exhibit B to this Agreement.

**B.** **When Native Production Required**.  Unless redaction is necessary, spreadsheet files, including but not limited to Excel and .csv files, shall be produced in native file format.  Privileged information in spreadsheet files can be redacted in native file format where possible.

**C.** **When Native Or Color Image Reproduction May Be Requested**.  A Receiving Party may request that an Electronic File produced in black and white TIFF image files pursuant to Section II.A be reproduced as color JPG image files meeting the specifications described in Section II.A.1 and branded with the same Bates numbers from the original production to allow for replacement of the corresponding black and white TIFF image files.  In addition to, or as an alternative to requesting color image files, a Receiving Party may request that an Electronic File originally produced in TIFF image files pursuant to Section II.A be produced in native version.  A Producing Party may consent to a request for color image or native version file production, but otherwise is required to honor such a request only where (1) the TIFF version of the Electronic Document omits material, substantive content included in the native file or where the TIFF version suffers material, adverse formatting changes as a result of the conversion to TIFF, such as the loss of meaningful color distinctions, loss of material at the margins, or material loss of detail in digital graphics; or (2) the Producing Party fails to produce the document as TIFF images in a reasonably acceptable format pursuant to the requirements of Section II.A.1, the Receiving Party requests reproduction to conform with those requirements, and the Producing Party is unable or unwilling to comply.

**D.** **Production Specifications for Native Files**.  When producing an Electronic File in native format pursuant to Section II.B or II.C, a Producing Party shall:

**1.** Provide a corresponding single-page TIFF placeholder stating "REFER TO NATIVE FILE" or a similar statement.  The placeholder shall be branded with a Bates number meeting the requirements of Section II.A.1.

    **2.**  Name the produced version of the electronic file with the Bates number affixed to the TIFF placeholder corresponding to the electronic file.

    **3.**  For each Electronic File provided in native format, provide the text and metadata, including the original file name of the underlying Electronic File, pursuant to the specification defined by Section II.A of this Agreement.

  **E.**  **Load Files**.  All productions of Electronic Files and Hard Copy Documents shall be accompanied with data load files, image load files, and associated extracted/OCR text files. Each Producing Party shall provide data and image load files in a format that is reasonably necessary to allow a Receiving Party to load productions to its document review or case management database.  The Receiving Party may identify to the Producing Party its preferred load file format, including preferred delimiters and target document hosting platform (*e.g.*, Plaintiff intends to use Relativity for its hosting platform).

  **F.**  **Family Relationships of Electronic Files**.  Producing Parties will take commercially reasonable efforts to preserve parent-child relationships between Electronic Files (*e.g.*, the association between an attachment and its parent e-mail, or a spreadsheet embedded within a word processing document).  Producing Parties will assign sequential Bates numbers to all files within a parent-child group, and will provide accurate attachment ranges for those files. Producing Parties will inform Receiving Parties of any known issues regarding family relationships in its document productions.

  **G.**  **Scanning and Unitization Requirements for Hard Copy Documents**.  The parties agree to use reasonable efforts to ensure that hard copy documents are logically unitized such that: (1) multiple, distinct documents are not merged into a document range; and (2) distinct documents are not split into multiple document ranges.  The parties agree to use reasonable efforts to maintain the order of Hard Copy Documents by scanning and Bates numbering those documents in sequential order.  This provision does not obligate any party to produce documents in a manner other than in which those documents were kept in the ordinary course of business.

H.      **Production of Messaging Data (Text Messages, Voicemail Data, Audio Data, Video Data, etc.)** The Producing Parties agree to conduct reasonable searches for and produce non-privileged data responsive to the parties' requests for production from sources where such responsive data is likely to exist, which may include audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (*e.g.*, GoTo Meeting, WebEx), and related/similar technologies. However, such data, logs, metadata or other files related thereto, as well as other less common but similar data types, shall be produced after consultation with and written consent of the Receiving Party about the format for the production of such data.

I.      **Structured Database Systems**. Responsive data from Structured Database Systems, including but not limited to Human Resource Information Systems, accounting systems, people management systems, and time management systems, will be extracted and produced in a format that can be easily interpreted and used by the Receiving Party. If possible, the data will be produced in Excel documents. If the data cannot be produced in Excel, it will be produced in a delimited text (.csv) format with data field headers in the first row. A key of the field header names and descriptions of information contained in each field will be produced along with the data. The Receiving Party reserves the right to pursue production of the original database. Nothing in this Agreement requires the parties to create or modify any information or files if requested information does not already exist, cannot be located after a reasonable search, or is not kept in the ordinary course of business.

J.      **Preservation of Metadata**. The Parties shall use reasonable efforts to preserve metadata associated with Electronic Files, and Producing Parties shall use reasonable efforts to preserve this metadata when Electronic Files are collected and processed for production to a Receiving Party. The parties also acknowledge that in some circumstances it may be more efficient to collect Electronic Files informally, such as by making a simple electronic copy of a file discovered during the course of a witness interview. Accordingly, the parties may agree on a

case-by-case basis to produce and collect Electronic Files informally. If the original metadata of these files becomes of material importance during the course of the litigation, the parties shall meet and confer regarding how to address that issue. Nothing in this Agreement is intended to permit a party, absent permission from the Receiving Party, to convert a file that is ordinarily maintained as an Electronic File to a Hard Copy Document for production in this litigation.

K.  **Treatment of Document Families with Non-Responsive or Wholly Privileged Family Members**. If a family of documents contains any responsive, non-privileged information or document(s), then, subject to any objections and redactions based on privilege (which may include slipsheets for wholly privileged family members), the entire family shall be produced, regardless of whether that family also includes non-responsive or privileged information or documents.

L.  **Error Files**. If a responsive Electronic File cannot be converted to TIFF without error due to corruption or some other issue, the Electronic File will be produced in native pursuant to the requirements of Sections II.B and II.D. However, a Producing Party shall not be required to produce Electronic Files that have internal corruption, nor is there a requirement to produce zero file size, virus infected, and non-document operating system files.

M.  **Production of Container Files**. The parties need not produce container files (*e.g.*, .zip) so long as the responsive contents of those files are produced in accordance with the specifications of this Agreement.

N.  **Hidden Text, Track Changes and Password-Protected Files**. Unless redactions are necessary to remove privileged material, Electronic Files produced in TIFF shall be produced so that hidden text and track changes are showing and reflected in both the image and text files. Producing Parties shall use reasonable efforts to resolve any password-protection issues as they arise during Electronic File processing, and shall inform the Receiving Party of the existence of Electronic Files that could not be processed due to password protection issues.

O.  **De-duplication**. A Producing Party may de-duplicate its production globally (*i.e.*, across all files and sources) using industry standard technology. A Producing Party may

elect to use industry standard message threading technology to remove email messages that are wholly subsumed in a later email communication, unless the later email communication does not contain an attachment to any of the earlier email communications.  Email files and attachments shall be de-duplicated on message unit or family basis.

**III.     Method of Production**

    **A.**     Production of Electronic Files and/or Hard Copy Documents electronically via secure FTP is strongly preferred rather than physical media.  Each production shall be assigned a sequential volume number that identifies the party to whom the volume is attributable.  When uploading to FTP, container zips should be uploaded rather than individual files.

    **B.**     A party shall attach to each production of Electronic Files and/or Hard Copy Documents a cover letter specifying:  (1) the volume or volumes comprising the production and (2) the Bates range or ranges of the materials being provided on each volume and whether those bates ranges contain any known gaps.

    **C.**     Production of Electronic Files and Hard Copy Documents as set forth in this Agreement, including Exhibit A, need not be organized and labeled to correspond to specific requests or categories of requests.

**IV.     Inadvertent Production**

    The inadvertent production by any party (including third parties) of any material constituting or containing attorney-client privileged information or work-product, or constituting or containing information protected by applicable privacy laws or regulations, standing alone, shall not be deemed to be either a specific or blanket waiver or forfeiture of the attorney-client privilege, attorney work-product doctrine or other applicable privacy law or regulation ("Inadvertently Disclosed Information").  If a Producing Party makes a claim of inadvertent disclosure, the Receiving Parties shall, within 5 business days, (a) promptly return or destroy the Inadvertently Disclosed Information and all copies or summaries thereof in its possession; (b) delete any electronic versions of the Inadvertently Disclosed Information and all copies or summaries from any data source, or any database they maintain; (c) retrieve all electronic and

paper copies and all summaries of the Inadvertently Disclosed Information provided to any third parties, including experts, or ask such third parties to destroy the copies and summaries;

(d) destroy any notes that reveal the substance of the Inadvertently Disclosed Information; and

(e) make no use of the information contained in the Inadvertently Disclosed Information or copies or summaries thereof.  After notification that such Inadvertently Disclosed Information has been returned or destroyed, the Producing Party shall produce a privilege log with respect to the Inadvertently Disclosed Information.  A Receiving Party may move the Court for an Order compelling production of the Inadvertently Disclosed Information only after a good faith meet and confer discussion between the parties regarding whether the Inadvertently Disclosed Information should be produced.  The motion shall not assert as a ground for entering such an Order the fact of the inadvertent production.  The Producing Party retains the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Information. Nothing in this Order shall limit the right of any party to request an *in camera* review of Inadvertently Disclosed Information.

## V. Confidentiality

The parties incorporate the provisions of their Stipulated Protective Order (ECF No. 119). For the avoidance of doubt, nothing in this Agreement shall supersede or alter any discovery confidentiality agreement and/or protective order concerning protection of confidential or otherwise sensitive information that may be entered by the Court.

## VI. Cost of Production

Each party shall bear its own costs of production, but no party waives the right to seek reimbursement in the future for costs of production, pursuant to the Federal Rules of Civil Procedure, other applicable rules, or other applicable case law.

## **EXHIBIT A**

The chart below describes the fields to be produced in generic, commonly used terms which the Producing Party is to adapt to the specific types of Electronic Files it is producing, to the extent such fields are included in the original Electronic Files and can be customarily extracted as part of the electronic data discovery process (see II.A.3 above).  Any ambiguity about a field is to be discussed with the Receiving Party prior to processing and production.

| Field Name | Description |
|---|---|
| PRODBEG | First Bates number of Electronic File or Hard Copy Document |
| PRODEND | Last Bates number of Electronic File or Hard Copy Documents |
| PRODBEGATT | First Bates number of the first page in a parent/child relationship |
| PRODENDATT | Last Bates number of the last page in a parent/child relationship |
| PRODVOL | Name of production volume on which Electronic or Hard Copy File is produced |
| FROM | The Names and SMTP email addresses of all individuals included on the From line of an email or calendar item |
| TO | The Names and SMTP email addresses of all individuals included on the To line of an email or calendar item |
| CC | The Names and SMTP email addresses of all individuals included on the CC line of an email or Optional line of a calendar item |
| BCC | The Names and SMTP email addresses of all individuals included on the BCC line of an email |
| SUBJECT | Subject line of email or calendar item |
| SENTDATETIME | Date email was sent (MM/DD/YYYY HH:MM:SS) |
| APPSTARTDATETIME | Appointment Start Date Time (MM/DD/YYYY HH:MM:SS) |
| APPENDDATETIME | Appointment End Date Time (MM/DD/YYYY HH:MM:SS) |
| NATIVELINK | Link to native file, if any, produced on the media received (*e.g.*, link to Excel produced in native) |
| FILE_EXTENSION | File extension of the email, attachment, or loose e-file |
| FILE_NAME | The file name of the email attachment or loose e-file |
| CONFIDENTIAL | Populate with confidentiality designation |
| PROPERTIES | Populate with "redacted native" if redacted native file is produced |
| FILEAUTHOR | The author of the loose e-file or e-file attachment from the author property of the file |
| LASTMODDATETIME | The last-modified date of the email attachment or loose e-file (MM/DD/YYYY HH:MM:SS) |
| MD5HASH or SHA1HASH | MD5 or SHA1 Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) |

**EXHIBIT B**

The following chart describes the metadata to be included with the production of Redacted or Hard Copy Documents (see II.A.3 above).

| Field Name | Description |
| --- | --- |
| PRODBEG | First Bates number of Electronic File or Hard Copy Document |
| PRODEND | Last Bates number of Electronic File or Hard Copy Documents |
| PRODBEGATT | First Bates number of the first page in a parent/child relationship |
| PRODENDATT | Last Bates number of the last page in a parent/child relationship |
| PRODVOL | Name of production volume on which Electronic or Hard Copy File is produced |
| SENTDATETIME | Date email was sent (MM/DD/YYYY HH:MM:SS) |
| APPSTARTDATETIME | Appointment Start Date Time (MM/DD/YYYY HH:MM:SS) |
| APPENDDATETIME | Appointment End Date Time (MM/DD/YYYY HH:MM:SS) |
| NATIVELINK | Link to native file, if any, produced on the media received (*e.g.*, link to Excel attachment produced in native) |
| FILE_EXTENSION | File extension of the email, attachment, or loose e-file |
| CONFIDENTIAL | Populate with confidentiality designation |
| PROPERTIES | Populate with "redacted native" if redacted native file is produced |
| LASTMODDATETIME | The last-modified date of the email attachment or loose e-file (MM/DD/YYYY HH:MM:SS) |
| MD5HASH or SHA1HASH | MD5 or SHA1 Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) |

Dated: July 29, 2022
         New York, New York

AGREED TO BY:

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**

By: /s/ Lewis R. Clayton
Lewis R. Clayton
Jessica S. Carey
Jeffrey J. Recher
Nina M. Kovalenko
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:  (212) 373-3215
Facsimile:  (212) 492-0215
Email:  lclayton@paulweiss.com

*Attorneys for Defendants DST Systems, Inc.,
the Advisory Committee of the DST Systems, Inc.
401(k) Profit Sharing Plan, and the Compensation
Committee of the Board of Directors of DST Systems, Inc.*


**MILLER SHAH LLP**

By:  /s/ Alec J. Berin
James E. Miller (pro hac vice)
Laurie Rubinow
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
        lrubinow@millershah.com

James C. Shah
Alec J. Berin (pro hac vice)
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
        ajberin@millershah.com

Monique Olivier (pro hac vice)
OLIVIER SCHREIBER & CHAO LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 484-0980
Email: monique@osclegal.com

*Attorneys for Plaintiffs, the Plan and the Class*


**SCHULTE ROTH & ZABEL LLP**

By: /s/ Frank W. Olander
Robert J. Ward
Frank W. Olander
919 Third Avenue
New York, New York 10022
Tel: (212) 756-2000
robert.ward@srz.com
frank.olander@srz.com
*Attorneys for Defendant Ruane, Cunniff & Goldfarb Inc.*



SO ORDERED: _____
                        Barbara Moses
                        U.S. Magistrate Judge