**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL L. FERGUSON, MYRL C. JEFFCOAT and DEBORAH SMITH, individually and as representatives of a class of similarly situated plan participants and beneficiaries, and on behalf of the DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN, <br><br> Plaintiffs, <br><br> v. <br><br> RUANE CUNNIFF & GOLDFARB INC., DST SYSTEMS, INC., THE ADVISORY COMMITTEE OF THE DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN and THE COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF DST SYSTEMS, INC., <br><br> Defendants. | Case No. 1:17-cv-06685-ALC-BCM |
| MICHAEL L. FERGUSON, MYRL C. JEFFCOAT and DEBORAH SMITH, individually and as representatives of a class of similarly situated plan participants and beneficiaries, and on behalf of the DST SYSTEMS, INC. 401(K) PROFIT SHARING PLAN, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT D. GOLDFARB, <br><br> Defendant. | Case No. 1:20-cv-07092-ALC-BCM <br><br><br><br><br><br><br><br><br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND RELATED RELIEF** |

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................. iii

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND ......................................................................................................... 4

      A.    *Cooper*, *Ferguson I*, and *Ferguson II* ...................................................... 4

      B.    Related Proceedings .......................................................................................... 5

      C.    Investigation and Discovery Efforts .............................................................. 5

      D.    Settlement Discussions ..................................................................................... 6

      E.    The Proposed Settlement ................................................................................. 7

      F.    Notice Plan and Fairness Hearing ................................................................. 8

III.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............................... 9

      A.    Standard of Review ........................................................................................... 9

      B.    The Court is Likely to Grant Final Approval of the Proposed Settlement ........... 10

            1.    The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval ...... 11

                  i.    Adequacy of Representation ........................................................ 11

                  ii.   The Settlement is the Result of Good Faith, Arm's-Length
                        Negotiations by Well-Informed and Experienced Counsel .......... 11

                  iii.  Adequacy of Relief ...................................................................... 13

                        a.    The costs, risks, and delay of trial and appeal ................. 13

                        b.    The effectiveness of the proposed method of distributing
                              relief ...................................................................................... 16

                        c.    The terms of the proposed award of attorneys' fees ......... 17

            2.    The Remaining *Grinell* Adequacy Factors Weigh in Favor of
                  Preliminary Approval .................................................................................. 17

                  i.    The Reaction of the Class to the Settlement ............................... 18

|  |  | ii. | The Ability of Defendants to Withstand a Greater Judgment....... 18 |
|  |  | iii. | The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Risks ........................ 19 |

IV.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.................................... 20

V.    CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE......................... 22

    A.    The Settlement Class Satisfies Rule 23(a)'s Requirements................................ 22

    B.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(1)...... 22

    C.    Miller Shah and Olivier Schreiber Should Be Appointed as Class Counsel ........ 23

VI.    THE PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED......... 24

VII.    CONCLUSION.................................................................................................... 25

## TABLE OF AUTHORITIES

<u>Page(s)</u>

<u>Cases</u>

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................... 22, 23

*City of Detroit v. Grinell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .................................................................. 10 13, 17, 18

*Cunningham v. Cornell Univ.*,
    2019 WL 275827 (Jan. 22, 2019) ................................................................................ 23

*Griffin v. Flagstar Bancorp, Inc.*,
    2013 WL 4779017 (E.D. Mich. July 29, 2013) ......................................................... 22

*Guevoura Fund Ltd. v. Silverman*,
    2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ........................................................... 24

*In re AOL Time Warner*,
    2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) ......................................................... 25

*In re AOL Time Warner ERISA Litig.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ......................................................... 18, 25

*In re Beacon Assocs. Litig.*,
    282 F.R.D. 315 (S.D.N.Y. 2012) ................................................................................ 23

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018) ..................................................................... 9, 24

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov 8, 2010) ......................................................... 12, 19

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) .................................................................. *passim*

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................... *passim*

*In re IPO Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................................ 10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    327 F.R.D. 483 (S.D.N.Y. 2008) ................................................................................ 19

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................... 21, 25

*In re MF Global Holdings*,
   310 F.R.D. 230 (S.D.N.Y. 2015) ............................................................... 22

*In re PaineWebber Ltd. P'ships Litig.*,
   *171 F.R.D. 104 (S.D.N.Y. 1997)* ............................................................... 12

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................ *passim*

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
   2012 WL 1964451 (D.N.J. May 31, 2012) ................................................ 13

*In re Schering-Plough Corp. ERISA Litig.*,
   589 F.3d 604 (3d Cir. 2009) ..................................................................... 23

*In re US Food Service Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013) ..................................................................... 22

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ............................................ 12

*In re Wachovia Corp. ERISA Litig.*,
   2011 WL 7787962 (W.D.N.C. Oct. 24, 2011) .......................................... 13

*In re Warner Chilcott Ltd. Sec. Litig.*,
   2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) .......................................... 18

*In re Worldcom, Inc. ERISA Litig.*,
   2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ........................................... 25

*Jander v. Ret. Plans Comm. of IBM*,
   2021 WL 3115709 (S.D.N.Y. July 22, 2021) ............................................. 4

*Larson v. Allina Health System*,
   2019 WL 6208648 (D. Minn. Nov. 21, 2019) ........................................... 25

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................... 14

*Mehling v. New York Life Ins. Co.*,
   246 F.R.D. 467 (E.D. Pa. 2007) ............................................................... 21

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ................................................................................. 21

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972) ................................................................................... 19

*Oppenlander v. Standard Oil Co.,*
    64 F.R.D. 597 (D. Colo. 1974) .............................................................................. 14

*Plummer v. Chem. Bank,*
    668 F.2d 654 (2d Cir. 1982) ................................................................................... 15

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.,*
    2015 WL 6964973 (E.D.N.Y. Nov. 10, 2015) ...................................................... 24

*Roach v. T.L. Cannon Corp.,*
    778 F.3d 401 (2d Cir. 2015) ................................................................................... 22

*Torres v. Gristedes Operating Corp.,*
    2010 WL 2572937 (S.D.N.Y. June 1, 2010) ........................................................ 10

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.,*
    2018 WL 3000490 (C.D. Cal. Feb. 6, 2018) ........................................................ 25

*Wal-Mart Stores, Inc. v. Visa U.S.A.,*
    396 F.3d 96 (2d Cir. 2005) ................................................................................. 9, 12

## Statutes

29 U.S.C. § 1109 ..................................................................................................................... 16

28 U.S.C. § 1332 ............................................................................................................. *passim*

29 U.S.C. § 1453 ....................................................................................................................... 8

29 U.S.C. §§ 1711–15 .............................................................................................................. 8

## Rules

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

Plaintiffs, Michael L. Ferguson, Myrl C. Jeffcoat and Deborah Smith ("Plaintiffs"), respectfully submit this Memorandum in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement and Related Relief ("Motion"), which seeks entry of an Order: (1) preliminarily approving the proposed Settlement memorialized in the Settlement Agreement and Release ("Settlement Agreement") dated July 14, 2023;[1] (2) certifying the Settlement Class;[2] (3) approving the Parties' proposed Notice Plan; and (4) scheduling a Fairness Hearing no later than 74 days after the entry of a Preliminary Approval Order, and no less than 100 days after the submission to the Court of this Motion (October 23, 2023).

## I.    **INTRODUCTION**

Since 2016, participants in the DST Systems, Inc. 401(k) Profit Sharing Plan ("Plan") have sought relief from the Plan's fiduciaries for alleged breaches of fiduciary duty under the Employee Retirement Income Security Act ("ERISA").  *See, e.g.*, *Cooper v. Ruane, Cunniff & Goldfarb Inc.*, Case No. 1:16-cv-01900 (S.D.N.Y.) ("*Cooper* Action").  This includes multiple actions filed in this District, as well as other judicial and arbitral forums in Missouri.  In addition, the Secretary of the United States Department of Labor ("Secretary") filed an action in this District in 2019 seeking relief on behalf of the Plan under ERISA for alleged losses arising out of overlapping conduct by the Plan's fiduciaries.  *See Su v. Ruane, Cunniff & Goldfarb Inc., et al.*, No. 1:19-cv-09302-ALC-BCM (S.D.N.Y.) ("*Su* Action").  As the record in these actions amply discloses, the parties in each action and the related proceedings have thoroughly litigated both

---

[1] Undefined capitalized terms shall have the same meaning as in the Settlement Agreement.

[2] The membership of the Settlement Class is identical to that of the class certified in the Court's Memorandum and Order dated August 17, 2021.  (ECF No. 311, "Certification Order.")  The only changes in the definition of the Settlement Class clarify that the Plan fiduciaries excluded from the class are those who served as fiduciaries during the Class Period.

substantive and procedural issues.  Indeed, this has resulted in several appeals in two federal Circuit Courts, claims filed between parties named as defendants in these actions, hundreds of individual arbitrations, and substantial motion practice across multiple fora on myriad issues arising in each of these actions, including dispositive and mandatory class certification motions. The parties thoroughly investigated the merits and coordinated voluminous discovery across these actions.  Finally, the parties engaged in numerous mediations with David Geronemus and Robert A. Meyer, two of the most well-respected mediators in the country, who have substantial experience with complex ERISA actions, over the course of several years.  These efforts resulted in the painstakingly-negotiated global Settlement, entered into among Plaintiffs, on behalf of the Settlement Class; Ruane, Cunniff & Goldfarb Inc.; Robert D. Goldfarb; DST Systems, Inc.; the Advisory Committee to the Plan; the Compensation Committee of the Board of Directors of DST; and, as to certain provisions applicable to them, the Secretary, Arbitration Counsel, and *Canfield/Mendon* Counsel.  The proposed Settlement, along with a Joint Stipulation of Settlement and Release of Claims to be filed concurrently in *Su*, would resolve <u>all</u> related proceedings, including all federal actions and arbitrations, and provide substantial relief to the Plan and Settlement Class.

Specifically, the Parties in the above-captioned actions, as well as the Secretary, Arbitration Counsel, and *Canfield/Mendon* Counsel in parallel proceedings, have agreed to a proposed Settlement that would resolve all claims arising out of the conduct underlying these ERISA actions and afford total relief of $124,625,000.00, including recovery to the Settlement Class[3] and Civil Penalties assessed by the Secretary of Labor under 29 U.S.C. § 1132(l).

---

[3] The "Settlement Class" is defined to include all Participants in the Plan during the Class Period, except: (i) all individuals who during the Class Period were members of the Advisory Committee; (ii) all individuals who during the Class Period were members of the Compensation

In light of the substantial relief that would be provided by the Settlement and the risks and delay threatened by continued litigation, the current state of which includes actions in several federal courts, multiple pending appeals, and hundreds of arbitrations and associated federal and state court litigation, Class Counsel believe the proposed Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class.  Resolving the case (and, by agreement of the parties, all related proceedings) at this juncture allows the parties to avoid continued and costly litigation that would deplete resources that could otherwise be used for the resolution of this action to the benefit of the Plan, and which could result in a recovery of substantially less than the relief provided by the Settlement.

All prerequisites for preliminary approval of the Settlement are satisfied.  As such, Plaintiffs' Motion should be granted and notice should be provided to the Settlement Class in accordance with the notice plan ("Notice" or "Notice Plan") set forth in the Settlement Agreement and [Proposed] Preliminary Approval Order.

The Court previously certified a class in these actions under Rules 23(a) and 23(b)(1), and, as explained further below, the same circumstances support certification of the Settlement Class (the membership of which is identical to that of the class in the Certification Order) through entry of a final judgment.  Certification will facilitate the effectuation of the Notice Plan and an orderly distribution of the Settlement recovery.

The proposed Notice Plan—which consists of (1) an individual notice to be emailed and/or mailed to Settlement Class members at their last known addresses, (2) the creation of a

---

Committee; (iii) any other individuals who served as fiduciaries of the Plan during the Class Period; and (iv) the beneficiaries, immediate family members, estates and executors of (i)-(iii). The specific individuals excluded from the class are listed in Exhibit G to the Settlement Agreement.

dedicated website to share information with Settlement Class members, as well as a toll-free telephone number to which Settlement Class members can direct questions about the Settlement, and (3) publication in *USA Today* and *PRNewswire*, a national wire service—satisfies the requirements of Rule 23 and due process and is consistent with that approved by courts and implemented in similar settled ERISA actions. *See Jander v. Ret. Plans Comm. of IBM*, 2021 WL 3115709, at *2 (S.D.N.Y. July 22, 2021) (approving ERISA settlement where notice was carried out by mailing, publication in *USA Today* and *PR Newswire*, and publicly available settlement website); *In re Global Crossing Sec. & ERISA Litig.* ["*In re Global Crossing*"], 225 F.R.D. 436, at 448–450 (S.D.N.Y. 2004). In addition, the Plan of Allocation provides for an equitable distribution of the Settlement recovery to Plan participants and beneficiaries.

The Court should grant the Motion in its entirety.

## II.    **BACKGROUND**

The operative complaints (No. 1:17-cv-06685, ECF No. 370; No. 1:20-cv-07092, ECF No. 1) set forth Plaintiffs' claims and supporting allegations in full. This Memorandum will only review the facts and procedural history necessary for the resolution of Plaintiffs' Motion.

### A.    ***Cooper, Ferguson I, and Ferguson II***

On March 14, 2016, Clive V. Cooper, a former employee of DST Systems, Inc. ("DST") and participant in Plan, represented by Class Counsel, filed *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 1:16-cv-01900 ("*Cooper*"). Mr. Cooper asserted breach of fiduciary duty claims against certain fiduciaries of the Plan related to overconcentration of the stock of Valeant Pharmaceuticals International Inc. n/k/a Bausch Health Companies Inc. ("Valeant" or "VRX") in the Plan's Profit Sharing Account ("PSP"), as well as other conduct. Mr. Cooper filed the action as a putative class action on behalf of similarly-situated participants and beneficiaries in the Plan.

On September 1, 2017, Plaintiffs filed this Action, advancing similar ERISA claims against additional fiduciaries on behalf of the Plan.  On August 31, 2020, Plaintiffs filed *Ferguson II* against Mr. Goldfarb, whose involvement in the alleged breaches of fiduciary duty became known to Plaintiffs in the course of discovery in *Ferguson I*.

**B.**   **Related Proceedings**

On September 28, 2018 and November 5, 2018, respectively, certain participants in the Plan commenced actions in this Court captioned *Canfield, et al. v. SS&C Techs. Holdings, Inc., et al.*, Case No. 1:18-cv-8913, and *Mendon, et al. v. SS&C Techs. Holdings, Inc., et al.*, Case No. 18-cv-10252 (S.D.N.Y.).

On October 8, 2019, the Department of Labor commenced the *Su* Action against DST; Goldfarb; Ruane, Cunniff & Goldfarb Inc. ("Ruane"); and 16 individual former Plan fiduciaries, seeking to enforce the Secretary's right to recovery on behalf of the Plan under 29 U.S.C. § 1132(a)(2).  *See* 1:19-cv-09302, ECF No. 1.

Beginning in April 2018, Arbitration Claimants initiated hundreds of individual arbitrations against DST and Ruane seeking individual recovery of the Plan's losses attributable to their accounts.  Certain of the Arbitration Claimants resolved their claims against Ruane in June 2020, and conducted discovery and proceeded to arbitration trials and appeals against DST, resulting in more than 300 arbitration awards, some of which have been appealed or confirmed.  *See* Settlement Agreement § 2.9.

**C.**   **Investigation and Discovery Efforts**

The investigation of the Plan's ERISA claims by Plaintiffs and Class Counsel predates the filing of *Cooper* in 2016.  Since then, the Parties have engaged in substantial discovery and other exchanges of information (including in connection with mediations) sufficient to enable the

Parties to thoroughly evaluate the claims and defenses, and the Plan's alleged losses.

The discovery efforts in *Cooper* and *Ferguson I* included the exchange of written discovery requests, and the production of hundreds of thousands of pages of documents and communications related to the administration of the Plan, relationships between and among fiduciaries, the VRX investment, and the fiduciaries' conduct concerning the concentration of individual stocks in the PSP. These discovery efforts also enabled the identification of potential claims against Mr. Goldfarb and led to the filing of *Ferguson II*. The substantial discovery efforts in these actions have given Plaintiffs and Class Counsel a well-developed understanding of the claims and defenses at issue.

Moreover, the Department of Labor and Arbitration Counsel have independently investigated the fiduciaries' conduct and Plan's alleged losses, and the Secretary and Arbitration Counsel, as well as *Canfield/Mendon* Counsel, which objected to a previous settlement submitted to this Court for preliminary approval in 2021, are signatories to the Settlement Agreement.

### D.    <u>Settlement Discussions</u>

Since the filing of *Cooper*, the Parties have engaged in discussions regarding the resolution of the Plan's claims at several junctures. Certain of the Parties participated in two mediation sessions held in 2017 that did not result in a resolution of the then-filed actions. Periodic follow-up discussions occurred in parallel to the litigation over the next several years. During the pendency of these negotiations, the parties communicated their positions regarding Plaintiffs' likelihood of successfully prosecuting their claims and the potential damages associated therewith. As part of this process, Class Counsel conferred with experts to analyze the claims at issue in this action.

In January 2021, Plaintiffs moved for preliminary approval of settlements with the DST

Defendants, Ruane, and Mr. Goldfarb separately.  These settlements did not include the
participation of the Secretary of Labor or Arbitration Counsel (beyond the extent to which
certain Arbitration Claimants were members of the proposed settlement class).  The Court
declined to grant preliminary approval of the settlements because of the potential preclusive
effect on the *Su* Action.

In November 2022, the Parties, as well as the Secretary and Arbitration Counsel,
participated in two days of mediation sessions.  Following the mediation sessions, the Parties
continued to discuss potential resolutions to provide relief to the Plan and Settlement Class.  The
sessions resulted in a resolution among Plaintiffs, Defendants, and the Secretary, but the
resolution at that time did not include Arbitration Counsel.  Nevertheless, the mediations enabled
all parties to candidly discuss their settlement positions and collateral issues in an effort to
narrow the issues.  Over the course of the ensuing months, while proceeding with additional
motion practice and oral argument in several pending appeals, all parties continued to discuss the
possibility of a global resolution.  Ultimately, the parties in these actions, along with the parties
to the *Su* Action, Arbitration Counsel, and *Canfield/Mendon* Counsel, were able to reach an
agreement in principle on the Settlement and then to comprehensively memorialize that
agreement in the Settlement Agreement and exhibits thereto.

E.    **The Proposed Settlement**

The Settlement provides that Defendants will make aggregate payments of
$124,625,000.00 into a Qualified Settlement Fund and to the Secretary, for Civil Penalties
assessed by the Secretary under 29 U.S.C. § 1132(l).[4]  Plaintiffs, on behalf of the Plan and the

---

[4]The Civil Penalties to be paid in connection with the Settlement amount to $9,045,455.00.

Settlement Class, will dismiss their ERISA claims, as set forth more fully in the Settlement.[5]

The Settlement and [Proposed] Preliminary Approval Order also set forth a proposed Notice

Plan, and provide for the payment of attorneys' fees and expenses and for Plaintiffs' Case

Contribution Awards, all of which are subject to Court approval.

The Settlement provides for the engagement of an Independent Fiduciary on behalf of the

Plan for purposes of reviewing and approving the Settlement in compliance with Department of

Labor regulations pertaining to ERISA's prohibited transaction rules as applied to the release of

litigation claims.  In short, the Independent Fiduciary will review all aspects of the Settlement,

including the Plan of Allocation and each of the anticipated applications for fees and expenses,

and issue a report that will be filed on the docket in advance of the Fairness Hearing.

### F.    Notice Plan and Fairness Hearing

The parties respectfully request that the Court schedule a Fairness Hearing pursuant to

Rule 23, during which the Court will be asked to determine whether the Settlement is fair,

reasonable and adequate, sufficient to warrant final approval and an entry of judgment.

In an accordance with an agreement reached among the parties to seek an expedited

schedule, consistent with Rule 23 and the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332,

1453, 1711–15, in light of all parties' desire to obtain relief for the Plan and to finally resolve all

related proceedings, Plaintiffs respectfully propose the following schedule in connection with the

Notice Plan:

---

[5]In connection with the Settlement, the Secretary and the defendants in the *Su* Action will file a Joint Stipulation of Settlement and Release of Claims in that action pursuant to which the Secretary's claims in that action will be resolved.  This stipulation is Exhibit F to the Settlement Agreement.  All parties to all outstanding actions involving the Plan will likewise work cooperatively to stay all pending actions once this Motion is filed, and will dismiss all actions with prejudice if the Settlement is finally approved.

| Event | Reference to [Proposed] Preliminary Approval Order | Proposed Date |
|---|---|---|
| Plan Recordkeeper(s) to provide Participant Data to Settlement Administrator | ¶ 10 | Within 5 calendar days of entry of Preliminary Approval Order |
| Settlement Administrator to send Class Notice to Settlement Class members and publish Summary Notice in *USA Today* and PRNewswire | ¶ 13 | Within 14 days of entry of Preliminary Approval Order |
| Establishment of Settlement Website and Toll-Free Telephone Line | ¶¶ 11–12 | Within 14 days of entry of Preliminary Approval Order |
| Deadline to file final approval motion and applications for attorneys' fees, expenses, and case contribution awards | ¶ 19 | Not later than 20 days before the Fairness Hearing |
| Independent Fiduciary shall submit report | ¶ 20 | Not later than 20 days before the Fairness Hearing |
| Deadline for filing of objections | ¶ 23 | Not later than 10 days before the Fairness Hearing |
| Deadline for Class Counsel or Defense Counsel to respond to objections | ¶ 23 | Not later than 3 days before the Fairness Hearing |
| Fairness Hearing | ¶ 17 | On a date to be set by the Court no later than 74 days after entry of Preliminary Approval Order, and no less than 100 days after the submission to the Court of this Motion (October 23, 2023) |

## III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

"Courts in this Circuit recognize a strong judicial policy in favor of settlements, particularly in the class action context."  *In re Facebook, Inc., IPO Sec. & Derivative Litig.* ["*In re Facebook, Inc.*"], 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A.* ["*Wal-Mart Stores*"], 396 F.3d 96, 116 (2d Cir. 2005)) (internal quotation marks omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.* ["*In re Prudential*"], 163 F.R.D. 200, 209 (S.D.N.Y. 1995 ("It is well established that there is an overriding public interest in settling and

quieting litigation, and this is particularly true in class actions."). The Settlement is emblematic of the compromise favored by this Court.

## A.  <u>Standard of Review</u>

Rule 23(e) requires judicial approval for the settlement of class claims. Judicial review of a proposed class action settlement consists of a two-step process: preliminary approval and a subsequent fairness hearing. *See* Fed. R. Civ. P. 23(e). In determining whether to grant preliminary approval, the Court must find "notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i-ii); *In re GSE Bonds Antitrust Litig.* ["*In re GSE Bonds*"], 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).

Preliminary approval is not a final determination; a full evaluation is made at the final approval stage, following notice of the settlement to class members. *See In re Prudential*, 163 F.R.D. at 210. Plaintiffs now simply request that the Court take the first step in the settlement approval process and preliminarily approve the Settlement so that notice of the Settlement can be given to the Settlement Class. *See, e.g.*, *Torres v. Gristedes Operating Corp.*, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010).

## B.  <u>The Court is Likely to Grant Final Approval of the Proposed Settlement</u>

Courts are "likely to approve a proposed settlement" where they find "it is fair, reasonable, and adequate." *In re GSE Bonds*, 414 F. Supp. 3d at 692. This inquiry includes four explicit factors enumerated in Rule 23(a) (*i.e.*, (1) adequacy of representation; (2) existence of arm's-length negotiations; (3) adequacy of relief; and (4) equitableness of treatment of class members), as well as the familiar *Grinell* factors.[6] *See id.*; *see also In re IPO Sec. Litig.*, 243

---

[6]The *Grinell* factors are: (1) the complexity, expense and likely duration of the litigation, (2) the

F.R.D. 79, 87 (S.D.N.Y. 2007) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.").

### 1.    The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval

#### i.    Adequacy of Representation

"Rule 23(e)(2)(A) requires a Court to find that 'the class representatives and class counsel have adequately represented the class' before preliminarily approving a settlement." *In re GSE Bonds*, 414 F. Supp. 3d at 692.  The adequacy determination includes inquiries into both plaintiffs and their counsel.  *See id.*  It is clear that Plaintiffs and Class Counsel satisfy the requirements of Rule 23(e)(2)(A).  First, Plaintiffs' interests are closely aligned with members of the Settlement Class, because they all suffered injuries of the same kind as a result of Defendants' Plan-level conduct.[7]  *See* Certification Order, at 11–12.  Second, Class Counsel are "qualified, experienced, and able" to conduct the litigation, as demonstrated by their successful prosecution of numerous complex ERISA actions and the outstanding result achieved here.  *See id.*; *In re GSE Bonds*, 414 F. Supp. 3d at 692; *see also* Declaration of Laurie Rubinow ("Rubinow Decl."), at ¶¶ 5–7.

---

reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *See City of Detroit v. Grinell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

[7]To the extent that any members of the Settlement Class have filed an arbitration claim against the Plan's fiduciaries, such individuals' interests are protected through the Plan of Allocation, pursuant to which Arbitration Claimants will receive, at a minimum, the amount of any arbitration award obtained against DST.

ii.    The Settlement is the Result of Good Faith, Arm's-Length
Negotiations by Well-Informed and Experienced Counsel

Under Rule 23(e)(2)(B), "[i]f a class settlement is reached through arm's-length

negotiations between experienced, capable counsel knowledgeable in complex class litigation, [a

settlement] will enjoy a presumption of fairness."  *In re GSE Bonds*, 414 F. Supp. 3d at 693; *see

also Wal-Mart Stores*, 396 F.3d at 116 (noting strong "presumption of fairness" where settlement

is product of arm's-length negotiations conducted by experienced, capable counsel after

meaningful discovery); *In re Flag Telecom Holdings Ltd. Sec. Litig.* ["*In re Flag Telecom II*"],

2010 WL 4537550, at *13 (S.D.N.Y. Nov 8, 2010) (same).

The Settlement was negotiated at arm's-length, over the course of several years by

adverse parties, each represented by counsel experienced in complex ERISA litigation, with the

participation of the Secretary and Arbitration Claimants.  The parties engaged in numerous

mediation sessions and additional information exchanges in which they communicated their

respective positions concerning the merits of the parties' claims and defenses, as well as the

Plan's alleged losses; indeed, each party conducted independent analyses to support the

Settlement.  *See* Rubinow Decl., ¶ 8.  The participation of the parties in these actions, as well as

the Secretary and Arbitration Claimants, confirms there has been no collusion or complicity of

any kind in connection with the Settlement or related negotiations.  *Id.*

Moreover, in determining the good faith of the Settlement Stipulation, the Court should

consider the judgment of Class Counsel.  *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, 2007

WL 4115809, at *12 (S.D.N.Y. Nov. 7, 2007) (courts should "consider the opinion of

experienced counsel with respect to the value of the settlement"); *In re PaineWebber Ltd.

P'ships Litig.* ["*In re PaineWebber P'ships*"], 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("'Great

weight' is accorded to the recommendation of counsel, who are most closely acquainted with the

12

facts of the underlying litigation."), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Class Counsel have

significant experience in similar litigation, and are well-informed as to the specifics of this

action. *See* Rubinow Decl., ¶¶ 5–9. Thus, their judgment that the Settlement is in the best

interest of the Settlement Class should be given considerable weight.

### iii. Adequacy of Relief

In assessing the adequacy of relief accorded by a proposed settlement, under Rule

23(e)(2)(C), courts must consider the following:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). The adequacy inquiry under Rule 23(e)(2)(C) overlaps, in

significant measure, with several *Grinnell* factors, "which help guide the Court's application of

Rule 23(e)(2)(C)(i)." *See In re GSE Bonds*, 414 F. Supp. 3d at 693.

### a. The costs, risks, and delay of trial and appeal

ERISA breach of fiduciary duty actions are difficult to prosecute and "involve a complex

and rapidly evolving area of law." *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012

WL 1964451, at *5 (D.N.J. May 31, 2012); *In re Wachovia Corp. ERISA Litig.*, 2011 WL

7787962, at *4 (W.D.N.C. Oct. 24, 2011). New precedents are frequently issued, and the

demands on counsel and courts are complex, requiring the devotion of significant resources. The

prosecution of *Cooper*, *Ferguson I*, and *Ferguson II*, and the risks that Plaintiffs face of

establishing liability and damages, as well as maintaining a class through trial, support

preliminary approval. Indeed, absent settlement, the parties would take additional discovery, any

trial would be complex given the legal issues relevant to Plaintiffs' allegations, and even if

Plaintiffs prevailed, it could be years before any recovery would be received in light of the possibility of appeals.[8]  In light of "the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class," and "it may be preferable 'to take the bird in the hand instead of the prospective flock in the bush.'"  *In re Prudential*, 163 F.R.D. at 210 (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)).  Moreover, because continued litigation increases litigation expenses, it could result in less recovery ultimately going to the class, even ignoring the time value of money.

Plaintiffs' pursuit of recovery for Plan losses resulting from the course of conduct at issue here began before the filing of *Cooper* in March 2016.  Since then, the parties have acquired extensive knowledge and information about the claims and defenses relevant to this action, sufficient to evaluate the "the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendant[], and the value of Plaintiffs' causes of action for purposes of settlement."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002); *see also In re Global Crossing*, 225 F.R.D. at 458.  Class Counsel's thorough investigation, which has spanned years, coupled with the significant document discovery conducted in *Cooper* and this action, has afforded Class Counsel a significant understanding of the merits of the claims asserted, the strength of Defendants' defenses, and the values of theoretical outcomes of the case.[9]  In addition, Class Counsel's reliance upon experts in assessing the claims, defenses and potential

---

[8]In addition to the specific risks associated with proving liability and damages in these actions, there are procedural risks associated with the related proceedings.  Indeed, these risks are illustrated by the several appeals in the Second and Eighth Circuits, injunctions issued by this Court and the Western District of Missouri, and claims between parties that have been named as Defendants in these actions and the related proceedings.

[9]Class Counsel's deep understanding of Plaintiffs' case is demonstrated, *inter alia*, by the detailed Complaint in this action, extensive discovery conducted among the parties, and a multitude of substantive submissions in this and other courts since 2016.

damages supports a finding that the parties had adequate information in connection with their negotiations and evidentiary support for the Settlement. *See In re GSE Bonds*, 414 F. Supp. 3d at 699; *Plummer v. Chem. Bank*, 668 F.2d 654, 659 (2d Cir. 1982). The Secretary's and Arbitration Counsel's participation in the Settlement after independent investigation, discovery, and, in the case of Arbitration Counsel, merits hearings in arbitration through trial and appeal, provide further good grounds for a finding that the Settlement is reasonable and adequate.

The record in these proceedings and the law confirm the risks of establishing liability and damages. Plaintiffs allege Defendants violated fiduciary duties under ERISA by permitting an extreme overconcentration of a single stock in the PSP. In order to succeed on the merits, Plaintiffs would have to overcome several significant obstacles, including whether the PSP should be treated as a unitary investment fund or if it should be treated as one investment component within the DST defined contribution plan at issue. Defendants would certainly assert affirmative defenses and, undoubtedly, would vigorously argue for a judgment in their favor at the summary judgment and trial stages. Such defenses would likely include, *inter alia*, arguments based upon Mr. Goldfarb's relationship with Ruane, as well as the substantive and procedural prudence of DST's oversight of Ruane, and the ability of Plaintiffs to sustain fiduciary duty claims based on an alleged failure to divest publicly traded securities based on publicly available "red flags." The summary judgment and trial stages would certainly feature extensive briefing and motion practice, and significant competing expert testimony, all of which pose risks to Plaintiffs' ability to establish liability. Moreover, even if Plaintiffs are successful in establishing liability at trial, there is a substantial risk that Defendants' damages arguments could be accepted, resulting in an award far less than the funds secured by the settlement or nothing at all.

       b.     *The effectiveness of the proposed method of distributing relief*

The Settlement provides for a notice and claims process designed to ensure relief is effectively accorded to Settlement Class members.  Since the Settlement Class includes participants, former participants, beneficiaries, and alternate payees of a company benefits plan, much of the data necessary to administer the Settlement is in the possession of the Plan's recordkeepers.  Indeed, Participants need not even submit a claim form to receive the relief to which they are entitled.  Administration of the Settlement here will effectively "deter or defeat unjustified claims," without being "unduly demanding."  *In re GSE Bonds*, 414 F. Supp. 3d at 694 (citing Fed. R. Civ. P. 23, Adv. Comm. Note, 2018 amend., sub. (e)(2)(c)).  In addition, "while the plan of allocation must be fair and adequate, it need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *Id.* (internal quotation marks omitted).  As discussed in greater detail below, the Plan of Allocation is designed to provide *pro rata* recovery to Settlement Class members according to their proportionate losses, which Plaintiffs allege resulted from Defendants' conduct, and ensure that any Arbitration Claimants who have obtained awards recover no less than the damages they have been awarded against DST.  The Plan of Allocation represents an eminently reasonable method of ensuring "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund."  *Id.* at 695.

       c.     *The terms of the proposed award of attorneys' fees*

As stated in the Long Form Notice (Exhibit A to the Settlement Agreement), Class Counsel may request up to $9,500,000 in attorneys' fees and expenses based upon the value of the Settlement, the time they have devoted to these actions, and the expenses they have advanced on behalf of the Settlement Class.  As also stated in the Long Form Notice, Arbitration Counsel

will ask the Court for an award of attorneys' fees and expenses of up to $15,500,000 based upon the work in the arbitrations and the awards of fees and expenses they received in arbitration.  In addition, counsel in the *Canfield* and *Mendon* Actions will seek up to $250,000 in attorneys' fees and expenses.  Collectively, these anticipated requests total less than 22 percent of the relief provided to the Plan under the Settlement (*i.e.*, the total relief less the Civil Penalties assessed by the Department of Labor).  Courts in this district routinely approve fees of one-third in complex class actions, particularly under ERISA.  *In re GSE Bonds*, 414 F. Supp. 3d at 695.  The Independent Fiduciary retained on behalf of the Plan in connection with the Settlement will review each of the applications for fees and expenses and its opinion will provide an independent basis for the Court to confirm the reasonableness of these requests in advance of reaching a final approval determination.  Finally, Class Counsel are aware of no agreements required to be disclosed under Rule 23(e)(3).

### 2.    The Remaining *Grinell* Adequacy Factors Weigh in Favor of Preliminary Approval

As discussed above, the Second Circuit has traditionally relied upon the nine factors identified in *Grinell* to guide a district court's determination of whether to finally approve a class action settlement.  To the extent that they are applicable at this stage, they can be used as guidelines for considering preliminary approval.  *See In re Warner Chilcott Ltd. Sec. Litig.* ["*In re Warner Chilcott*"], 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008).  Complete analysis of these factors is not required for preliminary approval to be granted.  *See id.* (citing *In re Prudential*, 163 F.R.D. at 210).  Moreover, because several of these factors are addressed in the analysis under Rule 23(e)(2), the discussion that follows will focus on the relevant non-overlapping factors under *Grinnell*, all of which weigh in favor of preliminary approval: (i) the reaction of the class to the settlement; (ii) the ability of Defendants to withstand a greater

17

judgment; and (iii) the range of reasonableness of the Settlement in light of the best possible recovery and attendant risks.

> i.    The Reaction of the Class to the Settlement

"The Court need not consider [this factor], which requires the Court to evaluate the reaction of the settlement class, because consideration of this factor is generally premature at the preliminary approval stage." *In re GSE Bonds*, 414 F. Supp. 3d at 699 (citing *In re Warner Chilcott*, 2008 WL 5110904 at *2).  Members of the Settlement Class will have the opportunity to share their reactions to the Settlement, including by filing objections and/or appearing at the Fairness Hearing.

> ii.    The Ability of Defendants to Withstand a Greater Judgment

While Class Counsel is not aware of specific evidence that Defendants could not withstand a greater judgment, courts have regularly held that, "against the weight of the remaining factors, this fact alone does not undermine the reasonableness of [a settlement]." *In re GSE Bonds*, 414 F. Supp. 3d 696; *see also In re AOL Time Warner ERISA Litig.* ["*In re AOL Time Warner*"], 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) (finding "the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair," rather this factor "must be weighed in conjunction with all of the *Grinnell* factors, most notably the risk of the class prevailing and the reasonableness of the settlement fund") (internal quotation marks omitted).

> iii.    The Range of Reasonableness of the Settlement in Light of the Best<br>Possible Recovery and Attendant Risks

"In considering these facts, the settlement amount's ratio to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 495

> 18

(S.D.N.Y. 2008). In fact, this Court has approved of settlements where the plaintiffs did not even offer a damages estimate. *See id.* This is because, as the Court has recognized, "some risks would be attendant upon continuing to litigate." *In re GSE*, 414 F. Supp. 3d at 696; *In re Flag Telecom II*, 2010 WL 4537550, at *20 ("[T]he issue for the Court is not whether the Settlement represents the 'best possible recovery,' but how the Settlement relates to the strengths and weaknesses of the case."). "[I]n any case, there is a range of reasonableness with respect to a settlement." *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). This range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693.

Using a methodology to calculate damages whereby, on a historic monthly basis, the PSP is rebalanced such that all funds invested in VRX over a putative concentration limit are instead invested in a hypothetical alternative portfolio (*e.g.*, an S&P 500 index), damages could reach an amount in excess of one hundred million dollars.[10] But that calculation depends upon the concentration limit chosen and the reasonableness of that amount. Such an approach also involves the assumption that every dollar invested in VRX above the proffered concentration limit should have been invested in an S&P 500 index. According to calculations conducted by Plaintiffs' expert, based upon realistic and highly defensible concentration limits (assuming that the PSP should have been treated as a unitary investment fund that would have applied accepted principles of modern portfolio theory to establish its concentration limits), the PSP would have

---

[10]Defendants would likely argue that this is an inappropriate measure of damages because the Plan benefitted from gains associated with the VRX investment prior to the investment's collapse and/or rebalancing may not have been feasible at VRX's periodic market prices. Setting aside liability or apportionment or responsibility, if Defendants succeed on any of their potential damages arguments, damages could be significantly less than the Settlement relief.

been better off by $86 million to $97 million, if rebalancing had occurred.  *See* Rubinow Decl., ¶ 10.  This represents the full measure of potential damages recoverable from all parties with potential liability.  Although damages could be calculated at higher levels (based upon higher concentration levels), such calculations could prove difficult to defend, based upon the full record in this case.  Given these calculations of realistic and highly defensible damages, the Settlement recovery of $124,625,000.00 (including the Civil Penalties assessed by the Department of Labor)—***in excess of realistically recoverable damages estimated by Plaintiffs and their experts***—is extraordinary.

## IV.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

In addition to preliminarily approving the proposed Settlement, the Court must approve the proposed means of notifying Settlement Class members.  *See* Fed. R. Civ. P. 23(c)(2); *see also In re Global Crossing*, 225 F.R.D. at 448.  "Adequate notice is essential to securing due process of law for the class members, who are bound by the judgment entered in the action."  *Id.* In order to satisfy due process considerations, notice to Settlement Class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *In re Prudential*, 164 F.R.D. at 368.

The Notice Plan includes multiple components designed to reach the largest number of Settlement Class members possible.  First, the Notice will be sent by email and/or first-class mail to the last known address of each Settlement Class member well in advance of the Fairness Hearing.  Notably, all Settlement Class members had Plan accounts, so Class Counsel believes the Plan recordkeeper should have addresses for them, at least as of the Class Period, as well as Social Security numbers, which can be used to do an address update if Notices are returned as

undeliverable.  *See Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 477-78 (E.D. Pa. 2007).

Additionally, the Notice will be posted on a website established by the Settlement Administrator

at the direction of Class Counsel, along with other documents related to the litigation, such as a

list of frequently asked questions and the Settlement Agreement.  The Notice will also provide

contact information for Class Counsel.  In addition, Class Counsel will cause the Summary

Notice to be published in *USA Today* and on PRNewswire.  The Settlement Administrator, at the

direction of Class Counsel, will also establish and monitor a dedicated, toll-free telephone

number for the purpose of fielding any inquiries by members of the Settlement Class.

The Notice Plan agreed to by the parties satisfies all due process considerations and

meets the requirements of Federal Rule of Civil Procedure 23(e).  It describes in plain English:

(i) the terms and operation of the Settlement; (ii) the nature and extent of the released claims;

(iii) the maximum attorneys' fees and Plaintiffs' case contribution awards that may be sought;

(iv) the procedure and timing for objecting to the settlement; and (v) subject to the Court's

schedule, the date and location of the Fairness Hearing.  Numerous district courts across the

country have approved as fair similar notices and/or notice plans.  *See, e.g.*, *In re Marsh ERISA

Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) (concluding that "notice forms and methods

employed [we]re substantially similar to those successfully used in many previous ERISA class

settlements"); *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 4779017, at *3 (E.D. Mich. July 29,

2013) (adopting a substantially similar notice plan).

## V.    CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE

Class certification under Rule 23 has two primary components; a proposed class must

meet the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule

23(b).  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997); *Roach v. T.L.*

21

*Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015); Fed. R. Civ. P. 23.  The requirements of Rule 23 should be interpreted liberally, with doubts resolved in favor of granting class certification. *See In re MF Global Holdings*, 310 F.R.D. 230 (S.D.N.Y. 2015).

The Court previously certified a class in these actions under Rules 23(a) and 23(b)(1) and the same circumstances support certification of the Settlement Class through entry of a final judgment.  As explained above, the membership of the Settlement Class is identical to that of the class certified in the Certification Order.  The only changes in the definition of the Settlement Class clarify that the Plan fiduciaries excluded from the class are those who served as fiduciaries during the Class Period.

### A.    The Settlement Class Satisfies Rule 23(a)'s Requirements

The requirements of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  *See Amchem*, 521 U.S. at 613; *In re US FoodService Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013).  On the same grounds as those supporting the Court's previous class certification order, no serious basis exists to contest that the Rule 23(a) requirements have been established.  *See* Certification Order, at 7–12; *see also* Rubinow Decl., at ¶¶ 4–7.

### B.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(1)

In addition to satisfying the requirements of Rule 23(a), Plaintiffs need only satisfy one subsection of Rule 23(b).  *See Amchem*, 521 U.S. at 613–14.  Courts routinely grant certification under Rule 23(b)(1) to ERISA fiduciary breach cases, because "the distinctive 'representative capacity' aspect of ERISA participant and beneficiary suits makes litigation of this kind 'a paradigmatic example of a [Rule 23](b)(1) class."  *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 342 (S.D.N.Y. 2012) (alteration in original) (quoting *In re Global Crossing*, 225 F.R.D. at 453);

*see also Cunningham*, 2019 WL 275827 at *7 ("It is common for ERISA cases to be certified

under Rule 23(b)(1)); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 604 (collecting

cases).  For these reasons and those discussed in the Court's prior Certification Order, the

requirements of Rule 23(b)(1) are satisfied.  *See* Certification Order, at 13–14.  None of the

grounds supporting certification under Rule 23(b)(1) have changed since the Court issued the

Certification Order.  In fact, the circumstances of the Settlement, pursuant to which relief will be

provided to the Plan and allocated to participant accounts through the Plan of Allocation, provide

even further support for certification of the Settlement Class under Rule 23(b)(1).

**C.    Miller Shah and Olivier Schreiber Should Be Appointed as Class Counsel**

In appointing counsel for the proposed Class, this Court must consider the factors

enumerated in Rule 23(g)(1)(A):

> (i) the work counsel has done in identifying or investigating potential claims in this
> action; (ii) counsel's experience in handling class actions, other complex litigation,
> and the types of claims asserted in the action; (iii) counsel's knowledge of the
> applicable law; and (iv) the resources counsel will commit to representing the class.

Miller Shah LLP ("MS") and Olivier Schreiber LLC ("OS") are exceedingly qualified

under these factors, and this Court should maintain the firms' appointment as Class Counsel.  *See*

Rubinow Decl., ¶¶ 5–6.  Throughout the course of litigating these actions, MS and OS have

leveraged their experience and resources to vigorously pursue recovery on behalf of the Plan and

protect the interests of all members of the Settlement Class, including comprehensively

investigating the claims forming the basis of *Cooper*, *Ferguson I*, and this action; and filing

detailed pleadings, briefing several motions, and significantly engaging all parties in the

discovery process across these related actions, not to mention several appeals (including one in

which MS and OS successfully garnered a precedential Second Circuit decision).  *Id*.  The course

of this litigation has amply demonstrated Class Counsel's knowledge of the applicable law and

23

willingness to devote the resources necessary to protect the interests of the Settlement Class. Class Counsel will continue to leverage their deep experience in ERISA class actions and resources to pursue the best outcome for the proposed Class.

## VI.    THE PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED

To warrant approval, a plan of allocation must be fair and adequate. *In re Facebook, Inc.*, 343 F. Supp. 3d at 414. "The formula established for allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.*; *see also Guevoura Fund Ltd. v. Silverman*, 2019 WL 6889901, at *10 (S.D.N.Y. Dec. 18, 2019) ("Courts have recognized that the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.") (internal quotation marks omitted). "[W]hether the allocation plan is equitable is squarely within the discretion of the district court." *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, 2015 WL 6964973, at *7 (E.D.N.Y. Nov. 10, 2015) (citation omitted).

The proposed Plan of Allocation "was prepared by experienced counsel along with a damages expert—both indicia of reasonableness." *In re Facebook, Inc.*, 343 F. Supp. 3d at 414. The Plan of Allocation provides for *pro rata* distribution of the Qualified Settlement Fund among Settlement Class members according to a score assigned based upon their proportionate share of the PSP's total losses.[11] Courts in this District regularly approve plans of allocation where, as here, "[a plan] provides recovery to [c]lass members, net of administrative expenses

---

[11]In addition, the Plan of Allocation accounts for Settlement Class members' participation in separate settlements and any arbitration awards obtained, and ensures that such individuals all will be made whole vis-à-vis their arbitration awards or, as appropriate, will be "topped off" to ensure that they receive the benefit of this Settlement to the extent that they would not otherwise receive such benefits.

24

and attorneys' fees and expenses, on a *pro rata* basis." *In re Marsh ERISA Litig.*, 265 F.R.D. 128 at 145 (emphasis added); *see also In re AOL Time Warner*, 2006 WL 903236 at *17 (plan of allocation provided "recovery to damaged investors on a pro-rata basis according to their recognized claims of damages"). Indeed, "[p]ro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach." *In re Global Crossing*, 225 F.R.D. at 462. The Plan of Allocation also establishes that Arbitration Claimants who have received arbitration awards will not recover less than the amount of their damages awards against DST.

As further detailed in the Plan of Allocation, distributions to Participants will be made by allocating recovery amounts into their active Plan accounts, while distributions to former participants, beneficiaries, and alternate payees will be made by check or tax-qualified rollover to an individual retirement account or other qualified employer plan. The Plan of Allocation is also comparable to plans of allocation approved and utilized similar ERISA actions.[12]

## VII.    **CONCLUSION**

Plaintiffs respectfully request that the Court grant the Motion in its entirety.

---

[12]*See, e.g., Larson v. Allina Health System*, 2019 WL 6208648, at *2 (D. Minn. Nov. 21, 2019); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 3000490, at *5 (C.D. Cal. Feb. 6, 2018); *In re Marsh ERISA Litig.*, 265 F.R.D. at 145–46 (approving plan of allocation that provided recovery to class members on *pro rata* basis and payments would be made by crediting accounts of active plan participants); *In re AOL Time Warner*, 2006 WL 2789862, at *10 (S.D.N.Y. Sept. 27, 2006); *In re Worldcom, Inc. ERISA Litig.*, 2004 WL 2338151, at *8 (S.D.N.Y. Oct. 18, 2004).

Dated: July 14, 2023                    Respectfully submitted,

                                        /s/ *Laurie Rubinow*
                                        James E. Miller
                                        Laurie Rubinow (Bar No. LR-6637)
                                        MILLER SHAH LLP
                                        65 Main Street
                                        Chester, CT 06412
                                        Telephone: (866) 540-5505
                                        Facsimile: (866) 300-7367
                                        Email: jemiller@millershah.com
                                                lrubinow@millershah.com

                                        Alec J. Berin
                                        MILLER SHAH LLP
                                        1845 Walnut Street, Suite 806
                                        Philadelphia, PA 19103
                                        Telephone: (866) 540-5505
                                        Facsimile: (866) 300-7367
                                        Email: ajberin@millershah.com

                                        Nathan C. Zipperian
                                        MILLER SHAH LLP
                                        1625 N. Commerce Parkway, Suite 320
                                        Fort Lauderdale, FL 33326
                                        Telephone: (866) 540-5505
                                        Facsimile: (866) 300-7367
                                        Email: nczipperian@millershah.com

                                        Monique Olivier
                                        OLIVIER & SCHREIBER LLP
                                        475 14th Street, Suite 250
                                        Oakland, CA 91103
                                        Telephone: (415) 484-0980
                                        Email: monique@osclegal.com

                                        *Attorneys for Plaintiffs, the Plan,*
                                        *and the Settlement Class*