PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON   (1946-1991)
RANDOLPH E. PAUL   (1946-1956)
SIMON H. RIFKIND   (1950-1995)
LOUIS S. WEISS   (1927-1950)
JOHN F. WHARTON   (1927-1977)

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

535 MISSION STREET, 24TH FLOOR
SAN FRANCISCO, CA 94105
TELEPHONE (628) 432-5100

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER

(212) 373-3215

WRITER'S DIRECT FACSIMILE

(212) 492-0215

WRITER'S DIRECT E-MAIL ADDRESS

lclayton@paulweiss.com

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
KANESH BALASUBRAMANIAM*
SCOTT A. BARSHAY
PAUL M. BASTA
LYNN B. BAYARD
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
BRIAN BOLIN
ANGELO BONVINO
ANDRE G. BOUCHARD*
PAUL D. BRACHMAN
GERALD BRANT
ROBERT A. BRITTON
SUSANNA M. BUERGEL
JESSICA S. CAREY
JOHN P. CARLIN
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
REBECCA S. COCCARO
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THITIANA DAGNEW
THOMAS V. DE LA BASTIDE III
MEREDITH R. DEARBORN*
KAREN L. DUNN
ALICE BELISLE EATON
ANDREW J. EHRLICH
CAROLINE B. EPSTEIN
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
BRAD FINZI
PETER E. FISCH
HARRIS FISCHMAN
KATHERINE B. FORREST
VICTORIA S. FORRESTER
HARRIS B. FREIDUS
MANUEL S. FREY
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
MELINDA HAAG*
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
IAN M. HAZLETT
BRIAN S. HERMANN
JOSHUA HILL JR.
MICHELE HIRSHMAN
JARRETT R. HOFFMAN
ROBERT HOLO
CHRISTOPHER HOPKINS
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
WILLIAM A. ISAACSON*
JAREN JANGHORBANI
BRIAN M. JANSON
LUKE JENNINGS
JEH C. JOHNSON
ROGER JOHNSON*
DEIRDRE JONES*
MATTHEW B. JORDAN
CHRISTODOULOS KAOUTZANIS
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
ROBERT A. KILLIP
BRIAN KIM
KYLE J. KIMPLER
ROBERT A. KINDLER
JEFFREY L. KOCHIAN
ALEXIA D. KORBERG
DANIEL J. KRAMER

ANDREW D. KRAUSE
BRIAN KRAUSE
CAITH KUSHNER
DAVID K. LAKHDHIR
GREGORY F. LAUFER
BRIAN C. LAVIN
MATTHEW M. LEIST*
XIAOYU GREG LIU
RANDY LUSKEY*
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. McCOLM
JEAN M. McLOUGHLIN
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
SEAN A. MITCHELL
ERIN J. MORGAN
JUDIE NG-SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
BRAD R. OKUN
SUNG PAK
CRYSTAL L. PARKER
LINDSAY B. PARKS
MARC A. PARLEN
DANIELLE C. PENHALL
CHARLES J. PESANT
ANASTASIA V. PETERSON
ANDREAS PHILLIPS*
JESSICA E. PHILLIPS*
AUSTIN S. POLLET*
RAVI PUROHIT
VALERIE E. RADWANER
JEFFREY J. RECHER
LORIN L. REISNER
JEANNIE S. RHEE*
ANDREW H. ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY B. SAMUELS
PAUL L. SANDLER
AARON J. SCHLAPHOFF
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM
SCOTT A. SHEP*
SUHAN SHIM
CULLEN L. SINCLAIR
MAURY SLEVIN
KYLE SMITH
AUDRA J. SOLOWAY
SCOTT M. SONTAG
JOSHUA H. SOVEN*
MEGAN SPELMAN
ROBERT Y. SPERLING
EYITAYO ST. MATTHEW-DANIEL
SARAH STASNY
BEN STEADMAN
AIDAN SYNNOTT
ROBERT D. TANANBAUM
BRETTE TANNENBAUM
RICHARD C. TARLOWE
DAVID TARR
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
KRISHNA VEERARAGHAVAN
JEREMY M. VEIT
LIZA M. VELAZQUEZ
MICHAEL VOGEL
ANDREA WAHLQUIST BROWN
JOHN WEBER
THEODORE V. WELLS, JR.
ERIC J. WEDEL
SAMUEL J. WELT
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
STACI YABLON
BOSCO YU*
KAYE N. YOSHINO
TONG YU
TAURIE M. ZEITZER
KENNETH S. ZIMAN
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

October 5, 2023

**BY ECF**

The Honorable Andrew L. Carter, Jr., U.S.D.J.
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Ferguson, et al.* v. *Ruane, Cunniff & Goldfarb Inc., et al.*, No. 1:17-cv-06685

Dear Judge Carter:

We represent DST Systems, Inc., the Advisory Committee of the DST Systems, Inc. 401(k) Profit Sharing Plan, and the Compensation Committee of the Board of Directors of DST Systems, Inc. We respectfully submit the Report of the Independent Fiduciary for the settlement in this and other related matters, approving and authorizing the parties' settlement on behalf of the DST Systems, Inc. 401(k) Profit Sharing Plan, in accordance with Department of Labor Prohibited Transaction Exemption 2003-39.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Andrew L. Carter, Jr.                                    2

Respectfully submitted,

*/s/ Lewis R. Clayton*

Lewis R. Clayton

cc:    All counsel of record (by ECF filing)



Report of the Independent Fiduciary
for the Settlement in
*Ferguson v. Ruane, Cunniff & Goldfarb Inc.*
and
*Ferguson v. Robert D. Goldfarb*

October 4, 2023

700 12th Street NW   Suite 700   Washington, DC 20005   202-558-5130   www.fiduciarycounselors.com

**TABLE OF CONTENTS**

I.     Introduction ...................................................................................................... 1

II.    Executive Summary of Conclusions ................................................................ 1

III.   Procedure ........................................................................................................... 1

IV.    Background ........................................................................................................ 2

V.     Settlement .......................................................................................................... 4

VI.    PTE 2003-39 Determination ........................................................................... 11



## I.      Introduction

Fiduciary Counselors has been appointed as an independent fiduciary for the DST Systems, Inc. 401(k) Profit Sharing Plan (the "Plan") in connection with the settlement (the "Settlement") reached in *Ferguson v. Ruane, Cunniff & Goldfarb Inc.* and *Ferguson v. Robert D. Goldfarb,* Case No. 1:17-cv-06685-ALC-BCM and Case No. 1:20-cv-07092-ALC-BCM, (the "Litigation" or "Action"), which was brought in the United States District Court for the Southern District of New York (the "Court"). Fiduciary Counselors has reviewed over 100 previous settlements involving ERISA plans.

## II.      Executive Summary of Conclusions

After a review of key pleadings, decisions and orders, selected other materials and interviews with counsel for the parties, Fiduciary Counselors has determined that:

- The Court has certified the Litigation as a class action both during the litigation and for settlement purposes, and in any event, there is a genuine controversy involving the Plan.

- The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone.

- The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances.

- The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest.

- The transaction is not described in Prohibited Transaction Exemption ("PTE") 76-1.

- All terms of the Settlement are specifically described in the written settlement agreement and the plan of allocation.

- The Plan is receiving no consideration other than cash in the Settlement.

Based on these determinations about the Settlement, Fiduciary Counselors hereby approves and authorizes the Settlement on behalf of the Plan in accordance with PTE 2003-39.

## III.      Procedure

Fiduciary Counselors reviewed key documents, including the Third Amended Complaint, the Motion to Dismiss, the Court's Order Granting Defendants' Partial Motion to Dismiss, the Court's Order Denying Plaintiffs' Motion to Amend and Certify Class without Prejudice, Plaintiffs' Renewed Motion for Class Certification, the Court's Order Certifying the Class and Approval of Plaintiffs' Motion to File a Third Amended Complaint and Denial of Preliminary



Approval of Settlement, the Settlement Agreement, the parties' mediation statements[1], the Motion for Preliminary Approval and related papers, the Court's Order Preliminarily Approving Settlement, the Notice, the Plan of Allocation, and draft filings from Class Counsel regarding final approval, attorneys' fees and expenses, and case contribution awards and from other counsel regarding attorneys' fees and expenses. In order to help assess the strengths and weaknesses of the claims and defenses in the Litigation, as well as the process leading to the Settlement, the members of the Fiduciary Counselors Litigation Committee conducted separate telephone interviews with counsel for the DST Defendants, counsel for Goldfarb, Class Counsel and Arbitration Counsel.

## IV.    Background

### A.    Procedural History of Case

***Litigation.***

On March 14, 2016, Clive V. Cooper, a former employee of DST Systems, Inc. ("DST") and participant in the Plan, represented by Class Counsel, filed *Cooper v. Ruane, Cunniff & Goldfarb Inc.*, 1:16-cv-01900 ("*Cooper*"). Mr. Cooper asserted breach of fiduciary duty claims against certain fiduciaries of the Plan related to overconcentration of the stock of Valeant Pharmaceuticals International Inc. n/k/a Bausch Health Companies Inc. ("Valeant" or "VRX") in the Plan's Profit Sharing Account ("PSP"), as well as other conduct. Mr. Cooper filed the action as a putative class action on behalf of similarly-situated participants and beneficiaries in the Plan. On September 1, 2017, Plaintiffs Michael L. Ferguson, Myrl C. Jeffcoat and Deborah Smith ("Plaintiffs") filed the Action, advancing similar ERISA claims against additional fiduciaries on behalf of the Plan ("*Ferguson I*"). On August 31, 2020, Plaintiffs filed *Ferguson, et al. v. Goldfarb*, Case No. 1:20-cv-07092 (S.D.N.Y.) ("*Ferguson II*") against Mr. Goldfarb, whose involvement in the alleged breaches of fiduciary duty became known to Plaintiffs in the course of discovery in *Ferguson I*.

On September 28, 2018 and November 5, 2018, respectively, certain participants in the Plan commenced the actions captioned *Canfield, et al. v. SS&C Techs. Holdings, Inc., et al.*, Case No. 1:18-cv-8913, and *Mendon, et al. v. SS&C Techs. Holdings, Inc., et al.*, Case No. 18-cv-10252 (S.D.N.Y.). On October 8, 2019, the Department of Labor commenced the *Su* Action (*Su v. Ruane, Cunniff & Goldfarb Inc., et al.*, No. 1:19-cv-09302-ALC-BCM (S.D.N.Y.) against DST; Goldfarb; Ruane, Cunniff & Goldfarb Inc. ("Ruane" or "RCB"); and 16 individual former Plan fiduciaries, seeking to enforce the Secretary's right to recovery on behalf of the Plan under 29 U.S.C. § 1132(a)(2).

On August 17, 2021, the Court granted Plaintiffs' motion for leave to file a third amended complaint and motion for class certification. The Court denied Plaintiffs' motion for preliminary approval of the class action settlement agreements based on the

---

[1] We note that we requested and received the parties' confidential mediation statements except in the case of the Department of Labor, which declined to provide its mediation statement.



fact that Plaintiffs' injunctive provision sought to enjoin non-parties, including the Secretary of Labor, from bringing or prosecuting their claims.

Beginning in April 2018, Arbitration Claimants initiated hundreds of individual arbitrations against DST and Ruane seeking individual recovery of the Plan's losses attributable to their accounts. Certain of the Arbitration Claimants resolved their claims against Ruane in June 2020, and conducted discovery and proceeded to arbitration trials and appeals against DST, resulting in more than 300 arbitration awards, some of which have been appealed or confirmed.

The investigation of the Plan's ERISA claims by Plaintiffs and Class Counsel predates the filing of *Cooper* in 2016. Since then, the parties have engaged in substantial discovery and other exchanges of information (including in connection with mediations) sufficient to enable the parties to thoroughly evaluate the claims and defenses, and the Plan's alleged losses. The discovery efforts in *Cooper* and *Ferguson I* included the exchange of written discovery requests, and the production of hundreds of thousands of pages of documents and communications related to the administration of the Plan, relationships between and among fiduciaries, the VRX investment, and the fiduciaries' conduct concerning the concentration of individual stocks in the PSP. These discovery efforts also enabled the identification of potential claims against Mr. Goldfarb and led to the filing of *Ferguson II*. The substantial discovery efforts in these actions have given Plaintiffs and Class Counsel a well-developed understanding of the claims and defenses at issue. Moreover, the Department of Labor and Arbitration Counsel have independently investigated the fiduciaries' conduct and Plan's alleged losses, and the Secretary and Arbitration Counsel, as well as *Canfield/Mendon* Counsel, which objected to a previous settlement submitted to this Court for preliminary approval in 2021, are signatories to the Settlement Agreement.

Since the filing of *Cooper*, the parties engaged in discussions regarding the resolution of the Plan's claims at several junctures. Certain of the parties participated in two mediation sessions held in 2017 that did not result in a resolution of the then-filed actions. Periodic follow-up discussions occurred in parallel to the litigation over the next several years. During the pendency of these negotiations, the parties communicated their positions regarding Plaintiffs' likelihood of successfully prosecuting their claims and the potential damages associated therewith. As part of this process, Class Counsel conferred with experts to analyze the claims at issue in this action. In January 2021, Plaintiffs moved for preliminary approval of settlements with the DST Defendants, Ruane, and Mr. Goldfarb separately. These settlements did not include the participation of the Secretary of Labor or Arbitration Counsel (beyond the extent to which certain Arbitration Claimants were members of the proposed settlement class). The Court declined to grant preliminary approval of the settlements because of the potential preclusive effect on the *Su* Action.

### Settlement and Preliminary Approval.

In November 2022, the parties, as well as the Secretary and Arbitration Counsel, participated in two days of mediation sessions. Following the mediation sessions, the



parties continued to discuss potential resolutions to provide relief to the Plan and Settlement Class. The sessions resulted in a resolution among Plaintiffs, *Ferguson* DST Defendants (DST, the Advisory Committee of the Plan, and the Compensation Committee of the Board of Directors of DST), RCG, and Goldfarb (collectively, "Defendants"), and the Secretary, but the resolution at that time did not include Arbitration Counsel. Nevertheless, the mediations enabled all parties to candidly discuss their settlement positions and collateral issues in an effort to narrow the issues. Over the course of the ensuing months, while proceeding with additional motion practice and oral argument in several pending appeals, all parties continued to discuss the possibility of a global resolution. Ultimately, the parties in these actions, along with the parties to the *Su* Action, Arbitration Counsel, and *Canfield/Mendon* Counsel, were able to reach an agreement in principle on the Settlement and then to comprehensively memorialize that agreement in the Settlement Agreement. The parties engaged in numerous mediations with experienced ERISA mediators David Geronemus and later with Robert A. Meyer.

Plaintiffs filed a motion seeking preliminary approval of the Settlement on July 14, 2023. The Court granted Plaintiffs' motion on August 3, 2023. The Court's Order: (1) preliminarily certified the class for settlement purposes[2]; (2) approved the form and method of class notice; (3) set October 23, 2023 as the date for a Fairness Hearing; (4) set October 13, 2023 as the deadline for objections; and (5) approved Strategic Claims Services as the Settlement Administrator.

### *Objections.*

October 13, 2023 is the deadline for Class Members to file objections to the Settlement. As of the date of this report, no Class Members have filed any objections.

## V.   Settlement

### A.   Settlement Consideration

The Settlement provides for a Total Settlement Payment of $124,625,000.[3] That amount will be divided between $9,045,455[4] of civil penalties to be paid to the United States Department of Labor, and $115,579,545 to be paid to the Qualified Settlement Fund. After deducting from the Qualified Settlement Fund (a) settlement administration

---

[2] As discussed above, the Court had previously certified the Litigation as a class action. The membership of the Settlement Class is identical to that of the class certified in the Court's Memorandum and Order dated August 17, 2021. The only changes in the definition of the Settlement Class clarify that the Plan fiduciaries excluded from the class are those who served as fiduciaries during the Class Period.

[3] The Total Settlement Payment is made up of the following: DST payment of $47,984,848.33, Goldfarb payment of $49,109,848.33, and RCG payment of $18,484,848.34. Further, if by the time DST pays the Second DST Settlement Payment, at least nine months have passed since the Court granted preliminary approval of the Settlement Agreement in all material respects, then DST shall independently pay an additional $100,000.00 to Arbitration Counsel, unless the Settlement Agreement has not become Final as of that time as a result of actions attributable to Arbitration Counsel, in which case no additional payment will be made.

[4] The Civil Penalties represent the following payments: DST payment of $3,015,151.67, Goldfarb payment of $3,015,151.67 and RCG payment of $3,015,151.66.



expenses; (b) independent fiduciary fees and costs; (c) CAFA Fees and Costs; (d) case contribution award(s); and (e) awards by the Court of attorneys' fees and expenses to any counsel, the remainder (known as the "Net Settlement Amount") will be distributed to the Class Members in accordance with the Plan of Allocation.

**Class and Class Period**

The Settlement defines the Settlement Class as follows:

> all Participants in the Plan during the Class Period, except: (i) all individuals who during the Class Period were members of the Advisory Committee; (ii) all individuals who during the Class Period were members of the Compensation Committee; (iii) any other individuals who served as fiduciaries of the Plan during the Class Period; and (iv) the beneficiaries, immediate family members, estates, and executors of (i)-(iii). The specific individuals excluded from the Settlement Class are listed in Exhibit G to the Settlement Agreement.

The Settlement defines Class Period as the period from March 14, 2010 through July 31, 2016.

The Court has certified the Settlement Class.

**B.   The Release**

The Settlement defines Released Claims as follows:

> any and all actual or potential Claims, whether brought in an individual, representative or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, arising out of or in any way related to: (i) any fact alleged in the Complaint and any prior or subsequent pleading or legal memorandum filed in the Action; (ii) any fact alleged in a complaint or demand filed in any Related Proceeding or Arbitration and any subsequent pleading or legal memorandum filed in any Related Proceeding or Arbitration; (iii) the Plan (including, without limitation, the selection, retention, and monitoring of Plan investments; any action or inaction by any Plan fiduciary; or the performance, fees, and any other characteristic of the Plan); (iv) the subject matter of or the proceedings in this Action, any Related Proceeding, or any Arbitration; and (v) the approval of the Independent Fiduciary of the Settlement.

> As to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date of Settlement, Named Plaintiffs, the Plan, each and every Class Member, and Defendant Releasees shall expressly waive and shall be deemed to have waived, and by operation of the Final Approval Order and the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or of any other



country, or any principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides: a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The terms of the release, including the provision for the Independent Fiduciary to provide a release of claims by the Plan, are reasonable.

The terms of the release, including the provision for the Independent Fiduciary to provide a release of claims by the Plan, are reasonable.

## C.    The Plan of Allocation

For purposes of calculating payments to Participants, Former Participants, Beneficiaries, and Alternate Payees, the "Gross Differential" attributable to each Participant, Former Participant, Beneficiary, or Alternate Payee shall be the difference between the highest quarterly PSP balance attributable to each Participant, Former Participant, Beneficiary or Alternate Payee between March 14, 2010 and July 31, 2016 (or as of December 31, 2009 if there was no balance as of March 31, 2010) and the total distributions and roll-overs to other retirement accounts or instruments (including Active Accounts) received by the individual between March 14, 2010 and July 31, 2016 (the termination date of the PSP).

The Settlement Administrator shall first calculate the total of all Gross Differentials to be used for purposes of allocating the Net Settlement Amount ("Net Gross Differential") by subtracting from the total of the Gross Differential amounts the individual Gross Differential amounts of the individuals who have been excluded from the class (the "Former Plan Fiduciaries"), as well as the individual Gross Differential amounts of those Participants, Former Participants, Beneficiaries, or Alternate Payees who already have released their claims against all Defendants through prior settlements (the "Prior Releasors").[5]

The Settlement Administrator shall then calculate the pro rata percentage of the Net Gross Differential attributable to each Participant, Former Participant, Beneficiary, or Alternate Payee, other than the Former Plan Fiduciaries and the Prior Releasors, by dividing the Gross Differential of each Participant, Former Participant, Beneficiary, or Alternate Payee, other than the Former Plan Fiduciaries and Prior Releasors, by the Net Gross Differential. The Settlement Administrator shall then calculate an initial pro rata share of the Net Settlement Amount attributable to each Participant, Former Participant, Beneficiary, or Alternate Payee, other than the Former Plan Fiduciaries and the Prior Releasors, (the "Initial Net Settlement Allocations"), by multiplying the Net Settlement

---

[5] The Prior Releasors are: Alicia R. Andrews, Stephen W. Bay, Vanessa M. Bross, Kendra J. Burmaster, Christopher S. Davis, Jacqueline C. Davis, Mary E. Lamy, Brian J. Majernik, Brad D. McMillin, Michael N. Murphy, Robert O. Parrott, Percy W. Payne, Patricia J. Pottinger, Lawrence Schellenberger, and Randall W. Sharp.



Amount by the pro rata percentage attributable to each Participant, Former Participant, Beneficiary, or Alternate Payee, other than the Former Plan Fiduciaries and the Prior Releasors.

The Settlement Administrator shall next determine those Participants, Former Participants, Beneficiaries, or Alternate Payees who have received a Damages Award in arbitration against any of the Ferguson DST Defendants ("Arbitration Claimants"). "Damages Award" means the amount any arbitrator(s) awarded to an Arbitration Claimant in an arbitration against any of the Ferguson DST Defendants for purported losses to that Arbitration Claimant's PSP account, either in an interim or final award, less any gross amounts that Arbitration Claimant previously received in return for execution of a release in favor of any of the Defendants (a "Separate Settlement"). If an Arbitration Claimant received both an interim award and a final award, or if the Arbitration Claimant's final award was later modified by any arbitrator(s), the Settlement Administrator shall use the last-in-time award that contains a Damages Award. "Damages Award" excludes attorney's fees, statutory costs, and out-of-pocket expenses, and excludes administrative fees and expenses of the American Arbitration Association. No amount included in any arbitration award with respect to attorney's fees, statutory costs, or out-of-pocket expenses, or administrative fees and expenses of the American Arbitration Association, shall be considered in allocating or distributing the Net Settlement Amount.

If the amount of a Damages Award received by a particular Arbitration Claimant, plus any net amount of consideration (meaning any amount not paid to counsel for that Arbitration Claimant) received in a Separate Settlement, is greater than the Initial Net Settlement Allocation for that Arbitration Claimant, the Settlement Administrator shall allocate to each such Arbitration Claimant from the Net Settlement Amount the amount of the Damages Award, to the extent such Damages Award has not previously been satisfied by the Ferguson DST Defendants separate from this Settlement. The Plan of Allocation will refer to the amounts of the Damages Awards allocated under this Paragraph as the "Arbitration Award Settlement Amounts," and will refer to the recipients of the Arbitration Award Settlement Amounts as the "Arbitration Award Settlors."

After allocating the Arbitration Award Settlement Amounts pursuant to Paragraph 1.5.5 of the Settlement Agreement, the Settlement Administrator shall subtract from the Net Settlement Amount the total amount of the Arbitration Award Settlement Amounts to calculate the Net Settlement Amount allocable to the remaining Class Members (the "Revised Net Settlement Amount").

If the amount of a Damages Award received by a particular Arbitration Claimant, plus any net amount of consideration (meaning any amount not paid to counsel for that Arbitration Claimant) received in a Separate Settlement, is less than the Initial Net Settlement Allocation for that Arbitration Claimant, including any Arbitration Claimant to whom no damages were awarded in arbitration, the allocation for each such Arbitration Claimant shall be calculated in accordance with Paragraphs 1.5.8 through 1.5.11 of the



Settlement Agreement, without reference to any such Damages Award. Pursuant to Paragraph 1.5.4 and Paragraphs 1.5.7 through 1.5.11 of the Settlement Agreement, no Arbitration Claimant shall receive a Settlement Payment less than that Arbitration Claimant's Damages Award.

The Settlement Administrator shall then calculate the sum of the Gross Differentials attributable to each remaining Participant, Former Participant, Beneficiary, or Alternate Payee (other than the Former Plan Fiduciaries, the Prior Releasors, and the Arbitration Award Settlors), to arrive at a Revised Net Gross Differential Balance. The Settlement Administrator shall then calculate the pro rata share of the Revised Net Gross Differential Balance attributable to each remaining Participant, Former Participant, Beneficiary, or Alternate Payee, other than the Former Plan Fiduciaries, the Prior Releasors, and the Arbitration Award Settlors (the "Revised Net Settlement Allocations"), by (a) deducting $10 for each remaining Participant, Former Participant, Beneficiary, or Alternate Payee (other than the Former Plan Fiduciaries, the Prior Releasors, and the Arbitration Award Settlors) with a Gross Differential amount of zero or less, as well as any remaining Participant, Former Participant, Beneficiary, or Alternate Payee (other than the Former Plan Fiduciaries, the Prior Releasors, and the Arbitration Award Settlors) with a Gross Differential amount that would otherwise result in payment of less than $10 and each Prior Releasor, and (b) multiplying the remaining Revised Net Settlement Amount by the pro rata percentage of the Revised Net Gross Differential Balance attributable to each remaining Participant, Former Participant, Beneficiary, or Alternate Payee, other than the Former Plan Fiduciaries, the Prior Releasors, the Arbitration Award Settlors, and the Participants, Former Participants, Beneficiaries and Alternate Payees who will receive $10.

Any Participant, Former Participant, Beneficiary, or Alternate Payee, other than the Former Fiduciaries, the Prior Releasors, and the Arbitration Award Settlors, who already received consideration (meaning a monetary payment, account allocation or financial benefit of any kind), whether in a Separate Settlement or as part of an arbitration award that already has been satisfied arising out of or related to Plaintiffs' Released Claims (a "Separate Satisfied Award" and, together with "Separate Settlement," a "Separate Payment"), shall have the net amount of such consideration received as a result of the Separate Payment, meaning any amount not paid to counsel for those Participants, Former Participants, Beneficiaries, or Alternate Payees (the "Net Separate Payment"), applied and credited against the Revised Net Settlement Allocation attributable to that Participant, Former Participant, Beneficiary, or Alternate Payee. If the Net Separate Payment is less than the Revised Net Settlement Allocation that the Participant, Former Participant, Beneficiary, or Alternate Payee would receive as a result of this Settlement, then such Participant, Former Participant, Beneficiary, or Alternate Payee shall be entitled to receive the difference between (a) the Revised Net Settlement Allocation, and (b) the Net Separate Payment. That is, any Class Member who received a Separate Payment will receive a "top-off" payment to ensure that they receive the full amount of the Revised Net Settlement Allocation to which they would be entitled under this Settlement (once any Net Separate Payment is taken into account). No Class Members or other recipients of consideration who are not Class Members will be required under the



Plan of Allocation or this Settlement to return or otherwise forfeit any consideration already received as a result of a Net Separate Payment.

Any Class Member whose Settlement Payment is calculated by the Settlement Administrator to be $10.00 or less, including Class Members who had Gross Differential amounts of $0.00 or less, shall receive a Settlement Payment of $10.00. Each Prior Releasor also will receive a Settlement Payment of $10.00.

Any amounts remaining in the Net Settlement Fund after allocating amounts due to Class Members who received Separate Payments and allocating the minimum Settlement Payments to Class Members shall be distributed to Participants, Former Participants, Beneficiaries, or Alternate Payees, other than the Former Fiduciaries, the Prior Releasors, and the Arbitration Award Settlors, based on the pro rata percentages calculated in accordance with Paragraph 1.5.8 of the Settlement Agreement.

The Settlement Payment for each Participant who is an active participant in the Plan will be invested in accordance with and proportionate to such Participant's investment elections then on file for new contributions. If the Participant does not have an investment election on file, then such Participant shall be deemed to have directed such payment to be invested in the Plan's default investment option. Likewise, the Settlement Payment to each Beneficiary or Alternate Payee who has an Active Account (Class Members' accounts in the Plan, which have a positive balance as of the date of the Preliminary Approval Order) will be invested in accordance with and proportionate to such person's investment elections then on file, or if such a person does not have investment elections on file, then such person will be deemed to have directed such payment to be invested in the Plan's default investment option. If, as of the date when payments pursuant to this Settlement Agreement are made, a Participant, or Beneficiary or Alternate Payee who had an Active Account, no longer has an Active Account, they will be treated as a Former Participant for purposes of the Settlement distribution only and will receive their payment from the Settlement Administrator in the form of a check or rollover. In order to receive a rollover, a Participant, or Beneficiary or Alternate Payee who had an Active Account, who no longer has an Active Account on the date of their Settlement distribution, will need to fill out a Former Participant Rollover Form.

Each Former Participant, Beneficiary, or Alternate Payee who does not have an Active Account will have the opportunity to elect a rollover of their Settlement Payment to an individual retirement account or other eligible employer plan, which they have identified on the Former Participant Rollover Form, provided that such a person supplies adequate information to the Settlement Administrator to effect the rollover. Otherwise, the Former Participant, Beneficiary, or Alternate Payee who does not have an Active Account will receive their Settlement Payment directly by check.

All checks issued pursuant to this Plan of Allocation shall expire one hundred eighty (180) calendar days after their issue date. All checks that are undelivered or are not cashed before their expiration date shall revert to the Qualified Settlement Fund. No sooner than ninety (90) calendar days following the Effective Date of Settlement, any Net



Settlement Amount remaining in the Qualified Settlement Fund after payments, including costs and taxes, shall be paid to the Plan for the benefit of the Plan's participants as set forth in the Settlement Agreement.

We find the Plan of Allocation to be reasonable, including:

1. the pro rata distribution of the Qualified Settlement Fund among Settlement Class members according to a score assigned based upon their proportionate share of the PSP's total losses during the Class Period;

2. the accounting for Settlement Class members' participation in separate settlements and any arbitration awards obtained, ensuring that such individuals all will be made whole vis-à-vis their arbitration awards or, as appropriate, will be "topped off" to ensure that they receive the benefit of the Settlement to the extent that they would not otherwise receive such benefits;

3. the application of a De Minimis Amount of $10 to Class Members; and

4. the provisions for payments into Plan accounts for Class Members with active accounts when possible and by rollover or check for former participants.

The provisions are cost-effective and fair to Class Members in terms of both calculation and distribution.

D. **Attorneys' Fees, Litigation Expenses and Case Contribution Awards**

Class Counsel seek an award of attorneys' fees and expenses in the amount of $9,500,000. Arbitration Counsel seek an award of attorneys' fees and expenses in the amount of $15,500,000. *Canfield/Mendon* Counsel seek an award of attorneys' fees and expenses in the amount of $250,000, with $125,000 to be paid from the award to Arbitration Counsel. Thus, counsel seek total fees and expenses of $25,125,000 ($9,500,000 + $15,500,000 + $125,000) from the $115,579,545 Qualified Settlement Fund. The total sought represents approximately 21.7% of the Qualified Settlement Fund. If expenses were treated separately, the percentage sought solely for attorneys' fees would be lower[6].

Looked at either way, the total percentage requested is reasonable in light of the range of attorney fee awards for ERISA cases. Using a lodestar cross-check, the lodestar multipliers are below 1.0 for Arbitration Counsel and *Canfield/Mendon* Counsel and only slightly above 1.0 for Class Counsel, well within the range of lodestar multipliers awarded in ERISA cases. In light of the work performed, the result achieved, the litigation risk assumed by counsel, and the combination of the percentage and the lodestar multiplier, Fiduciary Counselors finds the requested attorneys' fees to be reasonable.

---

[6] Class Counsel have incurred a little over $600,000 in expenses. Almost $510,000 of that is for experts and investigators, which is reasonable in light of the scale and scope of the case and the nature of proof required. Almost $53,000 was for multiple mediations, which also is reasonable. The remaining expenses were relatively small and are reasonable.



We note that the Settlement provides that if the amount awarded to Arbitration Counsel is less than $15,500,000, the Settlement will terminate unless Arbitration Counsel agrees to accept the amount awarded. This provision is unusual, but it was subject to intense negotiations, and it arises from the fact that Arbitration Counsel have been awarded over $30 million in attorneys' fees and expenses as a result of successful arbitrations. The $15,500,000 is a substantial reduction in potential recovery even after eliminating potential duplication in arbitration awards.

Class Counsel also seek case contribution awards of $25,000 each for Class Representatives Michael L. Ferguson, Myrl C. Jeffcoat and Deborah Smith for a total of $75,000. Class Counsel noted that the Class Representatives provided information and documents, responded to discovery requests, participated in regular conference calls with Class Counsel, reviewed filings, participated in settlement discussions, were in touch with Class Counsel during the mediation and follow-up discussions, and prepared for depositions and were prepared to attend the trial and testify if called as witnesses. Class Counsel also indicated that each of the Plaintiffs conservatively devoted well over 100 hours of work to this case over the past seven years. Fiduciary Counselors finds the requested case contribution awards to be reasonable.

In sum, although the Court ultimately will decide what fees, expenses and case contribution awards to approve, we find that the requested amounts are reasonable under ERISA.

## VI.    PTE 2003-39 Determination

As required by PTE 2003-39, Fiduciary Counselors has determined that:

- **The Court has certified the Litigation as a class action both during the Litigation and for settlement purposes.** Thus, the requirement of a determination by counsel regarding the existence of a genuine controversy does not apply. Nevertheless, we have determined that there is a genuine controversy involving the Plan. Based on the documents we reviewed and our calls with counsel, we find that there is a genuine controversy involving the Plan within the meaning of the Department of Labor Class Exemption, which the Settlement will resolve.

- **The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan, and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone.** On September 1, 2017, Plaintiffs filed an action against RCG and the *Ferguson* DST Defendants alleging that, while serving as fiduciaries of the Plan, they violated ERISA by, among other things, investing an inappropriate amount of the Plan's assets in the stock of VRX, failing to timely reduce and/or eliminate the Plan's investments in VRX, and, in the case of the *Ferguson* DST Defendants, failing to adequately monitor the fiduciaries managing the Plan's investments. In October 2019, the Department of Labor filed suit against Defendants and Goldfarb, in which it alleged that certain Plan



fiduciaries breached their fiduciary duties owed to Plan participants and beneficiaries by, among other things, investing the Plan's assets in an inappropriately non-diversified manner, failing to timely rebalance the Plan's investments, failed to adequately monitor the investments made on behalf of the Plan, and failing to establish a written investment policy as required by the Plan document. The DST Defendants, RCG and Goldfarb vigorously deny any wrongdoing and point to a variety of defenses both as to liability and as to damages. The Settlement Agreement resulted from hard fought litigation on a variety of fronts. The overall litigation involved more than a year's worth of a full, week-long merits hearings in 356 arbitration trials, more than 300 motions for summary judgment, more than 100 pre-trial hearings and more than 600 pre-hearing and post-hearing briefs, and full litigation of more than 30 Arbitration appeals.

This Action involved particular complexity relating to jurisdictional issues as well as litigation strategy. In fact, during oral arguments in the Second Circuit, Judge Richard C. Wesley said: "I've only been doing this 20 years, and this is a whopper of a case with all kinds of threads." Outside of the Arbitrations, the novelty and complexity of the case was on full display in this Court, in the Western District of Missouri, and in both the Second and Eighth Circuit Court of Appeals. Once more, Judge Wesley aptly referred to this as "a whopper of a case with all kinds of threads."

In addition to the normal risks of litigation and of appeals, continued litigation would have risked a stalemate between competing orders and injunctions issued by this Court and the United States District Court for the Western District of Missouri, primarily based on different case law in the Second Circuit and the Eighth Circuit, including case law developed in this overall litigation, regarding whether arbitration of the claims is required or is precluded. Instead of a drawn-out period of costly litigation, with a risk of no recovery, class members will receive a certain benefit now whether they are current participants in the Plan or former participants.

Using a methodology to calculate damages whereby, on a historic monthly basis, the PSP is rebalanced such that all funds invested in VRX over a putative concentration limit are instead invested in a hypothetical alternative portfolio (*e.g.*, an S&P 500 index), damages could reach an amount in excess of one hundred million dollars.[7] But that calculation depends upon the concentration limit chosen and the reasonableness of that amount. Such an approach also involves the assumption that every dollar invested in VRX above the proffered concentration limit should have been invested in an S&P 500 index. According to calculations conducted by Plaintiffs' expert, based upon realistic and highly defensible concentration limits (assuming that the PSP should have been treated as a unitary investment fund that would have applied accepted principles of modern portfolio theory to establish its concentration limits), the PSP would have been better off by $86 million

---

[7] Defendants would likely argue that this is an inappropriate measure of damages because the Plan benefitted from gains associated with the VRX investment prior to the investment's collapse and/or rebalancing may not have been feasible at VRX's periodic market prices. Setting aside liability or apportionment or responsibility, if Defendants succeed on any of their potential damages arguments, damages could be significantly less than the Settlement relief.



to $97 million, if rebalancing had occurred. This represents the full measure of potential damages recoverable from all parties with potential liability. Although damages could be calculated at higher levels (based upon higher concentration levels), such calculations could prove difficult to defend, based upon the full record in this case.

In comparison, the Settlement will result in a Qualified Settlement Fund of $115,579,545 and in a Net Settlement Fund of over $90 million if the requested awards of attorneys' fees and expenses are granted in full. These amounts clearly represent a fair and reasonable recovery given the defenses the Defendants would have asserted, the risks involved in proceeding to trial, the conflicting positions of this Court and the Western District of Missouri, and the possibility of reversal on appeal of any favorable judgment.

Fiduciary Counselors also finds the other terms of the Settlement to be reasonable, including the scope of the release, attorneys' fees, the requested case contribution awards to the Class Representatives and the Plan of Allocation.

- **The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances.** As indicated in the finding above, the Settlement is favorable to the Plan and its participants and beneficiaries in light of the challenges in proving the underlying claims. The agreement also was reached after arm's-length negotiations supervised by mediators David Geronemus and Robert A. Meyer.

- **The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest.** Fiduciary Counselors found no indication the Settlement is part of any broader agreement between Defendants and the Plan.

- **The transaction is not described in PTE 76-1.** The Settlement did not relate to delinquent employer contributions to multiple employer plans and multiple employer collectively bargained plans, the subject of PTE 76-1.

- **All terms of the Settlement are specifically described in the written settlement agreement and the plan of allocation.**

- **The Plan is receiving no consideration other than cash in the Settlement.** Therefore, conditions in PTE 2003-39 relating to non-cash consideration and extensions of credit do not apply.

- **Acknowledgement of fiduciary status.** Fiduciary Counselors has acknowledged in its engagement that it is a fiduciary with respect to the settlement of the Litigation on behalf of the Plan.

- **Recordkeeping.** Fiduciary Counselors will keep records related to this decision and make them available for inspection by the Plan's participants and beneficiaries as required by PTE 2003-39.



- **Fiduciary Counselors' independence**. Fiduciary Counselors has no relationship to, or interest in, any of the parties involved in the litigation, other than the Plan, that might affect the exercise of our best judgment as a fiduciary.

Based on these determinations about the Settlement, Fiduciary Counselors (i) authorizes the Settlement in accordance with PTE 2003-39; and (ii) gives a release in its capacity as a fiduciary of the Plan, for and on behalf of the Plan. Fiduciary Counselors also has determined not to object to any aspect of the Settlement.

Sincerely,

Stephen Caflisch
Senior Vice President & General Counsel

